# REAL ESTATE PURCHASE AGREEMENT

This Agreement is made by and between **Rock Creek Ranch, Inc.,** a Delaware corporation, as "Seller" and Dally Up, LLC, a Wyoming limited liability company, of Clark, Wyoming, as "Buyer." In consideration of the mutual promises contained herein, the Seller and the Buyer agree as follows:

**1.0** **Purchase and Sale.** Subject to the terms and conditions of this Agreement, Seller agrees to sell to Buyer, and Buyer agrees to buy from Seller, an undivided one hundred percent (100%) interest in certain real property (the "Real Property") located in Park County, Wyoming, and described on attached **Exhibit A.**

**2.0** **Purchase Price.** The total purchase price for the Real Property (the "Purchase Price") shall be Six Hundred Thousand ($600,000.00) payable as follows:

    **2.1** Within three (3) days of execution of this Agreement, Buyer shall pay to Seller, in cash or certified funds, an earnest money deposit of Sixty Thousand Dollars, being ten percent (10%) of the purchase price. In the event Seller does not hold merchantable fee title to the Real Property enabling the Seller to convey merchantable fee title to Buyer, or in the event Buyer is unable to obtain financing for the purchase of the Real Property, or in the event the Real Property does not appraise for at least $600,000.00, or in the event that there is a default on the part of Seller, this sum shall be returned to Buyer. In the event there is a failure to close this agreement due to a default on the part of Buyer, this sum shall be retained by Seller as liquidated damages.

    **2.2** The remaining balance of Five Hundred and Forty Thousand Dollars ($540,000.00), shall be paid by Buyer to Seller in cash or certified funds at closing.

**3.0** **Date of Closing and Delivery of Possession.** Closing of the transaction contemplated by this Agreement shall be held on or before July 26, 2010, at a time and place mutually agreed upon by the Parties. Possession shall be given on the date of closing.

**4.0** **Title.** Title shall be conveyed to Dally Up, LLC.

1


EXHIBIT A

**5.0** **Costs.** Except as provided in this Agreement, Buyer shall be solely responsible for all costs and closing costs associated with inspections of the Real Property and improvements thereon, appraisals, loan origination and related charges for financing of the purchase of the Real Property, and any and all other costs for which the Buyer may incur in connection with this transaction. Except as provided in this Agreement, all other costs not specifically allocated shall be divided equally between Seller and Buyer.

**6.0** **Merchantable Title.**

**6.1** Within ten (10) days after execution of this Agreement, Seller, at its expense, shall cause to be delivered to Buyer a commitment for title insurance issued by a title insurance company authorized to do business in Park County, Wyoming, showing good and merchantable fee simple title to the Real Property in Seller. The commitment for title insurance shall be subject only to (i) the general exceptions contained in the commitment; (ii) exceptions and reservations contained in the patents from the United States; (iii) prior mineral reservations; (iv) easements, restrictions and rights-of-way of record; and (v) title exceptions which may be removed by the payment of money at the time of closing and which Seller agrees and covenants to so remove at closing.

**6.2** In the event Seller's title is not good, marketable, and reasonably acceptable to Buyer, Buyer shall provide a written statement of its objections to title at least fourteen (14) days prior to the closing date. Seller shall then have a reasonable time in which to take such curative action as may be necessary, which shall be done at Seller's expense, or, at Seller's option, Seller may rescind this Agreement, provided that Buyer shall be given a reasonable opportunity to waive objections to title prior to any rescission of this Agreement.

**6.3** Within thirty (30) days after the closing of this transaction, Seller agrees to deliver a title insurance policy in the full amount of the purchase price, insuring title to an undivided one hundred percent (100%) interest in the Real Property in the name of Buyer. The title insurance policy shall show title in Buyer subject only to:

(i) the general exceptions in the commitment;

  (ii)  exceptions and reservations in the patents from the United States;

  (iii)  prior mineral reservations;

  (iv)  easements, restrictions and rights-of-way of record; and

  (v)  any mortgage given by Buyer to secure payment of all or any part of the Purchase Price for the Real Property as described above.

**7.0** **Warranty Deed with Restrictions.** At closing, Seller shall convey the property Described in **Exhibit A** to Buyer by the warranty deed with restrictions in attached **Exhibit B**. Buyer agrees to abide by and adhere to the terms and conditions contained in the warranty deed in **Exhibit B**, the terms, conditions, and restrictions of which are hereby incorporated into this Agreement as if fully set forth herein. Buyer hereby represents and warrants to Seller that Buyer shall abide by and adhere to all terms, conditions and restrictions contained in the warranty deed in **Exhibit B** and that this representation and warranty of Buyer shall survive the closing of this transaction.

**8.0** **Mineral Rights.** Mineral rights, if any, owned by Seller, shall be conveyed to Buyer, and are deemed included in the purchase made by Buyer under this Agreement.

**9.0** **Water.** All water and water rights, ditches and ditch rights, ownership documents representing such water and ditch rights, and ditch easements appurtenant to or used in connection with the Real Property are deemed included in the purchase made by Buyer under this Agreement.

**10.0** **Risk of Loss.** Risk of loss to the Real Property shall remain with Seller until delivery of possession to Buyer. In the event the premises are damaged by fire or other casualty prior to the time risk of loss passes to Buyer, Seller shall be obligated to repair the damage, or, in the alternative, assign to Buyer funds, including insurance proceeds, in an amount sufficient to repair the damage, provided that, in the event of an occurrence causing damage to the Real Property exceeding $10,000.00 prior to the Closing Date, either party may terminate this Agreement and the earnest money shall be returned to Buyer.

**11.0** **Representations and Warranties of Seller.** Seller hereby represents and warrants to Buyer as follows, which representations and warranties shall be effective as of the date of this Agreement and as of the closing date and shall survive the closing of this transaction:

**11.1** Seller holds good and marketable title to the surface lands described on **Exhibit A**, free and clear of any liens, claims, and encumbrances except those which can be removed and will be removed by Seller at the time of closing, and Seller has the right and authority to convey to Buyer the subject interest in and to the Real Property;

**11.2** To the best of Seller's knowledge, the Real Property is not in violation of any federal, state, or local law relating to environmental conditions on, under or about the property, including but not limited to soil and groundwater conditions; to the best of Seller's knowledge, there has been no disposal, release, or threatened release of hazardous materials on the property; and during the ownership of the property by Seller, there has been no litigation or administrative enforcement action or proceeding brought or threatened to be brought alleging the presence, disposal, release, or threatened release of any hazardous materials on the property;

**11.3** To the best of Seller's knowledge there are no agreements or permits for trespass, timbering, mineral exploration or development, or other use of the Real Property which exist and which are not of record in the Office of the County Clerk of Park County, Wyoming; and

**11.4** The transaction described in this Agreement has been duly authorized by Seller.

**12.0** **Items Included in the Purchase Price.** The purchase price shall include all fixtures and appurtenant property, including but not limited to fences, gates, lighting, electrical and plumbing fixtures, heating systems and fixtures, heating stoves, fireplaces and fireplace inserts, outdoor plants, air conditioning equipment, built-in appliances, floor coverings, storm windows and doors, screens, curtain and drapery rods, garage door openers and controls, smoke and fire detection devices, television antennas, mirrors, awnings, water softeners, water pumps, water filters and other water treatment equipment

**13.0** **Real Property Taxes.** Seller represents that all taxes and assessments for 2009 and all years prior to the year of closing will be paid in full prior to or at closing. Real property taxes for the year 2010, personal property taxes and assessments, if any, shall be prorated between Buyer and Seller as of the date of closing. Buyer shall pay all subsequent taxes and assessments.

**14.0 Closing Agent.** Shoshone Title shall act as closing agent for this transaction and shall hold all earnest money and other documents relevant to this transaction.

**15.0 Default.**

**15.1** Failure of any party to perform in accordance with the time limits set forth in the Agreement may be deemed a default and entitle the other party to all remedies provided at law, including the right of specific performance.

**15.2** In the event either of the parties default in any of the covenants herein or fails to close so as to require the party not in default to commence a legal or equitable action against the defaulting party, the defaulting party agrees to pay all reasonable expenses of such litigation, including a reasonable amount for attorney's fees.

**16.0 Notices.** All notices given pursuant to this Agreement shall be sent by certified mail, postage prepaid, to the parties as follows:

> Seller: Rock Creek Ranch, Inc.
> c/o Judith Jefferis
> P.O. Box 687
> Unionville, PA 19375-0687

> Buyer: Dally Up, LLC
> 89 Road 8RA
> Clark, WY 82435

Notices are deemed given five (5) days after mailed in accordance with this paragraph.

**17.0 Condition of the Property.** Buyer enters into this Agreement in full reliance upon Buyer's independent investigation and judgment. Buyer understands that at closing, Buyer shall take the Real Property in its present condition "AS IS" with no warranty as to condition. Buyer is not relying upon any representations by Seller or Seller's agents, except as set forth in this Agreement, as to any condition which Buyer deems to be material to Buyer's decision to purchase the Real Property. Except as otherwise provided herein, Buyer accepts the Real Property in its present condition, and **Seller makes no express or implied warranties of habitability or fitness to Buyer.**

This disclaimer shall not be merged into or extinguished by any warranty deed delivered under this Agreement.

**18.0   Due Diligence.**

**18.1**  The closing of this Agreement is conditioned upon Buyer's due diligence examination of the Real Property and all improvements located on the Real Property. During the due diligence period, which begins on the date of complete execution of the Agreement and ends fourteen (14) days thereafter at 5:00 p.m. Mountain Standard Time, Buyer shall be entitled, at Buyer's sole expense, to conduct any inspections, tests, and studies for the purpose of satisfying Buyer as to the acceptability and suitability of the Real Property for Buyer's intended use.

**18.2**  Buyer and Buyer's agents shall be allowed access to the Real Property at all reasonable times for the purpose of making inspections and conducting tests and studies. Buyer shall not damage the Real Property or any improvements thereon in connection with any tests, inspections or studies performed pursuant to this section. Buyer shall not permit any construction or materialmen's liens to be filed against the Real Property as a result of tests and studies. Buyer shall indemnify Seller for any damage, cost or expense, including reasonable attorneys' fees incurred by Seller, as a result of Buyer's tests inspections, or studies.

**18.3**   On or before the end of the due diligence period, Buyer shall have the right to (i) terminate this Agreement by written notice to Seller, if Buyer determines, in Buyer's sole discretion, that the Property is not satisfactory, or (ii) provide Seller a written list of objections and concerns. Unless Buyer provides Seller a written notice of termination or Buyer's list of objections and concerns prior to the expiration of the due diligence period, Buyer shall accept the condition of Real Property and improvements thereon as is and this Agreement shall continue in full force, and the earnest money shall thereafter be nonrefundable to Buyer except as otherwise provided herein.

**18.4**   If the Buyer provides to Seller a list of objections and concerns within the time provided above, Seller and Buyer shall have until Noon Mountain Standard Time three (3) days after the delivery of the list of objections and concerns to attempt to resolve the objections and concerns

6

of Buyer. If Seller elects not to correct or if the objections and concerns are not resolved to Buyer's satisfaction within three (3) days of delivery of the list of objections and concerns, this Agreement may be terminated by Buyer by a written notice of termination given to Seller not more that three (3) days thereafter, in which event, this Agreement shall be terminated, the earnest money shall be returned to Buyer and the parties shall have no further obligations herein. If no such notice of termination is timely given, then any unresolved list of objections and concerns shall be deemed waived and this Agreement shall continue in full force and effect.

**19.0** **Real Estate Commission.** It is agreed that neither Seller nor Buyer have incurred any real estate fees or commissions in connection with the purchase of this Property. In the event that either party has incurred such fees or commissions, the party incurring those fees and commissions shall pay the same.

**20.0** **Legal Fees.** The Parties agree that each is responsible for their own legal fees associated with preparing this Agreement, entering into, and completing the transaction described in this Agreement.

**21.0** **Further Assurances.** Seller agrees to use its best efforts to obtain and to execute such other documents as may be required to consummate the transaction contemplated herein.

**22.0** **Entire Agreement.** This Agreement supersedes all prior agreements and understandings and sets forth the entire agreement of the parties and may not be changed or terminated orally. No attempted change, termination or waiver of any of the provisions of this Agreement shall be binding unless in writing and signed by all of the parties to this agreement.

**23.0** **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Wyoming.

**24.0** **Execution in Counterparts and by Fax.** This Agreement may be executed in counterparts and by fax.

**25.0** **Binding Effect.** This Agreement shall be binding upon and enure to the benefit of the parties named herein and their respective personal representatives, heirs, successors and assigns.

**26.0** **Sale Subject to Appraisal and Financing.** Seller agrees that the sale of the Real Property is subject to the ability of Buyer to receive an appraisal of the real property in the amount of at least $600,000.00, and the ability to obtain financing in the

amount of $600,000.00. If Buyer is unable to obtain the appraisal and financing as outlined herein by the closing date, Seller agrees that all earnest money paid as outlined in Paragraph 2.1 herein shall be refunded to Buyer.

THE REMAINDER OF THIS PAGE HAS BEEN LEFT

INTENTIONALLY BLANK-----SIGNATURE PAGE

TO FOLLOW

DATED this __10__ day of June, 2010.

**SELLER**         **ROCK CREEK RANCH, INC.**

By: _Judith Donaldson Jefferis_
Title: _President_

**BUYER**          DALLY UP, LLC

By: _Jerry D Woodward_
JERRY WOODWARD, Member

By: _Angela C Woodward_
ANGIE WOODWARD, Member

9

STATE OF  Wyoming  )
                   ) ss.
COUNTY OF  Park    )

The foregoing **Real Estate Purchase Agreement** was acknowledged before me this 10th day of June, 2010, by Judy Jefferis, President of Rock Creek Ranch, Inc., as Seller.

WITNESS my hand and official seal.

_Chris Dell Edwards_
Notary Public
My commission expires: 9/27/2013


STATE OF  Wyoming  )
                   ) ss.
COUNTY OF  Park    )

The foregoing **Real Estate Purchase Agreement** was acknowledged before me this 22 day of June, 2010, by Jerry Woodward and Angie Woodward, all the members of Dally Up, LLC, as Buyer.

WITNESS my hand and official seal.

JOY M. CLEMENS    NOTARY PUBLIC
COUNTY OF         STATE OF
PARK              WYOMING
MY COMMISSION EXPIRES APRIL 27, 2013

_M Clemens_
Notary Public
My commission expires: 4-27-13



# HOLM, BLOUGH and COMPANY

CONSULTING ENGINEERS AND LAND SURVEYORS
1402 Stampede Avenue, Cody, WY 82414
(307) 587-6281
Fax 587-6282
Email: hbco@tritel.net

Roy Holm, PE & LS
Paul Blough, LS

June 10, 2010
Job No. 07-333

## ROCK CREEK RANCH, INC.
## LEGAL DESCRIPTION OF LANDS BEING CONVEYED

Township 57 North, Range 103 West 6TH P.M. Park County, Wyoming:

Section 26: Northwest one-Quarter Southwest one-Quarter (NW¼SW¼), South one-half Southwest One-Quarter (S½SW¼)

Section 35: Northeast One-Quarter Northwest One-Quarter (NE¼NW¼)

The foregoing legal description is graphically illustrated on the "Record of Survey" attached hereto and by this mention made a part hereof and being subject to the building envelopes as shown on said "Record of Survey" and described in a separate document and also being subject to all rights of way and or easements that legally exist.

Modification in any way of the foregoing legal description terminates all liability of the surveyor who prepared that description.

S:\JOBS\2007\07-333\07-333 LD 2.doc

EXHIBIT
A



# WARRANTY DEED

**ROCK CREEK RANCH, INC.**, a Delaware corporation, of 142 Road 8RA, Clark, Wyoming 82435, Grantor, for and in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, conveys and warrants to DALLY UP, LLC, a Wyoming Limited Liability Company, whose address is 89 Road 8RA, Clark, WY 82435, all of the real estate situated in County of Park, State of Wyoming, and described on the attached **Exhibit "A"** (the "Property"),

> **Together with** all improvements thereon and all appurtenances thereto, including all appurtenant water rights (provided that water rights are conveyed without warranties);
>
> **Subject to** reservations and exceptions in patents from the United States, prior mineral reservations and conveyances, exceptions, easements, restrictions, covenants and rights-of-way of record, unrecorded ditch easements, if any, and discrepancies, conflicts in boundary lines, shortages in area and encroachments which a correct survey and inspection would disclose;

**And subject to** the following covenants, conditions, and restrictions:

I.  No residence or other structure, including, without limitation, outbuildings such as barns, storage sheds, shops, garages or other structures of any kind may be erected on the Property except on those parts of the Property described as "Building Envelope 1" and "Building Envelope 2" on the Record of Survey on the attached **Exhibit "A"**. All structures currently on the Property which lie outside of the building envelopes described in **Exhibit "A"** and **Exhibit "B:** shall be deemed non-conforming structures, and if not removed by Grantee, may be maintained consistent with their current condition and uses, but may not be enhanced, replaced, expanded, or otherwise changed in exterior size or appearance, with the exception of the existing residence on the Property, depicted on Profile 6 in **Exhibit "B"**, which may be expanded on the south side of the residence only, provided the height of any addition or expansion may not exceed the height of the existing structure. Nothing in this section shall be construed to limit the placement of driveways, irrigation lines, and pasture fences anywhere on the Property.

II. The Property may not be divided or subdivided into more than two parcels, and the number of single-family residences on the Property shall never exceed three (3). No more than six (6) guest dwellings are allowed on the Property. Guest dwellings shall not to be occupied full-time and the cumulative square footage of occupiable space of all guest dwellings shall not exceed the single-family dwellings. No more than two (2) dormitories used in connection with operations as a school on the Property shall be permitted on the Property. For purposes of

this section, a dormitory shall not be considered a single-family residence or guest dwelling. No structure shall exceed a height of thirty-six (36) feet. These restrictions do not limit the right to construct outbuildings or other structures such as barns, pools, storage sheds, garages or other structures not used for occupancy by humans, provided they are otherwise not in violation of the covenants, conditions, and restrictions contained in this instrument. If an instrument has the effect of dividing the Property into two (2) parcels, that instrument shall allocate the total allowable single-family residences, guest dwellings and dormitories between the two (2) parcels.

III. No business or commercial building, or signs or billboards advertising any business, may be erected on the Property. No commercial enterprise or other non-residential use may be conducted on the Property, provided that this provision shall not preclude the Grantee from conducting agricultural activities or any business from within the Grantee's home conducted electronically or by other means not involving external or visible activities or traffic. Nothing in this instrument shall prevent operation of the Property, as it is currently operated, as a school, provided such operations are otherwise not in violation of the covenants, conditions, and restrictions contained in this instrument.

IV. No structure or associated improvements, except fences, utility lines, and irrigation lines shall be constructed on any part of the Property where the slope of the land exceeds thirty (30) degrees.

V. There shall be no material alteration of the topography of the land, except in the case of reservoir construction, construction of structures and private roads, and final grading of outdoor pads and arenas, provided such acts do not otherwise violate the covenants, conditions and restrictions contained in this agreement.

VI. All external lighting must be placed in the building envelopes identified in **Exhibit "B"** and the beams of all external lighting must point downward or otherwise be shaded so as not to direct or reflect light upward. External lighting on the Property shall not exceed the illumination requirements reasonably necessary for residential use, which may include not more than one (1) lighted outdoor arena. Further, no external lighting shall be placed on the Property, whether or not located within a building envelope, if such lighting will be visible from Station 0+00.00, as depicted on Profile 6, attached as **Exhibit "B"**.

VII. Notwithstanding any other provision in this instrument, no structures of any kind shall be placed on the Property, whether or not located within a building envelope, such that it is visible from the Station 0+00.00 as depicted on Profile 6, attached as **Exhibit "B"**. Nothing in this section shall be construed to limit the placement of utility lines, pasture fences, and irrigation lines.

VIII. The total ground area on the Property covered by impervious surface, including, without limitation, asphalt, concrete, artificial turf, or structures, but excluding roads and driveways, shall not exceed 100,000 square feet.

IX. Consistent with all applicable laws and regulations, Grantee shall assure that adequate irrigation water is running through the Owens Ditch to supply the pond located on U.S. Forrest Service land, directly south of the Property, with adequate water for livestock, which graze on the U.S. Forrest Service land approximately one month each year and which is referred to in U.S. Forrest Service leasing documents as the "Road Lease."

X. These covenants, conditions, and restrictions are declared to be covenants running with the land and also for the benefit of the County of Park, Wyoming, and adjoining property owners, and shall be fully enforceable by Grantor or Grantor's heirs, assigns, successors, or agents, the County of Park, Wyoming, and any person who owns property adjoining the Property conveyed in this instrument, and upon all persons acquiring the Property whether by descent, devise, purchase or otherwise, and any person by the acceptance of title to or any interest in the Property shall agree and covenant to abide by and fully perform the covenants, conditions and restrictions contained in this instrument. In the event the Property is sub-divided as allowed under this instrument, no owner shall be responsible for the violations of the covenants, conditions, and restrictions contained in this instrument committed by the owner or owners of any other portion of the Property, but the owner of each parcel shall have the right of enforcement under this instrument as to any violations occurring on the other parcel.

The covenants, conditions, and restrictions in this instrument shall be enforceable by injunction, specific performance, and any other remedy available in law or equity. Any person found to be in violation of the covenants, conditions, and restrictions in this instrument shall be required to pay for the cost of restoring the Property to a compliant condition and shall be responsible for the reasonable attorney's fees and other costs incurred by the Grantor or other person seeking to enforce this instrument, whether or not a formal court action is initiated.

The applicability and enforcement of this instrument shall be governed by the laws of the State of Wyoming.

In the event any portion of this instrument is deemed unenforceable or modified by a court, all other provisions shall remain in full force and effect.

Grantor hereby releases and waives all rights under and by virtue of the homestead exemption laws of this state.

DATED this _____ day of _____, 20___.

**ROCK CREEK RANCH, INC.**

By:_____
Title:_____


STATE OF _____ )
                                 : ss
COUNTY OF _____ )

The foregoing **Warranty Deed** was acknowledged before me this _____ day of _____, 20___, by _____.

WITNESS my hand and official seal.

_____
Notary Public

My commission expires:_____



Roy Holm, PE & LS
Paul Blough, LS

# HOLM, BLOUGH and COMPANY

CONSULTING ENGINEERS AND LAND SURVEYORS
1402 Stampede Avenue, Cody, WY 82414
(307) 587-6281
Fax 587-6282
Email: hbco@tritel.net

June 10, 2010
Job No. 07-333

## ROCK CREEK RANCH, INC.
## LEGAL DESCRIPTION OF LANDS BEING CONVEYED

<u>Township 57 North, Range 103 West 6TH P.M. Park County, Wyoming:</u>

Section 26: Northwest one-Quarter Southwest one-Quarter (NW¼SW¼), South one-half Southwest One-Quarter (S½SW¼)

Section 35: Northeast One-Quarter Northwest One-Quarter (NE¼NW¼)

The foregoing legal description is graphically illustrated on the "Record of Survey" attached hereto and by this mention made a part hereof and being subject to the building envelopes as shown on said "Record of Survey" and described in a separate document and also being subject to all rights of way and or easements that legally exist.

Modification in any way of the foregoing legal description terminates all liability of the surveyor who prepared that description.

S:\JOBS\2007\07-333\07-333 LD 2.doc



EXHIBIT
A