**TRACI L. LACOCK, #6-4009**
Hirst Applegate, LLP
P.O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
tlacock@hirstapplegate.com

*Admitted Pro Hac Vice*:
**BRIAN C. FRIES** (MO # 40830)
**MARA H. COHARA** (MO # 51051)
Lathrop GPM LLP
2345 Grand Blvd., Ste. 2200
Kansas City, MO  64108
Phone: (816) 292-2000
Fax: (816) 292-2001
brian.fries@lathropgpm.com
mara.cohara@lathropgpm.com

*Attorneys for Defendants Monks of the Most Blessed Virgin Mary
of Mount Carmel d/b/a Mystic Monk Coffee and Daniel Schneider*

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF WYOMING

---

| | |
|---|---|
| **CARLIE SHERMAN, ANNA GOZUN,** ) | |
| **AMANDA NASH, ANDREW SCAVUZZO,** and ) | |
| **EHAN JELINEK** on behalf of themselves and all ) | |
| similarly situated persons, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 20-CV-215-SWS |
| vs. ) | |
| ) | |
| **TRINITY TEEN SOLUTIONS, INC.,** a ) | |
| Wyoming corporation; **TRIANGLE CROSS** ) | |
| **RANCH, LLC,** a Wyoming limited liability ) | |
| corporation; **MONKS OF THE MOST** ) | |
| **BLESSED VIRGIN MARY OF MOUNT** ) | |
| **CARMEL, d/b/a MYSTIC MONK COFFEE,** a ) | |
| Wyoming corporation; **GERALD E.** ) | |

| | |
|---|---|
| **SCHNEIDER**; **MICHAELEEN P. SCHNEIDER**; **ANGELA C. WOODWARD**; **JERRY D. WOODWARD**; **DANIEL SCHNEIDER**; **MATHEW SCHNEIDER**; **MARK SCHNEIDER**; **KARA WOODWARD**; **KYLE WOODWARD**; **THOMAS GEORGE**; **JUDITH D. JEFFERIS**; **DALLY-UP, LLC**, a Wyoming limited liability corporation; **ROCK CREEK RANCH, INC.**, a Delaware corporation; **DIOCESE OF CHEYENNE**, a Wyoming corporation; the **SOCIETY OF OUR LADY OF THE MOST HOLY TRINITY**, a Texas corporation; and **NEW MOUNT CARMEL FOUNDATION, INC.**, a Wyoming corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

---

### DEFENDANTS MONKS OF THE MOST BLESSED VIRGIN MARY OF MOUNT CARMEL, D/B/A MYSTIC MONK COFFEE AND DANIEL SCHNEIDER'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

---

Defendants Monks of the Most Blessed Virgin Mary of Mount Carmel, d/b/a Mystic Monk Coffee, ("Monks") and Daniel Schneider ("Fr. Daniel Schneider") (Monks and Fr. Daniel Schneider collectively, the "Monk Defendants"), by and through their undersigned counsel, submit the following Brief in Support of their contemporaneously filed Motion to Dismiss Plaintiffs' First Amended Complaint.

## I.     INTRODUCTION

This case is about the methods employed by two Wyoming ranches—Triangle Cross Ranch ("Triangle") and Trinity Teen Solutions ("Trinity")—in their rehabilitation of troubled teenagers. Plaintiffs were each allegedly enrolled at Triangle or Trinity between 2010 and the present to receive therapy, education, and rehabilitation, but ultimately claim they were threatened and

mistreated during their stays. While aiming to recover from the Triangle and Trinity parties under theories of forced labor, trafficking, and racketeering, Plaintiffs have cast their nets far too wide by grouping the Monk Defendants into such claims. For example, Plaintiffs claim that the Monks, a Wyoming-based community of Catholic monks, and Fr. Daniel Schneider, the Monks' leader, accepted volunteer services from Triangle or Trinity residents, including Plaintiffs, allegedly making them complicit in the alleged misdeeds by Triangle and Trinity. However, as set forth below, the First Amended Complaint ("Amended Complaint") in no way shows that the Monk Defendants participated in, or knew of, any mistreatment, abuse, or coercion of Plaintiffs. Plaintiffs' barebones, conclusory allegations against the Monk Defendants are inadequate to show forced labor, trafficking, or racketeering violations and should be dismissed accordingly.

## II.   FACTUAL BACKGROUND

### A.  Allegations of Coercive Labor Against the Triangle and Trinity Parties

As alleged in the Amended Complaint, Triangle is a youth ranch for troubled teenaged boys located in Wyoming and Montana and is owned by Gerald Schneider and Michaeleen Schneider ("Triangle Owners"). *See* Amended Complaint, ¶ 3. Trinity is a similar youth ranch in Wyoming for troubled teenaged girls, and is owned by Angela Woodward and Jerry Woodward ("Trinity Owners"), daughter and son-in-law to Triangle Owners. *Id.*, ¶ 4. Plaintiffs are a putative class of former residents of Triangle or Trinity who claim that both ranches were advertised under the guise of "Residential Treatment Centers" or "Group Homes," but instead allegedly exploited their residents for their labor by means of force or coercion. *See, e.g.*, *id.*, ¶¶ 52, 117, 122, 130, 135, 140. Plaintiffs allege that Triangle, Trinity, and their respective owners "used or threatened food and sleep deprivation, physical punishment, emotional abuse, and humiliation daily to ensure

compliance with the labor requirements" that included cooking, cleaning, animal care, and various types of mechanical, construction, and agricultural work. *See, e.g., id.*, ¶¶ 50, 64, 114, 119, 124, 132, 137.

**B. Allegations of Labor Provided to the Monk Defendants**

Entirely separate from Triangle and Trinity are the Monk Defendants.  The Monks are a community of monks in the mountains of Wyoming that, among their spiritual disciplines, act as a nonprofit corporation packaging and selling coffee and accessories. Amended Complaint, ¶¶ 32, 37. Fr. Daniel Schneider is the president of the Monks under civil law, and its religious leader under Church law. Plaintiffs claim that the Monks, through Fr. Daniel Schneider, at times requested volunteers from Triangle and Trinity to assist with non-profit charitable work such as cleaning, construction, and mechanical repairs. *See, e.g., id.*, ¶¶ 76, 77, 114(q), 115, 119, 120, 132(b), 133, 137(b), 138. Summarized, the factual allegations against the Monk Defendants are: Fr. Daniel Schneider requested labor from Triangle and drove Triangle residents to the Monks' monastery (¶ 76); Fr. Daniel Schneider delivered "pressure washers and other machines requiring small engine repair for boys assigned to mechanical work at [Triangle] to complete at [Triangle]" (¶ 76); Plaintiffs Sherman and Gozun cleaned at the monastery (¶¶ 114(q), 115, 119, 120); Plaintiff Scavuzzo helped with roofing work and joist installation at the monastery (¶¶ 132(b), 133); and Plaintiff Jelinek made mechanical repairs to the Monks' equipment including pressure washers, tractors, vehicles, and transmissions (¶¶ 77, 137(b), 138). The remainder of the allegations about labor in the Amended Complaint concern other defendants.

### C. Conclusory Allegations that the Monk Defendants had "Knowledge" of Coercion[1]

Completely absent from the Amended Complaint are any factual allegations that the Monk Defendants participated in, or knew of, any coercive, abusive, or forceful means used against Plaintiffs—a necessary and central element to Plaintiffs' claims. In the original Complaint, Plaintiffs did not even mention the Monk Defendants having knowledge of any alleged coercion. Now, in an effort to keep the Monk Defendants in this lawsuit, the Amended Complaint relies on conclusory allegations that the Monk Defendants had knowledge of the alleged coercion of Plaintiffs. *See, e.g.*, Amended Complaint, ¶¶ 78, 79, 89. Plaintiffs seemingly attempt to mask these allegations as factual pleadings by using descriptive wording. For example, Plaintiffs claim that agents of the Monk Defendants were "directly aware" or had "direct knowledge" that the alleged labor was "coerced and uncompensated," or they "specifically knew" or "in the exercise of reasonable diligence should have known" that Plaintiffs "faced punishment" if they did not provide the requested labor. *Id.* However, these are simply recitations of the elements of Plaintiffs' purported claims. *See* 18 U.S.C. § 1589, 1590, 1694. Plaintiffs do not plead any *facts* of when, how, or to what extent the Monk Defendants ever became aware of any alleged force, abuse, or coercion.

---

[1] Plaintiffs had the benefit of reviewing the Monk Defendants' Motion to Dismiss the original Class Action Complaint ("Complaint") prior to filing the Amended Complaint. The Monk Defendants pointed out Plaintiffs' substantial deficiencies within the original Complaint. Despite having that information, Plaintiffs have only added conclusory statements regarding the Monk Defendants' knowledge of the alleged coercion of Plaintiffs. Throughout the Amended Complaint, Plaintiffs include numerous specific allegations of the other defendants' knowledge and use of coercion against Plaintiffs. But there are no such factual allegations against the Monk Defendants.

### D.  Allegations of Entanglement and Financial Wrongdoing

In addition to the above, Plaintiffs' Amended Complaint includes additional allegations that the Monk Defendants were involved in unlawful financial activities with the New Mount Carmel Foundation, Inc. (the "Foundation") and the owners of Triangle and Trinity. *See* Amended Complaint, ¶ 110. In sum, Plaintiffs allege the following: two individuals associated with the Monks—Father Nicholas Maroney and Brother Simon Mary—were also board members of the Foundation[2] (¶ 79); the Foundation's purpose was to provide financial support to the Monks (¶ 80); the Foundation updated its website after this lawsuit was filed disclaiming any "financial relationship or legal obligation to any other entity" (¶ 81); the operations of the Foundation and the Monks were intertwined (¶ 91); the Foundation accepted donations from the Triangle Owners and Trinity Owners (¶ 94); the Foundation's "reporting of its assets and the expenditure of its income" are possible but not plausible considering its high proportion of architect's fees (¶¶ 105-106); and Fr. Daniel Schneider managed funds received from the Triangle Owners and Trinity Owners after they "passed through" the Foundation to the Monks (¶ 109). Based on these allegations, Plaintiffs conclude that the Monk Defendants and the Foundation participated in a scheme to conceal the profits of Triangle and Trinity and that the Foundation and Monk Defendants benefitted by receiving free labor. *Id.*, ¶¶ 109-110.

Through these allegations, Plaintiffs misportray that the Foundation and Monk Defendants are intertwined such that allegations against one may be imputed to the other. However, the

---

[2]Plaintiffs mischaracterize Father Nicholas Maroney and Brother Simon Mary as two separate individuals. In fact, they are one and the same person. Thus, the Amended Complaint only refers to one individual that was associated with the Monks and was also a board member of the Foundation.

Foundation and the Monks are distinct legal entities with separate leadership and operations. Accordingly, any allegations relating to financial accounting or management by the Foundation or information learned by persons in their capacities as board members of the Foundation do not apply to the Monk Defendants. The only allegations of the alleged scheme that apply to the Monk Defendants are (1) the Monk Defendants received charitable work from Triangle or Trinity residents, and (2) Fr. Daniel Schneider allegedly managed certain funds the Monks received from the Foundation. These allegations do not show that the Monk Defendants ever obtained money directly from the Triangle Owners or Trinity Owners or that they performed or concealed any criminal activity. Furthermore, Plaintiffs' allegations do not indicate that the Monk Defendants were ever made aware of any coercion or force allegedly employed against Plaintiffs.

## III.  STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint fails to state a claim upon which relief can be granted. The purpose of a Rule 12(b)(6) motion to dismiss is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Rocha v. CCCF Admin.*, 408 F. App'x 141, 144 (10th Cir. 2011) (citation omitted). To survive a motion to dismiss, a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell At. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Under this standard, "only factual allegations are given weight in the analysis." *Rigler v. Lampert*, 248 F. Supp. 3d 1224, 1231 (D. Wyo. 2017). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678;

*Estate of Lockett v. Fallin*, 841 F.3d 1098, 1107 (10th Cir. 2016) ("Mere 'labels and conclusions'" are insufficient and "we need not accept legal conclusions contained in the complaint as true") (internal citation omitted).

Further, "only plausible claims survive." *Rigler*, 248 F.Supp.3d at 1231. Plausibility requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *see Twombly*, 550 U.S. at 570 (plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible"). If the allegations of the complaint "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal citations and quotations omitted).

## IV. ARGUMENT

Plaintiffs' Amended Complaint asserts three counts of alleged violations of the Trafficking Victims Protection Act of 2000 ("TVPA"), including two counts under the forced labor provision (18 U.S.C. § 1589) and one count under the trafficking provision (18 U.S.C. § 1590). Additionally, the Amended Complaint includes one count of an alleged violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Fr. Daniel Schneider is named in each of Counts 1 through 4 and the Monks are named in Counts 2 through 4. Apart from Plaintiffs' conclusory recitations of the elements of their legal claims, the factual allegations against the Monk Defendants are insufficient to state plausible claims under the TVPA or RICO. Accordingly, the Amended Complaint should be dismissed as to the Monk Defendants.

A.      **Plaintiffs Fail to State a Claim of Forced Labor Against the Monk Defendants.**

Counts 1 and 2 of the Amended Complaint make unsupported claims of forced labor against the Monk Defendants. The Monk Defendants deny these claims. Regardless, and for the purposes of a motion to dismiss, Plaintiffs' meager factual allegations fail to satisfy the basic elements of forced labor claims under the TVPA. The forced labor provision (§ 1589) was enacted as part of the TVPA to combat trafficking in persons. *See United States v. Kaufman*, 546 F.3d 1242, 1261 (10th Cir. 2008); 22 U.S.C. § 7101(a). The TVPA affords civil litigants with a private right of action to bring forced labor claims. *See* 18 U.S.C. § 1595(a). The forced labor provision presents two subsections under which a defendant can be found liable: as a "primary offender" under §1589(a) or through "venture liability" under §1589(b). *See Bistline v. Parker*, 918 F.3d 849, 871 (10th Cir. 2019). As described below, Plaintiffs' allegations under both forms of liability fail as a matter of law.

1.      ***Plaintiffs Fail to State a Claim that Fr. Daniel Schneider Acted as a Primary Offender of Forced Labor Under 18 U.S.C. § 1589(a).***

Fr. Daniel Schneider is named in Count 1 as a primary offender of forced labor under 18 U.S.C. § 1589(a). For a plaintiff to state a claim under § 1589(a), she must show that the defendant "knowingly acquired plaintiff's labor by means and/or threats of: (1) force and physical restraint; (2) serious harm, including psychological and financial harm; (3) abuse of the legal process; or (4) a scheme intended to cause the plaintiff to believe that if she did not perform the labor or services, she would suffer serious harm." *Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1164 (D. Kan. 2018) (applying 18 U.S.C. § 1589(a)). Plaintiffs' allegations against Fr. Daniel Schneider fall short of a plausible claim under these elements.

The only facts raised against Fr. Daniel Schneider with respect to Plaintiffs' labor are that: (1) he requested labor from Triangle; (2) he drove Triangle residents to the monastery; and (3) he delivered "pressure washers and other machines" to Triangle for repairs. Amended Complaint, ¶ 76. Plaintiffs do not allege that Fr. Daniel Schneider ever used or threatened any forceful or coercive methods against Plaintiffs in obtaining the alleged labor. Instead, Plaintiffs attempt to implicate Fr. Daniel Schneider in Triangle and Trinity's alleged mistreatment of Plaintiffs by relying on the fourth method of force under § 1589(a)—that the defendant *knowingly* acquired labor through a scheme *intended* to cause the plaintiff to believed serious harm would occur. *See* Amended Complaint, ¶ 163.

Plaintiffs theorize that Fr. Daniel Schneider engaged in a scheme to assist with concealing profits of Triangle and Trinity in exchange for free labor. *See* Amended Complaint, ¶¶ 109-110. Although Fr. Daniel Schneider fully denies Plaintiffs' allegation, it does not establish the central element under § 1589(a)(4)— the defendant must intend for the plaintiffs to believe they would suffer severe harm if they did not complete their labor. Plaintiffs fail to plead such an intention of Fr. Daniel Schneider.  In fact, Plaintiffs do not even plead facts showing Fr. Daniel Schneider ever knew of any unlawful actions committed against Plaintiffs. The Amended Complaint states for the first time that Fr. Daniel Schneider "had direct knowledge that the putative class members were providing uncompensated labor to [the Monks] and specifically knew that they faced punishment if they did not perform such services." Amended Complaint, ¶ 78. This, however, is merely a recitation of the legal "knowledge" requirement under § 1589(a) in an attempt to cure the deficiencies in the original Complaint (which defendants identified in their original motions to dismiss). However, Plaintiffs do not state any *facts* showing when, how, or to what extent Fr.

Daniel Schneider became aware of any force, abuse, or coercion employed against any resident of Triangle or Trinity.

Even if mistreatment allegedly occurred at the hands of Triangle, Trinity, or other parties, Plaintiffs do not allege facts showing that Fr. Daniel Schneider ever knew of, participated in, or endorsed any such conduct or that he was part of a scheme intending to cause Plaintiffs to believe they would suffer severe harm. The Amended Complaint fails to state a claim that Fr. Daniel Schneider violated § 1589(a) of the TVPA, and he should be dismissed from Count 1 accordingly.

### 2. *Plaintiffs Fail to State a Claim that Fr. Daniel Schneider and the Monks Are Liable for Forced Labor as Part of a Venture Under 18 U.S.C. § 1589(b).*

Count 2 of the Amended Complaint is likewise defective—this time against Fr. Daniel Schneider and the Monks under the "venture liability" subsection of the forced labor provision. *See* 18 U.S.C. § 1589(b). A violation of § 1589(b) requires a showing that: "(1) the party knowingly participated in a venture; (2) the party knowingly benefitted from the venture; (3) the venture has engaged in the providing or obtaining of labor or services in violation of the TVPA; and (4) the party knew or recklessly disregarded the fact that the venture has engaged in the providing or obtaining of such labor or services." *See Gilbert v. United States Olympic Comm.*, No. 18-cv-00981-CMA-MEH, 2019 WL 1058194, at *12 (D. Colo. Mar. 6, 2019) (applying 18 U.S.C. § 1589(b)). The Tenth Circuit has defined "venture" as "any group of two or more individuals associated in fact, whether or not a legal entity." *See Bistline*, 918 F.3d at 873. Even assuming for purposes of this motion that Plaintiffs sufficiently pleaded the first three elements of venture liability, they still fail to show that the Monk Defendants knew of or recklessly disregarded conduct in violation of the TVPA.

Courts have recognized venture liability under the forced labor provision of the TVPA where a defendant who benefitted from a venture had knowledge of the abusive means by which labor was obtained. *See, e.g., Gilbert v. United States Olympic Comm.*, 423 F. Supp. 3d 1112, 1131 (D. Colo. 2019) (finding that female taekwondo athletes stated a § 1589(b) claim against a national governing body for taekwondo where plaintiffs alleged that they reported their coach's sexual abuse to the national governing body and that it purposefully delayed investigating those complaints so the coach could participate in the 2016 Olympics); *Bistline v. Parker*, 918 F.3d at 875-76 (finding the complaint adequately stated a claim for venture liability under § 1589(b) where the allegations plausibly showed that defendants had ample notice of illegal activities and were well aware of crimes being committed against plaintiffs); *Ricchio v. McLean*, 853 F.3d 553, 555-56 (1st Cir. 2017) (finding the complaint adequately stated a § 1589(b) claim against motel owners where the allegations plausibly alleged that the owners were aware of a woman being held against her will and sexually abused while in their hotel).

However, courts refuse to find venture liability where the defendant is unaware of the allegedly unlawful conduct. *See, e.g., Jensen v. United States Tennis Ass'n*, No. 20-2422-JWL, 2020 WL 6445117, at *6 (D. Kan. Oct. 30, 2020) (finding plaintiff failed to state a claim for venture liability under § 1589(b) because she failed to plausibly allege facts that the tennis organization knew or recklessly disregarded the fact that a coach within the organization was abusing her). In *Jensen*, the court granted defendant's motion to dismiss noting: "plaintiff does not allege that she ever notified [the tennis organization] about [the coach's] conduct and she does not allege that anyone employed by [the tennis organization] witnessed [the coach's] conduct or otherwise had any reason to know about [the coach's] conduct." *Id.*

As was the case in *Jensen*, the Monk Defendants never knew or had reason to know of any alleged force or coercion used against Plaintiffs. As alleged in the Amended Complaint, Plaintiffs Sherman and Gozun cleaned at the monastery, Plaintiff Scavuzzo helped with roofing work and joist installation at the monastery, and Plaintiff Jelinek made certain mechanical repairs to the Monks' equipment. Amended Complaint, ¶¶ 77, 114(q), 115, 119, 120, 132(b), 133, 137(b), 138. Further, Plaintiffs generally allege that Fr. Daniel Schneider requested labor from Triangle, transported Triangle residents to the monastery, and dropped off equipment for repairs at Triangle. *Id.*, ¶ 76. Plaintiffs claim this was part of a scheme by the Monk Defendants to obtain free labor. *Id.*, ¶ 110. However, Plaintiffs have only pleaded conclusory allegations that the Monk Defendants were "directly aware" or had "direct knowledge" that the alleged labor was "coerced and uncompensated," or they "specifically knew" or "in the exercise of reasonable diligence should have known" that Plaintiffs "faced punishment" if they did not provide the requested labor. *See, e.g.*, *id.* ¶¶ 78, 79, 89. Significantly, Plaintiffs do not include any factual allegations that the Monk Defendants ever observed Plaintiffs behaving oddly or being verbally or physically abused. Plaintiffs also do not allege that they ever notified or complained to the Monk Defendants that they were being forced or coerced into the work they performed. The Amended Complaint cannot state a plausible claim for venture liability of forced labor where there are no factual allegations that the Monk Defendants were aware of any unlawful means by which the alleged labor was obtained. Accordingly, Plaintiffs' claim under § 1589(b) of the TVPA (Count 2) should be dismissed because it fails to state a claim against the Monk Defendants.

**B.      Plaintiffs Fail to State a Claim for Trafficking Against the Monk Defendants.**

In addition to the forced labor allegations, Count 3 of the Amended Complaint claims that Fr. Daniel Schneider and the Monks engaged in trafficking under the TVPA. To state a claim for trafficking, a plaintiff must show that the defendant (1) knowingly, (2) recruited, harbored, transported, provided, or obtained by any means, (3) any person for labor or services (4) under conditions which violate any peonage, slavery, and trafficking offenses in Chapter 77 of Title 18. *See* 18 U.S.C. § 1590(a). Like forced labor violations, trafficking violations may also be alleged under a theory of venture liability. Section 1595(a) provides a civil right of action under the TVPA and allows a victim to bring a claim against anyone who "knowingly benefits . . . from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPA]." Plaintiffs fail to meet the plausibility standard for either liability theory against the Monk Defendants. *See Rigler*, 248 F.Supp.3d at 1231.

Under a primary-liability theory of trafficking, Plaintiffs must show that the Monk Defendants transported Plaintiffs *for* the benefit of their *forced* labor or services. *See Gilbert*, 423 F.Supp.3d at 1133 (recognizing that liability as a principal under § 1590(a) requires that the defendant knowingly transports the plaintiff "for" forced labor or services). Under a venture-liability theory, Plaintiffs must show that the Monk Defendants knew or should have known that the venture engaged in unlawful conduct under the TVPA. 18 U.S.C. § 1595(a). Thus, both theories require Plaintiffs to plead facts showing that the Monk Defendants knew, or had reason to know, that Plaintiffs were being forced or coerced to perform labor or services. As stated above, no such allegations exist in the Amended Complaint, rendering it defective on its face.

The Amended Complaint claims that the Monks received cleaning, construction, and repair work from Triangle and Trinity residents (Amended Complaint, ¶¶ 77, 114(q), 115, 119, 120, 132(b), 133, 137(b), 138) and that Fr. Daniel Schneider requested labor from Triangle, transported Triangle residents to the monastery, and dropped off equipment for repairs at Triangle (Amended Complaint, ¶ 76). Plaintiffs claim these activities were part of a scheme where the Monk Defendants assisted in concealing profits of Triangle and Trinity in exchange for free labor. Amended Complaint, ¶ 76. Even assuming *arguendo* that this is true (which it is not), Plaintiffs do not allege that force or coercion of Plaintiffs were part of the alleged scheme. Instead, Plaintiffs simply recite the legal requirement that the Monk Defendants knew or should have known that Plaintiffs faced punishment if they did not complete their labor. *See, e.g.*, Amended Complaint, ¶¶ 78, 79, 89.

The Amended Complaint pleads facts about Triangle and Trinity's alleged use force or coercion against Plaintiffs. *See, e.g.*, *id.*, ¶¶ 52, 117, 122, 130, 135, 140. But in comparison, Plaintiffs do not plead any facts showing that the Monk Defendants ever knew of or recklessly disregarded signs of force or coercion being used against Plaintiffs to allegedly compel their labor. Neither are there any allegations that any of the Plaintiffs notified the Monk Defendants that they were being forced or coerced into the work provided to the Monk Defendants. Plaintiffs' conclusory recitations of the "knowledge" requirement are not considered for purposes of a motion to dismiss. *See Iqbal*, 556 U.S. at 678. Plaintiffs' factual allegations fail to state a claim of trafficking against the Monk Defendants. Thus, Count 3 of the Amended Complaint as to the Monk Defendants should be dismissed accordingly.

**C.**    **Plaintiffs Fail to State a RICO Claim Against the Monk Defendants.**

In Count 4 of the Amended Complaint, Plaintiffs allege the Monk Defendants committed a RICO violation that entitles Plaintiffs to civil relief. *See* 18 USC § 1961 *et al*. To maintain a civil RICO claim under § 1964(c), a plaintiff must plead: "(1) that the defendant violated § 1962; (2) that the plaintiff's <u>business or property</u> was injured; and (3) that the defendant's violation is the cause of that injury." *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 881 (10th Cir. 2017) (emphasis added); 18 U.S.C. § 1964(c). When relying on a violation of § 1962(c), as Plaintiffs do, they must also plausibly allege that each defendant "(1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Hickenlooper*, 859 F.3d at 881 (applying 18 U.S.C. § 1962(c)). For the following reasons, Plaintiffs fail to state a civil RICO claim against the Monk Defendants.

> *1. The Complaint Does Not Sufficiently Allege That the Monk Defendants Engaged in Racketeering Activity.*

Liability under § 1962(c) requires Plaintiffs to plead that each defendant engaged in a "pattern of racketeering activity." Included in the definition of "racketeering activity" are violations of forced labor and trafficking. *See* 18 U.S.C. § 1961(1). While Plaintiffs attempt to rely on the TVPA allegations in Counts 1 through 3 to show "racketeering activity," their efforts are defective. It is not enough, as Plaintiffs have done here, to allege that some members of an alleged enterprise engaged in racketeering activity. Rather, Plaintiffs must show that *each* defendant engaged in the racketeering activity. *See Hickenlooper*, 859 F.3d at 882. As shown above, Plaintiffs fail to plausibly allege that the Monk Defendants committed any of the TVPA violations in Counts 1 through 3. Considering there are no allegations that the Monk Defendants committed

any other predicate acts, the Amended Complaint fails to state a claim that the Monk Defendants engaged in racketeering activity.

### 2. *Plaintiffs Did Not Sustain Injury to Their Business or Property.*

To plausibly allege a RICO violation, Plaintiffs must show they sustained injury to their "business or property." 18 U.S.C. § 1964(c). Courts have recognized that "business or property" are "words of limitation" and that RICO plaintiffs must suffer some "proprietary type of damage to [their] property or business." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 279 (1992); *Local 355 v. Pier 66 Co.*, 599 F. Supp. 761, 765 (S.D. Fla. 1984). Thus, in order to state a claim, a RICO plaintiff must show they sustained "a concrete financial loss and not merely injury to a valuable intangible property interest." *Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d. 1220, 1232 (D. Colo. 2010) (quoting *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000)). Further, "economic aspects of personal injuries and injuries incidental to the racketeering acts are not compensable under RICO." *Doe v. Roe*, 756 F. Supp. 353, 359 (N.D. Ill. 1991).

Plaintiffs' claims involve three main categories of alleged damages relevant to the Monk Defendants—restitution for unpaid wages and reduced earning capacity; compensatory damages for emotional distress; and restitution of housing or treatment payments made by Plaintiffs' parents to Triangle and Trinity. *See* Amended Complaint, ¶¶ 141-146, 199, Section VII. Plaintiff Nash's putative subclass also seeks past and future medical expenses resulting from negligence of certain defendants; however, such claims do not involve the Monk Defendants. *Id.*, ¶¶ 147, 199.

None of these categories of damages are considered injuries to business or property. *See Giannone v. Ayne Inst.*, 290 F. Supp. 2d 553, 565 (E.D. Penn. 2003) (holding physical and emotional injuries are not injuries to business or property); *Doe v. Roe*, 756 F. Supp. at 359

(holding "lack of compensation for services will not be considered injury to business or property under RICO"); *Doe v. Schneider*, 667 F. Supp. 2d 524, 534 (E.D. Penn. 2009) (holding personal injuries and related pecuniary losses are not considered injury to business or property under RICO).

Even if housing or tuition payments could generally be considered injuries to business or property, the Amended Complaint states that those payments were made each month by Plaintiffs parents—not by Plaintiffs. *See* Amended Complaint, ¶ 2. Plaintiffs do not have standing to recover damages on behalf of their nonparty parents—the actual parties that suffered the loss. *See Wilderness Soc'y v. Kane Cty., Utah*, 632 F.3d 1162, 1168 (10th Cir. 2011) (en banc) ("One limitation imposed by the prudential standing doctrine is that 'the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'") (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Thus, Plaintiffs have failed to allege that their business or property was injured.

### 3.  *Plaintiffs Fail to Plead RICO Causation.*

"Sufficiently establishing the element of causation—both actual and proximate—is crucial to proving any violation of RICO." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1088 (10th Cir. 2014) (citing *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 656–60 (2008)); *see also* 18 U.S.C. § 1964(c). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). Plaintiffs do not come close to pleading the element of causation.

As stated previously, Plaintiffs' fail to allege any injury to their business or property. However, even assuming *arguendo* that the lost housing or treatment payments constituted injuries

to Plaintiffs' business or property, the Monk Defendants' conduct did not directly lead to the payments of such fees. The Amended Complaint states that "between $6,000 and $9,000 per month" were paid by each resident's parent for their treatment or housing. Amended Complaint, ¶ 2, 146. Even if the Monk Defendants committed predicate acts of forced labor and trafficking (which they did not), the treatment or housing payments were made for the purpose of the teenager's attendance at Triangle or Trinity—not as a result of any acts by Fr. Daniel Schneider or the Monks. *See Gilbert*, 2019 WL 1058194, at *25 (finding that plaintiffs paid their $50 membership fee to be members of the taekwondo organization, not as a result of the RICO predicate acts). As such, Plaintiffs fail to plead any facts showing that the Monk Defendants' conduct directly led to Plaintiffs' alleged injuries.

> **D.      Plaintiffs' Claims Against the Monk Defendants Are Futile and Any Motion to Further Amend the Complaint Should be Precluded.**

Rule 15 of the Federal Rules of Civil Procedure allows a party to amend its pleading as a matter of course within twenty-one days after service of a Rule 12 motion. Fed. R. Civ. P. 15(a)(1). After a pleading has been amended, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The decision of granting leave to amend is within the discretion of the trial court. *Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1584-85 (10th Cir. 1993) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)). A court may deny leave to amend for reasons such as "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of the amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). An amendment may be futile if it would be subject to dismissal for

any reason. *Kaiser-Francis Oil Co. v. Noble Casing, Inc.*, No. 16-CV-309-S, 2017 WL 3480260, at *2 (D. Wyo. Apr. 25, 2017); *see also Mountain View Pharm. v. Abbott Lab.*, 630 F.2d 1383, 1389 (10th Cir. 1980).

After the Monk Defendants filed their first Motion to Dismiss (Dkts. 91-92), Plaintiffs filed their Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1) (Dkt. 106). Plaintiffs had an opportunity to cure the deficiencies in their original Complaint with the filing of the Amended Complaint. As discussed above, Plaintiffs only amended their Complaint to add in vague and conclusory statements against the Monk Defendants. The Amended Complaint fails to state a claim upon which relief may be granted; thus, the claims against the Monk Defendants must be dismissed. Any additional attempts to cure these deficiencies should be deemed futile because Plaintiffs failed to successfully amend their Complaint the first time.

## V.      CONCLUSION

Plaintiffs allege they suffered serious mistreatment while enrolled at Triangle Cross Ranch, LLC and Trinity Teen Solutions, Inc. In their attempt to recover, they misguidedly cast their nets far too wide by including Fr. Daniel Schneider and Monks of the Most Blessed Virgin Mary of Mount Carmel, d/b/a Mystic Monk Coffee in their claims. In order to recover from these defendants, Plaintiffs must first plead facts sufficient to state a claim that is plausible on its face. Plaintiffs have failed to meet that burden. As such, Fr. Daniel Schneider and Monks of the Most Blessed Virgin Mary of Mount Carmel, d/b/a Mystic Monk Coffee, respectfully request that the Court dismiss them from Plaintiffs' First Amended Complaint with prejudice.

Dated: 26 March 2021.

MONKS OF THE MOST BLESSED VIRGIN
MARY OF MOUNT CARMEL, a Wyoming
corporation, d/b/a Mystic Monk Coffee, and
DANIEL SCHNEIDER, Defendants

BY: _____

**TRACI L. LACOCK, #6-4009**
OF HIRST APPLEGATE, LLP
Attorneys for Above-Named Defendants
P.O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
tlacock@hirstapplegate.com

*Admitted Pro Hac Vice*:
**BRIAN C. FRIES** (MO # 40830)
**MARA H. COHARA** (MO # 51051)
Lathrop GPM LLP
2345 Grand Blvd., Ste. 2200
Kansas City, MO  64108
Phone: (816) 292-2000
Fax: (816) 292-2001
brian.fries@lathropgpm.com
mara.cohara@lathropgpm.com

## CERTIFICATE OF SERVICE

I certify the foregoing *Defendants Monks of the Most Blessed Virgin Mary of Mount Carmel, D/B/A Mystic Monk Coffee and Daniel Schneider's Brief in Support of Their Motion to Dismiss Plaintiffs' First Amended Complaint* was served upon all parties to this action pursuant to the Federal Rules of Civil Procedure on 26 March 2021, and that copies were served as follows:

Michael B. Rosenthal
Nathan A. Nicholas
Hathaway & Kunz, LLP
P. O. Box 1208
Cheyenne, WY  82003-1208
*mike@hkwyolaw.com*
*nnicholas@hkwyolaw.com*
*Attorneys for Plaintiffs*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☑ E-FILE

Brice M. Timmons
Bryce Ashby
Craig Edgington
Donati Law, PLLC
1545 Union Ave.
Memphis, TN  38104
*brice@donatilaw.com*
*bryce@donatilaw.com*
*craig@donatilaw.com*
*Attorneys for Plaintiffs*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☑ E-FILE

Frank L. Watson, III
Watson Burns, PLLC
253 Adams Avenue
Memphis, TN  38104
*fwatson@watsonburns.com*
*Attorney for Plaintiffs*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☑ E-FILE

Lillian Alves
Thomas B. Quinn
Gordon & Rees LLP
555 Seventeenth Street, Suite 3400
Denver, CO  80202
*lalves@grsm.com*
*tquinn@gordonrees.com*
*Attorneys for Defendants*
*Trinity Teen Solutions Inc.,*
*Angela C. Woodward,*
*Jerry D. Woodward,*
*Kara Woodward,*
*Kyle Woodward,*
*Dally-Up LLC*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☑ E-FILE

Keith R. Olivera
Monty L. Barnett
Rachel E. Ryckman
John C. Matthews
White & Steele P.C.
Dominion Towers, North Tower
600 17th Street, Suite 600N
Denver, CO  80202-5406
*kolivera@wsteele.com*
*mbarnett@wsteele.com*
*rryckman@wsteele.com*
*jmatthews@wsteele.com*
*Attorneys for Defendants*
*Triangle Cross Ranch LLC,*
*Gerald E. Schneider,*
*Michaeleen P. Schneider,*
*Mathew Schneider,*
*Mark Schneider,*
*Thomas George*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☑ E-FILE

Paul J. Hickey
Loyd E. Smith
Hickey & Evans LLP
1800 Carey Avenue, Suite 700
P. O. Box 467
Cheyenne, WY  82003-0467
*phickey@hickeyevans.com*
*lsmith@hickeyevans.com*
*Attorneys for Defendant*
*Diocese of Cheyenne*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☑ E-FILE

Jane M. France
Sundahl, Powers, Kapp & Martin
P. O. Box 328
Cheyenne, WY  82003-0328
*jfrance@spkm.org*
*Attorney for Defendant*
*Society of Our Lady of the Most Holy Trinity*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☑ E-FILE

HIRST APPLEGATE, LLP
LAW OFFICES
P.O. Box 1083
CHEYENNE, WYOMING 82003-1083

– 23 –

Patrick J. Sodoro
MaKenna J. Stoakes
Sodoro Mooney & Lenaghan
13924 Gold Cir.
Omaha, NE 68144
*psodoro@smllawoffice.com*
*mstoakes@smllawoffice.com*
*Attorneys for Defendant*
*Society of Our Lady of the Most Holy Trinity*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☑ E-FILE

Rick L. Koehmstedt
Schwartz, Bon, Walker & Studer
141 South Center Street, Suite 500
Casper, WY 82601
*rick@schwartzbon.com*
*Attorneys for Defendant*
*New Mount Carmel Foundation Inc.*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☑ E-FILE

Patricia K. Buchanan
Patterson Buchanan Fobes & Leitch
1000 2nd Ave. - Ste 30th Floor
Seattle, WA 98104
*pkb@pattersonbuchanan.com*
*Attorney for Defendant*
*New Mount Carmel Foundation Inc.*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☑ E-FILE

Zenith S. Ward
Buchhammer & Ward, P.C.
1821 Logan Avenue
P. O. Box 568
Cheyenne, WY 82003-0568
*zsw@wyoming.com*
*Attorney for Defendant*
*Judith D. Jefferis*
*Rock Creek Ranch, Inc.*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☑ E-FILE

OF HIRST APPLEGATE, LLP
Attorneys for Above-Named Defendants