Paul J. Hickey, WSB No. 5-1431
Loyd E. Smith, WSB No. 5-2509
Hickey & Evans, LLP
1800 Carey Avenue, Suite 700
P.O. Box 467
Cheyenne, WY  82003-0467
Phone:  (307) 634-1525
Fax:  (307) 638-7335
Email:  phickey@hickeyevans.com
Email:  lsmith@hickeyevans.com
*Attorneys for Defendant Diocese of Cheyenne*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **CARLIE SHERMAN, ANNA GOZUN, AMANDA NASH**, and **JOHN DOE** on behalf of themselves and all similarly situated persons,<br><br>PLAINTIFFS,<br><br>v.<br><br>**TRINITY TEEN SOLUTIONS, INC.**, a Wyoming corporation; **TRIANGLE CROSS RANCH, LLC**, a Wyoming limited liability corporation; **MONKS OF THE MOST BLESSED VIRGIN MARY OF MOUNT CARMEL, d/b/a MYSTIC MONK COFFEE**, a Wyoming corporation; **GERALD E. SCHNEIDER**; **MICHAELEEN P. SCHNEIDER**; **ANGELA C. WOODWARD**; **JERRY D. WOODWARD**; **DANIEL SCHNEIDER; MATHEW SCHNEIDER; MARK SCHNEIDER; KARA WOODWARD**; **KYLE WOODWARD; THOMAS GEORGE; JUDITH D. JEFFERIS**; **DALLY-UP, LLC**, a Wyoming limited liability corporation; **ROCK CREEK RANCH, INC.**, a Delaware corporation; **DIOCESE OF CHEYENNE**, a Wyoming corporation; and the **SOCIETY OF OUR LADY OF THE MOST HOLY TRINITY**, a Texas corporation; and **NEW MOUNT CARMEL FOUNDATION, INC.**, a Wyoming corporation,<br><br>DEFENDANTS. | **Case No. 20-CV-215-S** |

### DEFENDANT DIOCESE OF CHEYENNE'S BRIEF IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendant Diocese of Cheyenne ("Diocese"), through its undersigned counsel, submits this brief in support of its motion to dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may granted.

### I.  INTRODUCTION

Plaintiffs' First Amended Complaint ("FAC") suffers from the same legal defects as their original Complaint. The Plaintiffs have wrongfully sued the Diocese of Cheyenne, a Wyoming non-profit corporation.[1] The Diocese had no affiliation with either of the two residential facilities for troubled youth, Triangle Cross Ranch, LLC or Trinity Teen Solutions, Inc. Furthermore, the Diocese has no indirect affiliation with either of these residential facilities through any of the other named Defendants. Simply put, the Diocese should not have been sued. While other Defendants have kindly stated Plaintiffs have "cast their nets far too wide,"[2] the Diocese again suggests that the Plaintiffs net was thrown over it with no factual or legal justification.

The scant allegations, presumably relied upon by Plaintiffs, in adding the Diocese as yet another of nineteen (19) Defendants are that the Diocese, and another defendant, "coordinated for the use of Plaintiffs' and the putative class members' labor to provide weekly cleaning and

---

[1] The Diocese is listed as one (1) of nineteen (19) named Defendants in the FAC. The Diocese is the legal entity that administers and oversees the many individual churches and schools of the Catholic Church in Wyoming. It serves thirty six, (36), parishes, and related mission churches, and six, (6), parochial schools throughout the State of Wyoming.

[2] See Document 73 at 14 of 16 and Document 92 at 2 of 19.

2

event set up services for local churches and other facilities owned by . . . Defendant Diocese of Cheyenne . . . ." (FAC, ¶ 66[3]). The remaining allegations directed against the Diocese are nothing more than legal conclusions parroting the statutory requirements of Plaintiffs' claims.

The Court should grant the Diocese's Motion to Dismiss First Amended Complaint because the FAC fails to plausibly state a claim for relief against the Diocese.

## II. PARTIES

### 1. Plaintiffs

Plaintiffs Carlie Sherman, Anna Gozun, Amanda Nash, Andrew Scavuzzo, and Ehan Jelenik are allegedly individuals living in various states other than Wyoming who were "confined" at Triangle Cross Ranch or Trinity Teen Solutions, Inc. while minors. (FAC, ¶¶ 24-29).

### 2. Triangle Owners

Plaintiffs allege that Defendants Gerald Schneider and Michaeleen Schenider (the "Triangle Owners") are the owners of Defendant Triangle Cross Ranch, Inc., a ranch located in northern Wyoming and southern Montana, sitting astride the border of the two states. (*Id*., ¶ 3). Plaintiffs allege the Triangle Owners founded Mount Carmel Youth Ranch ("Mount Carmel") which operated at the Triangle Cross Ranch, providing group home licensed services to troubled teens. (*Id*.). Plaintiffs allege the Mount Carmel board of directors closed the facility in 2012 and turned in their license, but thereafter the Triangle Owners continued to operate Mount Carmel without a license until enjoined by the Wyoming Supreme Court. (*Id*.). Plaintiffs further allege the Triangle Owners reopened the facility in 2018 and continued a pattern of systematic abuse and exploitation of delinquent teenage boys for their labor. (*Id*.).

---

[3] At ¶ 67 of the FAC, Plaintiff Sherman alleges she was forced to provide cleaning services at the Our Lady of the Valley Church in Clark, Wyoming.

### 3. Trinity Owners

Plaintiffs allege that Defendants Angela Woodward (daughter of Gerald Schneider) and Jerry Woodward (the "Trinity Owners"), under the direction of Gerald Schneider, in 2002 established a similar ranch in Park County, Wyoming for troubled teenage girls. (*Id*., ¶ 4). The facility is named Trinity Teen Solutions, Inc. ("Trinity Ranch") and, Plaintiffs allege, operates under the guise of a residential treatment center. (*Id*.). Plaintiffs allege the Trinity Owners and the Triangle Owners engaged in a recruitment scheme whereby they induced and continue to induce parents of troubled minors to pay substantial sums of money under the guise that their children would receive treatment, therapy and education. (*Id*.).

### 4. Monks of the Most Blessed Virgin Mary of Mount Carmel

Plaintiffs allege that Defendant Monks of the Most Blessed Virgin Mary of Mount Carmel d/b/a Mystic Monk Coffee ("Monks") is a Wyoming religious corporation which packages and sells coffee and accessories. (*Id*., ¶ 32). Plaintiffs allege Defendant Father Daniel Schneider ("Fr. Daniel Schneider") is the son of Defendant Gerald Schneider and is the President of the Monks. (*Id*., ¶ 37). Plaintiffs allege that Fr. Daniel Schneider solicited from his father Gerald Schneider teen labor from Triangle Cross Ranch to work at the Monk's monastery. (*Id*., ¶ 76).

### 5. Dally-Up, LLC

Plaintiffs allege Dally-Up LLC is a Wyoming limited liability company which owns the land upon which Trinity Teen Solutions operates. (*Id*., ¶ 44).

### 6. Rock Creek Ranch

Plaintiffs allege Rock Creek Ranch is a Delaware Corporation which operates a ranch adjacent to Trinity Teen Solutions. (*Id*., ¶ 45).

7.     Individual Defendants

In paragraphs 33 through 43 Plaintiffs identify several individual Defendants and allege these persons are associated variously with Triangle Cross Ranch and Trinity Teen Solutions. (*Id*., ¶¶ 33-43).

8.     Diocese of Cheyenne

Plaintiff alleges the Diocese is a Wyoming nonprofit corporation and a diocese of the Catholic Church. (*Id*., ¶ 46). The specific allegations against the Diocese, which are the subject of this motion, will be discussed below.

9.     Society of Our Lady of the Most Holy Trinity

Plaintiff alleges that Defendant Society of Our Lady of the Most Holy Trinity ("SOLT") is a Texas Corporation and a Catholic Religious Institute of Men. (*Id*., ¶ 47). Plaintiff alleges that SOLT operated ministries in and conducted activities through the Diocese of Cheyenne. (*Id*.).

10.    New Mount Carmel Foundation, Inc.

Plaintiff alleges New Mount Carmel Foundation, Inc. (Foundation) is a Wyoming nonprofit corporation located in Meeteese, Wyoming. (*Id*., ¶ 48). Plaintiff alleges the sole purpose of the Foundation is to support the Monk's monastery and therefore the alleged coerced child labor at the monastery benefitted the Foundation. (*Id*., fn. 11.).

## III.  **GENERAL ALLEGATIONS**

Plaintiffs assert a myriad of allegations against the Triangle Owners, the Trinity Owners and the individual Defendants associated with those entities. The allegations include that these Defendants deprived their minor residents of basic human necessities, forced their labor, fraudulently obtained child labor, engaged in a recruitment scheme and, in collaboration with a

transport agency, abducted minor children from throughout the United States for transport to their facilities to force their labor for the benefit of the Defendants. (*Id*., ¶¶ 50-58). Plaintiffs allege that they and the putative class members were forced into manual ranch labor, cooking meals and doing dishes, endured threats of food and sleep deprivation, physical punishment and emotional abuse. They allege they were forced to run up hills, denied medical treatment, deprived of sleep and adequate food, forced to care for livestock without adequate training, wear humiliating signs around their necks, forced to eat insects, and were denied heat, air and running water. (*Id*., ¶¶ 62-65, 117, 122, 135, 140).

Plaintiffs allege that they and the putative class members sustained damages, including the unlawful use of their labor, emotional distress, and post-traumatic stress disorder. Plaintiffs also assert a right to recover sums paid for their placement at Triangle Cross Ranch or Trinity Teen Solutions. (*Id*. ¶¶ 141-148).

## IV. **SPECIFIC ALLEGATIONS AGAINST DIOCESE**

The vast majority of the allegations in the FAC relate to parties other than the Diocese. The operative allegations regarding the Diocese are found in the following paragraphs in the FAC:

> 66. Defendant Owners coordinated for the use of Plaintiffs' and the putative class members' labor to provide weekly cleaning and event set up services for the local churches and facilities owned by both Defendants Diocese of Cheyenne and Defendant SOLT.
>
> 67. Specifically, *inter alia*, Plaintiff Sherman was forced to provide cleaning services at the Our Lady of the Valley Church located at 35 Road 1AFW in Clark, Wyoming.
>
> 68. Plaintiff Sherman was compelled to perform these services against her will and with the specific threat of punishment if she did not comply.
>
> 69. Plaintiff Sherman and numerous other putative class members performed these services with numerous other putative class members

throughout the duration of all her time under the control of Defendant TTS.

70. Plaintiff Gozun provided substantially similar services to those of Plaintiff Sherman.

71. Defendant Angela Woodward expressly confirmed in staff letters to Plaintiff Gozun's mother that Plaintiff Gozun provided cleaning services to the church.

72. Through its officers and/or agents, the Diocese of Cheyanne [sic] had direct knowledge of the fact that the putative class members were providing compulsory labor to the Diocese at the Our Lady of the Valley Church without compensation and without the choice not to do so. Plaintiff Sherman specifically avers that three separate priests and one deacon were aware of the facts set forth above.

73. Specifically, but without limitation, agents of the diocese known to Plaintiff Sherman as "Father Vaski," "Father Dennis," "Deacon Jerry," and a Nigerian priest whose name Plaintiff Sherman cannot recall but who will be identified in discovery each knew of every fact complained of herein that makes reference to Our Lady of the Valley Church or the Diocese. In the alternative, at a minimum, these agents were aware of the status of the putative class members as minors in the custody of a for-profit corporation, that they were not being compensated for their labor, and that the putative class members were subject to harsh punishments. On information and belief each of these individuals is an agent of the Diocese.

74. On information and belief, the priests are additionally culpable in that putative class members of the Catholic faith made confession to the priests and disclosed the circumstances of their captivity and abuse.

75. The Our Lady of the Valley Church specifically notes on its website that it is under the direction of Bishop Vernon Clark, the bishop of the Diocese of Cheyanne [sic], and, therefore, on information and belief, the Dioceses directly benefitted from Plaintiffs' and the putative class members' labor.

132. A non-exclusive list of examples of the labor Plaintiff Scavuzzo was forced to complete is as follows:
*** 

    (d)    Installation of Heating, Ventilation, and Air Conditioning unit at the Our Lady of the Valley Church to the financial benefit of the Diocese;

168. Defendants knowingly benefitted financially and/or received things of value from participating in a venture which had engaged in the

providing or obtaining of forced labor or services, knowing or in reckless disregard of the fact that the venture had engaged in the providing of or obtaining of forced labor or services in violation of 18 U.S.C. § 1589(b).

173. Defendants knowingly recruited, harbored, transported, provided, and/or obtained by any means Plaintiffs and members of the putative class for their labor or services in violation of 18 U.S.C. § 1590(a).

174. Defendants knowingly benefited financially and/or by receiving things of value from participating in a venture which engaged in the trafficking of forced labor by any of the means described herein, knowing or in reckless disregard of the fact that the venture was engaged in the trafficking of forced labor or services by any of such means.

201. Defendants TTS, Dally-up, SOLT, and the Diocese of Cheyenne owed Plaintiff Nash and the Subclass a duty of care and did breach that duty of care through the acts complained of herein.

## V. CAUSES OF ACTION ASSERTED AGAINST DIOCESE

Plaintiffs assert multiple causes of action, though not all of them are asserted against the Diocese. The three causes of action asserted against the Diocese are the following:

Count 2: Civil Action Under Federal Law for Forced Labor, 18 U.S.C. § 1589(b)

Count 3: Civil Action Under Federal Law for Trafficking, 18 U.S.C. § 1590(a)

Count 5: Negligence and Negligent Infliction of Emotional Distress

As will be shown, the Diocese is entitled to dismissal of each of these claims for failure to state a claim upon which relief may be granted.

## VI. ARGUMENT: THE DIOCESE IS ENTITLED TO DISMISSAL OF ALL CLAIMS AGAINST IT AND DISMISSAL FROM THIS SUIT

### A. Legal Standard for Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that a party may respond to a complaint by a motion for failure to state a claim upon which relief may be granted. At the pleadings stage, the court accepts as true the well-pleaded factual allegations, then determines if the plaintiff has provided sufficient facts to state a claim that is plausible on its face. *Hogan*

8

*v. Winder*, 762 F.3d 1096 (10th Cir. 2014).  The United States Supreme Court has addressed the pleading requirements to withstand a motion to dismiss under Rule 12(b)(6).  A complaint does not need detailed factual allegations, but requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action is insufficient.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955; 167 L.Ed.2d 929 (2007).  Courts are not required to accept as true legal conclusions couched as factual allegations.  *Id*.

The Supreme Court, in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009), elaborated upon the pleading requirements under Rule 8 to withstand a motion to dismiss:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citing *Twombly,* at 570, 127 S.Ct. 1955]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.,* at 557, 127 S.Ct. 1955 (brackets omitted).
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.,* at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we \*\*1950 "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.,* at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157–158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft*, 556 U.S. at 678–79, 129 S.Ct. at 1949–50.

One purpose of the requirement to show entitlement to relief at the pleading stage is to avoid unnecessary expense and time in the absence of a sufficient claim. As stated by the Supreme Court in *Twombly*:

> We alluded to the practical significance of the Rule 8 entitlement requirement in *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), when we explained that something beyond the mere possibility of loss causation must be *558 alleged, lest a plaintiff with " 'a largely groundless claim' " be allowed to " 'take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.' " *Id.,* at 347, 125 S.Ct. 1627 (quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 741, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975)). So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, " 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.' " 5 Wright & Miller § 1216, at 233–234 (quoting *Daves v. Hawaiian Dredging Co.,* 114 F.Supp. 643, 645 (D.Hawai *1953))*; *see also* Dura, supra, *at 346, 125 S.Ct. 1627;* Asahi Glass Co. v. Pentech Pharmaceuticals, Inc*., 289 F.Supp.2d 986, 995 (N.D.Ill.2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase"*).

*Twombly*, 550 U.S. at 557–58.

### B. Plaintiffs' Claim Against the Diocese Under 18 U.S.C. § 1589(b) Fails to State a Claim Upon Which Relief May Be Granted

1. Statutory Provision

In Count 2 of their Complaint, Plaintiffs allege the Diocese is liable to them under 18 U.S.C. § 1589(b) of the Trafficking Victims Protection Reauthorization Act ("TVPRA").

18 U.S.C. § 1589 provides, in pertinent part:

(a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,

shall be punished as provided under subsection (d).

(b) Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).

Section 1595 of the Act provides a civil remedy for violation of the criminal provisions of the Act, providing in pertinent part:

(a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

2. The Purpose of the TVPRA

Congress enacted the forced labor provisions of § 1589 "as part of the Trafficking Victims Protection Act of 2000, a subset of the Victims of Trafficking and Violence Protection Act of 2000, Pub L. No. 106-386, 114 Stat. 1464 (2000)." *U.S. v. Kaufman*, 546 F.3d 1242, 1261 (10th Cir. 2008). "The stated purpose of the Trafficking Victims Protection Act is to 'combat trafficking in persons, a contemporary manifestation of slavery whose victims are

11

predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims.'" *Id.* (*quoting* 22 U.S.C. § 7101(a)); *see also Headley v. Church of Scientology International*, 687 F.3d 1173, 1181 (9th Cir. 2012) (describing the TVPA as "a state enacted 'to combat' the 'transnational crime' of 'trafficking in persons' – particularly defenseless, vulnerable immigrant women and children.") (*citing* 22 U.S.C. 7101(a), (b)24; *see id.* § 7101(b)(1), (2), (4), (17), (22)).

"Section 1589 was 'passed to implement the Thirteenth Amendment against slavery or involuntary servitude.'" *Muchira v. Al-Rawaf*, 850 F.3d 605, 617 (4th Cir. 2017) (*quoting United States v. Toviave*, 761 F.3d 623, 629 (6th Cir. 2014)). "Section 1589 is 'intended to address *serious* trafficking, or cases where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence.'" *Id.* at 618 (emphasis in original) (*quoting United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011)). "Typically, therefore, 'forced labor' situations involve circumstances such as squalid or otherwise intolerable living conditions, extreme isolation (from family and the outside world), threats of inflicting harm upon the victim or others (including threats of legal process such as arrest or deportation), and exploitation of the victim's lack of education and familiarity with the English language, all of which are 'used to prevent [vulnerable] victims from leaving and to keep them bound to their captors.'" *Id.* at 618-19 (*quoting United States v. Callahan*, 801 F.3d 606, 619 (6th Cir. 2015)).

The typical volunteer work of "weekly cleaning and set up services" for a church, upon which Plaintiffs' claims against the Diocese rest, lies outside of the types of horrific labor and forced working conditions that the TVPRA typically regulates.

      2.      <u>Plaintiffs' Allegations Fail to State a Claim for Violation of § 1589(b)</u>

One can violate § 1589 either as a primary offender (here, allegedly the Triangle Owners and Trinity Owners) or by benefitting financially from participation in a "venture" with the primary offender or offenders. *Bistline v. Parker*, 918 F.3d 849, 871 (10th Cir. 2019). In the instant case, the Diocese's liability is alleged to arise under subsection (b) from benefitting financially from participation in a venture that engaged in providing or obtaining forced labor or services. (Complaint, ¶ 168). To avoid dismissal of their § 1589(b) claim against the Diocese, Plaintiffs must plausibly allege that they provided labor or services that were procured by a method that is prohibited under the TVPRA *and* that the Diocese *knowingly* benefitted from participating in this venture. *Bistline*, at 871.

In *Bristline*, the Tenth Circuit noted that the term "venture" has not been defined in the context of § 1589(b). *Id*. at 873. The Court, however, agreed with a decision from the First Circuit which applied the definition of "venture" from subsection § 1591(e)(6) of the TVPRA to the forced labor context. *Bistline*, at 873-874, citing *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017). Section 1591(e)(6) defines "venture" as "any group of two or more individuals associated in fact, whether or not a legal entity." Section 1591(e)(4) defines "participation in a venture" as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)."

Here, Plaintiffs attempt to hold the Diocese liable because, allegedly, a minor portion of the labor they performed during their time at TCR and TTS involved assisting with the occasional set up and cleaning of a church owned by the Diocese. Plaintiffs' allegations of a venture involving the Diocese with the primary offenders (the Owners) is simply a conclusory parroting of the statutory language; i.e., that the Diocese "knowingly benefitted financially and/or received things of value from participating in a venture which had engaged in the providing or obtaining of forced labor or services in violation of 18 U.S.C. § 1589(b)."

(Complaint, ¶ 168). The Complaint contains no well-pleaded factual allegations supporting the conclusory assertions that the Diocese knowingly benefitted financially or otherwise or that it was involved in a venture with the Owners.

Notably, the FAC contains no well-pleaded allegations that the Diocese was associated in any manner with the TCR, TTS, or the Owners. Rather, the FAC simply alleges that a church owned by the Diocese was the site of "weekly cleaning and set up services" provided by Plaintiffs. (FAC, ¶ 66). The FAC alleges that the Owners coordinated (with whom it is not stated) for the use of Plaintiffs to provide such services at facilities. (*Id.*). There are, quite simply, no allegations that the Diocese has any affiliation with the Defendants who allegedly obtained the forced labor in violation of § 1589(b). As discussed, Plaintiffs must plausibly allege that they provided labor or services that were procured by a method that is prohibited under the TVPRA *and* that the Diocese knowingly benefitted from participating in this venture. *Bistline*, at 871. Plaintiffs' FAC fails short of this requirement.

Plaintiffs' attempt to cure the defects of their original Complaint by pleading conclusory allegations regarding the Diocese's alleged knowledge of the TCR or TTS Owners' conduct. For example, Plaintiffs allege "Diocese of Cheyanne [sic] had direct knowledge of the fact that the putative class members were providing compulsory labor to the Diocese at the Our Lady of the Valley Church without compensation and without the choice not to do so." (FAC, ¶ 72). Plaintiffs further allege that three priests and a deacon "were aware of the status of the putative class members as minors in the custody of a for-profit corporation, that they were not being compensated for their labor, and that the putative class members were subject to harsh punishments." (*Id.*, ¶ 73). The FAC also alleges that "[o]n information and belief" these priests were culpable because undefined "putative class members . . . made confession to the priests

14

and disclosed the circumstances of their captivity and abuse." (*Id*., ¶ 74).

Plaintiffs do not allege that the Diocese had any knowledge that the TCR or TTS Owners were allegedly trafficking and abusing minors or exploiting the minors for forced labor or in any way condoned or knowingly assisted or supported such alleged conduct. Significantly, the aforementioned allegations fail to set forth any factual matter regarding who reported this alleged information to members of the Diocese, when such information was supposedly reported, and what information was allegedly reported. A pleading "that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do" and a complaint will not suffice "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

Plaintiffs' deficient pleading of a claim against the Diocese under § 1589(b) in this case is in contrast to pleadings found to be sufficient in the *Bistline* and *Ricchio* cases. In *Bistline*, former members of a church which illegally practiced polygamy sued the church leader, the church's law firm and one of the law firm's partners alleging, *inter alia*, that the lawyers created a legal framework which shielded the church leader from the legal ramifications of child rape and forced labor. *Bistline*, 918 F.3d at 874-875. The plaintiffs in *Bistline* alleged in great detail how the law firm and its partner financially benefitted from setting up an intricate scheme for the church leader that enabled forced labor and allowed the threats which enforced the labor to be effective. *Id*. at 874. The plaintiffs alleged the church leader retained the law firm for the purpose of developing a scheme to cloak forced labor and the rape of young girls with the trappings of legal acceptance and that a large part of the law firm's work in this scheme was undertaken to provide the firm and its partner peace of mind that their fees would be paid. *Id*. at 875. The Court stated:

15

> In this case, plaintiffs allege facts supporting their claims that defendants were well aware of the crimes being committed against plaintiffs, did nothing to expose these atrocities, tacitly approved of the conduct by constructing a scheme for the purpose of enabling it, and benefited for years from plaintiffs' payments of a considerable amount of attorney fees. These combined allegations create a reasonable inference that defendants were participating in a venture with Mr. Jeffs which involved forced labor and services.

*Bistline* at 876. The Tenth Circuit concluded that the plaintiffs had sufficiently pleaded that the defendants benefitted financially from participation in a venture illegal under § 1589 of the TVPRA. *Id*. at 876.

The *Ricchio* case involved a claim against defendants who owned and operated a motel. The plaintiff alleged the defendants knowingly associated with a motel guest (pimp) who held the plaintiff against her will and obtained forced sexual labor or services from the plaintiff as a prostitute. *Ricchio*, 853 P.3d at 555. The plaintiff alleged the pimp had a prior relationship with the defendants and one of the defendants expressed enthusiasm for getting their venture going again and that the pimp's abusive treatment of the plaintiff had become apparent to the defendants. *Id*. The plaintiff further alleged that one of the defendants ignored the plaintiff's plea for help in escaping from the pimp and showed indifference to the plaintiff's deteriorated physical condition. *Id*. The plaintiff alleged the defendants would have seen the pimp grab her and force her back in the motel room when she attempted to escape. *Id*. The First Circuit determined these allegations plausibly stated a claim that the defendants understood the pimp was forcing sex in the motel room and that, in receiving money for letting the room, they were associating with the pimp in a venture in which they knowingly received something of value under § 1589(b) and § 1595(a). *Id*. at 555-556.

In the instant case, unlike *Bistline* and *Ricchio*, there are no factual allegations supporting the conclusory assertion that Defendants knowingly benefitted financially and/or

16

received things of value from participating in a venture which had engaged in the providing or obtaining of forced labor or services in violation of 18 U.S.C. § 1589(b). Plaintiffs provide no well-pleaded factual allegations that the Diocese was either affiliated with or participated in a venture with the Owners. Further, the FAC does not contain any well-pleaded allegations regarding the Diocese's knowledge of the Owners' alleged conduct. Rather, the FAC sets forth conclusory allegations concerning the Diocese's purported knowledge without setting forth any factual matter regarding who reported any alleged abuse to members of the Diocese, when such information was supposedly reported, and what specific information was allegedly reported. *See* (FAC., ¶¶ 72-74).

There are no well-pleaded allegations that the Diocese was aware of the conduct alleged in the litany of allegations set forth against TTS, TCR, and the Owners. The FAC is devoid of well-pleaded allegations that the Diocese was aware of the alleged recruitment scheme implemented by the Owners or the specifics of the alleged treatment of the putative class during their time at TTS or TCR. Accordingly, Plaintiffs pleadings against the Diocese fail to plausibly state a claim against the Diocese. The Diocese is entitled, under the precepts of *Twombly*, 550 U.S. 544 and *Ashcroft*, 556 U.S. 662, to dismissal of Plaintiffs' claim under § 1589(b) for failure to state a claim upon which relief may be granted.

### C. Plaintiffs' Claim Against the Diocese Under 18 U.S.C. § 1590(a) Fails to State a Claim Upon Which Relief May Be Granted

Count 3 of Plaintiffs' Complaint purports to assert a claim against the Diocese pursuant to § 1590(a) of the TVPRA. The analysis of Plaintiffs claim against the Diocese under § 1590(a) is similar to that under § 1589(b).

Section 1590(a) provides, in pertinent part:

17

> (a) Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both.

Plaintiffs' allegations against the Diocese pursuant to §1590(a) are nothing more than conclusory recitals of the statutory language found in § 1590(a) and § 1589(b). Plaintiffs allege in Count 3:

> Defendants knowingly recruited, harbored, transported, provided, and/or obtained by any means Plaintiffs and member of the putative class for their labor or services in violation of 18 U.S.C. § 1590(a). (FAC, ¶ 173)

> Defendants knowingly benefited financially and/or by receiving things of value from participating in a venture which engaged in the trafficking of forced labor by any of the means described herein, knowing or in reckless disregard of the fact that the venture was engaged in the trafficking of forced labor or services by any of such means. [re-alleging the venture provision found in Section 1589(b)]  (FAC, ¶ 174).

As discussed in more detail above, Plaintiffs make no factual allegations supporting these conclusory allegations as to the Diocese.  A complaint does not suffice if it simply tenders naked assertions devoid of further factual enhancement. *Ashcroft*, 556 U.S. at 678. (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citations omitted).

The factual allegations in the Complaint regarding recruiting, harboring, transporting, providing or obtaining labor are all made against the "Owners;" i.e., TCR and TTR and their respective owners. *See* FAC, ¶¶ 3-10, 57-58.  No such allegations are made against the Diocese. As set forth in the preceding section of this brief, the Complaint contains no factual allegations supporting the conclusory assertions that the Diocese knowingly benefitted financially or otherwise or that it was involved in a venture with the Owners.

Plaintiffs pleadings against the Diocese in Count 3 fail to plausibly state a claim against the Diocese under 18 U.S.C. 1590(a). The Diocese is entitled to dismissal of Plaintiffs' claim

18

premised on Section 1590(a) for failure to state a claim upon which relief may be granted. *Ashcroft*, 556 U.S. at 678; Fed. R. Civ. P. 12(b)(6).

### D. **Plaintiffs' Claims Against the Diocese for Negligence and Negligent Infliction of Emotional Distress Fails to State a Claim Upon Which Relief May Be Granted**

Count 5 of Plaintiffs' FAC asserts claims of negligence and negligent infliction of emotional distress against Defendants TTS, Dally-up, SOLT and the Diocese. It appears that the claim of negligent infliction of emotional distress is alleged only against Defendant TTS. (FAC, ¶ 202). Further, it appears the claims in Count 5 are brought only by Plaintiff Nash and a subclass of putative Plaintiffs who were housed at TTS and have been diagnosed with Post-Traumatic Stress Disorder. (FAC, ¶¶ 150 and 201).

As against the Diocese, Plaintiffs allege that the Diocese owed Nash and the Subclass a duty of care and breached that duty of care "through acts complained of herein." (FAC, ¶ 201). The FAC does not identify what duty of care the Diocese allegedly owed Nash or the Subclass nor any acts or omissions of the Diocese allegedly breaching the unidentified duty of care. The allegations against the Diocese are nothing "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" which is insufficient under Rule 8. *Ashcroft*, 556 U.S. at 678, 129 S.Ct. 1937.

Moreover, to the extent the allegations in Count 5 of negligent infliction of emotional distress are made against the Diocese, Plaintiffs fail to correctly allege the necessary elements of such a claim. Wyoming recognizes a claim for negligent infliction of emotional distress in limited circumstances. Such a claim may only be brought by a close family member of a victim who observes the infliction of serious bodily injury or death, or its immediate aftermath without material change to the condition of the victim. *Gates v. Richardson*, 719 P.2d 193, 200-201

(Wyo. 1986); *Hendricks v. Hurley*, 184 P.3d 680, 686 (Wyo. 2008).  Plaintiffs make no such allegations against the Diocese, or anyone.

Count 5 of Plaintiffs' FAC fails to state a claim that is plausible on its face against the Diocese. The Diocese is entitled to dismissal of Plaintiffs' claims of negligence and negligent infliction of emotional distress. *Ashcroft*, 556 U.S. at 678; Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

Plaintiffs, in Counts 2, 3 and 5 of their FAC, assert three causes of action against Defendant Diocese. As shown herein, Plaintiffs' claims against the Diocese allege only conclusions or naked recitations of the elements of such claims.  Plaintiffs fail to allege facts supporting plausible claims against the Diocese as required by *Twombly*, 550 U.S. 544 and *Ashcroft*, 556 U.S. 662.  Hence, the Diocese should not be exposed to the inevitably expensive and protracted discovery phase of this litigation.  The Diocese is entitled to dismissal of all claims against it for failure to state a claim upon which relief may be granted.

DATED this 26th day of March, 2021.

      /s/  Paul J. Hickey
Paul J. Hickey, WSB No. 5-1431
Loyd E. Smith, WSB No. 5-2509
Hickey & Evans, LLP
1800 Carey Avenue, Suite 700
P.O. Box 467
Cheyenne, WY  82003-0467
Phone:  (307) 634-1525
Fax:  (307) 638-7335
Email:  phickey@hickeyevans.com
Email:  lsmith@hickeyevans.com
*Attorneys for Defendant Diocese of Cheyenne*