Monty L. Barnett, #6-2694
Rachel E. Ryckman, #7-4656
Keith R. Olivera *(Pro Hac Vice)*
John C. Matthews (*Pro Hac Vice*)
White and Steele, P.C.
Dominion Towers, North Tower
600 17th Street, Suite 600N
Denver, CO  80202-5406
(303) 296-2828
mbarnett@wsteele.com
rryckman@wsteele.com
kolivera@wsteele.com
jmatthews@wsteele.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **CARLIE SHERMAN, ANNA GOZUN, AMANDA NASH**, **ANDREW SCAVUZZO,** and **ETHAN JELINEK** on behalf of themselves and all similarly situated persons,<br><br>PLAINTIFFS,<br><br>v.<br><br>**TRINITY TEEN SOLUTIONS, INC.,** a Wyoming corporation; **TRIANGLE CROSS RANCH, LLC**, a Wyoming limited liability corporation; **MONKS OF THE MOST BLESSED VIRGIN MARY OF MOUNT CARMEL, d/b/a MYSTIC MONK COFFEE,** a Wyoming corporation; **GERALD E. SCHNEIDER**; **MICHAELEEN P. SCHNEIDER**; **ANGELA C. WOODWARD**; **JERRY D. WOODWARD**; **DANIEL SCHNEIDER; MATHEW SCHNEIDER; MARK SCHNEIDER; KARA WOODWARD**; **KYLE WOODWARD; THOMAS GEORGE; JUDITH D. JEFFERIS**; **DALLY-UP, LLC**, a Wyoming limited liability corporation; **ROCK CREEK RANCH, INC.,** a Delaware corporation; **DIOCESE OF CHEYENNE**, a Wyoming corporation; and the **SOCIETY OF OUR LADY OF THE MOST HOLY TRINITY**, a Texas corporation; and **NEW MOUNT CARMEL FOUNDATION, INC.**, a Wyoming corporation,<br><br>DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Case No. 20-CV-00215-SWS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

_____

**BRIEF IN SUPPORT OF DEFENDANTS TRIANGLE CROSS RANCH, LLC, GERALD E. SCHNEIDER, MICHAELEEN P. SCHNEIDER, MATTHEW SCHNEIDER, MARK SCHNEIDER, AND THOMAS GEORGE'S MOTION TO DISMISS AMENDED COMPLAINT**
_____

## I.   INTRODUCTION

Triangle Cross Ranch, LLC ("TCR") is a therapeutic boarding program in northwest Wyoming that helps at-risk teenage males address personal and behavioral issues through a combination of counseling, education, and ranch life.  Participants in the program are enrolled with the consent of their parents or guardians who have full knowledge about the rigors of the program and the types of ranch chores that their children will need to perform as part of their treatment. Over the years, several hundreds - if not thousands - of young men have participated in TCR's programs with nearly universally positive experiences.  Even after leaving TCR, many former residents remain in contact with TCR's owners and staff and some have even returned to work as ranch hands or to care for TCR's owners.

This action was filed by two disgruntled male residents who, combined, stayed at TCR for less than one year nearly a decade ago.  Plaintiff Jelinek – who refused to attach his name to his salacious allegations until compelled by this Court's order - was a resident at TCR between mid-May 2011 and December 20, 2011.  Plaintiff Scavuzzo[1] – who was first added as a party in the Amended Complaint – spent less than three months at TCR between April 2012 and July 2012. There is not a single plaintiff who has attended TCR at any time from August 2012 to present.

_____

[1] Collectively, Plaintiffs Jelinek and Scavuzzo are referred to as the "Male Plaintiffs."  All five named Plaintiffs are collectively referred to as "Plaintiffs."

1

In the Complaint, the Male Plaintiffs alleged that nearly a decade ago, they were forced to complete ranch chores as part of the treatment program – such as caring for livestock, repairing equipment, and assisting with the construction of buildings and irrigation systems - and if they did not complete those chores, they might be subject to discipline.  They also contend that they lived in conditions that lacked some of the creature comforts likely found in their daily life – such as plush mattresses, eight hours of nightly sleep, and their favorite meals.

In total, the allegations raised by the Male Plaintiffs do not suggest that anything untoward happened at TCR and certainly do not rise to the level of conduct that could support a claim of forced labor or organized corruption.  At most, the Male Plaintiffs' allegation suggest that they may not have been the best fits for TCR's treatment program or any program that required their active participation in their recovery.

In this putative class action, Plaintiffs assert four causes of action against Defendants Triangle Cross Ranch, LLC, Gerald E. Schneider, Michaeleen P. Schneider, Matthew Schneider, Mark Schneider, and Thomas George (collectively, the "TCR Defendants"): Count 1 -  a claim under 18 U.S.C. §1589(a) for allegedly obtaining the labor services of Plaintiffs by means of harm or threats of harm; Count 2 - a claim under 18 U.S.C. §1589(b) for allegedly receiving a known benefit from forced labor; Count 3 - a claim under 18 U.S.C. § 1590(a) for alleged trafficking (collectively, the "Labor Claims"); and Count 4 - a claim under 18 U.S.C. § 1961 for alleged participation in an enterprise through a pattern of racketeering activity (the RICO claim) Doc. 106, Counts 1-4.[2]  Each cause of action suffers from fatal deficiencies and is insufficient to survive dismissal.

---

[2]  Count 1 – Civil Action Under Federal Law for Forced Labor 18 U.S.C. § 1589(a) is not asserted against Defendant Thomas George.  Doc. 106 at 159-165.

With respect to the RICO claim, Plaintiffs seek redress for conduct that occurred in 2011 and 2012, despite not filing this action until November 2020.  Accordingly, that claim is barred by RICO's four-year statute of limitations.  Plaintiffs also lack standing to pursue a RICO claim against the TCR Defendants because they are not seeking recovery for any alleged harm to business or property – which is required under the RICO statute.  Finally, Plaintiffs have not set forth the basic elements of a RICO claim because the allegations that isolated misconduct occurred in two brief periods of time nearly a decade ago cannot support a finding of a pattern of racketeering injury, and the alleged predicate acts (the Labor Claims) are not supported by the allegations of the Complaint.

Plaintiffs' Labor Claims also suffer from multiple, fatal defects.  First, the conduct underlying Plaintiffs' claims – performing chores as part of a treatment program – is not the type of conduct prohibited under the referenced forced labor statutes.  Second, even if the conduct might have been prohibited under those statutes, the Plaintiffs consented to the conduct at issue and thus it is not actionable.  Additionally, Plaintiffs have not – because they cannot – allege that the TCR Defendants engaged in knowing conduct, which is required for pleading a viable claim.

In total, Plaintiffs seek redress for purely lawful conduct and their attempts to assert that such conduct violates RICO or federal forced labor and trafficking statutes fail as a matter of law.  As such, the Plaintiffs' claims should be dismissed in their entirety and with prejudice.

## II.    STATEMENT OF FACTS

For many years, TCR has offered a place for parents to send their teenage sons with severe issues such as histories of alcohol and drug abuse for intense, but beneficial treatment programs.  *See* Doc. 106 at 3.  As part of that program, in addition to counseling, treatment, and education, the boys participated in daily ranch chores such as feeding, grooming, and caring for the livestock

(including the less desirable task of shoveling manure), and maintaining equipment and buildings.  *See* Doc. 106 at 49.  If a resident of TCR refused to perform the chores, he might be required to perform additional chores or otherwise be subject to discipline.  *See* Doc. 106 at 91.

Residents were brought to TCR by their parents or guardians and the parents and guardians consented to their sons' attendance by paying thousands of dollars in monthly fees to TCR.  *See* Doc. 106 at 97.  In some instances, likely because of the difficulty of bringing a troubled teen to a place where they could get the help they needed, the parents may have used a third-party to bring the teenagers to TCR.  *See* Doc. 106 at 87 fn. 33.  While they were residents of TCR, the teenagers were able to communicate with their parents by letters and telephone calls.  *See* Doc. 106 at 17. While TCR required the residents to complete a certain level of growth in order to finish the program, the parents of those residents could withdraw their teenager at any time and stop paying the monthly fees to TCR.  *See generally* Doc. 106 at 56.

TCR offered two levels of housing for its residents.  *See* Doc. 106 at 91.  When a resident first arrived at TCR, they would live in the "Wilderness Level" structure which was an outdoor building that housed multiple residents in a camp-like setting.  *See* Doc. 106 at 16.  While the structure did not afford all of the creature comforts found in a luxury day spa, it did provide a place for residents to sleep, store their belongings and interact with other residents.  *Id.*  After a period of time, when the residents had adjusted to the ranch and its daily routine, they could progress to Bunkhouse Level.  *Id.*  In that level, the residents would acquire more options for food and clothing, and experience more comfortable living conditions.  *Id.*

Only the two Male Plaintiffs stayed at TCR.  Jelinek stayed at TCR for a period of seven months between May and December 2011.  *See* Doc. 106 at 87.  Scavuzzo stayed at TCR for a period of three months between April and July 2012.  Doc. 106 at 131.  In the Complaint, the Male

Plaintiffs allege that they completed standard chores necessary for the operation of the ranch and, if they refused to participate in those chores, claim that they might suffer repercussions such as being forced to perform additional chores, completing an undesirable task such as eating bugs, or being subject to discipline or restrictions on privileges.  *See* Doc. 106 at 88.  The Male Plaintiffs also contend that they could have been subjected to physical, verbal, psychological, and emotional abuse if they did not complete those chores but they failed to set forth a single definitive fact indicating that such abuse actually occurred.  *See* Doc. 106 at 87-90.[3]

Based on those allegations, Jelinek and Scavuzzo (and the other Plaintiffs) assert claims for purported violations of certain forced labor statutes (counts 1,2, and 3) and a civil RICO claim (count 4).  *See generally* Doc. 106 at 177-182.  Plaintiffs seek damages for alleged bodily injury and related medical costs, lost wages and purported losses of future earnings, and unspecified economic damages.  Neither Male Plaintiff makes any colorable allegation that he suffered an injury to business or property.  *See* Doc. 106 at 142-145.

Certain of Plaintiffs' allegations reference Trinity Teen Solutions, Inc. ("TTS"), which operated a treatment facility for teenage girls that is wholly distinct from the TCR.  *See* Doc. 106 at 3-4.  Indeed, the TCR defendants are not alleged to be owners, officers, or directors of TTS.  Further, TTS and the TCR cater to entirely different clientele.  *Id.*  While TCR only accepts males as residents, TTS provides its services exclusively to female residents.  *Id.*

---

[3] Scavuzzo contends that he was "branded" by two unidentified staff members as part of an initiation required to reach adult-level at TCR.  As a threshold matter, Scavuzzo does not claim that the alleged branding was done to induce him to perform chores or as a punishment for not completing chores and thus it is irrelevant to the Forced Labor claims.  Moreover, Scavuzzo provides no details in the Complaint to support his contention that the branding was conducted by TCR as opposed to something he did himself in an attempt to impress his fellow campers and without any involvement of TCR employees.

### III.  LEGAL STANDARD

F.R.C.P. 8(a)(2) requires that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Rule 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted.  A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675.   Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680; *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) citing to *Cory v. Allstate Ins.,* 583 F.3d 1240, 1244 (10th Cir. 2009).  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Iqba*l, 556 U.S. at 680.  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.   A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  *Id.*  "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (italics in original).

### IV.  PLAINTIFFS' RICO CLAIM (COUNT 4) FAILS AS A MATTER OF LAW

Plaintiffs allege that the Defendants violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et. seq ("RICO").  Doc. 106 at 176-199.  However, Plaintiffs' RICO claim has multiple fatal defects.  In order to state a RICO claim, Plaintiffs must bring their claim within four years from the date their injury occurred and allege four factors: the defendants "(1) conduct[ed the affairs] (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Robbins v. Wilkie*, 300 F. 3d 1208, 1210 (10th Cir. 2002) (internal citations omitted).  Further, to have standing to bring a RICO claim, the Plaintiffs must allege that they suffered an injury to business or property.  *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) citing 18 U.S.C. § 1964(c).  Here, Plaintiffs have failed on all accounts.

As a threshold matter, Plaintiffs have brought their claim more than eight years after any Male Plaintiff stayed at the ranch and four years after the statute of limitations expired.  Further, Plaintiffs have alleged injuries that are insufficient to confer standing under the RICO statute because they allege only damages arising from personal injury, lost wages, and unspecified economic harm as their damages.  Finally, Plaintiffs cannot set forth the fundamental elements of a RICO claim because they have not alleged continuous conduct or a viable predicate act.  Each of these deficiencies is fatal to Plaintiffs' RICO Claim and warrants dismissal of that cause of action.

### a. Plaintiffs' RICO Claim is Time-Barred

Plaintiffs' RICO claim against the TCR Defendants is barred by RICO's four-year statute of limitations.  While the RICO statute itself does not contain an express limitations period, the Supreme Court in *Agency Holding Corp. v. Malley-Drift Assoc., Inc.*, 483 U.S. 143, 156 (1987) confirmed that a four-year statute of limitations period applies to all civil RICO actions.  The Tenth Circuit has repeatedly applied this four-year statute of limitations to RICO matters.  *See e.g.,*

*Robert L. Kroenlein Trust v. Kirchhefer*, 764 F.3d 1268, 1279 (10th Cir. 2014); *Bath v. Bushkin, Gaims, Gaines & Jonas*, 913 F.2d 817, 820, (10th Cir. 1990); *Schrag v. Dinges*, 73 F.3d 374 (10th Cir. 1995) (internal citations omitted).

Here, Plaintiffs have offered a series of allegations in support of their RICO claim against TCR premised on the treatment of the Male Plaintiffs while they were residents of the ranch.  In addition to failing to meet the factual and legal requirements necessary to state a RICO claim, those allegations also are untimely.  With respect to Jelinek, Plaintiffs have alleged that he was a resident of TCR from "mid May 2011" through "December 20, 2011."  *See* Doc. 106 at 87.  The Complaint also confirms that "Jelinek was [only] a resident at TCR on one occasion."  *See* Doc. 106 at 87.  With respect to Scavuzzo, Plaintiffs allege that he "was a resident at TCR from April 8, 2012 until July 4, 2012."  *See* Doc. 106 at 131.  Thus, Plaintiffs' claims against TCR accrued no later than July 4, 2012, the day Scavuzzo left TCR.  However, Plaintiffs filed the instant action on November 25, 2020.  As such, it was filed more than eight years after the RICO claim accrued in 2012 and thus is barred by the applicable four-year statute of limitations.[4]

In an attempt to avoid RICO's four-year statute of limitations (as well as to expand the scope of their claims), Plaintiffs attempt to define the RICO enterprise to include all of the named Defendants.   However, even the most cursory review of the Complaint confirms that Plaintiffs have not alleged a single fact connecting the TCR Defendants[5] to any of the events that allegedly

---

[4] Following the Supreme Court's rejection of the "injury and pattern discovery rule" in *Rotella v. Wood*, 528 U.S. 549, 555 (2000), the Tenth Circuit has not confirmed whether it follows the injury-discovery rule or the injury-occurrence rule.  Under the prevailing theory, the injury-discovery rule, the claims would have accrued when the Male Plaintiffs were residents of TCR and discovered their injuries.  *See Robert L. Kroenlien Tr. Ex rel. Alden v. Kirchefer*, 764 F.3d 1268, 1275 (10th Cir. 2014).   Under the injury-occurrence rule, the claims would have accrued when the Male Plaintiffs' injuries occurred, which also would have been during their time at the ranch.  *See Id.*  Thus, regardless of what theory applied, the claims would be time-barred.

[5] The TCR Defendants do not concede that they are an "enterprise" for purposes of the RICO analysis.  Rather, the TCR Defendants assert that Plaintiffs could not claim that any of the TCR Defendants could be part of an enterprise that includes any of the Defendants that owned or operated TTS.

transpired at TTS.  Instead, Plaintiffs have offered a series of vague assertions that only confirm the failure of their contention.  Specifically, Plaintiffs have alleged that "[u]pon information and belief, Defendant Jerry Schneider had his daughter… set up a similar ranch for troubled teenage girls."  Doc. 106 at 4.  Plaintiffs further contend that "Defendant Gerald Schneider and Defendant Angela Woodward developed a joint scheme of operating for-profit businesses" and "Defendants Angela Woodward and Jerry Woodard (sic) established TTS… following in Gerald Schneider's footsteps."  Doc. 106 at 52-53.  Put simply, these allegations cannot support a contention that any purported RICO enterprise could include both TTS and the TCR Defendants.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (recognizing that when considering a motion to dismiss, a Court does not need to accept unsupported conclusory allegations as true).

Plaintiffs also seek to unite all of the Defendants by claiming that both the TCR Defendants and TTS Defendants made contributions to the same non-profit foundation, Defendant New Mount Carmel Foundation, Inc. (the "Foundation").  Plaintiffs couch all such allegations as "on information and belief" without reference to any specific payment by any of the TCR Defendants.  However, even if true, the fact that two distinct groups of people – the TCR Defendants and the TTS Defendants – may have contributed to the same charitable cause does not rise to an allegation of concerted action.  Further, as fully articulated in the TTS Defendants' brief, Plaintiffs' allegations that TCR (or TTS) provided a substantial portion of the funding to the Foundation fails when the fees alleged collected by TCR ($1.66M yearly before any expenses) are compared to the total amount of the Foundation's assets ($29.4 M).  Doc 106 at 3, n.1, 93, 144.

Under the RICO statute, an enterprise is defined as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  When interpreting that statute, Courts have

found that an association-in-fact enterprise must have three structural features: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit those associated to pursue the enterprise's purpose.  *Boyle v. United States*, 556 U.S. 938, 946 (2009).  In *Boyle*, for example, the Court found that a group of individuals who robbed over thirty night deposit boxes over the course of several years was an enterprise in fact, because they planned the robberies in advance, worked together to gather the necessary tools, and divvied up the proceeds.  *See Id. at 952*.  The Court recognized that there would not have been an association in fact enterprise if the individuals had acted "independently and without coordination." *Id.* at 94-97 fn. 4.  Thus, when there is merely parallel conduct by alleged tortfeasors, without coordination, there is not a cohesive enterprise.  *See e.g., Rao v. BP Prods. N. Am. Inc.*, 589 F.3d 389, 400 (7th Cir. 2009) (affirming dismissal of a RICO claim for failure to allege an association in fact enterprise consisting of different actors involved in different events without suggesting how the group acted together with a common purpose or through a common course of conduct).

In an opinion authored by current Associate Justice of the Supreme Court of the United States Neil Gorsuch, the Tenth Circuit applied the *Boyle* test to determine whether a well-organized group of independent drug dealers working out of the same motel were considered an enterprise under RICO.  *United States v. Hutchinson,* 573 F.3d 1011 (10th Cir. 2009).  The now Justice Gorsuch described key relevant facts that supported a finding of a single enterprise:

> Denver's Alpine Rose Motel was something of a "drive-thru" crack market. Customers needed only to pull their cars into the parking lot to receive window-side service from one of the motel's resident drug runners. A runner would take the customer's order, proceed to different motel rooms occupied by crack dealers until he found sufficient quantities to fill the order, and then make the delivery. So-called enforcers helped keep the peace among the motel's residents. Two leaders of the operation replenished the various dealers' drug supply on a daily basis and mediated disputes. A peculiar sort of community spirit evolved, with a Mother's Day "crack scramble" and an Easter egg hunt with rocks of crack substituted for eggs. The business model

> proved highly successful--some 100 customers visited each day at the height of the motel's crack dealing operation in the summer of 2004.

*Id.* at 1016.

Here, there are no such allegations of coordination between the TCR Defendants and the TTS Defendants.  To the contrary, the allegations confirm that the operations were entirely separate.  Most notably, while the TCR Defendants offered services to troubled males, the TTS Defendants offered services to troubled females.  Thus, no resident of TCR was also a resident of TTS.  Further, the Complaint does not allege that TCR and TTS shared owners, directors, or officers.  Instead, the Complaint acknowledges that the persons who owned and operated each entity were separate individuals.  Finally, the Complaint does not make any allegations of shared services between TCR and TTS or contend that there was any financial dependency between the two entities.[6]  Thus, TCR and TTS could not constitute an enterprise-in-fact.  And, even if the three female plaintiffs' allegations were timely (which they are not), that conduct could not be used to support a claim against the TCR Defendants.

### b. Plaintiffs Lack Standing to Pursue a RICO Claim Because There Are No Allegations of an Injury to Business or Property

In order to have standing to bring a civil claim under RICO, a plaintiff must allege injury to either their business or property.  18 U.S.C. § 1964(c); *Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1235 (D. Colo. 2010).  The phrase "business or property" is read narrowly to "assure that RICO is not expanded to provide a federal cause of action and treble damages to every

---

[6] Plaintiffs allege that Jelinek and Scavuzzo performed some limited work for Defendant Monks of the Most Blessed Virgin Mary of Mount Carmel which does business as Mystic Monk Coffee.  Mystic Monk Coffee packages and sells coffee and accessories across the country through online retailers such as Amazon.com.  Plaintiffs also assert that two of the female Plaintiffs also performed work for Mystic Monk Coffee, but the list of 18 tasks allegedly performed by the female Plaintiffs does not include any reference to the Mystic Monk Coffee.  Regardless, the fact that four individuals may have provided labor at the same third-party location does not support a finding that a RICO enterprise existed involving all the defendants.

tort plaintiff." *Makowski v. United Bhd. of Carpenters & Joiners of Am.*, 2010 U.S. Dist. LEXIS 77775 *37; (S.D. N. Y. 2010) (internal citations omitted).  As one court explained:

> Although RICO is to be read broadly, *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 497, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985), "[t]he phrase 'business or property' also retains restrictive significance." *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S. Ct. 2326, 60 L. Ed. 2d 931 (1979). *See also DeMauro v. DeMauro,* 115 F.3d 94, 97 (1st Cir. 1997) ("But while RICO is to be construed broadly, *Sedima,* 473 U.S. at 498, 'injury to property' is not an infinitely elastic concept."). Such restriction "'helps to assure that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff.'" *Maio v. Aetna, Inc.,* 221 F.3d 472, 483 (3d Cir. 2000) (quoting *Steele v. Hospital Corp. of Am.,* 36 F.3d 69, 70 (9th Cir. 1994)). Thus, as a basic rule, injury to business or property "'requires proof of a concrete financial loss and not merely injury to a valuable intangible property interest.'" *Maio,* 221 F.3d at 483 (quoting *Steele,* 36 F.3d at 70). *See also McLaughlin v. Am. Tobacco Co.,* 522 F.3d 215, 227 (2d. Cir. 2008) ("A plaintiff asserting a claim under 18 U.S.C. § 1964(c) must allege *actual,* quantifiable injury.") (emphasis in original); *Regions Bank v. J.R. Oil Co.,* 387 F.3d 721, 728 (8th Cir. 2004) ("'[A] showing of injury requires proof of concrete financial loss, and not mere injury to a valuable intangible property interest.'" (quoting *Steele,* 36 F.3d at 70)); *In re Taxable Municipal Bond Sec. Litig.,* 51 F.3d 518, 523 (5th Cir. 1995) (noting that RICO does not protect an "intangible property interest"); *Price v. Pinnacle Brands, Inc.,* 138 F.3d 602, 607 (5th Cir. 1998) ("Injury to mere expectancy interests or to an 'intangible property interest' is not sufficient to confer RICO standing."); *In re Bridgestone/Firestone, Inc. Tires Products Liability Litig.,* 155 F. Supp. 2d 1069, 1090 (S.D. Ind. 2001) ("Federal courts have consistently and repeatedly held that to satisfy the injury requirement of section 1964, a plaintiff  must prove an actual, concrete, monetary loss.")

*Ivar,* 705 F. Supp. 2d at 1232-1233.

Here, Plaintiffs have alleged three categories of damages: (1) damages arising from alleged bodily injuries, such as co-pays, out of pocket medical costs, future medical costs, and reduced earning capacity; (2) lost wages; and (3) "other economic damages to be proved at trial".  *See* Doc. 106 at 143-145.  None of those three categories of purported damages constitutes an injury to business or property and thus, Plaintiffs do not have standing to pursue a RICO claim.

Indeed, to raise a viable RICO claim, Plaintiffs must allege facts demonstrating an injury to their business or property and not physical, emotional or reputational harm or any economic aspect of such harm--and that Plaintiffs' injury is proximately caused by the acts constituting the RICO violation. *Hollander v. Flash Dancers Topless Club*, 340 F.Supp. 2d 453, 458 (S.D.N.Y. 2004) citing to *Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 265-68 (1992)*; *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 497 (1985); *Ideal Steel Supply Corp. v. Anza,* 373 F.3d 251, 257 (2d Cir. 2004).

Damages arising after an alleged personal injury generally does not confer standing to pursue a RICO claim. *See Grogan v. Platt,* 835 F.2d 844, 847 (11th Cir.) ("Pecuniary losses are so fundamentally a part of personal injuries that they should be considered something other than injury to 'business or property'."), *rehearing denied,* 851 F.2d 1423 (11th Cir.), *cert. denied,* 488 U.S. 981, 102 L. Ed. 2d 562 (1988); *Shaw v. Rolex Watch U.S.A., Inc.,* 776 F. Supp. 128, 134-35 (S.D.N.Y. 1991) (emotional distress and physical injury not cognizable under RICO).

Similarly, lost future earnings or reduced earnings capacity that arose from personal injury will not support a RICO claim. For example, in a case in which the plaintiffs alleged past sexual abuse at a school summer camp led to "diminished educational opportunities and educational accomplishments, diminished vocational opportunities and vocational and career accomplishments, [and] diminished wages and salaries", the court found the plaintiffs lacked standing to pursue a RICO claim. *Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 329 (E.D.N.Y. 2012); *James v. Meow Media, Inc.*, 90 F. Supp. 2d 798, 816-817 (W.D.Ky. 2000) ("It is hard to imagine that when Congress enacted civil RICO it contemplated that a child's earning capacity would be regarded as property, the loss of which would be recoverable threefold. Losses such as those sustained by Plaintiffs are more properly associated with state tort claims

rather than federal civil RICO claims. Plaintiffs are not seeking the kind of recovery the RICO civil remedies provision was designed to afford."). Thus, Plaintiffs' allegations that they incurred out-of-pocket medical costs, reduced earning capacity, and future medical costs will not confer standing to bring a RICO claim.

Further, under the instant facts, Plaintiffs cannot allege lost wages as a basis for standing to assert a RICO claim. Specifically, Plaintiffs have not alleged that they expected to receive compensation for completing the chores that were part of the treatment program and any guestimate of the reasonable compensation for performing such chores would not be an actual quantifiable loss. As the Complaint makes clear, parents paid monthly fees for their teenage children to attend a working ranch. *See e.g.,* Doc. 106 at 3 ("The Triangle Ranch is advertised as a fifty thousand (50,000) acre **working ranch** with over one thousand (1,000) head of cattle."); *See* Doc. 106 at 146 (emphasis added). And, absent from the Complaint is any allegation that the parents or their children expected that their teenagers would receive wages for the chores they performed and were denied such wages.

These circumstances are in stark contrast to cases where courts have found a standing for a plaintiff to bring a RICO claim when they accepted a job offer and were denied reasonable compensation and forced to work through threats such as visa loss or deportation. *See, e.g., Tanedo v. East Baton Rouge Parish Sch. Bd*, 2012 U.S. Dist. LEXIS 157725 *2-8 (C.D. Cal. 2012) (finding standing to bring a RICO claim where plaintiffs, Filipino citizens, accepted a job to teach in the United States from a recruiter, and then were forced by that recruiter to pay additional fees in order to retrieve their passports from that recruiter and, when eventually permitted to work, were faced with threats of job and visa loss).

At their core, the Male Plaintiffs' request to receive compensation for the chores they performed at TCR nearly a decade after completing them is simply an attempt to manufacture standing to sustain the RICO claim.  However, an untimely request for payment for services where both parties understood that no payment would be made, supported by a guestimate of the costs and value of those services is not an actual, quantifiable injury that could support a RICO claim. *See Ivar*, 705 F. Supp.2d at 1232.

Lastly, Plaintiffs' contention that they have suffered "other economic damages to be provided at trial" cannot support a RICO claim because it is not an allegation of an actual, quantifiable injury.  *See Ivar*, 705 F. Supp.2d at 1232 (observing that a showing of injury "requires proof of concrete financial loss, and not mere injury to a valuable intangible property interest" and "[a] plaintiff asserting a claim under 18 U.S.C. 1964(c) must allege actual, quantifiable injury."). Thus, none of the categories of damages alleged by Plaintiffs are injuries to business or property sufficient to confer standing to pursue a RICO claim.

### c.  Plaintiffs' RICO Claim Fails as a Matter of Law Because They Have Not Alleged Continuous Conduct

Plaintiffs' RICO claim against the TCR Defendants also fails because they have not alleged any facts showing that the conduct was continuous.  In order to set forth a pattern of racketeering conduct, a plaintiff must demonstrate "that defendants have committed two or more predicate acts, but also that the predicates themselves amount to, or that they otherwise constitute a threat of continuing racketeering activity."  *See Davidson v. Grant Thornton, LLP*, 582 Fed. Appx. 773, 775-776 (10th Cir. 2014).  This continuity can be shown in two different forms, open-ended continuity and closed-ended continuity.

Under open-ended continuity, the Plaintiffs must show "past conduct that by its nature projects into the threat of repetition." *H.J. Inv. V. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241

(1989) (internal citations omitted).  Such a threat exists when (1) a specific threat of repetition exists, (2) the predicates are a regular way of conducting an ongoing legitimate business, or (3) the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes.  *Id.* at 243.  To establish open-ended continuity, a plaintiff cannot rely on a hypothetical possibility of further acts or contend that a defendant who was once a RICO violator is always a RICO violator.  *See Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1264 (D.C. Cir. 1995).  Courts have rejected a claim of open-ended continuity when the conduct at issue does not have a risk of future repetition.  *See e.g., Turner v. Cook*, 362 F.3d 1219, 1230 (9th Cir. 2004) (finding no open-ended continuity when one of the defendants had stopped committing the alleged predicate act); *Daedalus Capital, LLC v. Vinecombe,* 625 Fed. App'x. 973 (11th Cir. 2015) (finding no open-ended continuity when the activity was unlikely to repeat itself).

Under closed-ended continuity, a plaintiff can assert that, even if not continuing at present, the alleged wrongful conduct arose from a "series of related predicates extend[ed] over a substantial period of time."  *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242 (1988).  The Tenth Circuit has recognized that a closed period must extend over "a substantial period of time" and a "few weeks or month are insufficient."  *See Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1543-44 (10th Cir. 1993); *see also Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) ("[a]lthough we have not viewed two years as a bright-line requirement, it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity."); *Tabas v. Tabas*, 47 F.3d 1280, 1293 (3d Cir. 1995) ("this court has faced the question of continued racketeering activity in several cases, each time finding that conduct lasting no more than twelve months did not meet the standard for closed-ended continuity" citing to *Hughes v. Consol-Pennsylvania Coal Co.,* 945 F.2d 594, 610-11 (3d Cir. 1991).

Plaintiffs assert that they are proceeding under a theory of open-ended continuity. Doc. 106 at 193. However, the bare allegations concerning the conduct of the TCR Defendants cannot support a claim under either theory of continuity. Plaintiffs' lone allegations of misconduct at TCR pertain to conduct that occurred more than eight and half years ago. Indeed, Plaintiffs have not offered a single allegation of forced labor at TCR in the last eight and half years, even though there have been hundreds of residents during that time period. Accordingly, there is no reasonable threat that such activity could resume and such stale allegations of conduct (which has not been repeated) cannot support a claim of open-ended continuity. *See Turner*, 362 F.3d at 1230.

Plaintiffs' claim fares no better when examined under the lens of closed-ended continuity. Even assuming that alleged misconduct occurred for the entire ten-month period when Jelinek and Scavuzzo were at TCR, such conduct does not support a closed-ended continuous pattern of conduct. Courts routinely reject RICO claims premised on alleged conduct that occurred for a few months because such a short time span does not set forth a pattern of racketeering activity.[7] *See, e.g., Battiste v. Arbors Mgmt., Inc.,* 522 F. App'x. 171, 173 (3d Cir. 2013) (affirming dismissal where scheme lasted only ten months); *Tabas*, 47 F.3d at 1293 (rejecting RICO claim for conduct lasting no more than 12 months). Therefore, the Plaintiffs have not alleged a pattern of racketeering activity.

### d. Plaintiffs Have Failed to Allege a Predicate Act and Accordingly Their RICO Claim Fails

Plaintiffs' RICO claim also fails because they have not set forth a viable predicate act. 18 U.S.C. § 1961 sets forth a list of conduct that could be a predicate act for purposes of a civil RICO

---

[7] To be clear, the Tenth Circuit considers additional factors when assessing whether an alleged pattern of racketeering conduct meets the standard for closed-ended continuity, such as the number of participants and victims and the number and variety of predicate acts. *See Resolution Trust*, 998 F.2d at 1543-44. Given that the Complaint identifies only two purported victims, a single type of predicate act, and no verifiable instances of such conduct, the other factors also confirm that the Plaintiffs' allegations cannot support a finding of closed-ended continuity.

claim.  Plaintiffs contend that the predicate acts that support their RICO claim are the forced labor claims set forth in Counts 1, 2, and 3.  However, as further discussed below, those forced labor claims fail as a matter of law because: (1) the forced labor statutes do not prohibit the conduct of the TCR Defendants; (2) Plaintiffs consented to the conduct at issue; and (3) Plaintiffs have not set forth any facts to support the knowledge element of a Trafficking Victims Protection Act claim.  Accordingly, Plaintiffs have not set forth a viable predicate act and their RICO claim fails.

## V.    PLAINTIFFS' LABOR CLAIMS (COUNTS 1, 2, AND 3) FAIL AS A MATTER OF LAW

In addition to their RICO cause of action, Plaintiffs also set forth three causes of action (Counts 1, 2, and 3) alleging that the TCR Defendants forced the Plaintiffs to perform labor in violation of three federal "forced labor" and "human trafficking" statutes: (1) 18 U.S.C. § 1589(a); (2) 18 U.S.C. § 1589(b); and 18 U.S.C. § 1590(a) (collectively referred to as the "Labor Claims").

Count 1 of the Complaint alleges a violation of 18 U.S.C. § 1589 (a).  That statute prohibits anyone from *knowingly* providing or obtaining the labor or services of a person by any of the following means:

    **(1)**    **by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;**

    **(2)**    **by means of serious harm or threats of serious harm to that person or another person;**

    **(3)**    **by means of the abuse or threatened abuse of law or legal process; or**

    **(4)**    **by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.**

18 U.S.C. § 1589(a) (emphasis added).

Based on Plaintiffs' recitation of the elements of subcategories (1), (2), and (4) in their first cause of action, it appears that Plaintiffs are proceeding solely under those theories of liability.

Doc. 106 at 159-165.  Plaintiffs' second cause of action against the TCR Defendants alleges a violation of 18 U.S.C. § 1589(b).  That statute prohibits anyone from knowingly benefiting financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means.  *Id.*  Plaintiffs' third cause of action alleges a violation of 18 U.S.C. § 1590(a).  That statute prohibits *knowingly* recruiting, harboring, transporting, providing or obtaining by any means, any person for labor or services.

Plaintiffs offer a single set of facts to support their allegations against the TCR Defendants. Plaintiffs contend that the Male Plaintiffs completed ranch chores against their will out of fear that, if they did not complete the chores, they might be subject to discipline or unspecified abuse.  *See* Doc. 106 at 136-140.  Plaintiffs never allege that the Male Plaintiffs expected to receive payment for the chores in 2011 and 2012, at the time that they completed them, which may explain why the Male Plaintiffs waited nearly a decade to demand compensation.

The allegations relied upon by Plaintiffs to support their Forced Labor Claims are insufficient to survive dismissal at this stage.  First, the claims seek redress for conduct that is not protected by the federal labor and trafficking statutes at issue.  Second, Plaintiffs consented to the conduct at issue and thus the conduct was not unlawfully compelled.  Finally, Plaintiffs have not alleged that any of the TCR Defendants knowingly violated the Forced Labor Statutes.  Thus, similar to the RICO claim, Plaintiffs' Labor Claims should be dismissed with prejudice.

**a.  The Alleged Conduct Is Not the Type of Conduct Prohibited by the Trafficking Victims Protection Act**

The Trafficking Victims Protection Act ("TVPA") prohibits a party from knowingly obtaining the labor of another through threats of force, physical restraint, or serious harm.  18

U.S.C. § 1589(a).  Plaintiffs who have successfully raised forced labor or human trafficking claims have generally alleged the same type of conduct.  Typically, those claims involve a plaintiff who has been lured to the United States under false promises of reasonable pay and safe working conditions.  Once they arrive, the plaintiff is forced to labor for long hours for minimal or no pay, often have their passports confiscated by their hosts, and are subjected to threats of deportation if they complain.  Put simply, those plaintiffs, unlike the Plaintiffs in this lawsuit, had been promised reasonable employment and compensation, did not consent to the conduct at issue, and were not free to leave at any time or were otherwise subject to duress.

For example, in *Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107, 110-12 (D.D.C. 2012) a plaintiff filed suit under 18 U.S.C. § 1589 and 18 U.S.C. § 1590(a) alleging that she was lured to the United States under false pretenses and was subsequently forced to work for minimal pay under threat of deportation.  There, the plaintiff, a Tanzanian citizen, traveled to the United States to work as a maid/nanny in exchange for "reasonable working conditions, educational opportunities, and decent pay." *Id.* However, once she arrived in the United States, the host family confiscated her passport, kept her in isolation, and told her she would be deported within 24 hours if she did not work long hours as a domestic servant and nanny.  Fearing deportation, the plaintiff worked seven days a week, often without taking breaks to rest or eat, and endured regular verbal and psychological abuse from one of her employers.  In rejecting the defendants' motion to dismiss, the court found that such facts set out a claim for involuntary servitude, because the plaintiff was compelled to continue working through the threat of being deported (and not of her own volition). *Kiwanuka*, 844 F. Supp. 2d at 16.

Similarly, in *Samirah v. Sabhnani*, 772 F. Supp. 2d 437 (E.D.N.Y. 2015), the plaintiffs, Indonesian citizens, were lured to the United States under promises that they could work for

reasonable pay as caretakers of the defendants' homes.  However, when they arrived in the United States, they were forced to work as domestic services for little pay while living under very poor conditions and being physically abused.  Based on the findings by the court in a related criminal matter (which had convicted defendants of holding the plaintiffs in a condition of peonage), the Eastern District of New York granted plaintiffs' motion for summary judgment premised on violations of forced labor and other statutes.

Here, the Plaintiffs were not lured to TCR under promises that they would receive jobs and compensation.  To the contrary, the Male Plaintiffs' families paid for the treatment they received while at TCR, which included participation in and completion of ranch chores.  Doc. 106 at 9-10. Moreover, the Male Plaintiffs parents could remove them from TCR at any time if they were dissatisfied with the treatment program.

At most, the Male Plaintiffs have alleged that, if they did not complete their chores, they might be subject to consequences, such as the inability to complete TCR's treatment program, the loss of the opportunity for certain benefits such as upgraded food or housing, or a requirement that they perform additional chores.[8]  See Doc. 106 at 140 fn. 37.  However, even if the Male Plaintiffs were presented with consequences for their failure to complete chores, such admonitions do not constitute threats sufficient to support a Labor Claim.

Circumstances similar to those alleged by the Plaintiffs in this case were rejected as insufficient to support a trafficking claim by the Ninth Circuit in *Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012).  In that case, a husband and wife sued the Church of Scientology claiming that they had been forced to continue working for the church under threat of

---

[8] Plaintiffs do contend that they might be subject to verbal or physical abuse if they did not perform their chores. However, Plaintiffs have failed to put to any specific act by any TCR Defendant that might constitute abuse and only offer the conclusory, unsubstantiated allegation through a footnote that one TCR Defendant "physically abused" Jelinek in an unspecified manner on two undisclosed occasions.

being labeled as "suppressive persons" i.e., excommunicated, which would cause them to lose touch with their family and friends who were members of the church.  In deciding that the plaintiffs had not set out a claim for human trafficking, the court noted that the plaintiffs were free to leave the church at any time, and the warnings that leaving the church's employment would cause them to be excommunicated were merely advisements of the consequences of leaving the church and not threats sufficient to support a trafficking claim.  *Headley*, 687 F.3d at 1180.

Similarly, the Male Plaintiffs were warned that if he did not fulfill certain elements of the treatment program then he would not be able to complete the program or might be subject to discipline.  Further, despite a bare allegation to the contrary, Plaintiffs were not prevented from leaving TCR.  In fact, as Plaintiffs later concede, Plaintiffs were permitted to leave TCR prior to the completion of treatment and both Male Plaintiffs did in fact leave prior to their completion of the program. Thus, like the plaintiffs in *Headley*, the Plaintiffs in this case cannot assert a claim for forced labor simply because he might not have been informed that his failure to complete certain tasks might result in negative consequences.

**b.  Plaintiffs' Labor Claims Fail Because They Consented to the Treatment at TCR**

Plaintiffs' Labor Claims also fail, because the Plaintiffs consented to the alleged "forced labor."  To succeed on their Labor Claims, Plaintiffs must show that their labor was compelled by improper means.  *See* 18 U.S.C. 1589(a) ("serious harm" includes "any harm…that is sufficiently serious... to **compel** a reasonable person… to perform…labor or services).  However, as the Complaint acknowledges, the Plaintiffs' parents consented to their sons enrolling in TCR's treatment program – which included the performance of ranch chores - when they paid the enrollment fees.  *See* Doc. 106 at 2-3, 56.  Such consent negates the Plaintiffs' claims.

To be clear, a parent has the right to make their minorchild complete chores, such as those allegedly required at TCR.  As the Sixth Circuit in *United States v. Toviave,* 761 F.3d 623, 625 (6th Cir. 2014) recognized, "[a]n American parent has always had the right to make his child perform household chores."  Further, "[a] person standing... 'in the place of a parent'... also has that right."  *See id.* (internally quotations omitted).  And, "[t]he forced labor statute could not have been intended to overturn this longstanding parental right" because "[f]orcing children to do household chores cannot [amount to] forced labor without reading the statute as making most responsible Americans parents and guardians into federal criminals".  *See Id.*

Plaintiff Jelinek was a minor during his entire stay at TCR and thus his parents were able to consent to his treatment for the entire time of his attendance.  Plaintiff Scavuzzo contends that he was eighteen during some portion of his stay at TCR.  Regardless, Plaintiff Scavuzzo did consent to the treatment at TCR when he paid (or allowed his parents to pay on his behalf) the costs of treatment and remained with the program.[9]  Thus, Plaintiffs (either directly or through the parents or guardians) consented to TCR's treatment program, which included the completion of chores. As such, the Plaintiffs cannot show that they were compelled to complete labor by improper means and their Labor Claims must fail.

### c.  Plaintiffs Fail to Allege Knowingly Violations of the Forced Labor Statutes by TCR Defendants

The Labor Claims are premised on violations of 18 U.S.C. § 1589(a), (b) and 18 U.S.C. § 1590(a).   While those claims set forth criminal penalties, 18 U.S.C. § 1595(a) permits a party to bring a civil cause of action against someone who has purportedly violated those statutes.

---

[9] Plaintiff Scavuzzo makes the conclusory allegation that he was not permitted to leave TCR "despite his attempts to do so."  *See* Doc. 106 at 131.  Not surprisingly, Scavuzzo fails to make any allegation detailing how he was purportedly prevented from leaving – given he was free to leave at any time.  Indeed, later in the Complaint he acknowledges that he did leave TCR without completing the program and also claims he frequently left TCR to perform work at other sites.  And, if Scavuzzo truly wished to leave sooner, he could have simply continuing trying to reach his parents or made his own travel arrangements to return home.

However, in the absence of a criminal conviction, a plaintiff must demonstrate that a defendant knew or should have known that he has engaged in an act violating such statutes. *Ricchio v. Bijal, Inc.*, 424 F.Supp.3d 182, 193 (D. Mass 2019).  Plaintiffs have not met that burden.

Indeed, Plaintiffs have not made any assertions that the individual TCR Defendants acted with knowledge that they were violating the Forced Labor Statutes.  In fact, the Complaint makes virtually no assertions against any specific individual other than providing their title, address for service (which is often incorrect), and ownership interest in any of the named entities.[10]  This failure to allege knowledge by any individual is not surprising.   The TCR Defendants could not have had knowledge that they were violating a federal forced labor statute because they were aware that the parents had consented to the teenagers' participation in the treatment program at a working ranch and had paid substantial monthly fees to TCR for that privilege.  Doc. 106 at 9-10.   Further, TCR could not have knowingly violated a statute, because absent knowledge by one of its agents (which Plaintiffs have not alleged), knowledge cannot be imputed to an impersonal entity.  *See U.S. v. A&P Trucking Co.,* 358 U.S. 121, 125 (1958).   Thus, none of the TCR Defendants knowingly violated a forced labor statute and the Labor Claims can be dismissed for that independent reason (as well as those cited above).[11]

## VI.   CONCLUSION

Plaintiffs have failed to state any viable claim against the TCR Defendants.  Specifically, Plaintiffs' RICO claim (Count 4) fails because: (1) the alleged RICO violations occurred more than eight years ago and therefore the claim is barred by RICO's four year statute of limitations;

---

[10] Plaintiffs do make an allegation that Jelinek was purportedly physically abused by Thomas George in an unspecified matter at an unspecified time.  However, Plaintiffs have not asserted any fact suggest that such abuse actually occurred or otherwise offered any fact showing that Thomas George had knowingly violated of a forced labor statute.
[11] The TCR Defendants hereby incorporate the arguments and authorities raised by the other Defendants in their motions to dismiss for failure to state a claim.

(2) Plaintiffs do not have standing to bring a RICO claim because they have not suffered an injury to business or property; (3) Plaintiffs have not plead the elements of RICO because the alleged wrongful conduct does not constitute a pattern of racketeering activity; and (4) Plaintiffs have not alleged a viable predicate act.

Plaintiffs' Labor Claims (Counts 1, 2, and 3) also because: (1) the forced labor statutes do not prohibit the conduct at issue; (2) the Plaintiffs consented to the conduct at issue and therefore Plaintiffs were not compelled to engage in any forced labor; and (3) the Plaintiffs have not set forth any allegations suggesting that the TCR Defendants knowingly violated the forced labor statutes.

Each of these deficiencies is fatal to Plaintiffs' claims.  Accordingly, the TCR Defendants request that the Court dismiss the Complaint against each of them in its entirety and with prejudice and grant such other and further relief as the Court deems appropriate.

Respectfully submitted this 26th day of March, 2021.

WHITE & STEELE, P.C.

*/s/ John C. Matthews*
Monty L. Barnett, #6-2694
Rachel E. Ryckman, # 7-4656
Keith R. Olivera (*Pro Hac Vice*)
John C. Matthews (*Pro Hac Vice*)
White and Steele, P.C.
Dominion Towers, North Tower
600 Seventeenth Street, Suite 600N
Denver, CO  80202
ATTORNEYS FOR DEFENDANTS
TRIANGLE CROSS RANCH, LLC
GERALD E. SCHNEIDER;
MICHAELEEN P. SCHNEIDER
MATTHEW SCHNEIDER;
MARK SCHNEIDER and
THOMAS GEORGE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was filed on March 26, 2021, with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

<u>*/s/ John C. Matthews*       </u>
For White and Steele