Thomas B. Quinn (WY:#5-2630)
GORDON REES SCULLY MANSUKHANI, LLP
555 Seventeenth Street, Suite 3400
Denver, CO 80202
Telephone: (303) 534-5160
Email:  tquinn@grsm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **CARLIE SHERMAN**, **ANNA GOZUN**; **AMANDA NASH**; **ANDREW SCAVUZZO**; and **EHAN JELINEK** on behalf of themselves and all similarly situated persons,<br><br>Plaintiff,<br><br>vs.<br><br>**TRINITY TEEN SOLUTIONS, INC.,** a Wyoming corporation; **TRIANGLE CROSS RANCH, LLC,** a Wyoming limited liability corporation; **MONKS OF THE MOST BLESSED VIRGIN MARY OF MOUNT CARMEL, d/b/a MYSTIC MONK COFFEE,** a Wyoming corporation; **GERALD E. SCHNEIDER; MICHAELEEN P. SCHNEIDER; ANGELA C. WOODWARD; JERRY D. WOODWARD; DANIEL SCHNEIDER; MATHEW SCHNEIDER; MARK SCHNEIDER; KARA WOODWARD; KYLE WOODWARD; THOMAS GEORGE; JUDITH D. JEFFERIS; DALLY-UP, LLC,** a Wyoming limited liability corporation; **ROCK CREEK RANCH, INC.,** a Delaware corporation; **DIOCESE OF CHEYENNE,** a Wyoming corporation; and the **SOCIETY OF OUR LADY OF THE MOST HOLY TRINITY,** a Texas corporation; and **NEW MOUNT CARMEL FOUNDATION, INC.,** a Wyoming corporation,<br>Defendants. | Civil Doc. No. 20-CV-215-SWS<br><br>**REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT BY DEFENDANTS TRINITY TEEN SOLUTIONS, ANGELA WOODWARD, JERRY WOODWARD, KARA WOODWARD, KYLE WOODWARD AND DALLY-UP, LLC** |

Defendants Trinity Teen Solutions (TTS), Angela Woodward, Jerry Woodward, Kara Woodward, Kyle Woodward, and Dally Up, LLC ("TTS Defendants"), by and through their attorneys, offer this Reply to Plaintiffs' Response in Opposition [D.E. 136] to the TTS Defendants' Motion to Dismiss the First Amended Complaint (FAC) [D.E. 123, 123-1].[1]

## I.     The Court May Properly Consider Documents Outside the Complaint

Without naming the objectionable documents, Plaintiffs assert that the TTS defendants "attempt to introduce matters outside the pleadings by providing copious extraneous materials and allegations" and invoke FRCP Rule 12(d) in support of an argument that the Motion to Dismiss filed by the TTS defendants ought to be converted into a motion for summary judgment. [D.E. 136, pp. 5, 40]. There are three potential documents that qualify as it relates to the TTS Defendants' Motion to Dismiss: (1) The TTS Parent Handbook that Plaintiffs originally included at the end of the Complaint [D.E. 1] and now append to the FAC [D.E. 106-1]; (2) The Wyoming Department of Family Services (DFS) regulations that the TTS Defendants attached to the Motion to Dismiss the FAC [D.E. 123-2]; and (3) the contract for sale of land between Rock Creek Ranch, Inc. and Dally-Up, LLC, pleaded in the FAC [FAC ¶¶ 55-56], submitted by Defendants Jefferis and Rock Creek Ranch, [D.E. 73-1 and 125 pp. 28-34], and referenced by the TTS Defendants. [D.E. 123-1, pp. 46-57].

There are three exceptions to the general principle that a district court cannot review matters outside of the complaint when ruling on a Rule 12(b)(6) motion: (i) documents that the complaint incorporates by reference, *see Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); (ii) "documents referred to in the complaint if the documents are central to the

---

[1] The TTS Defendants address discrete points discussed here but do not abandon or waive any of the arguments presented in their Motion to Dismiss. [D.E. 123, 123-1].

1

plaintiff's claim and the parties do not dispute the documents' authenticity," *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); and (iii) "matters of which a court may take judicial notice," *Tellabs, Inc.* 551 U.S. at 322. The Court may consider the foregoing three documents. Plaintiffs themselves appended the TTS Parent Handbook to the FAC, accordingly, they have incorporated the entirety of its contents, not just those portions that they allege, by reference. Moreover, the Parent Handbook is central to the claims and not in dispute. The DFS regulations "have the force and effect of law." *MB v. Laramie County Dept. of Family Services in Interest of L.B.*, 933 P.2d 1126, 1130 (Wyo. 1997). Attaching the regulations is for the convenience of the Court and parties. It is no different from attaching case law or copies of statutes. Accordingly, regulations are not "matters outside the pleadings" under Rule 12(d) or "documents" pursuant to the exceptions to the general restriction on reviewing documents outside the complaint in ruling on a Rule 12(b)(6) motion. To the extent they are, as regulations they are a matter of which a court may take judicial notice pursuant to FRE 201(b).

      This leaves the contract for the sale of land. [D.E. 125 pp. 28-34] Plaintiffs do not challenge its authenticity in their opposition to the Motion to Dismiss filed by Judith Jefferis and Rock Creek Ranch. [D.E. 140]. Instead, they argue that it is "irrelevant" and that the Court should disregard it. [D.E. 140, pp. 10-11]. Plaintiffs mostly base their assertion of irrelevance on the fact that the contract does not support their assertions that TTS, the Woodwards, Dally-Up, LLC, Ms. Jefferis and Rock Creek Ranch entered into an agreement to "utilize free child labor." *Id*. This is not the measure of relevance. Plaintiffs have alleged that the "sale agreement…included free labor and maintenance." [FAC ¶ 56]. The "sale agreement" is specifically alleged and therefore is central to the claim and relevant. It is appropriate for the Court to ascertain whether the terms of the sale agreement provide any support for Plaintiffs'

assertions and, since they do not, to assess whether the remaining allegations plausibly support the claims. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court may properly consider the document.

## II.     The RICO Cause of Action is Subject to Dismissal on Several Grounds

While Plaintiffs cite to a handful of cases in support of their standing argument [D.E. 136, pp. 30-31], the only case they cite that also involved Trafficking Victims Protection Act (TVPA) causes of action supports the TTS Defendants' argument that in other TVPA cases courts have conferred RICO standing where plaintiffs pleaded an expectation of payment for their services in advance of the commission of the alleged predicate TVPA act, a cognizable Federal Labor Standards Act (FLSA) claim, a state law business tort, or some combination of the three, none of which apply here. [D.E. 123-1, pp. 36-38]. The cited case, *Jane Doe I v. Reddy*, 2003 WL 23893010 (N.D. Cal. Aug. 4, 2003) [D.E. 136, p. 30] included a properly-pleaded FLSA claim with the TVPA claims. Other cases Plaintiffs cite, e.g. *Blevins v. Aksut*, 849 F.3d 1016 (11th Cir. 2017) and *Luttrell v. Brannon*, 2018 WL 3032993 (D. Kan June 19, 2018), do not involve TVPA claims and moreover pleaded predicate economic crimes such as wire fraud and money laundering. Additionally, the *Luttrell* court dismissed the RICO claims for pecuniary damages of the sort that comprise most of what Plaintiffs claim in this case. *Id*. at *3.

Where timeliness of the RICO claim is concerned, Plaintiffs indirectly concede that only Plaintiff Nash of all the TTS former residents potentially has a timely claim and even she attempts a claim of disability of minority to permit her untimely claim. [D.E. 136, p. 28]. However, Plaintiffs cite to no authority that Nash's RICO claim is timely because it "was brought within three years of her disability [of minority] being extinguished on November 18, 2017." In an analogous case, the Northern District of Texas rejected a similar argument with

3

respect to an untimely RICO claim explaining that, "the injuries of which Porter complains occurred before his discharge from the Provo Canyon facility in June 1989 and that he knew, or should have known, no later than when he was discharged from the facility that he had suffered those injuries" and concluding "that all of Porter's causes of action accrued sometime before he reached his 18th birthday." *Porter v. Charter Medical Corp.*, 957 F. Supp. 1427, 1436 (N.D. Tex. 1997). The FAC here contains similar allegations. The RICO count should be dismissed for the additional reason that it is untimely.

Finally, Plaintiffs do not address the TTS Defendants' argument that Plaintiffs' RICO pleading does not meet the distinctness requirement set forth in *Cedric Kushner Promotions, Ltd. V. King*, 533 U.S. 158, 161 (2001). [D.E. 123-1, pp. 43-44]. The RICO count is subject to dismissal for this additional reason.

### III.     Intent and Forced Labor Requirements of the TVPA

Plaintiffs' opposition incorrectly summarizes various arguments that the TTS Defendants make with respect the required intent under the TVPA, the labor or services theory, the impact of consent, and venture liability. The required intent elements for the TVPA counts are seemingly a fundamental dispute between the parties based on Plaintiffs' misreading of the TTS Defendants' argument. However, the "knew or should have known" language of Section 1595(a) (Counts 1-3) or the "knowing or in reckless disregard" language Section 1589(b) (Count 2) is not, as Plaintiffs suggest, in dispute. [D.E. 136, pp. 18-20]. What is in dispute is what Plaintiffs must plead in order to establish <u>the existence</u> of the requisite TVPA violation for all three counts. *Id*. The TTS Defendants' argument is consistent with the language of the FAC where Plaintiffs allege that Defendants "knowingly provided or obtained" (Count 1) and "knowingly recruited, harbored, transported, or provided" (Count 3). [FAC ¶¶ 161-163; 173]. Plaintiffs also argue in their

Response that "the TTS Defendants are all alleged to be perpetrators" and that "Jerry and Angela Woodward engaged in a recruitment scheme," both of which require knowledge [D.E. 136 pp. 6, 25] (emphasis supplied). They have also alleged in all three TVPA counts, consistent with Section 1595(a)'s language, that they are entitled to bring a civil action against the Defendants as perpetrators, recipients of a knowing benefit, or by receiving anything of value from participation in a venture that the Defendants "knew or should have known has engaged in an act in violation" of the TVPA. [TAC ¶¶ 160, 167, 172] (emphasis supplied). The statutes in this case that would establish "an act in violation," Sections 1589(a)(Count 1) and Section 1590(a)(Count 3), set forth a "knowing" *mens rea*. Section 1589(b) (Count 2) prohibits providing or obtaining labor by the knowing means described in Section 1589(a). The TVPA statutes that authorize civil actions do not change the language of the statutes that establish the violation. This aspect of civil TVPA cases is often not in dispute, as it is in this case. This is particularly so in the hotel cases, like the ones cited by Plaintiffs, because those matters so often involve a criminal case against the perpetrator that establishes "an act in violation." [D.E. 136, pp. 20-22]. *See e.g. J.L. v. Best Western Int'l, Inc.*, 2021 WL 719853 at *1 (D. Colo. Feb 24, 2021) (referencing the FBI rescuing the plaintiff); *M.A. v. Wyndham Hotels & Beach Resorts*, 425 F. Supp. 3d 959, 962 (S.D. Ohio 2019) (noting that that plaintiff's "trafficker has been sentenced"). The requirement of a violation, and accompanying requirement to plead knowledge, nevertheless exists. Herein lies the basis of the TTS Defendants' argument that Plaintiffs have set forth insufficient allegations to establish knowledge on the part of each alleged individual perpetrator. [D.E. 123-1, pp. 23-24].

      The differing views with respect to requisite knowledge surface again in the venture liability issue. The TTS Defendants did not argue, as Plaintiffs suggest, that a perpetrator would not be liable under the "knew or should have known" language of Section 1595(a). [D.E. 136, p.

21]. Nor did the TTS Defendants argue that "evidence of actual knowledge or conspiracy" is required to plead Section 1595(a) liability. [D.E. 136, p. 21]. Rather, the venture liability argument advanced by the TTS Defendants is aimed at the failure to plausibly plead that each Defendant knows they are in a TVPA venture together, which is what Plaintiffs allege in the FAC, not just the "four Defendants Woodward, TTS, and Dally-Up" that Plaintiffs argue in their Opposition. [D.E. 136, pp. 23-24; D.E. 123-1, pp. 31-34].

  The issue of knowledge relates in large part to the plausibility of the theory that the TTS Defendants are operating "a working ranch under the guise of a Residential Treatment Center" that is "engaged in a recruitment scheme" to "obtain cheap and easily exploited labor" in the form of "chores and ranch duties" and resulting in "profits…through the unlawful coerced labor of children." (FAC ¶¶ 4, 12, 94). Plaintiffs incorrectly summarize the TTS Defendants' labor or services argument as being an "effort to add..[a] financial benefit element to the 'labor or services' element." [D.E. 136, p. 9]. There are two problems with this argument. First, Plaintiffs' child labor theory alleges generation of profit, or even "money laundering." [D.E. 138, pp. 16-17]. Second, the TTS Defendants made a different argument which was that TVPA labor definitions contemplate that the labor be done in service to or for the advantage of another. [D.E. 123-1 pp. 24-27]. What can be plausibly concluded about the ranch chore allegations is that these are services provided to Plaintiffs by TTS for their benefit, not the other way around because: (1) TTS's residential treatment center (RTC) program, that includes chores like animal care, is licensed by the state of Wyoming to provide services <u>to</u> children. Moreover, caring for animals in conjunction with the provision of licensed therapeutic services is nothing new in the realm of behavioral health. *See e.g. Clovis Unified School Dist. v. California Office of Administrative Hearings*, 903 F.2d 635, 645 (9th Cir. 1990) (involving a minor child treated during the 1980's whose "program consisted

of a residential/therapeutic program coordinated with an on-grounds classroom program. She spent her day in a variety of therapy programs including individual therapy, pottery, and animal care. These therapies were provided by various persons who met the state licensing or training requirements for hospital medical staff."); (2) the inclusion of ranch chores including animal care is disclosed in the Parent Handbook which Plaintiffs append to the FAC [D.E. 106-1, pp. 11, 21, 23, 26-27]; (3) Plaintiffs allege that TTS sits on 160 acres which is too small to support a working ranch absent plausible allegations about a ranching operation [D.E. 106 ¶¶ 4, 54] *See e.g.* 1 Donald H. Kelley et al, *Est. Plan for Farmers and Ranchers* § 1.6 (2020) (noting that "[i]n grazing areas, even a marginal operation might require 2,000 to 6,000 acres."); (4) Plaintiffs allege that they cared for a menagerie of animals on this small parcel including "pigs, horses, *dogs*, goats, chickens, and *cats.*" [D.E. 106, ¶ 62] (emphasis supplied). Cats and dogs are not part of working ranch operations. *See e.g.* WY ST § 11-22-101(a)(ii) (defining "livestock" as "horses, mules, cattle, swine, sheep and goats."); and (5) Plaintiffs do not allege that TTS engaged in farming e.g. growing crops or that TTS is in the business of buying or selling livestock. *See e.g.* WY ST § 11-22-101(a)(iv) (defining a "livestock dealer" as "(A) Any person engaged in the business of buying or selling livestock in commerce, either for his own account or as an employee or agent of the seller or buyer; or (B) Any person who engages in the regular business of buying or selling livestock in commerce on a commission basis as set forth in rules by the Wyoming livestock board.") In short, the TTS Defendants do not "impliedly deride" the plausibility of Plaintiffs' child labor theory. [D.E. 136, p. 9]. Rather, they mount a direct challenge to the plausibility of the child labor or "working ranch" theory throughout the Motion to Dismiss.

Coercion and serious harm elements also relate to plausibility. Plaintiffs incorrectly summarize the TTS Defendants' arguments regarding these elements. [D.E. 136, pp. 14-18]. The

TTS Defendants did not argue that a parent can consent to involuntary servitude or that adverse but legitimate consequences include forced labor. They argued that Plaintiffs fail to allege that they were unlawfully restrained, that their parents both provided the legally operative consent and consented to the challenging and rigorous nature of the TTS program, and that Plaintiffs have alleged with their abuse claims at best either an area of regulation belonging to Wyoming DFS or medical malpractice at least in part where withheld or deficient treatment claims are concerned. But Plaintiffs have not alleged TVPA forced labor. [D.E. 123-1, pp. 28-31, 44-45].

### IV.  The Negligence Claims Invoke Medical Malpractice

Plaintiffs offer no response to the TTS Defendants' assertion that their negligence claims raise the Wyoming Medical Review Panel Act of 2005 with respect to claims of deficient or withheld treatment. *See* WY STAT § 9-2-1515(a)(ii)[2] (defining a "malpractice claim" as "any claim against a health care provider for alleged medical treatment, alleged lack of medical treatment, or other alleged departure from accepted standards of health care which results in damage to the patient;"). The District of Utah has found that a residential treatment facility subject to similar regulations was a "health care provider" under the Utah Health Care Malpractice Act and barred the plaintiff's general negligence claims. *See Tools v. Red Rock Canyon School*, 2005 WL 1501435 (D. Utah 2005); WY STAT § 9-2-1515(a)(i) (defining a "health care provider" in Wyoming as "a person or facility licensed, certified or otherwise authorized by the law of this state to provide health care in the ordinary course of business or practice of a profession, but does not include a person who provides health care solely through the sale or dispensing of drugs or medical

---

[2] Wyoming passed H.B. 195 on April 5, 2021 which immediately ceases review of new malpractice claims by the medical review panel. 2021 Wyoming Laws Ch. 99 (H.B. 195). WY STAT 9-2-1513 through 9-2-1523 are repealed, however, this change does not take effect until July 1, 2022. *Id.*

devices"). The TTS Defendants provided a discussion of the regulatory definitions and requirements applicable to TTS in its Motion to Dismiss briefing. [D.E. 123-1, pp. 8-13]. The TTS Defendants accordingly request that the Court conclude that TTS is a "health care provider" pursuant to WY STAT § 9-2-1515(a)(i) and that those portions of Plaintiffs' claims for alleged medical treatment, alleged lack of medical treatment, or other alleged departure from accepted standards of health care which resulted in damage to them are barred from recovery pursuant to a general negligence theory and additionally are time-barred pursuant to WY STAT § 1-3-107, therefore amendment would be futile.

Finally, Plaintiffs also aver that, perhaps, they do bring a premises liability claim. [D.E. 136, p. 32-33]. This is not apparent from the FAC and Plaintiffs' attempt to hedge their bets should be rejected.

WHEREFORE, the TTS Defendants respectfully request that this Court dismiss the FAC.

Respectfully submitted this 24th day of May, 2021.

**GORDON REES SCULLY MANSUKHANI LLP**

*/s/ Thomas B. Quinn*
*/s/ Lillian Alves*
Thomas B. Quinn
Lillian Alves
555 Seventeenth Street, Suite 3400
Denver, CO 80202
Email: tquinn@grsm.com
lalves@grsm.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 24th day of May, 2021, a true and correct image of the foregoing was e-filed via CM/ECF and served to all attorneys of record according to CM/ECF.

*/s/ Fran Aragon Eaves*

For Gordon Rees Scully Mansukhani, LLP