Paul J. Hickey, WSB No. 5-1431
Loyd E. Smith, WSB No. 5-2509
Hickey & Evans, LLP
1800 Carey Avenue, Suite 700
P.O. Box 467
Cheyenne, WY  82003-0467
Phone:  (307) 634-1525
Fax:  (307) 638-7335
Email:  phickey@hickeyevans.com
Email:  lsmith@hickeyevans.com

*Attorneys for Defendant Diocese of Cheyenne*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **CARLIE SHERMAN, ANNA GOZUN, AMANDA NASH**, and **JOHN DOE** on behalf of themselves and all similarly situated persons, <br><br> PLAINTIFFS, <br><br> v. <br><br> **TRINITY TEEN SOLUTIONS, INC.,** a Wyoming corporation; **TRIANGLE CROSS RANCH, LLC**, a Wyoming limited liability corporation; **MONKS OF THE MOST BLESSED VIRGIN MARY OF MOUNT CARMEL, d/b/a MYSTIC MONK COFFEE**, a Wyoming corporation; **GERALD E. SCHNEIDER**; **MICHAELEEN P. SCHNEIDER**; **ANGELA C. WOODWARD**; **JERRY D. WOODWARD**; **DANIEL SCHNEIDER; MATHEW SCHNEIDER; MARK SCHNEIDER; KARA WOODWARD**; **KYLE WOODWARD; THOMAS GEORGE; JUDITH D. JEFFERIS; DALLY-UP, LLC**, a Wyoming limited liability corporation; **ROCK CREEK RANCH, INC.,** a Delaware corporation; **DIOCESE OF CHEYENNE**, a Wyoming corporation; and the **SOCIETY OF OUR LADY OF THE MOST HOLY TRINITY**, a Texas corporation; and **NEW MOUNT CARMEL FOUNDATION, INC.,** a Wyoming corporation, <br><br> DEFENDANTS. | ) ) ) ) ) ) ) **Case No. 20-CV-215-S** ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**DEFENDANT DIOCESE OF CHEYENNE'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendant Diocese of Cheyenne ("Diocese"), through its undersigned counsel, submits this "Reply Brief In Further Support Of Motion to Dismiss Plaintiffs' First Amended Complaint" ("Reply") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may granted.

## I.   INTRODUCTION

As set forth in the Diocese's Brief in Support of Motion to Dismiss First Amended Complaint (Doc. 127) ("Opening Brief"), Plaintiffs, in Counts 2, 3 and 5 of their First Amended Complaint ("FAC"), assert legal conclusions or naked recitations of the elements of their claims, rather than facts supporting plausible claims against the Diocese as required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Diocese will not reiterate in this Reply the points and arguments contained in its Opening Brief. The Diocese, however, will address herein the arguments in Plaintiffs' Response in Opposition to the Motion to Dismiss (Doc. 141) ("Response"), including the contention that the scienter requirement as to a non-perpetrator found in 18 U.S.C. § 1595 of the Trafficking Victims Protection Reauthorization Act ("TVPRA") salvages their deficient pleadings, and the contention that their FAC somehow states a claim against the Diocese for premises liability. In addition the Diocese will address the bald allegation that priests learned of the captivity and abuse of unnamed putative class members in confession and therefore should have acted to protect members of the putative class.

II.  **PLAINTIFFS' ALLEGATIONS AGAINST THE DIOCESE, AS A NON-PERPETRATOR, FAIL TO STATE A CLAIM UNDER THE CIVIL REMEDY SECTION OF THE TVPRA, 18, U.S.C. § 1595**

The parties agree that, under 18 U.S.C. § 1595, the civil remedy provision of the TVPRA, one can violate the trafficking statute, 18 U.S.C. § 1589(b), either as a perpetrator (primary offender) or as one who benefits from participation in a venture with the perpetrator (a non-perpetrator).  (*See*, Diocese Opening Brief, p. 13 and Plaintiffs' Response, p. 6).  18 U.S.C. § 1595(a) provides as follows:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees.

Plaintiffs assert this statute establishes a two-step analysis as to non-perpetrators. (Plaintiffs' Response, p. 7).  The statute, however, actually requires a three-step analysis.  To establish non-perpetrator liability, a plaintiff must establish:

1)  the person or entity knowingly benefitted, financially or by receiving something of value

2)  from participating in a venture

3)  that the person or entity knew or should have known has engaged in an act in violation of this chapter; i.e., the TVPRA.

If Plaintiffs' FAC fails to plausibly allege any of these three elements of non-perpetrator liability, the Diocese is entitled to dismissal of Plaintiffs' claims under the TVPRA.  The Diocese will address each element separately.

As to the "knowingly benefitted" requirement, Plaintiffs allege no facts, just conclusions or recitations of the statutory language against the Diocese.  Paragraph 75 of the FAC alleges "on information and belief the Diocese directly benefitted from Plaintiffs' and the putative class

members' labor."  Paragraph 168 of the FAC alleges:

> "Defendants' knowingly benefitted financially and/or received things of value from participating in a venture which had engaged in the providing or obtaining of forced labor or services, knowing or in reckless disregard of the fact that the venture had engaged in the providing of or obtaining of forced labor or services in violation of 18 U.S.C. § 1589(b).

Paragraph 174 of the FAC alleges:

> Defendants knowingly benefited financially and/or by receiving things of value from participating in a venture which engaged in the trafficking of forced labor by any of the means described herein, knowing or in reckless disregard of the fact that the venture was engaged in the trafficking of forced labor or services by any of such means.

As is evident, Plaintiffs assert no well-pleaded facts on the element of "knowingly benefited," just conclusions and recitations of the statutory language.  "A complaint does not need detailed factual allegations, but requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action is insufficient.  *Twombly* 550 U.S. at 555.

Plaintiffs' Response assumes, but without so pleading in their FAC, that, absent the occasional cleaning and set-up services allegedly provided by Plaintiffs to this small rural church, the church would have hired and paid a third party for these services, as opposed to simply requesting assistance from other parishioners.  *See* Plaintiffs' Response, page 7, wherein they state "these are services for which individuals are typically paid a wage, and by the use of the compulsory labor of minor children, the Diocese avoided the necessity of procuring compensated employees . . ."  Plaintiffs' FAC  does not plead such facts and Plaintiffs simply offer this speculative observation as argument in their Response.  Plaintiffs' FAC fails to present well-pleaded facts plausibly alleging the Diocese knowingly benefitted, financially or by receiving something of value from a violation of the TVPRA.  Since Plaintiffs FAC does not satisfy this step/element of the analysis, their TVPRA claim against the Diocese should be

dismissed.

The second element of § 1595(a) is participation in a "venture" with the primary offender/perpetrator. As set forth in the Diocese's Opening Brief, the Tenth Circuit has applied, in the forced labor context, the definition of a "venture" from § 1591(e)(6) of the TVPRA which defines venture "as any group of two or more individuals associated in fact, whether or not a legal entity." *Bristline v. Parker*, 918 F.3d 849, 873 (10th Cir. 2019). Section 1591(e)(4) defines participation in a venture as "knowingly assisting, supporting, or facilitating a violation . . ." Other than conclusory allegations, Plaintiffs FCA states no well-pleaded facts that the Diocese somehow was participating in venture with the alleged perpetrators, i.e., Trinity Teen Solutions and Triangle Cross Ranch, in assisting those entities in violating the TVPRA. Plaintiffs' pleadings, therefore, fail to satisfy the second prong of analysis of non-perpetrator liability under § 1595(a) and this too requires dismissal of Plaintiffs' claim against the Diocese under the TVPRA.

The final element of non-perpetrator liability under § 1595(a), and the one Plaintiffs rely on in their Response, is that the non-perpetrator "knew or should have known" that the "venture," (in which the Diocese is alleged to have participated) engaged in an act in violation of the TVPRA. Plaintiffs argue that this "knew or should have known" language establishes a negligence standard and allows recovery in the absence of actual knowledge. (Plaintiffs' Response, pp. 8-9). While Plaintiffs may be correct that this third element implies a negligence standard, Plaintiffs' FAC lacks well-pleaded allegations sufficient to withstand a motion to dismiss on the first two elements of the analysis of non-perpetrator liability under § 1595(a). In other words, in the absence of sufficient allegations that the Diocese 1) knowingly benefited financially or by receiving something of value or 2) participated in a "venture," the Court never

need reach the question of whether the Diocese knew or should have known that the "venture" engaged in violations of the TVPRA. But, if the Court does consider this "knew or should have known" element, again the FAC lacks well-pleading allegations supporting the claim. In fact, Plaintiffs' FAC contains no allegations that the Diocese "knew or should have known" about the nature of the alleged forced labor and trafficking alleged against the "perpetrator" Defendants.

Plaintiffs' claim against the Diocese as a non-perpetrator under18 U.S.C. § 1595 requires well-pleaded allegation as to each of the three elements of such a claim in order to satisfy the plausibility standard of *Ashcroft*. As shown, Plaintiffs FAC fails to adequately plead any of the three elements. Plaintiffs' claims against the Diocese premised on 18 U.S.C. § 1589(b) and 18 U.S.C. 1590(a), made actionable by the civil remedy established by 18 U.S.C. § 1595(a), should be dismissed for failure to state a claim.

## III.   PLAINTIFFS' CLAIM OF NEGLIGENCE AGAINST THE DIOCESE FAILS TO STATE A CLAIM

In response to the Diocese's argument in its Opening Brief that Plaintiffs' negligence claim against the Diocese fails to identify a duty of care owed to Plaintiffs, Plaintiffs, in their Response, suggest a new theory – premises liability. (Response, pp. 12-13). Plaintiffs' FAC, however, nowhere mentions a claim of premises liability or the elements for the same. Thus, in the absence of any pleadings of premises liability, this newly-offered theory of negligence cannot save Plaintiffs' negligence claim from dismissal for failure to state a claim.

Plaintiffs, in their Response, but not in their FAC, correctly state the duty of a premises owner is to use ordinary care to keep the premises in a safe condition and the owner is charged with the affirmative duty to protect visitors against dangers known to him and dangers discoverable by the exercise of reasonable care. *Williams v. Plains Tire & Battery, Co., Inc.*,

6

405 P.3d 228 (Wyo. 2017). Plaintiffs' FAC contains no allegations that a dangerous condition existed on church property or that Plaintiffs' suffered physical injury from such dangerous condition. In their Response, however, Plaintiffs assert that the physical exertion of cleaning a small, rural church prior to services – presumably using a vacuum cleaner or dust rag or the like – caused the teenage Plaintiffs physical injury and harm. (Response, p. 13). Manifestly, the law of premises liability cannot be tortured to reach such a result.

In addition, Plaintiffs argue that they can recover on their negligence claim even if they suffered only emotional injury. (Response, pp. 13-14). For the reasons set for in the Diocese's Opening Brief, that contention is not supported by Wyoming law. (Opening Br., pp. 19-20).

Plaintiffs FAC fails to set forth a plausible claim of negligence against the Diocese and the claim is not rescued by the novel arguments in Plaintiffs' Response. Plaintiffs' negligence claim should be dismissed for failure to state a claim.

## IV.   THE MERE ALLEGATION OF MATTERS DISCUSSED UNDER THE SEAL OF A CONFESSION DOES NOT MEET THE REQUIREMENTS OF TWOMBLY AND ASHCROFT

Plaintiffs' Response at 4[1] makes reference to FAC paragraph 74 in hopes of convincing the Court that they have well-pleaded facts sufficient to state of claim against the Diocese. A closer look at FAC paragraph 74 however further exposes the shallowness of Plaintiffs' factual contentions.

> 74. On information and belief, the priests are additionally culpable in that putative class members of the Catholic faith made confession to the priests and disclosed the circumstances of their captivity and abuse.
>
> FAC at 27.

---

[1] Plaintiffs continue to incorrectly refer to Reverend Father Vernon Clark as "Bishop Vernon Clark, the bishop of the Diocese." See Response at 4. Father Clark is not, and never has been, the Bishop of the Diocese. The Bishop of the Diocese of Cheyenne is Bishop Steven Biegler. See also FAC at paragraph 75.

This bald allegation also fails the standard of *Twombly,* 550 U.S. 544 and *Ashcroft,* 556 U.S. 662.  Requesting this Court to force the Diocese to further defend Plaintiffs' baseless allegations against it on the basis of information and belief is the type of "threadbare" allegation that the *Ashcroft* prohibits.  See *Ashcroft* supra at 556 U.S. at 678-979.

In addition, and accepting, for purposes of this Motion only, the allegation of paragraph 74 as true, no priest could ever disclose the confessional exchange of a penitent.  As the Court is well aware, Wyoming recognizes statutory privileges.  See Wyo. Stat. § 1-12-101.  Specifically included among these statutory privileges prohibiting testimony is, to wit:

> (ii)    A clergyman or **PRIEST** concerning a confession made to him in his professional character if enjoined by the Church to which he belongs [Emphasis supplied].

The ecclesiastical law of the Catholic Church specifically prohibits a priest from "breaking the seal of confession."  In this regard Canons 983 and 1388 of the Code of Canon Law state:

> *Canon 983* - §1. The sacramental seal is inviolable; therefore, it is crime for a confessor in any way to betray a penitent by word or in any other manner or for any reason.

> *Canon 1388 §1*. A confessor who directly violates the seal of confession incurs an automatic … excommunication …

Clearly any priest would not disclose a confessional exchange for fear of not only losing his position as a priest but losing his affiliation with the Catholic Church.  See generally the case of *People v Daniel Phillips*, 1 W.L.J. 109 (1843), also found at www.churchstatelaw.com/cases/_people_v_phillips.asp as an early recognition by courts of priest-penitent privilege. See also *Trammel v. U.S.,* 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980);  *In re Grand Jury Investigation,* 918 F.2d 374 (3rd Cir. 1990); and *U.S. v. Dillard*, 795 F3d. 1191 (10th Cir. 2015).

In sum, taking the allegations of FAC paragraph 74 as true alleging upon information and belief that a priest, or priests, in a confession were made aware of circumstances of captivity and abuse falls far short of the standards of *Twombly* and *Ashcroft* supra of stating a plausible claim for relief.

## CONCLUSION

For the reasons set forth in the Diocese's Opening Brief and those stated herein, Plaintiffs' FAC as against the Diocese should be dismissed for failure to state a claim.

DATED this 24th day of May, 2021.

/s/ Paul J. Hickey
Paul J. Hickey, WSB No. 5-1431
Loyd E. Smith, WSB No. 5-2509
Hickey & Evans, LLP
1800 Carey Avenue, Suite 700
P.O. Box 467
Cheyenne, WY 82003-0467
Phone: (307) 634-1525
Fax: (307) 638-7335
Email: phickey@hickeyevans.com
Email: lsmith@hickeyevans.com

*Attorneys for Defendant Diocese of Cheyenne*