Monty L. Barnett, # 6-2694
Rachel E. Ryckman, # 7-4656
Keith R. Olivera (*Pro Hac Vice*)
John C. Matthews (*Pro Hac Vice*)
WHITE AND STEELE, P.C.
Dominion Towers, North Tower
600 17th Street, Suite 600N
Denver, CO  80202-5406
Telephone: (303) 296-2828
mbarnett@wsteele.com
rryckman@wsteele.com
kolivera@wsteele.com
jmatthews@wsteele.com

ATTORNEYS FOR DEFENDANTS
TRIANGLE CROSS RANCH, LLC
GERALD E. SCHNEIDER; MICHAELEEN P. SCHNEIDER
MATHEW SCHNEIDER; MARK SCHNEIDER and THOMAS GEORGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **CARLIE SHERMAN, ANNA GOZUN, AMANDA NASH**, **ANDREW SCAVUZZO,** and **EHAN JELINEK** on behalf of themselves and all similarly situated persons,<br><br>PLAINTIFFS,<br><br>v.<br><br>**TRINITY TEEN SOLUTIONS, INC.,** a Wyoming corporation; **TRIANGLE CROSS RANCH, LLC**, a Wyoming limited liability corporation; **MONKS OF THE MOST BLESSED VIRGIN MARY OF MOUNT CARMEL, d/b/a MYSTIC MONK COFFEE**, a Wyoming corporation; **GERALD E. SCHNEIDER**; **MICHAELEEN P. SCHNEIDER**; **ANGELA C. WOODWARD**; **JERRY D. WOODWARD**; **DANIEL SCHNEIDER**; **MATHEW SCHNEIDER; MARK SCHNEIDER; KARA WOODWARD**; **KYLE WOODWARD**; **THOMAS GEORGE; JUDITH D. JEFFERIS**; **DALLY-UP, LLC**, a Wyoming limited liability corporation; **ROCK CREEK RANCH, INC.**, a Delaware corporation; **DIOCESE OF CHEYENNE**, a Wyoming corporation; and the **SOCIETY OF OUR LADY OF THE MOST HOLY TRINITY**, a Texas corporation; and **NEW MOUNT CARMEL FOUNDATION, INC.**, a Wyoming corporation,<br><br>DEFENDANTS. | Civil Case No. 20-CV-00215-SWS |

**DEFENDANTS TRIANGLE CROSS RANCH, LLC, GERALD E. SCHNEIDER, MICHAELEEN P. SCHNEIDER, MATTHEW SCHNEIDER, MARK SCHNEIDER, AND THOMAS GEORGE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendants Triangle Cross Ranch, LLC, Gerald E. Schneider, Michaeleen P. Schneider, Matthew Schneider, Mark Schneider, and Thomas George ("TCR Defendants"), through their attorneys White and Steele, P.C., hereby file this reply brief in support of their motion under Fed. R. Civ. P. 12(b)(6) to dismiss all claims with prejudice against the TCR Defendants for failure to state a claim upon which relief may be granted.

## I. INTRODUCTION

In their moving brief, the TCR Defendants demonstrated that Plaintiffs' RICO claim and Labor Claims[1] each suffered from multiple fatal deficiencies, any one of which was sufficient to warrant dismissal of that claim. In response to that motion, Plaintiffs fail to raise any colorable challenge to those arguments. Instead, they generally argue that: (1) Plaintiffs' offer of conclusory allegations without any factual support is sufficient to state a claim; and (2) the Court should consider facts raised against other defendants – and not the TCR Defendants – as the basis for keeping the TCR Defendants in this action. Neither argument has merit.

For example, the TCR Defendants demonstrated that Plaintiffs' RICO claim fails because they have not alleged that the conduct at issue was continuous. In response, Plaintiffs contend that they have met their burden because they have offered the conclusory allegation that the wrongful conduct "[has] continued without interruption for approximately ten (10) years or more … and will extend to future victims." Doc. 106 at 193. Glaringly absent from that allegation (or the Complaint) is a single fact suggesting such an allegation was plausible, such as identifying

---

[1] The TCR Defendants are using the same abbreviations for certain parties as found in their moving brief.

1

any person who was harmed in the last eight years, any instance of misconduct during that period, or any fact whatsoever pertaining to the TCR Defendants from July 2012 until present.

Plaintiffs' other approach fares no better. By way of background, the TCR Defendants demonstrated that Plaintiffs' RICO claim was time-barred because the two individuals who had any contact with any TCR Defendants attended TCR in 2011 and 2012 and therefore their claims were barred by RICO's four-year statute of limitations. In response, Plaintiffs argue that the claim is not barred, because a female plaintiff allegedly suffered harm at the hands of another defendant within the statute of limitations. However, Plaintiffs have not alleged that the female plaintiff ever even met any of the TCR Defendants or attended TCR, let alone that the TCR Defendants harmed such an individual. Instead, Plaintiffs contend that the TCR Defendants should be liable for the conduct of other defendants because there are "a plethora of familial connections" between the parties and the Plaintiffs have offered conclusory allegations of a wide-spread RICO enterprise. However, Plaintiffs have not put forth a single specific factual allegation in support of that contention and, accordingly, that line of argument similarly fails.

In total, none of the arguments raised by Plaintiffs can overcome the clear and fatal deficiencies in the Complaint that the TCR Defendants addressed in their moving brief. Accordingly, the Complaint should be dismissed in its entirety and with prejudice.

## II. ARGUMENT

### a. Plaintiffs' RICO claim fails as a matter of law

In its moving brief, Defendants demonstrated four independent, fatal flaws in Plaintiffs' RICO claim:

(1) Plaintiffs' claim is time-barred because the alleged wrongful conduct occurred in 2011 or 2012 and RICO's statute of limitations is four-years;
(2) Plaintiffs do not have standing to pursue a RICO claim because they have not alleged an injury to business or property;

2

(3) Plaintiffs have not alleged continuity, because they have not alleged any wrongful conduct from 2013 to present and the alleged wrongful conduct occurred during a less than one-year period; and

(4) Plaintiffs have not set forth a viable predicate act.

In their opposition brief, Plaintiffs fail to raise a viable challenge to any of these arguments.

### i. Plaintiffs' RICO claim is time barred

A civil RICO claim is subject to a four-year statute of limitations. *See Agency Holding Corp. v. Malley-Drift Assoc., Inc.*, 483 U.S. 143, 156 (1987). As Plaintiffs concede, Jelinek attended TCR in 2011 and Scavuzzo attended TCR in 2012 – and therefore their causes of action accrued no later than 2012. Doc 106 at 87, 131. The Complaint was not filed until late 2020 and therefore those claims are barred by RICO's four-year statute of limitations.

Recognizing this clear defect in their RICO claim, Plaintiffs attempt to allege a vast conspiracy aimed at exploiting child labor that includes every named Defendant. The purpose behind this approach is that Plaintiffs believe one of the female Plaintiffs who stayed at TTS allegedly has a timely RICO claim[2] (unlike her male counterparts) and thus they can circumvent RICO's statute of limitations if they link that Plaintiff to the TCR Defendants. However, that female plaintiff – Plaintiff Nash – never attended TCR, never visited TCR, or never contends that she had any contact whatsoever with any of the TCR Defendants. *See* Doc. 106 at 123-130.

To support this misguided theory, Plaintiffs offer four arguments: (1) the Complaint includes a series of conclusory allegations that there were multiple RICO enterprises, some of which involved both the TCR Defendants and TTS; (2) the Complaint contains a few vague allegations that TTS's owner "followed in the footsteps" of Jerry Schneider by creating TTS; (3) the TCR Defendants and the owners of TTS are related; (4) The Foundation and the Monastery

---

[2] As discussed in the TTS Defendants' moving and reply briefs, that claim is also barred by RICO's statute of limitations and the TCR Defendants hereby incorporate those arguments by reference.

share a managing agent – who has no connection to the TCR Defendants. None of these arguments can salvage Plaintiffs' time-barred RICO claim.

First, the Plaintiffs reference certain conclusory allegations in the Complaint that assert the TTS and the TCR Defendants were involved in a RICO enterprise. *See* Doc. 106 at 187-189. Specifically, without any supporting factual allegation, Plaintiffs contend that "the Individual RICO Defendants have engaged in operating the affairs of TTS, TCR, The Monastery, and the Foundation for over ten (10) years for the purpose of executing essential aspects of a criminal worker exploitation scheme …" *See* Doc. 106 at 188. However, Plaintiffs have not (nor could they) alleged a single fact suggesting coordination between the TTS and TCR Defendants. This failure to assert facts supporting that conclusory allegation is fatal to Plaintiffs' claim of a RICO enterprise. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) citing to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")*; see also Papasan v. Allain,* 478 U.S. 265 (1986).

Second, likely in recognition of that defect in their Complaint, Plaintiffs offer three generic, and innocuous allegations about one of the TCR Defendants, Gerry Schneider, and one of TTS's principals, his daughter Angie Woodward. Specifically, they allege:

- Jerry Schneider "had his daughter … set up a similar ranch for troubled teenage girls beginning in 2002." Doc. 106 at 4.
- "Defendant Gerald Schneider and Defendant Angela Woodward developed a joint scheme." Doc. 106 at 52.
- On or about, March 27, 2002, "Defendants Angela Woodward and Jerry Woodard established TTS…following in Gerald Schneider's footsteps…" Doc. 106 at 53.

These conclusory allegations do not contain a single verifiable fact – let alone a fact demonstrating a RICO enterprise – and accordingly cannot support Plaintiffs' claim. Indeed, if

4

such barebones allegations could support a RICO claim, no defendant could ever have a RICO claim dismissed.

Third, Plaintiffs assert that the "plethora of familial connections" between the Defendants is sufficient to support its RICO enterprise theory. Pl. Br. at 17. Not surprisingly, Plaintiffs fail to point to a single case that holds that simply being members of the same family subjects every member of that family to joint and several liability for the alleged conduct of one family member. Further, Plaintiffs' claim that they have provided "vast evidence as to the continued communication, planning and execution" of the family members is simply false. In truth, Plaintiffs have made generic allegations "upon information and belief" that the TCR Defendants purportedly gave money to the Foundation solely based on the fact that the Foundation has significant assets.[3]

Fourth, Plaintiffs allege that a single individual was a managing agent of both the Foundation and the Monastery. Pl. Br. at 16. That individual, Brother Simon Mary a/k/a Father Nicholas Maroney is not alleged to have any affiliation with the TCR Defendants. As such, that fact is wholly irrelevant to any claim that the TCR Defendants were part of a RICO enterprise with the other named parties.

### ii. Plaintiffs do not have standing to bring a RICO claim

Plaintiffs have not alleged an injury to business or property and therefore do not have standing to bring a RICO clam. As discussed in the Moving Brief, a claim for damages arising from a personal injury generally does not confer standing to pursue a RICO claim. *See Grogan v. Platt*, 835 F.2d 844, 847 (11th Cir. 1988) ("[P]ecuniary losses are so fundamentally a part of

---

[3] Glaringly absent from the Complaint is any reference to the possibility that the Foundation and Monastery could have generated their own revenue – such as through the sale of Mystic Monk Coffee at the Albertson's chain of supermarkets or through Amazon.com – or received donations from any party other than a named Defendant.

5

person injuries that they should be considered something other than injury to 'business or property'.").

To overcome this deficiency, Plaintiffs contend that "payment for unnecessary medical treatment may constitute an injury to property under RICO" and cite *Blevins v. Aksut*, 849 F.3d 1016 (11th Cir. 2017). While true, that statement is irrelevant to the medical treatments alleged here. In *Blevins,* the Court found that the plaintiffs had standing to bring a RICO claim when they had alleged that a defendant doctor had falsely told them that they needed to undergo a heart procedure, they underwent that heart procedure, and then paid the doctor for that procedure. *Id.* at 1021. Here, Plaintiffs have not alleged that that the TCR Defendants tricked them into undergoing unnecessary medical procedures and received payments for such action. To the contrary, Plaintiffs allege that they needed actual medical treatment stemming from alleged personal injuries, such as an arm wound and a rectal injury exacerbated by hard work. Doc. 106 at 134, 139. Accordingly, the medical expense are not injuries to business or property.

Plaintiffs also claim that their purported failure to receive compensation for performing ranch chores was an injury to business or property and cite *Doe I v. Reddy*, No. C 02-05570 WHA, 2003 U.S. Dist. LEXIS 26120, *15 (N.D. Cal. Aug. 4, 2003). That claim is mistaken. In *Doe I*, "Plaintiffs claim defendants fraudulently induced them to come to the United States from India on false promises that they would be provided an education and employment opportunities, but then forced them to work long hours under arduous conditions for pay far below minimum wage and in violation of overtime laws, and sexually abused and physical beat them." *Doe I* at *12. Thus, those individuals were lured to a job with the expectation that they would receive compensation for their work. Conversely here, Plaintiffs could not have had an expectation that they would be paid for completing ranch chores. To the contrary, Plaintiffs' parents paid for their children's participation in the program because they believed their offspring would benefit

6

from ranch living. Doc. 106 at 3, n.1. As such, Plaintiffs' recent demand for compensation for completing chores nearly a decade ago for which they never expected any payment does not confer standing to pursue a RICO claim.

### iii. Plaintiffs have not alleged continuous conduct and thus have not alleged a required element of a RICO claim

In order to plead a viable RICO claim, Plaintiffs must allege that the Defendants have engaged in continuous conduct. As discussed in the TCR Defendants' moving brief, Plaintiffs have not alleged any action by the TCR Defendants from July 5, 2012 until present and accordingly have not met their burden to plead open-ended continuity. Further, Plaintiffs have only alleged conduct that lasted less than a one-year period (nearly a decade ago) and have not plead closed ended continuity.

In response, Plaintiffs contend that they have made two conclusory allegations about continuity and therefore have met their burden. Specifically, Plaintiffs refer to their claims that the alleged wrongful conduct is "in no way isolated … [and has] continued without interruption for approximately ten (10) years or more." Pl. Br. at 20. Plaintiffs then state that the "unlawful activities can and will extend to future victims." Pl. Br. at 20. These conclusory allegations cannot support a RICO claim. *Iqbal*, 556 U.S. at 679. Rather, Plaintiffs would have needed to identify actual individuals who engaged in wrongful conduct, actual victims of that wrongful conduct, and actions taken in furtherance of that wrongful conduct in order to demonstrate continuity. Plaintiffs' failure to meet this burden is not surprising. No Plaintiff attended TCR after July 2012 – and therefore no Plaintiff could have any first-hand knowledge of the activities at TCR over the past nine years. This failure to make any allegations to support the continuous element of a RICO claim warrants dismissal of that cause of action.

### b. Plaintiff's Forced Labor claims fail as a matter of law

7

In its moving brief, the TCR Defendants identified three fatal deficiencies in the Plaintiffs' Labor Claims:

(1) The forced labor statutes do not prohibit parents authorizing third-parties to provide treatment to the children which includes ranch chores;
(2) The parents consented to the treatment at issue;
(3) The plaintiffs have not alleged that the TCR Defendants had knowledge sufficient to support a Labor Claim.

Plaintiffs fail to challenge any of these conclusions and instead rely on mischaracterizations of the ranch chores performed by the male Plaintiffs, arguments that contradict the facts Plaintiffs themselves placed in their Complaint, and a misunderstanding of the knowledge element of a Labor Claim.

### i. The forced labor statutes do not prohibit the conduct at issue

The forced labor statutes prohibit persons from forcing another party to perform work against their will through the use of threats (among other means). Typically, the conduct at issue is a person luring a foreign citizen to the United States under the promise of reasonable pay and living conditions who then prevents that party from leaving and offers them little or no pay for their work. *See e.g., Samirah v. Sabhani*, 772 F. Supp. 2d 437 (E.D.N.Y. 2011). Plaintiffs' attempt to compare the male Plaintiffs to those affected individuals only shows how distant the conduct at issue is from those cases.

For example, in *Kiwanuka v. Bakilana*, the plaintiff was promised work as a maid and nanny but upon her arrival to the United States her passport was commandeered and she was forced to work long hours for minimal pay under the threat of deportation. 844 F. Supp. 2d 107, 110-112 (D.D.C. 2012). Conversely here, Plaintiffs were brought to an advertised working ranch and were required to perform ranch chores without any promise that they would be compensated. Indeed, their parents paid for the children to attend TCR. Moreover, Scavuzzo and Jelinek were permitted to (and did) leave TCR prior to the completion of their treatment

8

program and thus were not held captive like the *Kiwanuka* plaintiff. Doc. 106 at 134, 139. Further, Scavuzzo and Jelinek have not alleged a single identified instance of misconduct that could have "compelled" them to complete their chores, unlike the *Kiwanuka* plaintiff who had her passport confiscated.[4] Indeed, the Plaintiffs' attempt to link the male Plaintiffs with actual victims of forced labor and human trafficking merely shows how their allegations fall well short of a viable claim.

### ii. The parents consented to their children's participation in the program

The male Plaintiffs' parents (and Scavuzzo himself when he turned 18) consented to the Plaintiffs' attendance at TCR and performance of ranch chores as part of their treatment program. As Plaintiffs' Complaint confirms, the parents of TCR residents willingly sent their children to a **working ranch** and paid substantial tuition fees so that their children could experience day-to-day life on a ranch. Doc. 106 at 3, 3 n.1.

In response, Plaintiffs allege that the parents did not consent to their children performing ranch chores because they were apparently not aware that a working ranch required residents and staff to perform chores. Such an allegation is implausible on its face. Doc. 106 at 3, 3 n.1 ("The Triangle Ranch is advertised as a fifty thousand (50,000) acre working ranch …"). And, to be clear, parents can consent to their minor children performing chores. *See United States v. Toviave*, 761 F.3d 623, 630 (6th Cir. 2014) ("An American parent has always had the right to make his child perform household chores.").[5]

---

[4] Plaintiffs offer a series of generalized statements of abuse and threats of abuse without providing a single verifiable fact to substantiate those claims. For example, Plaintiff contend that Tom George physically abused Jelinek on two occasions but conveniently omit any detail that could verify such as claim, like the manner of abuse, the time or place it occurred, and the individuals who witnessed such conduct. Doc. 106 at 140 (g), n. 38.

[5] Plaintiffs also attempt to mislead the Court by suggesting that the parents of TCR residents did not sign lengthy consent forms detailing the very chores at issue and confirming that the treatment program was strenuous. Pl. Br. at 25. As Plaintiffs are aware (or should be aware if they diligently investigated their claims prior to filing this action), the parents of TCR did sign such a form confirming full and knowing consent.

Plaintiffs also argue that the work performed by the residents would not constitute ranch chores. However, as Plaintiffs' Complaint concedes, the residents were responsible for helping to care for the ranch's land, equipment, and livestock. Doc. 106 at 132, 137. Such conduct is the very definition of ranch chores – and what any reasonable person would expect to have to do when living at a working ranch. Accordingly, when the parents consented to their children attending TCR – a working ranch – they also consented to their children performing ranch chores such as those detailed in the Complaint.

### III. CONCLUSION

WHEREFORE the TCR Defendants respectfully ask the Court to dismiss the Plaintiffs' claims against the TCR Defendants in its entirety and with prejudice.

Dated: May 24, 2021

WHITE & STEELE, P.C.

*/s/ John C. Matthews*
Monty L. Barnett, #6-2694
Rachel E. Ryckman, #7-4656
Keith Olivera (*Pro Hac Vice*)
John C. Matthews (*Pro Hac Vice*)
mbarnett@wsteele.com
rryckman@wsteele.com
kolivera@wsteele.com
jmatthews@wsteele.com

ATTORNEYS FOR DEFENDANTS
TRIANGLE CROSS RANCH, LLC
GERALD E. SCHNEIDER
MICHAELEEN P. SCHNEIDER
MATHEW SCHNIDER
MARK SCHNEIDER
THOMAS GEORGE

## **CERTIFICATE OF SERVICE**

    I hereby certify that the foregoing document was filed on May 24, 2021, with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

                                                 */s/ John C. Matthews*
                                                 For White and Steele