

U.S. DISTRICT COURT
DISTRICT OF WYOMING

# UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

2021 NOV 30  AM 10: 18

MARGARET BOTKINS, CLERK
CASPER

| | |
|---|---|
| CARLIE SHERMAN, ANNA GOZUN, AMANDA NASH, ANDREW SCAVUZZO, and EHAN JELINEK, on behalf of themselves and similarly situated persons,<br><br>        Plaintiffs,<br><br>    v.<br><br>TRINITY TEEN SOLUTIONS, INC., a Wyoming corporation; TRIANGLE CROSS RANCH, LLC, a Wyoming limited liability company; MONKS OF THE MOST BLESSED VIRGIN MARY OF MOUNT CARMEL, d/b/a MYSTIC MONK COFFEE, a Wyoming corporation; GERALD E. SCHNEIDER; MICHAELEEN P. SCHNEIDER; ANGELA C. WOODWARD; JERRY D. WOODWARD; DANIEL SCHNEIDER; MATHEW SCHNEIDER; MARK SCHNEIDER; KARA WOODWARD; KYLE WOODWARD; THOMAS GEORGE; JUDITH D. JEFFERIS; DALLY-UP, LLC, a Wyoming limited liability company; ROCK CREEK RANCH, INC., a Delaware corporation; DIOCESE OF CHEYENNE, a Wyoming corporation; SOCIETY OF OUR LADY OF THE MOST HOLY TRINITY, a Texas corporation; and NEW MOUNT CARMEL FOUNDATION, INC., a Wyoming corporation,<br><br>        Defendants. | Case No. 20-CV-215-SWS |

---

## ORDER GRANTING IN PART AND DENYING IN PART SECOND MOTION TO DISMISS OF DEFENDANTS TRINITY TEEN SOLUTIONS, ANGELA WOODWARD, JERRY WOODWARD, KARA WOODWARD, KYLE WOODWARD, AND DALLY-UP

---

This case comes before the Court on the second motion to dismiss under Fed. R.

Civ. P. 12(b)(6) filed by Defendants Trinity Teen Solutions, Angela Woodward, Jerry Woodward, Kara Woodward, Kyle Woodward, and Dally-Up, LLC (collectively, "TTS Defendants") (Doc. 123, 123-1).  Plaintiffs filed an opposition thereto (Doc. 136), and the movants replied (Doc. 146).  Having considered the parties' arguments and reviewed the record herein, the Court finds the motions to dismiss should be granted in part and denied in part.

## INTRODUCTION

Plaintiffs' putative class action alleges the parents of "troubled teen" minors paid to send their children to one of two working ranches in Wyoming where the teens were supposed to receive various forms of traditional and cutting-edge therapy and schooling. Plaintiffs contend it was all a racket, though, as the ranches were light on the education, even lighter on the therapy, and largely forced the teenagers to labor for many hours per day under horrible conditions.  They allege each Defendant was either directly involved with the scam or knowingly benefitted from the forced labor.  Plaintiffs assert federal causes of action for unlawful forced labor, human trafficking, and violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), and state-law causes of action for negligence and/or negligent infliction of emotional distress.  (Am. Compl. Doc. 106.)

## STANDARD FOR RULE 12(b)(6) MOTIONS TO DISMISS

TTS Defendants moved to dismiss the claims under Fed. R. Civ. P. 12(b)(6) by alleging Plaintiffs have failed to state a plausible claim for relief.

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence

that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint's factual allegations, assumed to be true, must "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In the context of a 12(b)(6) motion to dismiss, this plausibility standard requires the plaintiff to plead facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard does not require a plaintiff to show a defendant probably acted wrongfully, but it requires more than "a sheer possibility." *Id.* That is, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphases in original).

"Thus, mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). The Court accepts the nonmoving party's well-pled factual allegations as true and construes them in the light most favorable to the nonmoving

party, but it is not bound to accept an asserted legal conclusion as true. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991); *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## PLAINTIFFS' GENERAL ALLEGATIONS

In very general terms, Plaintiffs' amended complaint asserts the following primary points:

- TCR Defendants own and/or operate the Triangle Cross Ranch (TCR) in northern Wyoming which took in "troubled teen" males, having approximately 23 such males at any given time. (Am. Compl. ¶¶ 3, 144.) At a significant monthly cost to the teen's parents/guardians, TCR promised to provide focused education and therapy/counseling to correct the teen's misguided ways. (Am. Compl. ¶¶ 2, 4; p. 5 n.1.) The owners of TCR also founded Mount Carmel Youth Ranch (MCYR), which operated as a nonprofit group home to provide services to troubled teens. (Am. Compl. ¶ 3.) MCYR operated at TCR and closed in November 2012. (*Id.*)

- Other Defendants (TTS Defendants) own and operate another northern Wyoming ranch, Trinity Teen Solutions (TTS), which took in "troubled teen" females, having approximately 12 such females at any given time. (Am. Compl. ¶¶ 4, 144.) Again at a significant monthly cost to the teen's parents/guardians, TTS promised to provide focused education and therapy/counseling to correct the teen's misguided ways. (Am. Compl. ¶¶ 2, 4, 5; p. 5 n.1.)

- The owners of TCR and the owners of TTS are close family relatives. (Am. Compl. ¶¶ 3, 4.)

- Immediately upon a troubled teen's arrival at either TCR/MCYR or TTS as a resident, Defendants entirely disregarded the promises of education and treatment, and instead began mistreating the resident, exploiting the resident for cheap labor, and forcing the resident to live in subhuman conditions. (Am. Compl. ¶¶ 10-16.)

Plaintiffs contend all Defendants either directly participated in the mistreatment or

financially benefited from such mistreatment, e.g., by receiving free forced labor[1] at its facilities.

## PLAINTIFFS' FIVE CAUSES OF ACTION[2]

Counts 1, 2, and 3 in Plaintiffs' amended complaint assert claims under the Trafficking Victims Protections Reauthorization Act of 2008 (TVPRA), which is enforceable between private parties through 18 U.S.C. § 1595(a). Count 1 asserts a violation of 18 U.S.C. § 1589(a), which holds liable those who directly and unlawfully force others to perform labor. Count 2, under § 1589(b), concerns those who, while not directly forcing illegal labor, know or should know of the unlawful nature of the labor and benefit from the forced labor. Count 3 alleges a violation of 18 U.S.C. § 1590(a), which imposes liability for trafficking humans for forced labor.

Count 4 asserts certain Defendants violated the Racketeer Influenced and Corrupt Organizations Act (RICO), specifically 18 U.S.C. § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in [or affecting] interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" RICO is enforceable civilly by a person "injured in his business or property." 18 U.S.C. § 1964(c).

Finally, Plaintiffs' Count 5 is a state-law tort claim, described as "Negligence and Negligent Infliction of Emotional Distress." (Am. Compl. p. 67.)

---

[1] The amended complaint repeatedly refers to "child labor," and indeed the amended complaint describes most of the alleged forced labor coming from minors. The Court refers to it simply as "forced labor," though, because at least one named Plaintiff was 18 years old at the time of his stay at TCR (Am. Compl. ¶ 134), and therefore was a legal adult at the time. *See* Wyo. Stat. Ann. § 14-1-101(a).

[2] Not all causes of action are alleged against every defendant.

## SPECIFIC ALLEGATIONS AGAINST TTS DEFENDANTS

Relative to this motion to dismiss, Counts 1 and 4 are asserted against all TTS Defendants except Dally-Up. (Am. Compl. pp. 59, 62.) Counts 2 and 3 are asserted against all TTS Defendants. (*Id.* pp. 60, 61.) Count 5 is asserted against only TTS and Dally-Up. (*Id.* p. 67.)

Defendants Angela and Jerry Woodward are husband and wife, and they own Trinity Teen Solutions, Inc. (TTS), which is a Wyoming corporation that operates as a "working ranch" in northern Wyoming. (Am. Compl. ¶¶ 4, 35, 36.) Parents of "troubled" or "at-risk" teenaged females pay a significant monthly fee (possibly up to $9,000 per month) to send their child to TTS for an extended stay (several months at a minimum), where TTS promised to continue the teen female's education, provide various forms of therapy and counseling, engage the teen female in traditional ranch life including ranch chores, and assist her in growing spiritually. (*Id.* ¶¶ 3, 7, 113, 118, 123, 146; *id.* p. 9 n.2.) Defendants Kara and Kyle Woodward are the adult children of Angela and Jerry Woodward, and each works at TTS in an ownership and/or managerial capacity. (*Id.* ¶¶ 40, 41.) Defendant Dally-Up owns the land on which TTS operates, and Dally-Up in turn is owned by Defendant Angela Woodward. (*Id.* ¶ 44.)

TTS has been operating as a "residential treatment center" since 2002. (*Id.* ¶ 3.) Plaintiffs contend the promises of therapy and education were a sham, and instead the teen females spent most of their time engaging in forced manual labor and living in awful conditions that lacked basic human necessities. (*Id.* ¶¶ 2, 4-10, 52-53, 57.) Plaintiff Sherman was a resident at TTS from May 2012 to July 2013 and again from July 2014 to

October 2015. (*Id.* ¶ 113.) Plaintiff Gozun was a resident at TTS from February 2012 to August 2012. (*Id.* ¶ 118.) Plaintiff Nash was a resident at TTS from May 2015 to November 2015. (*Id.* ¶ 123.) The Court will refer to Plaintiffs Sherman, Gozun, and Nash collectively as "Female Plaintiffs."

More specific allegations relevant to each cause of action will be addressed below in the Court's discussion.

## DISCUSSION

The Court will address the sufficiency of each alleged cause of action separately.

**1.**   **Count 1 - Liability as a Primary Offender Under 18 U.S.C. § 1589(a) for Knowingly Providing or Obtaining Illegal Forced Labor**

Plaintiffs seek to hold all TTS Defendants except Dally-Up liable under 18 U.S.C. § 1589(a) in Count 1 as primary offenders. Section 1589(a) holds liable:

> (a)    Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—
>
>    (1)    by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>    (2)    by means of serious harm or threats of serious harm to that person or another person;
>    (3)    by means of the abuse or threatened abuse of law or legal process; or
>    (4)    by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint[.]

In their amended complaint, Plaintiffs recite categories (1), (2), and (4) from § 1589(a) in Count 1 (Am. Compl. ¶¶ 161-163), thus the Court considers those means to be operative.

Section 1589(a) (as well as 1589(b) and 1590(a)) is enforceable by a victim, who

"may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees." 18 U.S.C § 1595(a). Section 1589(a) is intended to hold liable the person who actually employs the force or threats against the victim to extract unlawful labor or services from the victim.

Plaintiffs have pled a plausible claim against TTS Defendants under § 1589(a). Accepting the well-pled factual allegations as true, the amended complaint plausibly asserts TTS and its ownership/management (including the four individual Woodwards represented in this motion to dismiss) knowingly provided or obtained labor from Female Plaintiffs by means of force, threats of force, threats of serious harm, or through a scheme intended to cause these Plaintiffs to believe they would suffer serious harm if they failed to perform such labor.  TTS Defendants contend Plaintiffs have not plausibly alleged that TTS Defendants operate "a working ranch," and therefore Plaintiffs have not plausibly alleged that TTS Defendants obtained the benefit of any labor or services.  (Doc. 123-1 pp. 3-4, 26, 28, 35[3]; Doc. 146 pp. 7-8.) Accepting the allegations in the amended complaint as true and reading all inferences in Plaintiffs' favor, the "working ranch theory" is well pled. The amended complaint alleges Female Plaintiffs were forced to perform many types of typical ranch work, including shoveling manure, loading and unloading hay trucks, running

---

[3] The Court has considered TTS' "Parent Handbook" as part of this motion to dismiss, which was referenced in and attached to the amended complaint (Doc. 123-1).  The Court has not considered any other materials outside the pleadings and parties' briefing.

irrigation, fixing fence, cleaning ranch equipment, cooking, cleaning, and caring for many animals (including cows, sheep, pigs, horses, chickens, cats, dogs, etc.). (Am. Compl. ¶¶ 62-63, 114, 119, 124.) TTS Defendants' contentions that 160 acres "is too small to support a working ranch" (Doc. 146 p. 8) is a factual dispute that is not appropriate fodder at the dismissal stage.[4]

Further, while the amended complaint plausibly alleges Female Plaintiffs were forced to perform typical ranch duties at TTS, it also plausibly alleges they were forced to do more than just ordinary "ranch chores" or "good old-fashioned ranch work" (Doc. 106-1 p. 23). For example, Plaintiffs Sherman and Gozun allege they were required to clean at Mystic Monk Coffee, install fencing at a different ranch, and provide labor at various other locations away from TTS. (Am. Compl. ¶¶ 114-115, 119-120.) Thus, Plaintiffs have plausibly pled they were required to perform typical ranch-related tasks as well as labor well beyond standard "ranch work."

Plaintiffs further allege TTS Defendants forced Female Plaintiffs to perform these tasks through various threats and punishments, such as not being allowed to progress through the six "levels" of residency at TTS, food and sleep deprivation, additional undesirable labor, being forced to wear signs containing humiliating statements, being forced to run a hill, forced isolation (including sitting in a chair staring at a wall for extended periods of time), restricted access to a restroom, and ridicule. (Am. Compl. ¶¶

---

[4] TTS Defendants' argument that "[c]ats and dogs are not part of working ranch operations" (Doc. 146 p. 8) is likewise not an appropriate factual finding at the dismissal stage, but it's also non-sensical. Certain dog breeds (shepherds) have long been used for livestock herding, and cats are often employed for rodent control.

116, 117, 122, 127, 130.)

These allegations, accepted as true at this stage of the proceedings, plausibly allege TTS Defendants knowingly obtained labor from Female Plaintiffs that benefited TTS' ranch operations, and TTS Defendants knowingly provided Female Plaintiffs' labor to the benefit of others such as Mystic Monk Coffee. These allegations also sufficiently establish this labor was obtained and provided by means of force, threats of force, threats of serious harm, or by means of a scheme intended to cause Female Plaintiffs to believe they would suffer serious harm if they failed to perform such labor. Finally, these allegations defeat TTS Defendants' defense of consent (Doc. 123-1 pp. 9-10, 30-32), at least at this early stage, because they lead to the reasonable inference that the parents of Female Plaintiffs did not consent to labor beyond "various forms of good old-fashioned ranch work" (Doc. 106-1 p. 23) and did not consent to the alleged threats/punishments, such as food and sleep deprivation or forced isolation. The allegations of what Female Plaintiffs were forced to endure exceeds what a parent would reasonably understand they were consenting to by sending their child to TTS for reformation.

Consequently, the amended complaint alleges a plausible cause of action under 18 U.S.C. § 1589(a) on behalf of Plaintiffs Sherman, Gozun, and Nash against TTS and its ownership/management (Angela Woodward, Jerry Woodward, Kyle Woodward, and Kara Woodward).

## 2.   Count 2 - Venture Liability Under 18 U.S.C. § 1589(b) for Knowingly Benefiting from Illegal Forced Labor

Plaintiffs allege Count 2 against all TTS Defendants. Section 1589(b) holds liable

"[w]hoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means." To avoid dismissal of this claim, "plaintiffs must plausibly allege that [plaintiffs] provided labor or services that were procured by a method that is prohibited under the TVPRA, and that [TTS Defendants] knowingly benefited from participating in this venture." *Bistline v. Parker*, 918 F.3d 849, 871 (10th Cir. 2019). "Venture" means "any group of two or more individuals associated in fact, whether or not a legal entity." *Id.* at 873 (quoting 18 U.S.C. § 1591(e)(6)).

Plaintiffs have stated a plausible claim for relief under § 1589(b) against TTS Defendants. Accepting the factual allegations as true, the amended complaint plausibly asserts TTS Defendants participated together in a venture where they provided and received forced labor from Female Plaintiffs while benefitting from the forced labor and, at least as to some TTS Defendants, the monthly monetary payments from Plaintiffs' parents. Further, through their ownership/management positions at TTS and their personal work at TTS, it can reasonably be inferred that the individual TTS Defendants (the Woodwards) knew or should have known of the unlawful nature of the labor. And that knowledge is chargeable to TTS and Dally-Up through their ownership, at least at this early stage of litigation.

Consequently, the amended complaint alleges a plausible cause of action under 18 U.S.C. § 1589(b) on behalf of Female Plaintiffs against TTS Defendants.

3.    **Count 3 - Liability under 18 U.S.C. § 1590(a) for Knowingly Trafficking a Person for Forced Labor or Services**

Section 1590(a) holds liable "[w]hoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter." It "imposes liability for [human] trafficking, which is separate and distinct from liability for forced labor or services." *Gilbert v. United States Olympic Comm.*, 423 F. Supp. 3d 1112, 1133 (D. Colo. 2019). Plaintiffs allege this cause of action against all TTS Defendants.

Much of the foregoing analysis concerning § 1589 applies here. Accepting Plaintiffs' factual allegations as true and reading all favorable inferences in their favor, the amended complaint has stated a plausible claim under § 1590(a) against TTS Defendants. Specifically, the amended complaint asserts TTS Defendants advertised TTS as a therapeutic working ranch while in truth recruiting Female Plaintiffs (and others) to make them provide forced labor at the ranch and beyond with little return on the promises of therapy and education. The amended complaint alleges TTS Defendants provided Plaintiffs Sherman and Gozun so they could provide forced labor for other places and businesses, such as Mystic Monk Coffee and another ranch. (Am. Compl. ¶¶ 115, 120.) And, again, the individual TTS Defendants' positions of ownership and/or management allow the reasonable inference that they knew or should have known of the unlawful nature of the labor and the provision of the forced labor elsewhere, and that knowledge is chargeable to TTS and Dally-Up through their agency of ownership.

Consequently, the amended complaint alleges a plausible cause of action under 18

U.S.C. § 1590(a) on behalf of Plaintiffs Sherman, Gozun, and Nash against TTS Defendants.

4.   **Count 4 - RICO Violation Under 18 U.S.C. § 1964(c) and 1962(c)**

RICO "created a new civil cause of action for '[a]ny person injured in his business or property by reason of a violation' of 18 U.S.C. § 1962." *RJR Nabisco, Inc. v. Eur. Cmty.*, 136 S. Ct. 2090, 2096 (2016) (quoting 18 U.S.C. § 1964(c)). "That is, RICO vests a private citizen with substantive rights to avoid 'injur[ies]' to 'his business or property' caused by a pattern of racketeering activity, and it explicitly creates a federal cause of action to vindicate those federal rights." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 881 (10th Cir. 2017). A civil claim under § 1964(c) requires a plaintiff to plead: "(1) that the defendant violated § 1962; (2) that the plaintiff's business or property was injured; and (3) that the defendant's violation is the cause of that injury." *Id.* In this case, Plaintiffs allege a violation of § 1962(c), under which "a RICO plaintiff must allege a 'person' '(1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1182 (10th Cir. 2019) (quoting *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016)).

"Racketeering activity" includes any act indictable under the TVPRA, and "pattern of racketeering activity" means at least two incidents of racketeering activity. 18 U.S.C. § 1961(1), (5). Plaintiffs correctly identify that forced labor and human trafficking constitute racketeering activity ("predicate acts"). (Doc. 136 p. 27); *see Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1168-69 (D. Kan. 2018). And as the Court determined above, Plaintiffs have adequately pled plausible claims of forced labor and human trafficking against TTS

Defendants.

Nonetheless, Plaintiffs' RICO claim against TTS Defendants fails for two independent reasons: (1) it is time-barred by the statute of limitations, and (2) it does not plausibly allege an adequate claim of injury to business or property.

### 4.1   Statute of Limitations

The statute of limitations for a civil RICO claim is four years. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987); *see also Rotella v. Wood*, 528 U.S. 549, 555 (2000) (holding the statute of limitations begins to run regardless of whether or not a plaintiff is aware of the racketeering occurring). The statute of limitations is an affirmative defense, and normally a plaintiff need not plead against an affirmative defense within the complaint. However, dismissal under Rule 12(b)(6) on statute-of-limitations grounds is warranted where, as here, "the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).

It appears the Tenth Circuit and the U.S. Supreme Court have not decided whether the "injury-discovery rule" or the "injury-occurrence rule" applies to a civil RICO claim. *See Robert L. Kroenlein Tr. ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1276 (10th Cir. 2014). Under the injury-occurrence rule, a RICO claim would accrue, and the four-year limitations period would begin to run, when the injury occurs, even if the injury was not discovered immediately. *Id.* at 1275. Under the injury-discovery rule, the claim accrues when, in the exercise of reasonable diligence, the injury could have been discovered. *Id.*

Under either accrual rule, though, Female Plaintiffs' claims would have accrued in

this case no later than when their stays at TTS ended because that is the latest they would have endured or could have reasonably discovered the injuries complained of herein. *See id.* at 1280 (the four-year clock starts when "the plaintiff either has actual or inquiry notice of the injury"). Plaintiff Sherman was last a resident at TTS in October 2015, Plaintiff Gozun in August 2012, and Plaintiff Nash in November 2015. (Am. Compl. ¶¶ 113, 118, 123.) This lawsuit was filed in November 2020 (Doc. 1), about five years after a Female Plaintiff (Nash) last resided at TTS and about a year after the RICO statute of limitations expired. In opposition to the motion to dismiss, Plaintiffs do not deny that the RICO claims of Plaintiffs Sherman and Gozun, by themselves, fall outside the limitations period. Instead, Plaintiffs argue that the RICO claim of Plaintiff Nash falls within the limitations period and saves the RICO claim for the other Plaintiffs. (Doc. 136 pp. 28-30.) This argument is unavailing for two reasons.

First, even assuming Plaintiffs Sherman and Gozun could ride on the timing of Plaintiff Nash's RICO claim, the amended complaint demonstrates Plaintiff Nash's RICO claim is untimely. Plaintiff Nash was a resident at TTS as late as November 2015 (Am. Compl. ¶ 123), which makes her RICO claim about a year late in this November 2020 lawsuit absent some tolling or savings provision. In that regard, the amended complaint asserts: "Plaintiff Nash was under the disability of minority until November 28, 2017. Accordingly, Plaintiff Nash's statute of limitations was tolled until that date." (Am. Compl. ¶ 128.) And in opposition to TTS Defendants' motion for dismissal, Plaintiffs argue, "This action was brought within three years of [Plaintiff Nash's infancy] disability being extinguished (Am. Comp. ¶ 128) and therefore within RICO's four-year limitations

period." (Doc. 136 p. 28.) Plaintiffs cite no authority for the proposition that RICO's four-year statute of limitations was tolled during Plaintiff Nash's infancy, likely because the law does not support such a proposition.

> As the Fourth Circuit has recognized, "[t]he blackletter rule ... is that a statute of limitations runs against all persons, even those under a disability, unless the statute expressly provides otherwise." *Vogel v. Linde*, 23 F.3d 78, 80 (4th Cir. 1994). The Supreme Court long ago recognized this rule as extending to minority tolling: "The exemptions from the operation of statutes of limitations, usually accorded to infants ..., do not rest upon any general doctrine of the law ... but in every instance upon express language in those statutes giving them time, after majority ... to assert their rights." *Vance v. Vance*, 108 U.S. 514, 521, 2 S.Ct. 854, 27 L.Ed. 808 (1883); *see also United States v. Alvarez*, 710 F.3d 565, 568 n.10 (5th Cir. 2013) ("The federal courts have consistently rejected requests to create tolling exceptions for minors, reasoning that in the absence of an express legislative directive to the contrary, parents and guardians are assumed to be adequate surrogates."). Federal courts have consistently applied *Vance*, following minority tolling for federal statutes of limitations only if the statute setting out the limitations period so specifies. *See, e.g.*, *Alvarez*, 710 F.3d at 567; *Vogel*, 23 F.3d at 80.

*Booth v. United States*, 914 F.3d 1199, 1204–05 (9th Cir. 2019) (footnote omitted); *see Brewer v. Miami Cnty. Hosp.*, 862 F. Supp. 305, 308 (D. Kan. 1994) ("A statute of limitations runs against minors in the absence of an express statutory provision tolling the limitations period.") (citing 51 Am. Jur. 2d *Limitation of Actions* § 186). RICO does not include an express statute of limitations, so the U.S. Supreme Court borrowed the four-year RICO limitations period from the Clayton Act after finding it most analogous. *Agency Holding*, 483 U.S. at 150-52. Neither RICO nor the Clayton Act include an express statutory provision tolling the limitations period for infancy. *See* 15 U.S.C. § 15b (Clayton Act's four-year statute of limitations). Plaintiffs offer no authority to suggest the "blackletter rule" (that a federal statute of limitations runs against minors absent an express

tolling provision for infancy) should not apply to RICO claims, and the Court's own research has not revealed any such exception. *Cf. Hall v. E. I. Du Pont De Nemours & Co.*, 312 F. Supp. 358, 360-62 (E.D.N.Y. 1970) (rejecting the plaintiff's argument that the Clayton Act's four-year limitations period should be tolled for infancy). Thus, Plaintiff Nash's RICO claim was filed more than four years after it accrued, and the limitations period was not tolled by her infancy in the meantime. Consequently, even if it were legally possible, Plaintiff Nash does not offer a timely RICO claim to which Plaintiffs Sherman and Gozun can bootstrap their own untimely RICO claims.

Second, one named RICO plaintiff cannot carry the other RICO plaintiffs to statute-of-limitations safety; each named plaintiff must possess their own non-time-barred RICO claim, as is the case with non-RICO claims. Allowing one plaintiff to satisfy a statute of limitations as to all other plaintiffs would render statutes of limitations a nullity.

> The interpretation of the rule urged by Plaintiffs would not only expand substantive rights, but would effectively eviscerate the statute of limitations. Plaintiffs' rule would permit a time-barred employee to have his claim saved at any time after the passing of his filing deadline merely by a timely filing plaintiff who alleges age discrimination dating back several years.

*Morton v. ICI Acrylics, Inc.*, 69 F. Supp. 2d 1038, 1045 (W.D. Tenn. 1999); *see also Rodriguez v. It's Just Lunch, Int'l*, No. 07 CIV. 9227 SHS, 2013 WL 1749590, at *5 (S.D.N.Y. Apr. 23, 2013) (dismissing the unjust enrichment claim of one plaintiff who failed to satisfy the statute of limitations, but allowing the unjust enrichment claims of the other plaintiffs who had met the statute of limitations to proceed); *Logan v. City of Pullman Police Dep't*, No. CV-04-214-FVS, 2006 WL 994754, at *5–6 (E.D. Wash. Apr. 10, 2006), *on reconsideration in part sub nom. Logan v. Weatherly*, No. CV-04-214-FVS, 2006 WL

1582379 (E.D. Wash. June 6, 2006) (dismissing as time-barred the assault claims of 43 plaintiffs who were added to the case after the statute of limitations for assault had expired despite the original plaintiff's timely assault claim). Each plaintiff must individually satisfy the statute of limitations for their own claims, but based on the dates pled in the amended complaint, Plaintiffs Sherman, Gozun, and Nash do not meet the limitations period for their RICO claims.

The RICO claims of Plaintiffs Sherman, Gozun, and Nash must therefore be dismissed as time-barred.

### 4.2    Injury to Business or Property

Even if timely, the RICO claims of Female Plaintiffs are inadequately pled. A civil RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by [reason of] the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). "Injury in his business or property" connote "words of limitation." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 279 (1992) (O'Connor, J., concurring). Injury to one's business or property excludes personal injuries. *RJR Nabisco, Inc. v. Eur. Cmty.*, 136 S. Ct. 2090, 2108 (2016). "Additionally, injury to … reputation, dignity and emotional damages are not the type of injuries redressable by the antitrust laws or RICO which are expressly limited to injuries to 'business or property.'" *Tal v. Hogan*, 453 F.3d 1244, 1254 (10th Cir. 2006). The requirement of an injury to business or property "helps to assure that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000).

Plaintiffs contend that TTS Defendants' failure to pay them for their labor is a sufficient allegation of business or property loss, contending, "Plaintiffs' [sic] have plausibly alleged a concrete financial loss in that TTS Defendants forced Plaintiffs to work long hours without pay." (Doc. 136 p. 30.) Plaintiffs cite to *Jane Doe I v. Reddy*, No. C 02-05570 WHA, 2003 WL 23893010, at *1 (N.D. Cal. Aug. 4, 2003), to support this proposition, but *Reddy* is materially different from this case. In *Reddy*, the plaintiffs alleged "defendants fraudulently induced them to come to the United States from India on false promises that they would be provided an education and employment opportunities, but then forced them to work long hours under arduous conditions for pay far below minimum wage and in violation of overtime laws, and sexually abused and physical beat them." *Id.*, 2003 WL 23893010, at *1. Thus, the plaintiffs in *Reddy* were induced by the defendants to come to the United States, at least in part, for business or employment purposes.

Unlike the plaintiffs in *Reddy*, there is no allegation here that Female Plaintiffs (or their parents) were fraudulently induced to attend TTS for business or employment purposes. Based on Plaintiffs' allegations that the residents were sent there by their parents, at great cost to their parents, for treatment and reform purposes, it is unreasonable to infer that Female Plaintiffs attended TTS for employment or were ever induced by promises of wage payment. Plaintiffs have not alleged Female Plaintiffs (or their parents) ever expected to be paid during their stays at TTS; indeed, the allegation is that their parents paid for them to be there. According to the amended complaint, Female Plaintiffs attended TTS, an alleged "working ranch under the guise of a Residential Treatment Center,"

because they were "troubled teenage girls," not because they were looking for or were promised employment opportunities, and TTS "induce[d] parents of troubled minors to pay substantial sums of money under the guise that their children would receive cutting edge residential treatment, therapy, and continuing education." (Am. Compl. ¶ 4.) Thus, there is no reasonable inference that Plaintiffs Sherman, Gozun, and Nash attended TTS for business or employment purposes, and there is also no reasonable inference that TTS Defendants' failure to pay wages to Female Plaintiffs for their labor amounted to injury to their business or property. *Cf. Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168 (9th Cir. 2002) ("The **employees** allege an injury to their property in the form of lost wages.") (emphasis added). Here, the amended complaint does not allege Plaintiffs were ever employees of TTS or intended to be employed by TTS.

Plaintiffs have not pled a viable RICO claim against TTS Defendants because they have not plausibly alleged Plaintiffs Sherman, Gozun, or Nash (the three named Plaintiffs who attended TTS) suffered an injury to their business or property. The RICO claims of Plaintiffs Sherman, Gozun, and Nash must therefore be dismissed for failure to state a claim upon which relief can be granted.

5.   **Count 5 - Negligence and Negligent Infliction of Emotional Distress Under State Law.**

In their final cause of action, Plaintiffs assert negligence and negligent infliction of emotional distress against Defendant Entities TTS and Dally-Up (and 2 other entities). (Am. Comp. p. 67.) They allege generally that Defendants TTS and Dally-Up "owed Plaintiff Nash and the Subclass a duty of care and did breach that duty of care through the

acts complained of herein." (Am. Compl. ¶ 201.) They more specifically assert, "Defendant TTS, acting through its employees and agents, by extreme and outrageous conduct recklessly caused Plaintiff Nash and others similarly situated severe emotional distress and/or bodily harm through conduct described herein that goes beyond all possible bounds of decency, is regarded as atrocious, and is utterly intolerable in a civilized society." (*Id.* ¶ 202.)

In their opposition to dismissal, Plaintiffs clarify their negligence claim against Dally-Up is based on premises liability.[5] (Doc. 136 pp. 31-33.) And their negligent-infliction-of-emotional-distress claim is centered on Plaintiff Nash's alleged development of Post-Traumatic Stress Disorder (PTSD) from her stay at TTS. (*Id.* pp. 34-36.)

As with all state-law claims of negligence, a plaintiff must prove (1) the defendant owed a certain duty of care to the plaintiff, (2) the defendant breached the duty of care, and (3) the defendant's breach was the proximate cause of (4) plaintiff's injuries. *Anderson v. Duncan*, 968 P.2d 440, 442 (Wyo. 1998).

### 5.1   Premises Liability

"Wyoming law is clear that 'a premises owner must use ordinary care to keep the premises in a safe condition and is charged with an affirmative duty to protect visitors against dangers known to him and dangers discoverable with the exercise of reasonable care.'" *Williams v. Plains Tire & Battery Co.*, 2017 WY 136, ¶ 18, 405 P.3d 228, 232 (Wyo. 2017) (quoting *Amos v. Lincoln Cty. Sch. Dist. No. 2*, 2015 WY 115, ¶ 20, 359 P.3d

---

[5] It remains unclear whether Plaintiffs allege premises liability against Defendant TTS, but the Court will assume so because Count 5 is expressly asserted against both Dally-Up and TTS.

954, 960 (Wyo. 2015)).

Plaintiffs argue, "Even an arms-length landlord or lessor would know that the tenant was using a VERY rural ranch as a location to house teens from around the world--most of whom had zero ranching or labor experience and all of whom, presumably, had personality or behavioral issues--should reasonably foresee that there would be opportunity for serious injury." (Doc. 136 p. 32.) They continue:

> Plaintiff Nash alleges that TTS Defendants, including all of the Woodwards, subjected her to food and sleep deprivation; excessive exercise as punishment, extended periods of isolation; humiliation; verbal, psychological, and emotional abuse. (Am. Comp. ¶¶ 117, 122, 130.) Ergo, Dally-Up was on notice of the threats posed by its owners, managers, and agents, and owed Plaintiff Nash a duty to protect her from them.

(Doc. 136 pp. 32-33.)

Plaintiffs offer no authority for their proposition that the premises-liability duty of care exists to protect visitors from affirmative, illegal actions of tenants/owners against visitors, such as child abuse or forced labor. The premises-liability duty of care attempts to protect visitors from dangers posed by *the premises*, not from dangers posed by the tenants/owners. "[A] premises owner must use ordinary care to keep *the premises* in a safe condition ...." *Williams*, ¶ 18, 405 P.3d at 232 (emphasis added). Thus, Plaintiffs' premises-liability theory fails to allege a proper premises-liability duty of care owed by Dally-Up; the duty of care claimed by Plaintiffs attempts to torture premises liability beyond recognition. Premises liability is not vicarious liability for the landlord-tenant relationship.

Further, as the paragraph quoted above demonstrates, Plaintiffs do not allege they

were injured by *the premises* at TTS. They claim to have been injured because the Woodwards actively subjected them to various forms of forced labor, deprivation of necessities, and abuse. (Doc. 136 pp. 32-33; Am. Compl. ¶ 202 ("Defendant TTS, acting through its employees and agents, by extreme and outrageous conduct ....").) Thus, Plaintiffs have not plausibly stated the causation element of premises-liability negligence. Plaintiffs do not allege that TTS or Dally-Up's failure to keep TTS' premises in safe, working order caused their claimed injuries.

The amended complaint does not plausibly allege a state-law claim of negligence based on premises liability against Dally-Up or TTS.

### 5.2    Negligent Infliction of Emotional Distress

Plaintiffs' claim of negligent infliction of emotional distress is confusing. They assert in their amended complaint:

> Defendant TTS, acting through its employees and agents, by extreme and outrageous conduct recklessly caused Plaintiff Nash and others similarly situated severe emotional distress and/or bodily harm through conduct described herein that goes beyond all possible bounds of decency, is regarded as atrocious, and is utterly intolerable in a civilized society. She, and others similarly situated, suffered as distress so severe that no reasonable person could be expected to endure it and she and others similarly situated have, in fact, suffered from and required treatment for Post-Traumatic Stress Disorder.

(Am. Compl. ¶ 202.) But a negligent-infliction-of-emotional-distress cause of action is intended to address "a mental injury ... suffered by a person who witnesses the serious injury or death of a family member." *Gates v. Richardson*, 719 P.2d 193, 197 (Wyo. 1986). "[T]he class of plaintiffs who may bring an action for negligent infliction of emotional distress consists of those who are permitted to bring wrongful death actions," and they

include "spouses, children, parents, and siblings." *Id.* at 199. "A plaintiff can recover for negligent infliction of emotional distress only 'if he observed the infliction of serious bodily harm or death, or if he observed the serious bodily harm or death shortly after its occurrence but without material change in the condition and location of the victim.'" *Roitz v. Kidman*, 913 P.2d 431, 433 (Wyo. 1996) (quoting *R.D. v. W.H.*, 875 P.2d 26, 34 (Wyo. 1994)).

> When we recognized the tort of negligent infliction of emotional distress, we extended the duty of care to a limited class of persons **who were neither physically impacted nor in the zone of danger**. *Gates v. Richardson*, 719 P.2d 193, 195, 199 (Wyo. 1986). We established that the alleged tortfeasor can have an independent duty to spouses, children, parents, and siblings who witness the severe injury or death of their relative, in certain circumstances. *Id.* at 199.

*Collins v. COP Wyoming, LLC*, 2016 WY 18, ¶ 16, 366 P.3d 521, 525 (Wyo. 2016) (emphasis added).

Plaintiffs allege Plaintiff Nash, and other members of the intended subclass she seeks to represent, suffered emotional distress at the hands of TTS and Dally-Up (vicariously through the actions of their owners/managers/employees). Plaintiffs have not alleged that any Plaintiff witnessed the serious injury or death of a family member or its immediate aftermath. (*See, generally*, Am. Compl.) Plaintiffs' attempt to plead a state-law claim of negligent infliction of emotional distress concerning mental injuries stemming from abuse or forced labor they themselves suffered is misplaced. Plaintiffs here are not within the class of plaintiffs who may bring a negligent-infliction-of-emotional-distress claim. TTS Defendants did not owe any legal duty of care associated with negligent infliction of emotional distress to Female Plaintiffs.

The amended complaint does not plausibly allege a state-law claim of negligent infliction of emotional distress against TTS or Dally-Up.

**6.**     **Dismissal with Prejudice**

The final issue concerns whether the insufficiently pled claims (RICO, premises liability, and negligent infliction of emotional distress) should be dismissed with prejudice. "[D]ismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1191 (10th Cir. 2014) (quoting *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006)). The Court finds another amendment by Plaintiffs would be futile as to the failed RICO claims alleged against TTS Defendants. Further amendment could not state a non-time-barred claim by Plaintiffs Sherman, Gozun, or Nash. Additionally, after Plaintiffs' original complaint was filed in this case, TTS Defendants (and the other Defendants) filed a 12(b)(6) motion to dismiss. (Docs. 75, 75-1.) In direct response to the Defendants' motions to dismiss, Plaintiffs filed an amended complaint, which expressly attempted to cure any pleading deficiencies. (Doc. 106.) TTS Defendants then filed this second motion to dismiss, which presented the same arguments concerning Female Plaintiffs' failure to satisfy RICO's statute of limitations and the failure to plausibly plead an injury to business or property. (*Compare* Doc. 75-1 pp. 34-39, *with* Doc. 123-1 pp. 36-42.) Plaintiffs' inability to remedy their RICO pleading deficiencies against TTS Defendants via their amended complaint demonstrates that providing Plaintiffs a third attempt would be futile.

The same is true of Plaintiffs' state-law claims of negligence based on premises

liability and negligent infliction of emotional distress against TTS and Dally-Up. (*Compare* Doc. 75-1 pp. 42-47 *with* Doc. 123-1 pp. 45-49.) Plaintiffs' failed attempt to remedy these pleading deficiencies once already shows another attempt to do so would be futile.

## CONCLUSION AND ORDER

The amended complaint states plausible claims concerning forced labor under 18 U.S.C. §§ 1589(a) (except as to Dally-Up), 1589(b), and 1590(a) against TTS Defendants. These claims may proceed.

The amended complaint fails to state a plausible RICO claim against TTS Defendants. It also fails to assert plausible state-law claims of negligence and negligent infliction of emotional distress. Under Rule 12(b)(6), these claims will be dismissed with prejudice for failure to state a claim on which relief can be granted.

**IT IS THEREFORE ORDERED** that the second motion to dismiss under Fed. R. Civ. P. 12(b)(6) filed by Defendants Trinity Teen Solutions, Angela Woodward, Jerry Woodward, Kara Woodward, Kyle Woodward, and Dally-Up, LLC (Doc. 123) is **GRANTED IN PART AND DENIED IN PART**.

The RICO claim asserted against TTS Defendants under Count 4 is **DISMISSED WITH PREJUDICE**. All state-law claims of negligence and negligent infliction of emotional distress asserted against Defendants TTS and Dally-Up are also **DISMISSED WITH PREJUDICE**.

The federal-law forced labor claims asserted against TTS Defendants alleged in Count 1 under 18 U.S.C. § 1589(a) (except as to Dally-Up), Count 2 under 18 U.S.C. §

1589(b), and Count 3 under 18 U.S.C. § 1590(a) survive dismissal and shall proceed to discovery.

**DATED:** November ___30___, 2021.

Scott W. Skavdahl
United States District Judge