**UNITED STATES DISTRICT COURT**
**DISTRICT OF WYOMING**

U.S. DISTRICT COURT
DISTRICT OF WYOMING
2021 NOV 30  AM 10: 18
MARGARET BOTKINS, CLERK
CASPER

CARLIE SHERMAN, ANNA GOZUN, AMANDA
NASH, ANDREW SCAVUZZO, and EHAN
JELINEK, on behalf of themselves and similarly
situated persons,

        Plaintiffs,

      v.

TRINITY TEEN SOLUTIONS, INC., a Wyoming
corporation; **TRIANGLE CROSS RANCH, LLC**, a
Wyoming limited liability company; **MONKS OF THE
MOST BLESSED VIRGIN MARY OF MOUNT
CARMEL, d/b/a MYSTIC MONK COFFEE**, a
Wyoming corporation; **GERALD E. SCHNEIDER;
MICHAELEEN P. SCHNEIDER; ANGELA C.
WOODWARD; JERRY D. WOODWARD; DANIEL
SCHNEIDER; MATHEW SCHNEIDER; MARK
SCHNEIDER; KARA WOODWARD; KYLE
WOODWARD; THOMAS GEORGE; JUDITH D.
JEFFERIS; DALLY-UP, LLC**, a Wyoming limited
liability company; **ROCK CREEK RANCH, INC.**, a
Delaware corporation; **DIOCESE OF CHEYENNE**, a
Wyoming corporation; **SOCIETY OF OUR LADY
OF THE MOST HOLY TRINITY**, a Texas
corporation; and **NEW MOUNT CARMEL
FOUNDATION, INC.**, a Wyoming corporation,

        Defendants.

Case No. 20-CV-215-SWS

---

**ORDER GRANTING IN PART AND DENYING IN PART SECOND MOTION
TO DISMISS OF DEFENDANTS TRIANGLE CROSS RANCH, GERALD E.
SCHNEIDER, MICHAELEEN P. SCHNEIDER, MATTHEW SCHNEIDER,
MARK SCHNEIDER, AND THOMAS GEORGE**

---

This case comes before the Court on the second motion to dismiss under Fed. R.

Civ. P. 12(b)(6) filed by Defendants Triangle Cross Ranch, Gerald E. Schneider, Michaeleen P. Schneider, Matthew Schneider, Mark Schneider, and Thomas George (collectively, "TCR Defendants") (Docs. 128, 129). Plaintiffs filed an opposition thereto (Doc. 139), and the movants replied (Doc. 152). Having considered the parties' arguments and reviewed the record herein, the Court finds the motions to dismiss should be granted in part and denied in part.

## INTRODUCTION

Plaintiffs' putative class action alleges the parents of "troubled teen" minors paid to send their children to one of two working ranches in Wyoming where the teens were supposed to receive various forms of traditional and cutting-edge therapy and schooling. Plaintiffs contend it was all a racket, though, as the ranches were light on the education, even lighter on the therapy, and largely forced the teenagers to labor for many hours per day under horrible conditions. They allege each Defendant was either directly involved with the scam or knowingly benefitted from the forced labor. Plaintiffs assert federal causes of action for unlawful forced labor, human trafficking, and violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), and state-law causes of action for negligence and/or negligent infliction of emotional distress. (Am. Compl. Doc. 106.)

## STANDARD FOR RULE 12(b)(6) MOTIONS TO DISMISS

TCR Defendants moved to dismiss the claims under Fed. R. Civ. P. 12(b)(6) by alleging Plaintiffs have failed to state a plausible claim for relief.

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence

that the parties might present at trial, but to assess whether the plaintiff's complaint alone

is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start,*

*Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint's factual

allegations, assumed to be true, must "raise a right to relief above the speculative level"

and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In the context of a 12(b)(6) motion

to dismiss, this plausibility standard requires the plaintiff to plead facts that allow "the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard does not require a

plaintiff to show a defendant probably acted wrongfully, but it requires more than "a sheer

possibility." *Id*. That is, "the complaint must give the court reason to believe that *this*

plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge*

*at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphases in

original).

"Thus, mere 'labels and conclusions,' and 'a formulaic recitation of the elements of

a cause of action' will not suffice; a plaintiff must offer specific factual allegations to

support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th

Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders

'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 557). The Court accepts the nonmoving party's well-pled

factual allegations as true and construes them in the light most favorable to the nonmoving

party, but it is not bound to accept an asserted legal conclusion as true. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991); *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## PLAINTIFFS' GENERAL ALLEGATIONS

In very general terms, Plaintiffs' amended complaint asserts the following primary points:

- TCR Defendants own and/or operate the Triangle Cross Ranch (TCR) in northern Wyoming which took in "troubled teen" males, having approximately 23 such males at any given time. (Am. Compl. ¶¶ 3, 144.) At a significant monthly cost to the teen's parents/guardians, TCR promised to provide focused education and therapy/counseling to correct the teen's misguided ways. (Am. Compl. ¶¶ 2, 4; p. 5 n.1.) The owners of TCR also founded Mount Carmel Youth Ranch (MCYR), which operated as a nonprofit group home to provide services to troubled teens. (Am. Compl. ¶ 3.) MCYR operated at TCR and closed in November 2012. (*Id.*)

- Other Defendants (TTS Defendants) own and operate another northern Wyoming ranch, Trinity Teen Solutions (TTS), which took in "troubled teen" females, having approximately 12 such females at any given time. (Am. Compl. ¶¶ 4, 144.) Again at a significant monthly cost to the teen's parents/guardians, TTS promised to provide focused education and therapy/counseling to correct the teen's misguided ways. (Am. Compl. ¶¶ 2, 4, 5; p. 5 n.1.)

- The owners of TCR and the owners of TTS are close family relatives. (Am. Compl. ¶¶ 3, 4.)

- Immediately upon a troubled teen's arrival at either TCR/MCYR or TTS as a resident, Defendants entirely disregarded the promises of education and treatment, and instead began mistreating the resident, exploiting the resident for cheap labor, and forcing the resident to live in subhuman conditions. (Am. Compl. ¶¶ 10-16.)

Plaintiffs contend all Defendants either directly participated in the mistreatment or

financially benefited from such mistreatment, e.g., by receiving free forced labor[1] at its facilities.

## PLAINTIFFS' FIVE CAUSES OF ACTION[2]

Counts 1, 2, and 3 in Plaintiffs' amended complaint assert claims under the Trafficking Victims Protections Reauthorization Act of 2008 (TVPRA), which is enforceable between private parties through 18 U.S.C. § 1595(a). Count 1 asserts a violation of 18 U.S.C. § 1589(a), which holds liable those who directly and unlawfully force others to perform labor. Count 2, under § 1589(b), concerns those who, while not directly forcing illegal labor, know or should know of the unlawful nature of the labor and benefit from the forced labor. Count 3 alleges a violation of 18 U.S.C. § 1590(a), which imposes liability for trafficking humans for forced labor.

Count 4 asserts certain Defendants violated the Racketeer Influenced and Corrupt Organizations Act (RICO), specifically 18 U.S.C. § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in [or affecting] interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" RICO is enforceable civilly by a person "injured in his business or property." 18 U.S.C. § 1964(c).

Finally, Plaintiffs' Count 5 is a state-law tort claim, described as "Negligence and Negligent Infliction of Emotional Distress." (Am. Compl. p. 67.)

---

[1] The amended complaint repeatedly refers to "child labor," and indeed the amended complaint describes most of the alleged forced labor coming from minors. The Court refers to it simply as "forced labor," though, because at least one named Plaintiff was 18 years old at the time of his stay at TCR (Am. Compl. ¶ 134), and therefore was a legal adult at the time. *See* Wyo. Stat. Ann. § 14-1-101(a).

[2] Not all causes of action are alleged against every defendant.

## SPECIFIC ALLEGATIONS AGAINST TCR DEFENDANTS

Relative to this motion to dismiss, Count 1 is asserted against all TCR Defendants except Thomas George. (Am. Compl. p. 59.) Counts 2, 3, and 4 are asserted against all TCR Defendants. (*Id.* pp. 60-66.) Count 5 is not asserted against TCR Defendants and is not at issue in this Order. (Id. p. 67.) The following allegations from the amended complaint are relevant to the current motion.

Defendants Gerald Schneider and Michaeleen Schneider are husband and wife, and they own Triangle Cross Ranch, Inc. (TCR) and the ranch land it operates upon. (Am. Compl. ¶¶ 3, 34.) TCR is located on the border of Wyoming and Montana, and it advertises as a 50,000-acre working ranch with over 1,000 cattle. (*Id.* ¶ 3.) Parents of "troubled" or "at-risk" teenaged males would pay a significant monthly fee (possibly up to $9,000 per month) to send their child to TCR for an extended stay (several months at a minimum), where TCR promised to continue the teen male's education, provide various forms of therapy and counseling, engage the teen male in traditional ranch life including ranch chores, and assist the teen male in growing spiritually. (*Id.* ¶¶ 3, 7, 131 136, 146; *id.* p. 9 n.2.) Defendants Mathew Schneider and Mark Schneider are the sons of Gerald and Michaeleen Schneider, and each works at TCR in a managerial capacity. (*Id.* ¶¶ 38, 39.) Defendant Thomas George served several roles for TCR, including as Executive Director. (*Id.* ¶¶ 42, 51.)

TCR has been operating as a troubled teen group home for many years in one form or another. (*Id.* ¶ 3.) Plaintiffs contend the promises of therapy and education were a sham, and instead the teen males spent most of their time engaging in forced manual labor and

living in awful conditions that lacked basic human necessities. (*Id.* ¶¶ 2-4, 9, 52, 57.) Plaintiff Scavuzzo was a resident at TCR from April 2012 to July 2012, and Plaintiff Jelinek was a resident from May 2011 to December 2011. (*Id.* ¶¶ 131, 136.)

In 2002, Defendant Gerald Schneider had his adult daughter and her husband, Angela and Jerry Woodward, set up a similar ranch, also in northern Wyoming, for troubled or at-risk teenaged females, known as "Trinity Teen Solutions" (TTS). (*Id.* ¶¶ 4, 53.) Plaintiffs assert TTS was run exactly like TCR, with promises of therapy, schooling, and "various forms of good old-fashioned ranch work" immediately swept aside in favor of forced labor and substandard living conditions. (*Id.* ¶¶ 4-6, 9, 52, 57; Doc. 106-1 p. 23.) Three named plaintiffs allegedly attended TTS. (*Id.* ¶¶ 113, 118, 123.) TTS Defendants (its owners and employees) have filed a separate motion to dismiss. (Doc. 146.)

More specific allegations relevant to each cause of action will be addressed below in the Court's discussion.

## DISCUSSION

The Court will address the sufficiency of each alleged cause of action separately.

## 1. Count 1 - Liability as a Primary Offender Under 18 U.S.C. § 1589(a) for Knowingly Providing or Obtaining Illegal Forced Labor

Plaintiffs seek to hold all TCR Defendants except Thomas George liable under 18 U.S.C. § 1589(a) in Count 1 as primary offenders. Section 1589(a) holds liable:

> (a)    Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—
>
> (1)    by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>
> (2)    by means of serious harm or threats of serious harm to that

                      person or another person;

(3)      by means of the abuse or threatened abuse of law or legal process; or

(4)      by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,

In their amended complaint, Plaintiffs recite categories (1), (2), and (4) from § 1589(a) in Count 1 (Am. Compl. ¶¶ 161-163), thus the Court considers those means to be operative.

Section 1589(a) (as well as 1589(b) and 1590(a)) is enforceable by a victim, who "may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees." 18 U.S.C § 1595(a). Section 1589(a) is intended to hold liable the person who actually employs the force or threats against the victim to extract unlawful labor or services from the victim.

Plaintiffs have pled a plausible claim against TCR Defendants under § 1589(a). Accepting the well-pled factual allegations as true, the amended complaint plausibly asserts TCR and its ownership/management (including the four Schneiders represented in this motion to dismiss) knowingly provided or obtained labor from Plaintiffs Scavuzzo and Jelinek by means of force, threats of force, threats of serious harm, or by means of a scheme intended to cause these Plaintiffs to believe they would suffer serious harm if they failed to perform such labor. TCR Defendants attempt to describe the alleged labor as "ranch chores" throughout their dismissal brief, but the amended complaint alleges Plaintiffs

Scavuzzo and Jelinek (Male Plaintiffs) were required to perform far more than just ordinary "ranch chores."

For example, the amended complaint asserts TCR Defendants forced Plaintiff Scavuzzo to perform welding for TCR, "roofing work and the installation of joists for the ongoing construction projects at The Monastery [which was located away from TCR]," "[i]nstallation of Heating, Ventilation, and Air Conditioning unit at the Our Lady of the Valley Church [which was located away from TCR]," and "[w]orking for Tom George's seed business, Big Horn Saindfoint." (Am. Compl. ¶ 132.) Similarly, the amended complaint asserts Plaintiff Jelinek was required to perform welding for TCR, mechanical repairs on equipment that was used at both TCR and on the "construction projects at The Monastery [which was located away from TCR]" and "[w]orking for Tom George's seed business, Big Horn Saindfoint." (*Id.* ¶ 137.) Through these examples, the amended complaint plausibly alleges Male Plaintiffs were forced to perform labor well beyond standard "ranch chores."

Plaintiffs further allege TCR Defendants forced Plaintiff Scavuzzo to perform these tasks through various threats including "[b]eing forced to subsist on an inadequate diet," "[b]eing deprived of sleep," "[b]eing deprived of basic human living needs such as heat, air, running water, and a mattress," "[b]eing subject to corporal punishment such as running up and down a hill," and "[b]eing subjected to physical, verbal, psychological, and emotional abuse." (Am. Compl. ¶ 135.) The amended complaint avers similar threats were levied against Plaintiff Jelinek, including "[b]eing forced to subsist on a diet of insects." (*Id.* ¶ 140.) It also alleges Plaintiff Scavuzzo, though 18 years old during his entire stay at

TCR, was prevented from leaving "despite attempts to do so and attempts to contact his family in order to leave." (*Id.* ¶ 134.)

These allegations, accepted as true at this stage of the proceedings, plausibly allege TCR Defendants knowingly obtained labor from Plaintiffs Scavuzzo and Jelinek that benefited TCR Defendants and knowingly provided Plaintiffs Scavuzzo and Jelinek's labor to benefit others, such as The Monastery construction project. These allegations also sufficiently establish that this labor was obtained and provided by means of force, threats of force, threats of serious harm, or by means of a scheme intended to cause these Plaintiffs to believe they would suffer serious harm if they failed to perform such labor. Finally, these allegations defeat TCR Defendants' defense of consent (Doc. 129 pp. 23-24), at least at this early stage, because they lead to the reasonable inference that the parents of Male Plaintiffs did not consent to labor beyond true "ranch chores" and did not consent to the alleged threats/punishments, such as living without plumbing or heat. The allegations of what Plaintiffs Scavuzzo and Jelinek were forced to endure exceeds what a parent would reasonably understand they were consenting to by sending their child to TCR for reformation.

Consequently, the amended complaint alleges a plausible cause of action under 18 U.S.C. § 1589(a) on behalf of Plaintiffs Scavuzzo and Jelinek against TCR, Gerald Schneider, Michaeleen Schneider, Matthew Schneider, and Mark Schneider.

**2.**   **Count 2 - Venture Liability Under 18 U.S.C. § 1589(b) for Knowingly Benefiting from Illegal Forced Labor**

Plaintiffs allege Count 2 against all TCR Defendants. Section 1589(b) holds liable

"[w]hoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means." To avoid dismissal of this claim, "plaintiffs must plausibly allege that [plaintiffs] provided labor or services that were procured by a method that is prohibited under the TVPRA, and that [TCR Defendants] knowingly benefited from participating in this venture." *Bistline v. Parker*, 918 F.3d 849, 871 (10th Cir. 2019). "Venture" means "any group of two or more individuals associated in fact, whether or not a legal entity." *Id.* at 873 (quoting 18 U.S.C. § 1591(e)(6)).

Plaintiffs have also stated a plausible claim for relief under § 1589(b) against TCR Defendants. Accepting the factual allegations as true, the amended complaint plausibly asserts TCR Defendants participated together in a venture where they provided and received forced labor from Plaintiffs Scavuzzo and Jelinek while benefitting from the forced labor and, at least as to some TCR Defendants, the monthly monetary payments from Plaintiffs' parents. Further, through their ownership/management positions at TCR and their personal work at TCR, it can reasonably be inferred that the individual TCR Defendants knew or should have known of the unlawful nature of the labor.

Consequently, the amended complaint alleges a plausible cause of action under 18 U.S.C. § 1589(b) on behalf of Plaintiffs Scavuzzo and Jelinek against TCR and its ownership/management (Gerald Schneider, Michaeleen Schneider, Matthew Schneider, Mark Schneider, and Thomas George).

3.    **Count 3 - Liability under 18 U.S.C. § 1590(a) for Knowingly Trafficking a Person for Forced Labor or Services**

Section 1590(a) holds liable "[w]hoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter." It "imposes liability for [human] trafficking, which is separate and distinct from liability for forced labor or services." *Gilbert v. United States Olympic Comm.*, 423 F. Supp. 3d 1112, 1133 (D. Colo. 2019).

Much of the foregoing analysis concerning § 1589 applies here. Accepting Plaintiffs' factual allegations as true and reading all favorable inferences in their favor, the amended complaint has stated a plausible claim under § 1590(a) against TCR Defendants. Specifically, the amended complaint asserts TCR Defendants advertised TCR as a therapeutic working ranch while in truth recruiting Plaintiffs Scavuzzo and Jelinek (and others) to make them provide forced labor at the ranch and beyond. The amended complaint alleges TCR Defendants provided Plaintiffs Scavuzzo and Jelinek so they could provide forced labor for The Monastery, the Our Lady of the Valley Church, and Thomas George's seed business. And, again, the individual TCR Defendants' positions of ownership and/or management allows the reasonable inference that they knew or should have known of the unlawful nature of the labor and the use of the forced labor.

Consequently, the amended complaint alleges a plausible cause of action under 18 U.S.C. § 1590(a) on behalf of Plaintiffs Scavuzzo and Jelinek against TCR and its ownership/management (Gerald Schneider, Michaeleen Schneider, Matthew Schneider, Mark Schneider, and Thomas George).

**4.** **Count 4 - RICO Violation Under 18 U.S.C. § 1964(c) and 1962(c)**

RICO "created a new civil cause of action for '[a]ny person injured in his business or property by reason of a violation' of 18 U.S.C. § 1962." *RJR Nabisco, Inc. v. Eur. Cmty.*, 136 S. Ct. 2090, 2096 (2016) (quoting 18 U.S.C. § 1964(c)). "That is, RICO vests a private citizen with substantive rights to avoid 'injur[ies]' to 'his business or property' caused by a pattern of racketeering activity, and it explicitly creates a federal cause of action to vindicate those federal rights." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 881 (10th Cir. 2017). A civil claim under § 1964(c) requires a plaintiff to plead: "(1) that the defendant violated § 1962; (2) that the plaintiff's business or property was injured; and (3) that the defendant's violation is the cause of that injury." *Id.* In this case, Plaintiffs allege a violation of § 1962(c), under which "a RICO plaintiff must allege a 'person' '(1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1182 (10th Cir. 2019) (quoting *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016)).

"Racketeering activity" includes any act indictable under the TVPRA, and "pattern of racketeering activity" means at least two incidents of racketeering activity. 18 U.S.C. § 1961(1), (5). Plaintiffs correctly identify that forced labor and human trafficking constitute racketeering activity ("predicate acts"). (Doc. 139 p. 15); *see Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1168-69 (D. Kan. 2018). And as the Court determined above, Plaintiffs have adequately pled plausible claims of forced labor and human trafficking against TCR Defendants.

Nonetheless, Plaintiffs' RICO claim against TCR Defendants fails for two

independent reasons: (1) it is time-barred by the statute of limitations, and (2) it does not plausibly allege an adequate claim of injury to business or property.

### 4.1    Statute of Limitations

The statute of limitations for a civil RICO claim is four years. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987); *see also Rotella v. Wood*, 528 U.S. 549, 555 (2000) (holding the statute of limitations begins to run regardless of whether or not a plaintiff is aware of the racketeering occurring). The statute of limitations is an affirmative defense, and normally a plaintiff need not plead against an affirmative defense within the complaint. However, dismissal under Rule 12(b)(6) on statute of limitations grounds is warranted where "the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).

It appears the Tenth Circuit and the U.S. Supreme Court have not decided whether the "injury-discovery rule" or the "injury-occurrence rule" applies to a civil RICO claim. *See Robert L. Kroenlein Tr. ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1276 (10th Cir. 2014). Under the injury-occurrence rule, a claim would accrue, and the four-year limitations period would begin to run, when the injury occurs, even if the injury was not discovered immediately. *Id.* at 1275. Under the injury-discovery rule, the claim accrues when, in the exercise of reasonable diligence, the injury could have been discovered. *Id.*

Under either accrual rule, though, Plaintiffs Scavuzzo and Jelinek's claims would have accrued in this case no later than when their stay at TCR ended because that is the latest they would have endured or could have reasonably discovered the injuries

complained of herein. *See id.* at 1280 (the four-year clock starts when "the plaintiff either has actual or inquiry notice of the injury"). Plaintiff Scavuzzo was a resident at TCR from April 2012 to July 2012, and Plaintiff Jelinek was there from May 2011 to December 2011. (Am. Compl. ¶¶ 131, 136.) This lawsuit was filed in November 2020 (Doc. 1), more than eight years after either Male Plaintiff last resided at TCR and more than four years after the RICO statute of limitations expired. In opposition to the motion to dismiss, Plaintiffs do not contend that the RICO claims of Plaintiffs Scavuzzo or Jelinek, by themselves, would satisfy the statute of limitations. Instead, Plaintiffs argue that the RICO claim of Plaintiff Nash, a female resident at the Trinity Teen Solutions (TTS) ranch, falls within the four-year limitations period and saves the RICO claim for all named plaintiffs because TCR Defendants and TTS Defendants (and other defendants) operated together as an Association-in-Fact RICO enterprise.[3] (Doc. 139 pp. 16-18.) This argument is unavailing for two reasons.

First, even assuming Plaintiff Nash's RICO claim is timely, one named RICO plaintiff cannot carry the other RICO plaintiffs to statute-of-limitations safety; each named plaintiff must possess their own non-time-barred RICO claim, as is the case with non-RICO

---

[3] Plaintiffs also contend that Plaintiff Nash's allegedly timely RICO claim saves the claim for the putative class members. (Doc. 139 p. 18.) The question of whether any putative class member's RICO claim is time-barred is not before the Court and it is not ripe for judicial consideration at this time. Putative class members are not parties to the litigation unless and until the class is certified. "Thus, to determine whether some of the putative class members' claims are time-barred would be tantamount to issuing an advisory opinion," which is improper. *Christoffersen v. V. Marchese, Inc.*, No. 19-CV-1481, 2020 WL 4926663, at *3 (E.D. Wis. Aug. 21, 2020). Nonetheless, the Court notes that where a large number of putative class members appear to have statute-of-limitations issues, that factor can weigh against certifying the class. *See, e.g., McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 233-34 (2nd Cir. 2008) (decertifying a RICO class in part because "plaintiffs have offered no reliable means of collectively determining how many class members' claims are time-barred").

claims. Allowing one plaintiff to satisfy a statute of limitations as to all other plaintiffs

would render statutes of limitations a nullity.

> The interpretation of the rule urged by Plaintiffs would not only expand
> substantive rights, but would effectively eviscerate the statute of limitations.
> Plaintiffs' rule would permit a time-barred employee to have his claim saved
> at any time after the passing of his filing deadline merely by a timely filing
> plaintiff who alleges age discrimination dating back several years.

*Morton v. ICI Acrylics, Inc.*, 69 F. Supp. 2d 1038, 1045 (W.D. Tenn. 1999); *see also*

*Rodriguez v. It's Just Lunch, Int'l*, No. 07 CIV. 9227 SHS, 2013 WL 1749590, at *5

(S.D.N.Y. Apr. 23, 2013) (dismissing the unjust enrichment claim of one plaintiff who

failed to satisfy the statute of limitations, but allowing the unjust enrichment claims of the

other plaintiffs who had met the statute of limitations to proceed); *Logan v. City of Pullman*

*Police Dep't*, No. CV-04-214-FVS, 2006 WL 994754, at *5–6 (E.D. Wash. Apr. 10, 2006),

*on reconsideration in part sub nom. Logan v. Weatherly*, No. CV-04-214-FVS, 2006 WL

1582379 (E.D. Wash. June 6, 2006) (dismissing as time-barred the assault claims of 43

plaintiffs who were added to the case after the statute of limitations for assault had expired).

Each plaintiff must individually satisfy the statute of limitations for their own claims, but

based on the dates alleged in the amended complaint, Plaintiffs Scavuzzo and Jelinek do

not meet the limitations period for their RICO claims.

Second, even assuming Plaintiffs Scavuzzo and Jelinek could ride on the timing of

Plaintiff Nash's RICO claim, the amended complaint demonstrates Plaintiff Nash's RICO

claim is untimely. Plaintiff Nash was a resident at Trinity Teen Solutions from May 2015

to November 2015 (Am. Compl. ¶ 123), which also makes her RICO claim about a year

late in this November 2020 lawsuit absent some tolling or savings provision. In that regard,

the amended complaint asserts: "Plaintiff Nash was under the disability of minority until November 28, 2017. Accordingly, Plaintiff Nash's statute of limitations was tolled until that date." (Am. Compl. ¶ 128.) In opposition to TCR Defendants' motion for dismissal, Plaintiffs argue, "This action was brought within three years of [Plaintiff Nash's infancy] disability being extinguished (Am. Comp. ¶ 128) and therefore within RICO's four-year limitations period." (Doc. 139 p. 18.) Plaintiffs cite no authority for the proposition that RICO's four-year statute of limitations was tolled during Plaintiff Nash's infancy, likely because the law does not support such a proposition.

> As the Fourth Circuit has recognized, "[t]he blackletter rule ... is that a statute of limitations runs against all persons, even those under a disability, unless the statute expressly provides otherwise." *Vogel v. Linde*, 23 F.3d 78, 80 (4th Cir. 1994). The Supreme Court long ago recognized this rule as extending to minority tolling: "The exemptions from the operation of statutes of limitations, usually accorded to infants ..., do not rest upon any general doctrine of the law ... but in every instance upon express language in those statutes giving them time, after majority ... to assert their rights." *Vance v. Vance*, 108 U.S. 514, 521, 2 S.Ct. 854, 27 L.Ed. 808 (1883); *see also United States v. Alvarez*, 710 F.3d 565, 568 n.10 (5th Cir. 2013) ("The federal courts have consistently rejected requests to create tolling exceptions for minors, reasoning that in the absence of an express legislative directive to the contrary, parents and guardians are assumed to be adequate surrogates."). Federal courts have consistently applied *Vance*, following minority tolling for federal statutes of limitations only if the statute setting out the limitations period so specifies. *See, e.g., Alvarez*, 710 F.3d at 567; *Vogel*, 23 F.3d at 80.

*Booth v. United States*, 914 F.3d 1199, 1204–05 (9th Cir. 2019) (footnote omitted); *see Brewer v. Miami Cnty. Hosp.*, 862 F. Supp. 305, 308 (D. Kan. 1994) ("A statute of limitations runs against minors in the absence of an express statutory provision tolling the limitations period.") (citing 51 Am. Jur. 2d *Limitation of Actions* § 186). RICO does not include an express statute of limitations, so the U.S. Supreme Court borrowed the four-

year RICO limitations period from the Clayton Act after finding it most analogous. *Agency Holding*, 483 U.S. at 150-52.   Neither RICO nor the Clayton Act include an express statutory provision tolling the limitations period for infancy. *See* 15 U.S.C. § 15b (Clayton Act's four-year statute of limitations).   Plaintiffs offer no authority to suggest the "blackletter rule" that a federal statute of limitations runs against minors absent an express tolling provision for infancy should not apply to RICO claims, and the Court's own research has not covered any such exception. *Cf. Hall v. E. I. Du Pont De Nemours & Co.*, 312 F. Supp. 358, 360-62 (E.D.N.Y. 1970) (rejecting the plaintiff's argument that the Clayton Act's four-year limitations period should be tolled for infancy).   Thus, Plaintiff Nash's RICO claim was filed more than four years after it accrued, and the limitations period was not tolled by her infancy in the meantime.   Consequently, even if it were legally possible, Plaintiff Nash does not offer a timely RICO claim to which Plaintiffs Scavuzzo and Jelinek can bootstrap their untimely RICO claims.

The RICO claims of Plaintiffs Scavuzzo and Jelinek must therefore be dismissed as time-barred.

### 4.2   <u>Injury to Business or Property</u>

Even if timely, the RICO claims of Plaintiffs Scavuzzo and Jelinek are inadequately pled.   A civil RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by [reason of] the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).   "Injury in his business or property" connote "words of limitation." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 279 (1992) (O'Connor, J., concurring).   Injury to one's business or property

excludes personal injuries. *RJR Nabisco, Inc. v. Eur. Cmty.*, 136 S. Ct. 2090, 2108 (2016). "Additionally, injury to ... reputation, dignity and emotional damages are not the type of injuries redressable by the antitrust laws or RICO which are expressly limited to injuries to 'business or property.'" *Tal v. Hogan*, 453 F.3d 1244, 1254 (10th Cir. 2006). The requirement of an injury to business or property "helps to assure that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000).

Plaintiffs contend that TCR Defendants' failure to pay them for their labor is a sufficient allegation of business or property loss, contending, "Plaintiffs' [sic] have plausibly alleged a concrete financial loss in that TCR Defendants forced Plaintiffs to work long hours without pay." (Doc. 139 p. 19.) Plaintiffs cite to *Jane Doe I v. Reddy*, No. C 02-05570 WHA, 2003 WL 23893010, at *1 (N.D. Cal. Aug. 4, 2003), to support this proposition, but *Reddy* is materially different from this case. In *Reddy*, the plaintiffs alleged "defendants fraudulently induced them to come to the United States from India on false promises that they would be provided an education and employment opportunities, but then forced them to work long hours under arduous conditions for pay far below minimum wage and in violation of overtime laws, and sexually abused and physical beat them." *Id.*, 2003 WL 23893010, at *1. Thus, the plaintiffs in *Reddy* were induced by the defendants to come to the United States, at least in part, for business or employment purposes.

Unlike the plaintiffs in *Reddy*, there is no allegation here that Plaintiffs Scavuzzo and Jelinek (or their parents) were fraudulently induced to attend TCR for business or

employment purposes.  Based on Plaintiffs' allegations that the residents were sent there by their parents, at great cost to their parents, for treatment and reform purposes, it is unreasonable to infer that Plaintiffs Scavuzzo and Jelinek attended TCR for employment or were ever induced by promises of wage payment.  TCR Defendants accurately state, "Plaintiffs never allege that the Male Plaintiffs expected to receive payment for the chores in 2011 and 2012, at the time that they completed them, which may explain why the Male Plaintiffs waited nearly a decade to demand compensation." (Doc. 129 p. 20.)  According to the amended complaint, Plaintiffs Scavuzzo and Jelinek attended TCR, "advertised as a fifty thousand (50,000) acre working ranch," because they were "troubled teens," not because they were looking for or were promised employment opportunities, and TCR "induc[ed Plaintiffs' parents] into paying substantial fees for residential treatment, under promises of receiving full-time cutting edge therapies and while maintaining proper education towards high school graduation."  (Am. Compl. ¶¶ 3, 10.)  Thus, there is no reasonable inference that Plaintiffs Scavuzzo and Jelinek attended TCR for business or employment purposes, and there is also no reasonable inference that TCR Defendants' failure to pay wages to Plaintiffs for their labor amounted to injury to their business or property.  *Cf. Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168 (9th Cir. 2002) ("The **employees** allege an injury to their property in the form of lost wages.") (emphasis added).  Here, the amended complaint does not allege Plaintiffs were ever employees of TCR or intended to be employed by TCR.

Plaintiffs have not pled a viable RICO claim against TCR Defendants because they have not plausibly alleged Plaintiffs Scavuzzo or Jelinek (the two named Plaintiffs who

attended TCR) suffered an injury to their business or property. The RICO claims of Plaintiffs Scavuzzo and Jelinek must therefore be dismissed for failure to state a claim upon which relief can be granted.

## 5.    <u>Dismissal with Prejudice</u>

The final issue concerns whether the RICO claims against TCR Defendants should be dismissed with prejudice. "[D]ismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1191 (10th Cir. 2014) (quoting *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006)). The Court finds another amendment by Plaintiffs would be futile as to the failed RICO claims alleged against TCR Defendants. Further amendment could not state a non-time-barred claim by Plaintiffs Scavuzzo and Jelinek. Additionally, after Plaintiffs' original complaint was filed in this case, TCR Defendants (and the other Defendants) filed a 12(b)(6) motion to dismiss. (Docs. 82, 83.) In direct response to the Defendants' motions to dismiss, Plaintiffs filed an amended complaint, which expressly attempted to cure any pleading deficiencies. (Doc. 106.) TCR Defendants then filed this second motion to dismiss, which presented the same arguments concerning Male Plaintiffs' failure to satisfy RICO's statute of limitations and the failure to plausibly plead an injury to business or property. (*Compare* Doc. 83 p. 7-13, *with* Doc. 129 pp. 8-16.) Plaintiffs' inability to remedy its pleading deficiencies against TCR Defendants via their amended complaint demonstrates that providing Plaintiffs a third attempt would be futile.

## CONCLUSION AND ORDER

The amended complaint states plausible claims concerning forced labor under 18 U.S.C. §§ 1589(a) (except as to Thomas George), 1589(b), and 1590(a) against TCR Defendants.

The amended complaint fails to state a plausible RICO claim against TCR Defendants. Under Rule 12(b)(6), the RICO claims asserted against Defendants Triangle Cross Ranch, Gerald E. Schneider, Michaeleen P. Schneider, Matthew Schneider, Mark Schneider, and Thomas George must be dismissed with prejudice for failure to state a claim on which relief can be granted.

**IT IS THEREFORE ORDERED** that the second motion to dismiss under Fed. R. Civ. P. 12(b)(6) filed by Defendants Triangle Cross Ranch, Gerald E. Schneider, Michaeleen P. Schneider, Matthew Schneider, Mark Schneider, and Thomas George (Doc. 128) is **GRANTED IN PART AND DENIED IN PART**.

The RICO claim asserted against TCR Defendants under Count 4 is **DISMISSED WITH PREJUDICE**.

The federal-law forced labor claims asserted against TCR Defendants alleged in Count 1 under 18 U.S.C. § 1589(a) (except as to Thomas George), Count 2 under 18 U.S.C. § 1589(b), and Count 3 under 18 U.S.C. § 1590(a) survive dismissal and shall proceed to discovery.

**DATED:** November _30th_, 2021.

Scott W. Skavdahl
United States District Judge