## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

---

CARLIE SHERMAN, ANNA GOZUN, AMANDA
NASH, ANDREW SCAVUZZO, and EHAN
JELINEK, on behalf of themselves and similarly
situated persons,

        Plaintiffs,

        v.

TRINITY TEEN SOLUTIONS, INC., a Wyoming
corporation; TRIANGLE CROSS RANCH, LLC, a
Wyoming limited liability company; MONKS OF THE
MOST BLESSED VIRGIN MARY OF MOUNT
CARMEL, d/b/a MYSTIC MONK COFFEE, a
Wyoming corporation; GERALD E. SCHNEIDER;
MICHAELEEN P. SCHNEIDER; ANGELA C.
WOODWARD; JERRY D. WOODWARD; DANIEL
SCHNEIDER; MATHEW SCHNEIDER; MARK
SCHNEIDER; KARA WOODWARD; KYLE
WOODWARD; THOMAS GEORGE; JUDITH D.
JEFFERIS; DALLY-UP, LLC, a Wyoming limited
liability company; ROCK CREEK RANCH, INC., a
Delaware corporation; DIOCESE OF CHEYENNE, a
Wyoming corporation; SOCIETY OF OUR LADY
OF THE MOST HOLY TRINITY, a Texas
corporation; and NEW MOUNT CARMEL
FOUNDATION, INC., a Wyoming corporation,

        Defendants.

Case No. 20-CV-215-SWS

---

## ORDER GRANTING SECOND MOTION TO DISMISS OF DEFENDANTS
## JUDITH D. JEFFERIS AND ROCK CREEK RANCH, INC.

---

This matter comes before the Court on the second motion to dismiss under Fed. R.

Civ. P. 12(b)(6) filed by Defendants Judith D. Jefferis and Rock Creek Ranch Inc. (RCR).

(Docs. 124, 125.)  Plaintiffs filed an opposition thereto (Doc. 140), and the movants replied (Doc. 151).  Having considered the parties' arguments and reviewed the record herein, the Court grants the motion to dismiss.

## INTRODUCTION

Plaintiffs' putative class action alleges the parents of "troubled teen" minors paid to send their children to one of two working ranches in Wyoming where the teens were supposed to receive various forms of traditional and cutting-edge therapy and schooling. Plaintiffs contend it was all a racket, though, as the ranches were light on the education, even lighter on the therapy, and largely forced the teenagers to labor for many hours per day under horrible conditions.  They allege each Defendant was either directly involved with the scam or knowingly benefitted from the forced labor.  Plaintiffs assert federal causes of action for unlawful forced labor, human trafficking, and violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), and state-law causes of action for negligence and/or negligent infliction of emotional distress.  (Am. Compl. Doc. 106.)

## STANDARD FOR RULE 12(b)(6) MOTIONS TO DISMISS

Jefferis and RCR moved to dismiss the claims under Fed. R. Civ. P. 12(b)(6) by alleging Plaintiffs have failed to state a plausible claim for relief.

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint's factual allegations, assumed to be true, must "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In the context of a 12(b)(6) motion to dismiss, this plausibility standard requires the plaintiff to plead facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard does not require a plaintiff to show a defendant probably acted wrongfully, but it requires more than "a sheer possibility." *Id*. That is, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphases in original).

"Thus, mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). The Court accepts the nonmoving party's well-pled factual allegations as true and construes them in the light most favorable to the nonmoving party, but it is not bound to accept an asserted legal conclusion as true. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991); *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## PLAINTIFFS' GENERAL ALLEGATIONS

In very general terms, Plaintiffs' amended complaint asserts the following primary points:

- Some Defendants own and operate the Triangle Cross Ranch (TCR) in northern Wyoming which took in "troubled teen" males, having approximately 23 such males at any given time. (Am. Compl. ¶¶ 3, 144.) At a significant monthly cost to the teen's parents/guardians, TCR promised to provide focused education and therapy/counseling to correct the teen's misguided ways. (Am. Compl. ¶¶ 2, 4; p. 5 n.1.) The owners of TCR also founded Mount Carmel Youth Ranch (MCYR), which operated as a nonprofit group home to provide services to troubled teens. (Am. Compl. ¶ 3.) MCYR operated at TCR and closed in November 2012. (*Id.*)

- Other Defendants own and operate another northern Wyoming ranch, Trinity Teen Solutions (TTS), which took in "troubled teen" females, having approximately 12 such females at any given time. (Am. Compl. ¶¶ 4, 144.) Again, at a significant monthly cost to the teen's parents/guardians, TTS promised to provide focused education and therapy/counseling to correct the teen's misguided ways. (Am. Compl. ¶¶ 2, 4, 5; p. 5 n.1.)

- The owners of TCR and the owners of TTS are close family relatives. (Am. Compl. ¶¶ 3, 4.)

- Immediately upon a troubled teen's arrival at either TCR/MCYR or TTS as a resident, Defendants entirely disregarded the promises of education and treatment, and instead began mistreating the resident, exploiting the resident for cheap labor, and forcing the resident to live in subhuman conditions. (Am. Compl. ¶¶ 10-16.)

Plaintiffs contend all Defendants either directly participated in the mistreatment or financially benefited from such mistreatment, e.g., by receiving free forced labor[1] at its facilities.

---

[1] The amended complaint repeatedly refers to "child labor," and indeed the amended complaint describes most of the alleged forced labor coming from minors. The Court refers to it simply as "forced labor," though, because at least one named Plaintiff was 18 years old at the time of his stay at TCR (Am. Compl. ¶ 134), and therefore was a legal adult at the time. *See* Wyo. Stat. Ann. § 14-1-101(a).

## PLAINTIFFS' FIVE CAUSES OF ACTION[2]

Counts 1, 2, and 3 in Plaintiffs' amended complaint assert claims under the Trafficking Victims Protections Reauthorization Act of 2008 (TVPRA), which is enforceable between private parties through 18 U.S.C. § 1595(a).  Count 1 asserts a violation of 18 U.S.C. § 1589(a), which holds liable those who directly and unlawfully force others to perform labor.  Count 2, under § 1589(b), concerns those who, while not directly forcing illegal labor, know or should know of the unlawful nature of the labor and benefit from the forced labor.  Count 3 alleges a violation of 18 U.S.C. § 1590(a), which imposes liability for trafficking humans for forced labor.

Count 4 asserts certain Defendants violated the Racketeer Influenced and Corrupt Organizations Act (RICO), specifically 18 U.S.C. § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in [or affecting] interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]"  RICO is enforceable civilly by a person "injured in his business or property."  18 U.S.C. § 1964(c).

Finally, Plaintiffs' Count 5 is a state-law tort claim, described as "Negligence and Negligent Infliction of Emotional Distress."  (Am. Compl. p. 67.)

## SPECIFIC ALLEGATIONS AGAINST JEFFERIS AND RCR

Relative to this motion to dismiss, Counts 2 and 3 are asserted against both Jefferis and RCR, and Count 4 is asserted against only Jefferis.  Counts 1 and 5 are not alleged

---

[2] Not all causes of action are alleged against every defendant.

against these Defendants. The following allegations from the amended complaint are relevant to the motion to dismiss.

RCR is a Delaware corporation that operates a ranch adjacent to TTS in Wyoming. (Am. Compl. ¶ 45.) Jefferis is the owner/operator of RCR. (*Id.* ¶ 43.)

Prior to 2010, "Defendant Owners [presumably, the owners of TCR and TTS] and TTS leased" land from Jefferis, which is the site of TTS. (*Id.* ¶¶ 54-55.) The land was then purchased by Defendant Dally-Up, LLC, and TTS continued to operate on that land. (*Id.*) In 2010, "Defendant Owners and Defendant Judith Jefferis entered into a sale agreement," which concerned Jefferis selling the land on which TTS operates. (*Id.* ¶ 56.) That sale agreement "included labor and maintenance on Defendant Judith Jefferis' separate property [Rock Creek Ranch] … in perpetuity." (*Id.*) "Plaintiffs and the putative class members have consistently provided forced labor to Defendant Judith Jefferis and Defendant Rock Creek Ranch since the 2010 sale, this labor includes, but is not limited to, fence repair, cattle branding, tagging cattle, cattle drives, and stacking hay. Plaintiffs and the putative class members never received any compensation for their work for Plaintiff Judith Jefferis or Rock Creek Ranch." (*Id.*) Two of the five named Plaintiffs, both from TTS, allegedly performed forced labor at Rock Creek Ranch. (*Id.* ¶¶ 115, 120.)

## DISCUSSION

The Court will address the sufficiency of each alleged cause of action separately.

## 1. Consideration of Materials from Outside the Pleadings Submitted by Jefferis and RCR

Attached to Jefferis and RCR's 12(b)(6) motion to dismiss is the 2010 Real Estate

Purchase Agreement, whereby RCR sold the land on which TTS operated to Dally Up, LLC. (Doc. 125 pp. 18-34.) In their response to the motion to dismiss, Plaintiffs argue the Court should disregard this extraneous document as "irrelevant and not central to any of Plaintiff's claims." (Doc. 140 p. 10.)

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). If the motion is converted, the Court must give the parties "a reasonable opportunity to present all the material that is pertinent to the [summary-judgment] motion" before ruling on the converted motion. *Id.* There are certain exceptions to the rule against considering extraneous materials, though. "[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity" without converting the motion to one for summary judgment. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

The Court will not consider the agreement submitted by Jefferis and RCR because it is unnecessary to the analysis. Plaintiffs assert in their response to the motion to dismiss "that all of the Defendants had handshake agreements to utilize the free child labor provided by Defendant TTS and TCR at the expense of the minor residents." (Doc. 140 p. 10.) Thus, despite the confusion created by Plaintiffs in the amended complaint (*see* Am. Compl. ¶ 56), they are not relying on the actual written agreement to suggest Jefferis and RCR knowingly benefitted from unlawful forced labor. The request for the Court to consider the Real Estate Purchase Agreement in this 12(b)(6) motion to dismiss is denied.

2. **Count 2 - Venture Liability Under 18 U.S.C. § 1589(b) for Knowingly Benefiting from Illegal Forced Labor**

Plaintiffs allege Count 2 against both Jefferis and RCR. Section 1589(b) holds liable "[w]hoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means." To avoid dismissal of this claim, "plaintiffs must plausibly allege that [plaintiffs] provided labor or services that were procured by a method that is prohibited under the TVPRA, and that [Jefferis and RCR] knowingly benefited from participating in this venture." *Bistline v. Parker*, 918 F.3d 849, 871 (10th Cir. 2019). "Venture" means "any group of two or more individuals associated in fact, whether or not a legal entity." *Id.* at 873 (quoting 18 U.S.C. § 1591(e)(6)).

The Court finds Count 2 turns on the scienter element, with Jefferis and RCR arguing the amended complaint fails to set forth any factual basis to support the assertion they knew or should have known they were benefitting from conduct violative of the TVPRA. (Doc. 125 pp. 7-9.) Plaintiffs respond that 18 U.S.C. § 1595(a) requires they only plead that Defendants knowingly benefitted from the labor and "knew or should have known" of the unlawful nature of the venture. (Doc. 140 pp. 11-13.)

The amended complaint fails to set forth any factual averments suggesting Jefferis and RCR knew or should have known they were participating in an illegal venture of forced labor.

Plaintiffs' claim against Jefferis and RCR centers on the allegation that the 2010 sale agreement "included labor and maintenance on [RCR] in perpetuity," and Plaintiffs and putative class members "consistently provided forced labor" on RCR "since the 2010 sale." (Am. Compl. ¶ 56.)  Nowhere in the amended complaint, though, do Plaintiffs ever set forth any factual allegations that would suggest Jefferis or RCR knew or should have known the "labor and maintenance" they were receiving was unlawful forced labor.  In response to the motion to dismiss, Plaintiffs argue they "pled an allegation that Defendant Jefferis knew of the forced child labor when there was an agreement between the Woodward Defendants and Defendant Jefferis to buy the ranch where TTS is now operated," and Plaintiffs cite to Paragraph 56 of the amended complaint as support for this assertion.  (Doc. 140 p. 13.)  Paragraph 56 of the amended complaint, however, does not even include a conclusory assertion that Jefferis or RCR knew of the allegedly-illegal nature of the labor, let alone any well-pled factual allegations to support a reasonable inference of knowledge or constructive knowledge.  And looking beyond Paragraph 56, there are no alleged facts in the amended complaint suggesting how it is plausible that Jefferis and RCR knew or should have known they were participating in an illegal venture of forced labor.  For example, Plaintiffs do not allege Jefferis or RCR's agents ever threatened them or punished them in any manner, nor do they allege Jefferis or RCR's agents ever witnessed anyone threatening them or punishing them.  *See Jensen v. United States Tennis Ass'n*, No. 20-2422-JWL, 2020 WL 6445117, at *6 (D. Kan. Oct. 30, 2020) (granting 12(b)(6) dismissal of § 1589(b) claim as to USTA after finding plaintiff had not plausibly asserted the knowledge element because "plaintiff does not allege that she ever

notified USTA about Coach Haultain's conduct and she does not allege that anyone employed by USTA witnessed Coach Haultain's conduct or otherwise had any reason to know about Coach Haultain's conduct"); *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (knowledge that a hotel was benefitting from an illegal TVPRA venture was sufficiently alleged where, along with allegations of "high-fives" between the alleged trafficker and hotel owner while discussing getting their past business relationship "going again," the plaintiff also alleged that "in plain daylight view of the front office of the motel," the alleged trafficker "kick[ed] her and force[d] her back toward the rented quarters when she had tried to escape").

Plaintiffs' response to the motion to dismiss does not further plausibly allege the knew-or-should-have-known element.  For example, Plaintiffs offer no factual allegations to support their assertion "that all of the Defendants had handshake agreements to utilize the free child labor provided by Defendant TTS and TCR at the expense of the minor residents." (Doc. 140 p. 10.) Likewise, Plaintiffs' generic contention that "it is more than plausible that a ranch that was receiving the benefit of child laborers without actually paying for it knew, or should have known, that the labor was being coerced out of the children" (*id.* p. 13) also provides no factual averments demonstrating these Defendants, Jefferis and RCR, knew or should have known they were participating in an illegal venture of forced labor.  Even if Plaintiffs were permitted to buttress the knowledge element with allegations in response to the 12(b)(6) motion (and they're not), these conclusory allegations would require supporting factual allegations demonstrating *how* a defendant possesses the alleged knowledge or awareness or at least allow the Court to reasonably

infer Defendants possessed this knowledge or awareness. "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

Plaintiffs misrepresent *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019), when they contend they "simply need to allege 'only that the Defendants "should have known" about the nature of the venture under a negligence standard.'" (Doc. 140 p. 14 (quoting *M.A.*, 425 F. Supp. 3d at 966).) They still need to set forth alleged facts that support the knew-or-should-have-known element. The court in *M.A.* found the allegation that the hotel knew or should have known the plaintiff was being illegally trafficked was sufficiently pled where the plaintiff supported the scienter element with the following factual allegations:

> • The "trafficker often requested rooms near exit doors. Frequently the trash cans in the rooms in which M.A. was trafficked would contain an extraordinary number of used condoms. The trafficker routinely instructed M.A. to refuse housekeeping services. The hotel rooms in which M.A. was trafficked were frequently paid for with cash." (ECF No. 1 at ¶ 52).

> • The hotels "failed to recognize or report Plaintiff M.A.s trafficking." (ECF No. 1 at ¶ 53).

> • "The Plaintiff observed some of the same hotel staff over the course of the time she was trafficked for sex at the Defendant hotel properties." (ECF No. 1 at ¶ 54).

> • "At each of the Defendants' hotel properties, M.A. was routinely escorted by her trafficker in view of the front desk after her trafficker paid in cash for the reserved room out of which the sex trafficking venture was housed." (ECF No. 1 at ¶ 54).

- "Despite her desperate pleas and screams for help, after being beaten or choked at the Defendants' hotel properties, the hotel staff ignored her and did nothing to prevent the ongoing and obvious torture she endured while she was regularly trafficked for sex at Defendants' hotel properties." (ECF No. 1 at ¶ 55).

- "The Plaintiff's trafficker operated the sex trafficking venture out of the same hotel room for multiple days or weeks in succession." (ECF No. 1 at ¶ 56).

- "The Plaintiff was forced into sexual encounters with approximately ten (10) "johns" per day, and these johns would enter and leave the hotel guest room." (ECF No. 1 at ¶ 56).

*M.A.*, 425 F. Supp. 3d at 967. These types of ***factual allegations*** in support of the knew-or-should-have-known element are exactly what are missing from Plaintiffs' amended complaint in this case. Plaintiffs' lack of supporting facts is what makes their allegation of the knowledge element lack plausibility. *See J.L. V. Best W. Int'l.*, 521 F. Supp. 3d 1048, 1071 (D.Colo. 2021) (hotel knew or should have known of human trafficking on its premises where plaintiff "repeatedly visited the hotel, often with different guests, without any luggage, avoiding all eye contact, and exhibiting signs of malnourishment, and often displaying prominent bruising all over her person"). Plaintiffs' amended complaint lacks any plausible allegation of Jefferis and RCR's knowledge or constructive knowledge. Consequently, the amended complaint does not allege a plausible basis to hold Jefferis or RCR liable under 18 U.S.C. § 1589(b) for venture liability.

3.   **Count 3 - Liability under 18 U.S.C. § 1590(a) for Knowingly Trafficking a Person for Forced Labor or Services**

Section 1590(a) holds liable "[w]hoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this

chapter." It "imposes liability for [human] trafficking, which is separate and distinct from liability for forced labor or services." *Gilbert v. United States Olympic Comm.*, 423 F. Supp. 3d 1112, 1133 (D. Colo. 2019). Much of the foregoing analysis concerning § 1589(b) applies here because the same scienter requirement applies. Sections 1589(b) and 1590(a) are both enforceable by a victim in a civil action through § 1595(a) against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." (*See* Doc. 140 pp. 11-13 (Plaintiffs analyzing the knowledge element for §§ 1589(b) and 1590(a) together).)

The same problems plaguing Count 2 as to the scienter element exist here. Plaintiffs have not plausibly alleged with supporting factual averments that Jefferis and RCR knew or should have known that the labor provided by Plaintiffs at RCR was illegally coerced. The amended complaint does not plausibly allege Jefferis and RCR knowingly recruited, harbored, transported, provided, or obtained any person for unlawful forced labor. No factual allegations are found in the amended complaint sufficient to allow the Court to reasonably infer that Jefferis or RCR knew or should have known of the forced nature of the labor. *See J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1068 (D. Colo. 2021) ("The deficiencies in the complaint are readily discernable when compared to cases where courts have concluded that plaintiffs sufficiently alleged hotels knew or should have known of a plaintiff's trafficking. For instance, plaintiff does not contend that hotel staff observed her trafficker forcefully bring her to a hotel, restrain her, or argue with her. *See A.B.*, 455 F. Supp. 3d at 189–90 (alleging staff were aware of 'loud altercations' as well as 'constant'

attacks on the plaintiff); *H.H.*, 2019 WL 6682152, at *1 (claiming hotel staff discovered her chained up in the bathroom and ignored her plea for help).").

Plaintiffs' amended complaint does not allege a plausible basis to hold Jefferis or RCR liable for trafficking under 18 U.S.C. § 1590(a).

**4.    Count 4 - RICO Violation Under 18 U.S.C. § 1964(c) and 1962(c)**

Plaintiffs' RICO claim is asserted against only Jefferis and not RCR.  (Am. Compl. p. 62.)  RICO "created a new civil cause of action for '[a]ny person injured in his business or property by reason of a violation' of 18 U.S.C. § 1962." *RJR Nabisco, Inc. v. Eur. Cmty.*, 136 S. Ct. 2090, 2096 (2016) (quoting 18 U.S.C. § 1964(c)).  "That is, RICO vests a private citizen with substantive rights to avoid 'injur[ies]' to 'his business or property' caused by a pattern of racketeering activity, and it explicitly creates a federal cause of action to vindicate those federal rights." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 881 (10th Cir. 2017).  A civil claim under § 1964(c) requires a plaintiff to plead: "(1) that the defendant violated § 1962; (2) that the plaintiff's business or property was injured; and (3) that the defendant's violation is the cause of that injury." *Id.*  In this case, Plaintiffs allege a violation of § 1962(c), under which "a RICO plaintiff must allege a 'person' '(1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1182 (10th Cir. 2019) (quoting *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016)).

"Racketeering activity" includes any act indictable under the TVPRA, and "pattern of racketeering activity" means at least two incidents of racketeering activity.  18 U.S.C. § 1961(1), (5).  Plaintiffs correctly identify that forced labor and human trafficking constitute

racketeering activity ("predicate acts"). (Doc. 140 p. 15); *see Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1168-69 (D. Kan. 2018). However, as the Court determined above, Plaintiffs have not adequately pled claims of forced labor or human trafficking against Jefferis. The lack of plausible predicate acts committed by Jefferis means Plaintiffs have not sufficiently pled a plausible "pattern of racketeering activity" against her. *See Tal v. Hogan*, 453 F.3d 1244, 1263-68 (10th Cir. 2006) (examining the pleading sufficiency of a civil RICO claim by first examining the pleading sufficiency of the alleged predicate acts); *Apache Tribe of Okla. v. Brown*, 966 F. Supp. 2d 1188, 1194-96 (W.D. Okla. 2013) (same); *Nielsen v. The Patriot Grp., LLC*, No. 1:15-CV-00137, 2016 WL 407073, at *3 (D. Utah Feb. 2, 2016) ("Plaintiff purports to base RICO racketeering activity on mail and wire fraud under 18 U.S.C. § 1341 and § 1343. He is therefore first required to plead factual allegations sufficient to support a claim under these statutes."). Plaintiffs' RICO claim against Jefferis must fail due to the lack of plausibly-pled predicate acts of racketeering activity.

Additionally, and alternatively, Plaintiffs' RICO claim against Jefferis fails for lack of a plausibly-pled injury to Plaintiffs' business or property. A civil RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by [reason of] the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). "Injury in his business or property" connote "words of limitation." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 279 (1992) (O'Connor, J., concurring). Injury to one's business or property excludes personal injuries. *RJR Nabisco, Inc. v. Eur. Cmty.*, 136 S. Ct. 2090, 2108 (2016). "Additionally, injury to ... reputation, dignity and emotional damages are not the type of injuries redressable by the antitrust laws

or RICO which are expressly limited to injuries to 'business or property.'" *Tal v. Hogan*, 453 F.3d 1244, 1254 (10th Cir. 2006). The requirement of an injury to business or property "helps to assure that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000).

Plaintiffs contend that Jefferis' failure to pay them for their labor is a sufficient allegation of business or property loss, contending, "Failing to pay an individual for their labor is an allegation of concrete financial loss." (Doc. 140 p. 17.) Plaintiffs cite to *Jane Doe I v. Reddy*, No. C 02-05570 WHA, 2003 WL 23893010, at *1 (N.D. Cal. Aug. 4, 2003), to support this proposition, but *Reddy* is materially different from this case. In *Reddy*, the plaintiffs alleged "defendants fraudulently induced them to come to the United States from India on false promises that they would be provided an education and employment opportunities, but then forced them to work long hours under arduous conditions for pay far below minimum wage and in violation of overtime laws, and sexually abused and physical beat them." *Id.*, 2003 WL 23893010, at *1. Thus, the plaintiffs in *Reddy* were induced by the defendants to come to the United States, at least in part, for business or employment purposes.

Unlike the plaintiffs in *Reddy*, there is no allegation here that Plaintiffs (or their parents) were fraudulently induced to attend TCR or TTS for business or employment purposes. Based on Plaintiffs' allegations that the residents were sent there by their parents, at great cost to their parents, for treatment and reform purposes, it is unreasonable to infer that Plaintiffs attended TCR or TTS for employment or were ever induced by promises of wage payment. Plaintiffs have not alleged Plaintiffs (or their parents) ever

expected to be paid during their stays at TCR or TTS; indeed, the allegation is that their parents paid for them to be there.  According to the amended complaint, Plaintiffs attended TCR or TTS because they were "troubled teens," not because they were looking for or were promised employment opportunities, and TCR and TTS "induce[d] parents of troubled minors to pay substantial sums of money under the guise that their children would receive cutting edge residential treatment, therapy, and continuing education."  (Am. Compl. ¶ 4.) Thus, there is no reasonable inference that Plaintiffs performed any labor for Jefferis for business or employment purposes, and there is also no reasonable inference that Jefferis' failure to pay wages to Plaintiffs for their labor amounted to injury to their business or property.  *Cf. Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168 (9th Cir. 2002) ("The **employees** allege an injury to their property in the form of lost wages.") (emphasis added). Here, the amended complaint does not allege Plaintiffs were ever employees of TCR, TTS, or Jefferis, or that Plaintiffs ever intended to be employed by these Defendants.  Plaintiffs have not pled a viable RICO claim against Jefferis because they have not plausibly alleged Plaintiffs suffered an injury to their business or property.

Plaintiffs' amended complaint does not allege a plausible basis to hold Jefferis liable under 18 U.S.C. §§ 1964(c) and 1962(c).

## 5.  Dismissal with Prejudice

The final issue concerns whether the claims against Jefferis and RCR should be dismissed with prejudice.  "[D]ismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1191 (10th Cir. 2014) (quoting

*Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006)).  The Court finds another amendment by Plaintiffs would be futile as to the failed claims alleged against the Jefferis and RCR.  After Plaintiffs' original complaint was filed in this case, Jefferis and RCR (and the other Defendants) filed a 12(b)(6) motion to dismiss.  (Docs. 72, 73.)  In direct response to the Defendants' motions to dismiss, Plaintiffs filed an amended complaint, which expressly attempted to cure any pleading deficiencies.  (Doc. 106.) Jefferis and RCR then filed this second motion to dismiss, which presented the same arguments concerning Plaintiffs' failure to plausibly plead the knowledge element and RICO predicate acts as presented in their first motion to dismiss.  (*Compare* Doc. 73 p. 6-7, 9-10 *with* Doc. 125 pp. 7-9, 11-12.)  Plaintiffs' inability to remedy its pleading deficiencies against Jefferis and RCR as to these elements via their amended complaint demonstrates that providing Plaintiffs a third attempt would be futile.

## CONCLUSION AND ORDER

The amended complaint does not state a plausible claim for relief against Defendants Jefferis or RCR.  Under Rule 12(b)(6), all claims asserted against Judith D. Jefferis and Rock Creek Ranch, Inc. must be dismissed, with prejudice, for failure to state a claim on which relief can be granted.

**IT IS THEREFORE ORDERED** that the second motion to dismiss under Fed. R. Civ. P. 12(b)(6) filed by Defendants Judith D. Jefferis and Rock Creek Ranch Inc. (Doc. 124) is **GRANTED**.  The causes of action alleged against Jefferis and RCR are hereby **DISMISSED WITH PREJUDICE**.

**DATED:** November _30TH_, 2021.

Scott W. Skavdahl
United States District Judge