**UNITED STATES DISTRICT COURT**
**DISTRICT OF WYOMING**

CARLIE SHERMAN, ANNA GOZUN, AMANDA
NASH, ANDREW SCAVUZZO, and EHAN
JELINEK, on behalf of themselves and similarly
situated persons,

        Plaintiffs,

    v.

TRINITY TEEN SOLUTIONS, INC., a Wyoming
corporation; TRIANGLE CROSS RANCH, LLC, a
Wyoming limited liability company; MONKS OF THE
MOST BLESSED VIRGIN MARY OF MOUNT
CARMEL, d/b/a MYSTIC MONK COFFEE, a
Wyoming corporation; GERALD E. SCHNEIDER;
MICHAELEEN P. SCHNEIDER; ANGELA C.
WOODWARD; JERRY D. WOODWARD; DANIEL
SCHNEIDER; MATHEW SCHNEIDER; MARK
SCHNEIDER; KARA WOODWARD; KYLE
WOODWARD; THOMAS GEORGE; JUDITH D.
JEFFERIS; DALLY-UP, LLC, a Wyoming limited
liability company; ROCK CREEK RANCH, INC., a
Delaware corporation; DIOCESE OF CHEYENNE, a
Wyoming corporation; SOCIETY OF OUR LADY
OF THE MOST HOLY TRINITY, a Texas
corporation; and NEW MOUNT CARMEL
FOUNDATION, INC., a Wyoming corporation,

        Defendants.

Case No. 20-CV-215-SWS

---

**ORDER GRANTING DEFENDANT DIOCESE OF CHEYENNE'S SECOND
MOTION TO DISMISS**

---

    This matter comes before the Court on the second motion to dismiss of Defendant

Diocese of Cheyenne (Docs. 126, 127).  Plaintiffs filed an opposition thereto (Doc. 141),

and the Diocese replied (Doc. 150).  Having considered the parties' arguments and reviewed the record herein, the Court finds the motion to dismiss should be granted.

## INTRODUCTION

Plaintiffs' putative class action alleges the parents of "troubled teen" minors paid to send their children to one of two working ranches in Wyoming where the teens were supposed to receive various forms of traditional and cutting-edge therapy and schooling. Plaintiffs contend it was all a racket, though, as the ranches were light on the education, even lighter on the therapy, and largely forced the teenagers to labor for many hours per day under horrible conditions.  They allege each Defendant was either directly involved with the scam or knowingly benefitted from the forced labor.  Plaintiffs assert federal causes of action for unlawful forced labor, human trafficking, and violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), and state-law causes of action for negligence and/or negligent infliction of emotional distress.  (Am. Compl. Doc. 106.)

## STANDARD FOR RULE 12(b)(6) MOTIONS TO DISMISS

The Diocese has moved to dismiss the claims against it under Fed. R. Civ. P. 12(b)(6) by alleging Plaintiffs have failed to state a plausible claim for relief.  (Doc. 126.)

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint's factual

allegations, assumed to be true, must "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In the context of a 12(b)(6) motion to dismiss, this plausibility standard requires the plaintiff to plead facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard does not require a plaintiff to show a defendant probably acted wrongfully, but it requires more than "a sheer possibility." *Id*. That is, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphases in original).

"Thus, mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). The Court accepts the nonmoving party's well-pled factual allegations as true and construes them in the light most favorable to the nonmoving party, but it is not bound to accept an asserted legal conclusion as true. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991); *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## PLAINTIFFS' GENERAL ALLEGATIONS

In very general terms, Plaintiffs' amended complaint asserts the following primary points:

- Some Defendants own and operate the Triangle Cross Ranch (TCR) in northern Wyoming which took in "troubled teen" males, having approximately 23 such males at any given time. (Am. Compl. ¶¶ 3, 144.) At a significant monthly cost to the teen's parents/guardians, TCR promised to provide focused education and therapy/counseling to correct the teen's misguided ways. (Am. Compl. ¶¶ 2, 4; p. 5 n.1.) The owners of TCR also founded Mount Carmel Youth Ranch (MCYR), which operated as a nonprofit group home to provide services to troubled teens. (Am. Compl. ¶ 3.) MCYR operated at TCR and closed in November 2012. (*Id.*)

- Other Defendants own and operate another northern Wyoming ranch, Trinity Teen Solutions (TTS), which took in "troubled teen" females, having approximately 12 such females at any given time. (Am. Compl. ¶¶ 4, 144.) Again at a significant monthly cost to the teen's parents/guardians, TTS promised to provide focused education and therapy/counseling to correct the teen's misguided ways. (Am. Compl. ¶¶ 2, 4, 5; p. 5 n.1.)

- The owners of TCR and the owners of TTS are close family relatives. (Am. Compl. ¶¶ 3, 4.)

- Immediately upon a troubled teen's arrival at either TCR/MCYR or TTS as a resident, Defendants entirely disregarded the promises of education and treatment, and instead began mistreating the resident, exploiting the resident for cheap labor, and forcing the resident to live in subhuman conditions. (Am. Compl. ¶¶ 10-16.)

Plaintiffs contend all Defendants either directly participated in the mistreatment or financially benefited from such mistreatment, e.g., by receiving free forced labor[1] at its facilities.

---

[1] The amended complaint repeatedly refers to "child labor," and indeed the amended complaint describes most of the alleged forced labor coming from minors. The Court refers to it simply as "forced labor," though, because at least one named Plaintiff was 18 years old at the time of his stay at TCR (Am. Compl. ¶ 134), and therefore was a legal adult at the time. *See* Wyo. Stat. Ann. § 14-1-101(a).

## PLAINTIFFS' FIVE CAUSES OF ACTION[2]

Counts 1, 2, and 3 in Plaintiffs' amended complaint assert claims under the Trafficking Victims Protections Reauthorization Act of 2008 (TVPRA), which is enforceable between private parties through 18 U.S.C. § 1595(a). Count 1 asserts a violation of 18 U.S.C. § 1589(a), which holds liable those who directly and unlawfully force others to perform labor. Count 2, under § 1589(b), concerns those who, while not directly forcing illegal labor, know or should know of the unlawful nature of the labor and benefit from the forced labor. Count 3 alleges a violation of 18 U.S.C. § 1590(a), which imposes liability for trafficking humans for forced labor.

Count 4 asserts certain Defendants violated the Racketeer Influenced and Corrupt Organizations Act (RICO), specifically 18 U.S.C. § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in [or affecting] interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" RICO is enforceable civilly by a person "injured in his business or property." 18 U.S.C. § 1964(c).

Finally, Plaintiffs' Count 5 is a state-law tort claim, described as "Negligence and Negligent Infliction of Emotional Distress." (Am. Compl. p. 67.)

## SPECIFIC ALLEGATIONS AGAINST THE DIOCESE

Only Counts 2, 3, and 5 are alleged against the Diocese. And as to Count 5, Plaintiffs allege negligence based on premises liability, not negligent infliction of

---

[2] Not all causes of action are alleged against every defendant.

emotional distress, against the Diocese. (Doc. 141 pp. 11-14.)  The following allegations from the amended complaint are relevant to the analysis:

The Diocese is a Wyoming nonprofit corporation and a diocese of the Roman Catholic Church. (Am. Compl. ¶ 46.)  Plaintiffs Carlie Sherman and Anna Gozun, and several other putative class members, were forced, against their will and without compensation, to provide weekly cleaning and event set-up services for local churches and facilities owned by the Diocese, including the Our Lady of the Valley Church located in Clark, Wyoming. (*Id.* ¶¶ 66-69.)  Plaintiff Andrew Scavuzzo was forced to install an HVAC unit at the Our Lady of the Valley Church. (*Id.* ¶ 132.)

"The Our Lady of the Valley Church specifically notes on its website that it is under the direction of Bishop Vernon Clark, the bishop of the Diocese of Cheyanne [sic], and, therefore, on information and belief, the Diocese directly benefited from Plaintiffs' and the putative class members' labor." (*Id.* ¶ 75.)

"Through its officers and/or agents, the Diocese of Cheyanne [sic] had direct knowledge of the fact that the putative class members were providing compulsory labor to the Diocese at the Our Lady of the Valley Church without compensation and without the choice not to do so.  Plaintiff Sherman specifically avers that three separate priests and one deacon were aware of the facts set forth above." (*Id.* ¶ 72.)  "Specifically, but without limitation, agents of the diocese known to Plaintiff Sherman as 'Father Vaski,' 'Father Dennis,' 'Deacon Jerry,' and a Nigerian priest whose name Plaintiff Sherman cannot recall but who will be identified in discovery each knew of every fact complained of herein that makes reference to the Our Lady of the Valley Church or the Diocese.  In the alternative,

at a minimum, these agents were aware of the status of the putative class members as minors in the custody of a for-profit corporation, that they were not being compensated for their labor, and that the putative class members were subject to harsh punishments.  On information and belief each of these individuals is an agent of the Diocese." (*Id.* ¶ 73.)

"On information and belief, the priests are additionally culpable in that putative class members of the Catholic faith made confession to the priests and disclosed the circumstances of their captivity and abuse." (*Id.* ¶ 74.)

## DISCUSSION

The Court will address the sufficiency of each alleged cause of action separately.

1. ### Count 2 - Venture Liability Under 18 U.S.C. § 1589(b) for Knowingly Benefiting from Illegal Forced Labor

Section 1589(b) holds liable "[w]hoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means."  To avoid dismissal of this claim, "plaintiffs must plausibly allege that [plaintiffs] provided labor or services that were procured by a method that is prohibited under the TVPRA, and that [the Diocese] knowingly benefited from participating in this venture." *Bistline v. Parker*, 918 F.3d 849, 871 (10th Cir. 2019).  "Venture" means "any group of two or more individuals associated in fact, whether or not a legal entity." *Id.* at 873 (quoting 18 U.S.C. § 1591(e)(6)).

The Diocese contends the amended complaint "contains no well-pleaded factual

allegations supporting the conclusory assertions that the Diocese knowingly benefited financially or otherwise or that it was involved in a venture with" TCR or TTS. (Doc. 127 p. 14.) Plaintiffs respond that "actual, subjective knowledge" is not required because 18 U.S.C. § 1595(a) allows a victim to bring suit for venture liability against a person who knowingly benefitted and who "knew or should have known" of the unlawful nature of the venture. (Doc. 141 pp. 6-11.)

The amended complaint asserts the Diocese had "direct knowledge" of the forced labor being provided to the Our Lady of the Valley Church because three priests and a deacon "each knew of every fact complained of herein that makes reference to the Our Lady of the Valley Church or the Diocese." (Am. Compl. ¶¶ 72-73.) Plaintiffs further assert "these agents were aware of the status of the putative class members as minors in the custody of a for-profit corporation, that they were not being compensated for their labor, and that the putative class members were subject to harsh punishments." (*Id.* ¶ 73.)

These allegations of knowledge are conclusory, and there are no factual allegations from which the Court could infer *how* the Diocese or its agents would have such knowledge. There are no alleged facts suggesting how it is plausible the Diocese or its agents knew or should have known they were participating in an illegal venture of forced labor. For example, Plaintiffs do not allege the Diocese or its agents threatened them or punished them in any manner, nor do Plaintiffs allege the Diocese or its agents ever witnessed anyone threatening them or punishing them. *See Jensen v. United States Tennis Ass'n*, No. 20-2422-JWL, 2020 WL 6445117, at *6 (D. Kan. Oct. 30, 2020) (granting 12(b)(6) dismissal of § 1589(b) claim as to USTA after finding plaintiff had not plausibly

asserted the knowledge element because "plaintiff does not allege that she ever notified USTA about Coach Haultain's conduct and she does not allege that anyone employed by USTA witnessed Coach Haultain's conduct or otherwise had any reason to know about Coach Haultain's conduct").

An allegation to the effect that "defendant had the requisite knowledge" is conclusory and insufficient to survive a 12(b)(6) motion on its own without supporting factual averments. Alleging only that the Diocese and its agents "directly knew" or "knew of every fact complained of herein" or "were aware" are threadbare recitals of the scienter element, but formulaic recitation of the elements is not sufficient to state a plausible claim. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) ("Thus, mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice."). The amended complaint does not provide any factual allegations to show how the Diocese could have (or should have) known or been aware. The Court must disregard these unsupported conclusory statements when examining a complaint under Rule 12(b)(6). *See id.* And the remaining factual allegations in the amended complaint fail to plausibly allege the Diocese knew or should have known that it was engaged in a venture with TCR and/or TTS to obtain the benefit of forced labor at the Our Lady of the Valley Church.

In trying to establish the scienter element, Plaintiffs also relied on information allegedly conveyed by putative class members during confession:

> On information and belief, the priests are additionally culpable in that putative class members of the Catholic faith made confession to the priests and disclosed the circumstances of their captivity and abuse.

(Am. Compl. ¶ 74; *see also* Doc. 141 p. 10 ("Notably, putative class members of the Catholic faith are alleged to have made confession to priests at the Diocese in which all of the circumstances of their captivity, abuse, and forced labor were disclosed.").)   In response, the Diocese argues this allegation still fails the plausibility standard of Rule 12(b)(6) and also relies on the clergy-penitent privilege against disclosure of a confessional exchange.  (Doc. 150 p. 8.)

The Court does not reach the issue of the clergy-penitent privilege because it agrees this allegation is so lacking in substance that it fails to plausibly demonstrate the scienter element.  This paragraph simply asserts that, on information and belief, some unidentified individuals participated in confession at unidentified times in unidentified places with unidentified Catholic priests, during which they told the priests they were being held against their will and abused by unidentified transgressors.   Plaintiffs offer no facts or specifics to support their "information and belief," yet at least some of the missing information is within Plaintiffs' control or could be obtained by Plaintiffs from the putative class members.  *See Barnes v. Harris*, 783 F.3d 1185, 1196-97 (10th Cir. 2015) (noting a relaxed pleading standard may be warranted where the relevant pleading information is entirely outside the plaintiff's control); *Waln v. Dysart Sch. Dist.*, 522 F. Supp. 3d 560, 582 (D. Ariz. 2021) ("the plausibility requirement should be relaxed primarily in cases where the facts alleged upon information and belief 'are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible....  We relax pleading requirements where the relevant

facts are known only to the defendant.'") (quoting *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017)). What is the "information" Plaintiffs possess and on which they believe such confessions were made? They do not say, which is particularly unfortunate considering that this paragraph does not appear in Plaintiffs' original complaint and was added to the amended complaint in response to Defendants' first round of motions to dismiss. (*Compare* Doc. 1 *with* Doc. 106.)

Plaintiffs' well-pled allegations, taken as true and given all reasonable inferences, fail to plausibly allege the Diocese knew or should have known it was receiving illegal forced labor when TTS or TCR provided teenagers to assist at certain Diocese locations. Consequently, Plaintiffs' amended complaint does not allege a plausible basis to hold the Diocese liable under 18 U.S.C. § 1589(b) for venture liability.

2.    **Count 3 - Liability under 18 U.S.C. § 1590(a) for Knowingly Trafficking a Person for Forced Labor or Services**

Section 1590(a) holds liable "[w]hoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter." It "imposes liability for [human] trafficking, which is separate and distinct from liability for forced labor or services." *Gilbert v. United States Olympic Comm.*, 423 F. Supp. 3d 1112, 1133 (D. Colo. 2019). Much of the foregoing analysis concerning § 1589(b) applies here because the same scienter requirement applies. (*See* Doc. 141 p. 11 ("This claim substantially mirrors Plaintiffs' Count 2 forced-labor claim.").)

The same problems plaguing Count 2 as to the scienter element also exist here. Aside from conclusory allegations that merely assert the Diocese knew or reasonably

should have known of the forced nature of the teenagers' labor, Plaintiffs have not offered any facts underpinning the scienter element; that is, the amended complaint offers no factual basis for actually establishing the Diocese's alleged knowledge or constructive knowledge. The amended complaint is particularly light on any allegations asserting the Diocese or its agents trafficked or transported any of the Plaintiffs or members of the putative class. Plaintiffs' amended complaint does not allege a plausible basis to hold the Diocese liable for human trafficking under 18 U.S.C. § 1590(a).

3.   **Count 5 - Negligence Under Wyoming State Law**

In response to the Diocese's motion to dismiss, Plaintiffs clarify their negligence claim against the Diocese is based on premises liability, not negligent infliction of emotional distress. (Doc. 141 pp. 11-14.) For a state law claim of negligence to succeed, a plaintiff must prove (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached the duty of care, and (3) the defendant's breach was the proximate cause of (4) plaintiff's injuries. *Anderson v. Duncan*, 968 P.2d 440, 442 (Wyo. 1998).

Specific to premises liability, "Wyoming law is clear that 'a premises owner must use ordinary care to keep the premises in a safe condition and is charged with an affirmative duty to protect visitors against dangers known to him and dangers discoverable with the exercise of reasonable care.'" *Williams v. Plains Tire & Battery Co.*, 2017 WY 136, ¶ 18, 405 P.3d 228, 232 (Wyo. 2017) (quoting *Amos v. Lincoln Cty. Sch. Dist. No. 2*, 2015 WY 115, ¶ 20, 359 P.3d 954, 960 (Wyo. 2015)). In advancing their premises-liability claim against the Diocese, Plaintiffs assert, "The Wyoming Supreme Court has held that a landowner has a duty to an employee of a contractor working on the premises to exercise

reasonable care under all the circumstances to protect the employee from foreseeable dangers." (Doc. 141 p. 12 (citing *Cornelius v. Powder River Energy Corp.*, 2007 WY 30, 17-18 (Wyo. Feb. 21, 2007).) Plaintiffs argue, "If an employer is responsible to exercise such a duty of care towards a paid, adult contractor, certainly this holding would extend to minor children routinely performing labor on their premises without compensation." (*Id.*)

Plaintiffs' amended complaint does not plausibly allege a legally-viable duty of care or the causation element of negligence. Plaintiffs offer no authority for their proposition that the premises-liability duty of care exists to protect visitors from affirmative, illegal actions of tenants/owners against visitors, such as child abuse or forced labor. The premises-liability duty of care attempts to protect visitors from dangers posed by *the premises*, not from dangers posed by the tenants/owners. "[A] premises owner must use ordinary care to keep *the premises* in a safe condition ...." *Williams*, ¶ 18, 405 P.3d at 232 (emphasis added). Plaintiffs' novel attempt to suggest premises-liability law requires a premises owner to protect against the use of unlawful forced labor is far too great a leap beyond the duty actually found to exist by the Wyoming Supreme Court. Thus, Plaintiffs' premises-liability theory fails to allege a proper premises-liability duty of care owed by the Diocese; the duty of care claimed by Plaintiffs attempts to torture premises liability beyond recognition. Premises liability is not vicarious liability for the landlord-tenant relationship.

Additionally, nowhere in Plaintiffs' amended complaint do they allege they were injured by *the premises* owned by the Diocese. They claim to have been injured because they were actively subjected to various forms of forced labor, deprivation of necessities, and abuse. They have not alleged they were injured because *the premises* at the Our Lady

of the Valley Church was in a state of disrepair. Thus, Plaintiffs have not plausibly stated the causation element of premises-liability negligence. Plaintiffs do not allege the Diocese's failure to keep the Our Lady of the Valley Church's premises in safe, working order caused their claimed injuries.

The amended complaint does not plausibly allege a state-law claim of negligence based on premises liability against the Diocese.

### 4.     Plaintiffs' Request for Leave to Amend

In their response to the Diocese's second motion to dismiss, Plaintiffs contend they "should be provided leave to amend the First Amended Complaint in the event that the Court identifies any deficiency so that Plaintiffs['] claims can be heard on the merits." (Doc. 141 p. 15.) Drive-by requests for conditional amendment tacked on to the end of briefing are improper. "A district court may deny leave to amend when a plaintiff fails to file a written motion and instead merely suggest[s] she should be allowed to amend if the court conclude[s] her pleadings [a]re infirm." *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) (alterations in original) (internal quotation marks omitted) (quoting *Warnick v. Cooley*, 895 F.3d 746, 755 (10th Cir. 2018)). "[A] bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based." *Id.* (quoting *Albers v. Bd. of Cty. Comm'rs*, 771 F.3d 697, 706 (10th Cir. 2014)).

Granting Plaintiffs' threadbare request for leave to amend their amended complaint is particularly unwarranted in this case for two reasons. First, Plaintiffs already filed an amended complaint in direct response to the Defendants' original motions to dismiss in an

attempt to cure any pleading deficiencies. (*See* Doc. 106.) Lawsuits "are not to be litigated piecemeal. The court should not have to address repeated 'improvements' to the complaint." *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1236 (10th Cir. 2020). "Efficient adjudication of disputes requires that the party present its best effort to state a claim before the court addresses the motion to dismiss." *Id.*

Second, in violation of Local Civil Rule 15.1, Plaintiffs have not included "the proposed amended complaint as an attachment and include[d] a representation that the movant conferred with the opposing part and whether or not the opposing party objects to the motion."

Plaintiffs have not filed a motion for leave to amend, and they have already played the "buttress-the-complaint-through-amendment-game" once. They do not identify with any specificity what it is they seek to add to the amended complaint to save their claims against the Diocese. Significantly, the Diocese's arguments concerning the knowledge element of Plaintiffs' TVPRA claims were also presented in the Diocese's first motion to dismiss. (*Compare* Doc. 96 *with* Doc. 127.) Plaintiffs' inability to remedy its pleading deficiencies as to their claims against the Diocese via their amended complaint demonstrates that providing Plaintiffs a third bite at this apple would be futile. Consequently, their naked request for leave to amend "in the event that the Court identifies any deficiency" is denied and dismissal with prejudice of these claims is warranted. *See Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1191 (10th Cir. 2014) ("dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile").

## CONCLUSION AND ORDER

The amended complaint does not state a plausible claim for relief against the Diocese, and Plaintiffs' indefinite request for leave to amend is denied. Under Rule 12(b)(6), all claims asserted against the Diocese of Cheyenne must be dismissed for failure to state a claim on which relief can be granted. Plaintiffs have had two opportunities to state a viable claim against the Diocese and should have done so by now if a viable claim existed.

**IT IS THEREFORE ORDERED** that the second motion to dismiss of Defendant Diocese of Cheyenne (Doc. 126) is **GRANTED**. The causes of action alleged against the Diocese are hereby **DISMISSED WITH PREJUDICE**.

**DATED:** November _30th_, 2021.

Scott W. Skavdahl
United States District Judge