Thomas Quinn (WY: #5-2630)
Lillian L. Alves (*Pro Hac Vice*)
Lindsey M. Romano (*Pro Hac Vice*)
GORDON REES SCULLY MANSUKHANI, LLP
555 Seventeenth Street, Suite 3400
Denver, CO  80202
Telephone: (303) 534-5160
tquinn@grsm.com
lalves@grsm.com
lromano@grsm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **CARLIE SHERMAN**, **ANNA GOZUN**, and **AMANDA NASH**; on behalf of themselves and all similarly situated persons,<br><br>Plaintiffs,<br><br>vs.<br><br>**TRINITY TEEN SOLUTIONS, INC.,** a Wyoming corporation; **ANGELA C. WOODWARD; JERRY D. WOODWARD**; **KARA WOODWARD**; **KYLE WOODWARD; and DALLY-UP, LLC,**<br><br>Defendants. | Civil Doc. No. 20-CV-215-SWS<br><br>**TTS DEFENDANTS' DESIGNATION OF EXPERT WITNESSES** |

Pursuant to Local Rule 26.1(d), FED.R.CIV.P. 26(a)(2), and the Court's Pretrial Order [D.E. 179],  Defendants Trinity Teen Solutions, Inc. (TTS), Angela Woodward, Jerry Woodward, Kara Woodward, Kyle Woodward, and Dally Up, LLC ("TTS Defendants") disclose their expert witnesses, as follows. The following apply to all expert witnesses listed herein:

1. Each expert witness set forth herein states his or her opinion to the required degree of probability in the witness's field of expertise.

1

2.      All material information relied upon by expert witnesses in forming opinions are of the type ordinarily and reasonably relied upon by expert witnesses in forming opinions and are expressed to a reasonable degree of probability.

3.      The contents of depositions of each witness, if a deposition is taken, are incorporated in this witness designation for each witness.

4.      All experts listed herein may criticize, comment upon or rebut the deposition testimony, reports, written materials or any data or testing materials produced or compiled in this case by the expert designated by any of the Plaintiffs. Defendants reserve the right to provide, if applicable and necessary: demonstrative exhibits and animations, when available, reserving the right to modify, amend and/or withdraw demonstrative images, exhibits, and/or visualizations.

5.      Defendants reserve the right to call the expert designated by any of the Plaintiffs in this case, whether retained or withdrawn as an expert.

6.      Because discovery and medical care is ongoing, Defendants reserve the right to supplement this designation by giving opposing counsel notice of additional opinions that may be generated from newly discovered evidence or medical care.

### RETAINED EXPERT WITNESSES

Defendants have retained the following individuals as expert witnesses to testify in this case.  Defendants will provide these experts, without subpoena, for deposition at Plaintiffs' expense.  Defendants reserve the right to supplement this designation, as new information is made and known to Defendants or their experts. Supplementation may be in the form of depositions, correspondence, or through supplemental exhibits. Finally, Defendants reserve the right to

supplement this designation in response to any further expert designation by any Plaintiff, and any corresponding deposition of expert designated by any Plaintiff.

Karen V. Fukataki, MD
P.O. Box 460541
Glendale Station
Denver, CO. 80246-0541

Dr. Fukataki is a licensed psychiatrist who has practiced for over 30 years. Her current practice includes forensic psychiatry, including, but not limited to, diagnosing and determining the effects of trauma. She has worked in and collaboratively with multiple inpatient behavioral health settings, including recent work with adolescent females at a residential treatment facility admitted with a history of sexual or physical abuse. She is a member of the American Psychiatric Association, the Colorado Psychiatric Association, and the American Academy of Psychiatry and the Law. A copy of her Curriculum Vitae is attached hereto and incorporated by reference as Exhibit A. It includes publications authored in the previous ten years.

Dr. Fukataki is expected to testify consistently with this designation, her report, and her deposition, if taken. Her confidential[1] evaluation is attached as Exhibit B. Exhibit B contains (i) the report drafted by Dr. Fukataki which includes her opinions and the basis and reason for them and (ii) the facts and data considered by Dr. Fukataki in forming her opinions. Dr. Fukataki is expected to provide exposition, conclusions and/or opinions regarding Plaintiffs Anna Alsup, Carlie Sherman, and Amanda Nash and their respective pre-existing trauma and psychiatric histories and the alleged psychological injuries that they claim are attributable to their time at TTS. Dr. Fukataki will offer her opinions regarding the past, present, and future damages claimed by all

---

[1] Pursuant to the Court's protective orders at D.E. 210, 200, and 176.

Claimants. Dr. Fukutaki will also offer her opinions regarding how the TTS program operated compared to how it was disclosed to parents which also incorporates discussion of third party or outside oversight of TTS. Dr. Fukutaki will offer her assessment of the TTS treatment model overall. Additionally, Dr. Fukataki will provide testimony concerning her evaluation of Dr. Sara Boyd's assessment and report, including Dr. Boyd's methodology for reaching her conclusions. Dr. Fukataki's testimony will be based on her training, education, and experience along with her review of the records in this case. Dr. Fukataki will be sufficiently familiar with the pending action to offer expositions, conclusions, and/or opinions regarding her evaluation at trial. Dr. Fukataki is also expected to respond to percipient witness testimony as well as the expert witness testimony and opinions offered by Plaintiffs' expert.

Dr. Fukataki's rate is $500/hour for document review, consultation, report preparation, and testimony and $1000/hour for depositions (including time required for travel, waiting, and preparation).

Dr. Fukataki's testimony history for the last four years is attached as Exhibit C.

Dr. Fukutaki reserves the right to supplement her opinions based upon review of additional information acquired, and she reserves the right to provide rebuttal testimony to any opinions offered by the Plaintiffs' expert.

Defendants anticipates that Dr. Fukutaki will conduct FED.R.CIV.P. 35 examinations of Ms. Sherman, Ms. Gozun, and Ms. Nash, pursuant to the Court's directives contained in the Court's Pre-Trial Order. [D.E. 179, p. 10].

Dr. Kimberly Mehlman-Orozco
Break the Chain, LLC
15920 Fairway Drive
Dumfries, VA. 22025

Dr. Kimberly Mehlman-Orozco, Ph.D. is a leading expert in human trafficking who has studied and written extensively on the subject. Dr. Mehlman-Orozco has a doctorate in philosophy of criminology, law, and society and a master of arts in justice, law, and crime policy. She is trained in survey methodology as well as the collection and analysis of data and uses these methods in approaching the subject matter on which she provides opinions. She conducts extensive primary and secondary research regarding the different form of human trafficking including scores of interviews with both human trafficking victims and human traffickers. She has published a number of peer-reviewed scholarly articles. She has served as an adjunct human trafficking subject matter expert for the RAND Corporation. She wrote *Hidden in Plain Sight: America's Slaves of the New Millennium*, a book that examines trends in sex and labor trafficking in the United States, which is additionally used as a manual to train law enforcement.

Dr. Mehlman-Orozco has served as an expert human trafficking witness in numerous cases, both civil and criminal, primarily in support of the prosecution in criminal cases but occasionally for criminal defendants as well as in civil cases for both defendants and plaintiffs. Additional detailed information about her experience and background can be found at https://mehlmanorozco.com/ (last visited October 4, 2022).

Dr. Mehlman-Orozco is expected to testify consistently with this designation, her report, and her deposition, if taken. Dr. Mehlman-Orozco's confidential[2] evaluation is attached as Exhibit D and contains the following: (i) the report drafted by Dr. Mehlman-Orozco which includes her opinions and the basis and reason for them; (ii) the facts and data considered by Dr. Mehlman-

---

[2] Pursuant to the Court's protective orders at D.E. 210, 200, and 176.

Orozco in forming her opinions; (iii) Dr. Mehlman-Orozco's qualifications, including a list of all publications authored in the previous ten years and; and (iv) a list of all other cases in which, during the previous four years, Dr. Mehlman-Orozco testified as an expert in trial or by deposition. Exhibit E (*Daubert* order from the District of New Mexico) and Exhibit F (Dahlstrom article, *Trafficking to the Rescue?*) are also included with this filing.

Dr. Mehlman-Orozco will provide exposition, conclusions and/or opinions that Plaintiffs' experiences were atypical and inconsistent with standard labor trafficking patterns and indicia. She will opine that the Plaintiffs were not placed in the residential placement center for the purpose of employment and were never employed by the Defendants, but more importantly, the Plaintiffs allegations are not consistent with exploitation. While Plaintiffs did have their housing, food, transportation, and communication controlled and/or monitored by the Defendants, this was solely because they were acting *in loco parentis* and were attempting to address the Plaintiffs' antisocial behaviors. The Plaintiffs, as part of the program, were required to perform chores and follow TTS's rules, or face consequences. Courts have found that even if chores are compelled, that does not change the nature of the work, which is not consistent with modern slavery. Moreover, although the Plaintiffs complained about the chores and the consequences (for example running or being tied to a goat), they do not allege physical or sexual abuse consistent with human trafficking during their placement at Trinity Teen Solutions or by the Defendants. The therapeutic value of work, to the extent what Plaintiffs did was "work," is an internationally recognized concept that is published about in peer-reviewed journal articles. Work-therapy is based on the logic that "work" is a regenerator of a sick body and an ill mind and engaging in this form of therapy has the potential to turn young delinquents into future

worker. To that end, Dr. Mehlman-Orozco's analysis includes the following:

I.     The congressional intent of human trafficking laws is to address modern slavery.

II.     Although extant human trafficking cases illustrate a clear pattern on what falls within the legal parameters of modern slavery, human trafficking "indicia" may lead to misidentification if not assessed within the totality of the circumstances.

III.     False claims of trafficking can be viewed as secondary exploitation.

IV.     The Plaintiffs' purported expert failed to support her opinions with reliable principles and scientific methods.

V.     The Plaintiffs' allegations, even if all accepted as true and countervailing evidence is ignored or rejected as false or unreliable, are atypical and inconsistent with standard labor trafficking patterns and indicia.

Dr. Mehlman-Orozco is also expected to respond to percipient witness testimony as well as the expert witness testimony and opinions offered by Plaintiffs' expert. Dr. Mehlman-Orozco's testimony will be based on her training, education, and experience along with her review of the records in this case.

Dr. Mehlman-Orozco's rate is $550/hour for research, review, and consultations, $750/hour for deposition and trial testimony, and $350 for portal to portal travel.

Pursuant to Local Rule 26.1(e)(5) Defendants additionally disclose that Dr. Mehlman-Orozco is amenable to a virtual deposition. To the extent Plaintiffs wish to request a live deposition, she will make herself available to a location within 90-minute drive from Dumfries, Virginia.

Dr. Mehlman-Orozco reserves the right to supplement her opinions based upon review of additional information acquired, and she reserves the right to provide rebuttal testimony to any opinions offered by the Plaintiffs' expert.

Jim Fryer

Hall & Hall, Inc.
1227 North 14th Ave., Ste. 1
Bozeman, MT. 59715

Jim Fryer is a Management Consultant with Hall & Hall, Inc., which is a national agricultural and ranch land brokerage and management company that was founded in 1946. (*See* https://hallhall.com/ (last visited Oct. 4, 2022)). He holds a Bachelor of Science in Animal Science and Agricultural Business and a Master of Science in Agriculture and Resource Economics. Since 1995, Mr. Fryer has led operations on over 1 million acres of rangeland and farm ground across the United States. His rangeland operations management experience includes direct project management, for example, calculating carrying capacity to establish grazing programs to maximize production while conserving range resources to ensure longevity, installing infrastructure to better utilize grazing systems, and real-time monitoring and adjusting of grazing systems considering ever changing forage growing conditions. Mr. Fryer's ranch and agricultural management operations experience also includes all aspects of staff management including assessment of staffing needs, wage and salary budgeting, and ascertaining the skillsets of prospective employees. He has additionally directed staff on all ranch projects including parturition, doctoring newborn livestock, feeding cattle, caring for horses, training horses, pivot irrigation design, irrigation, fence installation and repair, working facility construction, hay and farm production, harvesting, transporting farm and ranch products, capital improvements, equipment deployment and maintenance, as well as all other features necessary to conduct ranch business. He is specifically familiar with the range of options for caring for animals on site from care administered by operators through veterinary care.

Mr. Fryer has also successfully calculated livestock feed requirements in all major livestock growing countries around the world for the specific purposes of transporting and merchandising feed ingredients for the largest privately held company in the United States. This includes 3 years of in-depth and on the ground quantifying China's livestock feed production, feed distribution, and animal husbandry methods. A copy of his Curriculum Vitae is attached hereto and incorporated by reference as Exhibit G. Mr. Fryer has not authored publications in the previous ten years or testified as an expert in trial or via deposition in the last four years.

Mr. Fryer is expected to testify consistently with this designation, his report, and his deposition, if taken. His confidential[3] evaluation is attached as Exhibit H. Exhibit H contains (i) the report drafted by Mr. Fryer which includes his opinions and the basis and reason for them and (ii) the facts and data considered by Mr. Fryer in forming her opinions. Mr. Fryer is expected to provide exposition, conclusions and/or opinions regarding agricultural capacity ability to support commercial agricultural or ranching operations of the property where TTS is located based on its size, terrain, and availability of water. He will also opine regarding how the activities of the TTS residents compare to those of typical ranch employees.

Mr. Fryer's testimony will be based on his training, education, and experience along with his review of the records in this case as well as publicly-available records. Mr. Fryer will be sufficiently familiar with the pending action to offer expositions, conclusions, and/or opinions regarding her evaluation at trial. Mr. Fryer is also expected to respond to percipient witness testimony as well as the expert witness testimony and opinions offered by Plaintiffs' expert.

---

[3] Pursuant to the Court's protective orders at D.E. 210, 200, and 176.

Mr. Fryer's rate is $150/hour for document review, consultation, and report preparation. His fee is $300/hour for testimony or depositions (including time required for travel, waiting, and preparation).

Mr. Fryer reserves the right to supplement her opinions based upon review of additional information acquired, and he reserves the right to provide rebuttal testimony to any opinions offered by the Plaintiffs' expert.

## SUPPLEMENTAL DESIGNATION RESERVED

Defendants reserve the right to supplement this designation of expert witnesses pending review of additional discovery not yet obtained or which may be provided later in the case. Defense experts reserve the right to supplement their opinions in this case pending review of the additional information.

## EXPERTS DESIGNATED BY THE PLAINTIFFS

Defendants reserve the right to call any and all experts listed by either Plaintiff.

Respectfully submitted this 14th day of October, 2022.

/s/ *Thomas B. Quinn*
/s/ *Lillian Alves*
/s/ *Lindsey Romano*
Thomas Quinn (WY: #5-2630)
Lillian L. Alves (Pro Hac Vice)
Lindsey M. Romano (Pro Hac Vice)
GORDON REES SCULLY MANSUKHANI, LLP
555 Seventeenth Street, Suite 3400
Denver, CO 80202
Telephone: (303) 534-5160
tquinn@grsm.com
lalves@grsm.com
lromano@grsm.com

***Attorneys for Defendants Trinity Teen Solutions,
Angela Woodward, Jerry Woodward, Kyle
Woodward, Kara Woodward, and Dally-Up, LLC***

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 14th day of October 2022, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such to all attorneys of record.

*/s/ Fran Aragon Eaves*
For Gordon Rees Scully Mansukhani, LLP