**FILED**
**United States Court of Appeals**
**Tenth Circuit**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**October 31, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

| | |
|---|---|
| CARLIE SHERMAN; ANNA GOZUN; AMANDA NASH, on behalf of themselves and all similarly situated persons, | |
| Plaintiffs - Appellants, | |
| v. | No. 22-8080 |
| TRINITY TEEN SOLUTIONS, INC., a Wyoming corporation; ANGELA C. WOODWARD; JERRY D. WOODWARD; KARA WOODWARD; KYLE WOODWARD; DALLY-UP, LLC, a Wyoming limited liability company, | |
| Defendants - Appellees. | |
| ------------------------------ | |
| UNITED STATES OF AMERICA, | |
| Amicus Curiae. | |

_____

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 2:20-CV-00215-SWS)**
_____

Brice M. Timmons, Donati Law, PLLC, Memphis, Tennessee (Craig A. Edgington and Bryce Ashby, Donati Law, PLLC, Memphis, Tennessee; Michael Rosenthal and Nathan Nicholas, Hathaway & Kunz, LLP, Cheyenne, Wyoming; and Frank L. Watson III, Watson Burns, PLLC, Memphis, Tennessee, with him on the briefs), for Plaintiffs – Appellants.

Thomas B. Quinn (Lillian Alves and Lindsey Romano with him on the brief), Gordon Rees Scully Mansukhani LLP, Denver, Colorado, for Defendants – Appellees.

Kristen Clarke, Assistant Attorney General; and Erin H. Flynn and Katherine E. Lamm, U.S. Department of Justice, Civil Rights Division, Washington, D.C., filed an amicus curiae brief for the United States of America.

_____

Before **PHILLIPS**, **BALDOCK**, and **McHUGH**, Circuit Judges.

_____

**McHUGH**, Circuit Judge.

_____

Plaintiffs Carlie Sherman, Anna Gozun, and Amanda Nash appeal the district court's denial of class certification in a forced labor action against Trinity Teen Solutions ("Trinity"), a residential treatment center for adolescent girls, and its owners and operators (collectively, "Defendants"). Plaintiffs, now adults, were all sent to Trinity as minors by their parents. Trinity advertised itself as offering a wide range of therapies for troubled adolescent girls in a ranch environment and as taking a tough love approach, with its residents living in primitive conditions and working on the ranch as part of their treatment experience. Plaintiffs allege that, during their residence at Trinity, they were forced to work long hours without pay under threat of serious harm. Plaintiffs filed suit against Defendants, on behalf of themselves and a proposed class of former Trinity residents, bringing three forced labor claims under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1589 *et seq.*

Plaintiffs sought class certification pursuant to Federal Rule of Civil Procedure 23, proposing a putative class of "Plaintiffs, and all similarly situated persons who received treatment from [Trinity] and were subjected to the provision of 'agricultural labor' (as

2

defined [by] 26 C.F.R. § 31.3121(g)(1)) or any other manual labor to [Trinity] without payment for said labor[,]" for a class period from November 27, 2010, to the present. App. at 137.[1] The district court denied class certification, concluding Plaintiffs had failed to satisfy Rule 23's commonality, typicality, and predominance requirements.

Plaintiffs appealed the district court's denial of class certification, pursuant to Federal Rule of Civil Procedure 23(f). We conclude the district court erred by applying the incorrect legal standard to its analysis of Rule 23(a)'s commonality and typicality requirements and Rule 23(b)(3)'s predominance requirement. Therefore, we vacate the district court's order denying class certification and remand for further proceedings consistent with this opinion.

## I.     BACKGROUND

### A.     *Legal Background*

**1.     Federal Rule of Civil Procedure 23**

Federal Rule of Civil Procedure 23 sets out the requirements for maintaining a class action. To certify a class action, Plaintiffs must demonstrate the putative class satisfies four requirements under Rule 23(a) and one of three alternative requirements under Rule 23(b). The four Rule 23(a) requirements are (1) numerosity, meaning "the class is so numerous that joinder of all members is impracticable"; (2) commonality, such

---

[1] Appellants' appendix and supplemental appendix are consecutively paginated across volumes. Accordingly, our citations to the record omit reference to volume numbers. References to page numbers within the appendix and supplemental appendix are based on the bates numbered pagination applied to the parties' record on appeal.

that "there are questions of law or fact common to the class"; (3) typicality, meaning "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) adequacy, such that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Plaintiffs moved for certification under Rule 23(b)(3), which requires "the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are commonly referred to as predominance and superiority, respectively.

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Accordingly, "[t]he district court must undertake a rigorous analysis to satisfy itself that a putative class meets the applicable Rule 23 requirements." *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 913 (10th Cir. 2018) (internal quotation marks omitted). Usually, "that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc.*, 564 U.S. at 351. Still, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

4

## 2.     Trafficking Victims Protection Reauthorization Act

The Trafficking Victims Protection Reauthorization Act provides a civil private right of action by any "individual who is a victim of a violation . . . against the perpetrator."[2] 18 U.S.C. § 1595(a). Plaintiffs have raised three claims against Defendants under the Trafficking Victims Protection Reauthorization Act: (1) a forced labor claim under § 1589(a); (2) a claim for knowingly benefitting from forced labor under § 1589(b); and (3) a labor trafficking claim under § 1590(a).

To succeed on their § 1589(a) claim, Plaintiffs must demonstrate that Defendants:

> knowingly provide[d] or obtain[ed] the labor or services of a person by any one of, or by any combination of, the following means—
>     (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>     (2) by means of serious harm or threats of serious harm to that person or another person;
>     (3) by means of the abuse or threatened abuse of law or legal process; or
>     (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint . . . .

18 U.S.C. § 1589(a). Section 1589 further defines "serious harm" as:

> any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

---

[2] Victims may also proceed against "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter[.]" 18 U.S.C. § 1595(a).

18 U.S.C. § 1589(c)(2). For their § 1589(b) claim, Plaintiffs must prove that Defendants:

> knowingly benefit[ted], financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means.

18 U.S.C. § 1589(b). Finally, for Plaintiffs to succeed on their § 1590(a) labor trafficking claim, they must show that Defendants "knowingly recruit[ed], harbor[ed], transport[ed], provide[d], or obtain[ed] by any means, any person for labor or services in violation of this chapter." 18 U.S.C. § 1590(a).

## B.    *Factual History*[3]

Jerry and Angela Woodward,[4] a married couple, opened Trinity in 2002, as a residential treatment center integrated with their ranch in Park County, Wyoming. Angela was a licensed registered nurse and, prior to opening Trinity, had worked at her father's ranch-based group home, Mount Carmel. Jerry had no experience in mental health treatment prior to opening Trinity but had experience working on ranches. Like Angela, Jerry had previously worked at Mount Carmel. Together, they opened Trinity with the goal of providing treatment to troubled girls in a non-traditional setting. Jerry's and Angela's adult children, Kyle and Kara Woodward, also worked at Trinity. Together, the

---

[3] The following facts are drawn from Plaintiffs' operative complaint, Plaintiffs' motion for class certification, and evidence submitted by both parties. They are accepted as true solely for the purposes of this appeal. *See Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1169 n.1 (10th Cir. 2023).

[4] To avoid confusion, we will refer to each member of the Woodward family by his or her first name.

Woodwards co-owned, managed, and were members of Dally-Up LLC, which in turn

owned the land where Trinity was located.

Trinity advertised itself as a treatment center that "challenge[d] young women to

create healthier lives and make appropriate choices which honor God, self, and others" in

a "wilderness ranch setting" using "animal assisted therapy and [] individual care

plan[s]." App. at 86. Trinity's handbook stated that it treated residents with a holistic

approach, using ranch work, school, therapy, nutrition, physical exercise, and spiritual

exercises to help residents change their behaviors. The minimum stay at Trinity was

forty-five days, but typical stays ranged from twelve to eighteen months. Plaintiffs allege

Trinity arranged with parents for girls to enter its treatment program, often utilizing a

"legal kidnapping" transportation method, where girls would be taken from their homes,

with their parent's or guardian's consent, to Trinity with no notice. *Id.* at 8. Prior to their

children being admitted at Trinity, parents signed informed consent forms which

described the nature of Trinity's program. Specifically, the consent forms stated:

> I/We understand that my daughter will be involved in all activities that
> occur on any working ranch. This includes and is not limited to: Horseback
> riding in the mountains, irrigating, fence building, building structures,
> cleaning barns and corrals, feeding, watering, and exercise of animals,
> veterinary medicine and all the care related to working with livestock
> (doctoring, immunizing, roping, branding, labor and delivery, breeding,
> feeding, watering, pushing and loading in chute) etc.

Sup. App. at 271. Parents also acknowledged by signature that they "underst[ood]

that [Trinity's] program is physically demanding, rigorous, dangerous, stressful

and psychologically, emotionally and spiritually challenging for the student." *Id.*

Once residents arrived at Trinity, their contact with their parents was limited to supervised telephone calls and letters reviewed by Trinity staff members. Trinity operated on a six-level system, where residents started at level one and were considered ready to graduate once they reached level six. Residents who did not comply with program requirements faced the possibility of demotions in level. Residents' daily routines at Trinity included preparing and eating three meals a day; schoolwork; journaling; spiritual study assignments; physical exercise assignments; indoor chores like cooking, cleaning, and doing laundry; and ranch chores such as stacking hay, caring for animals, and moving irrigation lines.

Upon arrival, new residents were given a Ranch Policies and Procedures Manual that included instructions on how to fix fences, irrigate, take care of animals, birth lambs, stack hay, feed hay, use the wood burning stove, safely prepare food, and wash dishes. New residents were also informed, through an introductory packet entitled the Holy Cowgirl Manual, that they would be "assigned outside chores and duties according to [their] abilities and the needs of the ranch. . . . The indoor and outdoor chores around the ranch are important, they matter, and if [the residents] shirk[ed] off during chores, [they] [would] be held accountable." App. at 843. Typically, all residents at Trinity worked on the ranch and on household chores like cooking meals, cleaning dishes, and doing laundry. When they failed to complete assigned tasks, residents were given consequences such as having to do push-ups, run up and down a hill, or being demoted a level and, accordingly, facing a longer stay at Trinity. Plaintiffs' lawsuit focuses on the ranch and

household chores Trinity assigned to its residents, and the consequences they faced for not doing these tasks.

Plaintiffs Carlie Sherman, Anna Gozun, and Amanda Nash were all sent as minors to Trinity by their parents. Ms. Sherman participated in Trinity's program twice, once from May 2012 through July 2013, and a second time from July 2014 through October 2015. Ms. Gozun was a resident at Trinity from February 2012 through July 2012. Ms. Nash was a resident at Trinity from May 2015 through November 2015. Plaintiffs' proposed class includes residents who participated in Trinity's program from November 27, 2010, to the present.

## C.    *Procedural History*

In November 2020, Plaintiffs filed suit in the District of Wyoming on behalf of themselves and those similarly situated. As relevant to this appeal, Plaintiffs claimed Defendants (1) violated 18 U.S.C. § 1589(a)'s prohibition of forced labor; (2) knowingly benefitted from forced labor in violation of 18 U.S.C. § 1589(b); and (3) "knowingly recruited, harbored, transported, provided, and/or obtained by any means Plaintiffs and members of the putative class for their labor or services in violation of 18 U.S.C. § 1590(a)[.]"[5] *Id*. at 61.

---

[5] Plaintiffs also asserted a civil Racketeer Influenced and Corrupt Organizations Act ("RICO") claim, alleging Defendants "each conducted the affairs of [Trinity] . . . through a pattern of racketeering activity by repeatedly violating 18 U.S.C. §§ 1589 & 1590"; a claim alleging negligence; and a claim alleging negligent infliction of emotional distress. App. at 63. The district court dismissed these claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and they are not part of the Plaintiffs' proposed class certification or the instant appeal. Supp. App. at 63.

In August 2022, Plaintiffs filed a motion for class certification pursuant to Federal Rule of Civil Procedure 23. Plaintiffs claimed they and putative class members were taken to Trinity based on a false promise to their parents that they would receive a variety of therapies but instead were forced "to labor from early morning until late at night, without pay, under the constant threat of physical and emotional punishment and further confinement." *Id.* at 129. Plaintiffs proposed certification of a class consisting of "Plaintiffs, and all similarly situated persons who received treatment from [Trinity] and were subjected to the provision of 'agricultural labor' . . . or any other manual labor to one or more of the Defendants without payment for said labor" from November 27, 2010, to the present. *Id.* at 137. "Agricultural labor" is defined by 26 C.F.R. § 31.3121(g)-1 to include a wide range of work performed on farms such as "[s]ervices performed in connection with the operation, management, conservation, improvement, or maintenance of any of such farms or its tools or equipment"; "[t]he cultivation of the soil"; "[t]he raising, shearing, feeding, caring for, training, or management of livestock, bees, poultry, fur-bearing animals, or wildlife"; and "[t]he raising or harvesting of any other agricultural or horticultural commodity." 26 C.F.R. § 31.3121(g)-1(a)(1), (b)(1)(i)–(iii), & (c)(1)(i). Plaintiffs argued their proposed class satisfied all requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) such that class certification was appropriate.

In support of class certification, Plaintiffs submitted declarations from themselves and thirty-four putative class members, alleging similar experiences at Trinity. Plaintiffs also submitted a preliminary expert report prepared by Dr. Sara Boyd, a licensed clinical psychologist, based on her interviews with six former Trinity residents. Dr. Boyd opined

that interviewees' "injuries . . . were highly similar," and that they had been subject to similar conditions while residents at Trinity. App. at 323. Plaintiffs later supplemented their motion for class certification, citing additional support based on Angela's deposition and Trinity's (1) Policies and Procedures Manual, instructing residents on how to complete various ranch tasks; (2) Holy Cowgirl Manual, explaining the indoor and outdoor chores residents were expected to complete; (3) supervision checklists, showing where residents were at different times of day; (4) consequence charts, listing consequences given to residents; and (5) 2012 chore list, outlining chores required of residents in 2012.

Defendants opposed class certification, arguing Plaintiffs had "advance[d] a vague, unascertainable, and impermissible fail-safe class definition" and failed to demonstrate the proposed class satisfied any of the Rule 23(a) or Rule 23(b)(3) criteria for class certification. Sup. App. at 86–87. Defendants also challenged the reliability of Plaintiffs' evidence, pointing to inconsistencies between Plaintiffs' declarations and their deposition testimony.

The district court denied Plaintiffs' motion for class certification, concluding Plaintiffs had failed to satisfy Rule 23(a)'s commonality and typicality requirements and Rule 23(b)(3)'s predominance requirement. The court decided commonality was lacking because (1) "[d]etermining each potential class member's right to an award for unlawful 'agricultural labor' or 'manual labor' will depend on, among other things, the parent/guardian's knowledge and scope of consent" and (2) "determining an appropriate award of . . . damages will have to be done on an individual basis." App. at 1147–48. The

court concluded the putative class did not satisfy typicality for largely the same reasons it did not satisfy commonality, again referencing the need for "[d]isparate inquiries into experiences and damages[.]" *Id.* at 1149. The court also relied on its commonality analysis to determine the putative class did not satisfy predominance. Because "each potential class member's evidence would be unique and particular to their time and experience at [Trinity]," the court concluded class members' "claims of forced agriculture labor and other forced manual labor are not susceptible to generalized, class-wide proof." *Id.* at 1151. Thus, the court denied Plaintiffs' motion for class certification.

Plaintiffs filed a timely petition for leave to appeal class certification pursuant to Federal Rule of Civil Procedure 23(f) and Federal Rule of Appellate Procedure 5. This court granted Plaintiffs' petition, and we exercise jurisdiction under 28 U.S.C. § 1292(e).

## II.   DISCUSSION

Plaintiffs appeal the district court's denial of class certification. Plaintiffs argue the district court incorrectly applied the legal standards for assessing Rule 23's requirements of commonality, typicality, and predominance. Additionally, Plaintiffs argue the district court erred in concluding individualized damages inquiries precluded class certification. Defendants respond that the district court correctly applied the standards for determining commonality, typicality, and predominance under Rule 23 and "did not abuse its

discretion in its treatment of or conclusions regarding individual damages."[6] Appellees'

Br. at 48.

We conclude the district court denied class certification based on an incorrect

application of the legal standards for determining whether the proposed class satisfied

Rule 23's requirements of commonality, typicality, and predominance. Therefore, we

vacate the district court's order denying class certification and remand for further

proceedings consistent with this opinion.

### A.    *Standard of Review*

We review de novo questions of whether the district court applied the correct legal

standard in its class certification analysis. *See Black v. Occidental Petroleum Corp.*, 69

---

[6] As an alternative ground for affirming the district court's denial of class certification, Defendants argue that Plaintiffs have proposed an impermissible fail-safe class definition. Appellees' Br. at 27. We decline to address this issue because Defendants have not adequately briefed it, failing to address the circuit disagreement over whether a fail-safe class definition is an independent bar to Rule 23 class certification. *See United States v. Casados*, 26 F.4th 845, 853 (10th Cir. 2022) ("We may affirm on alternative grounds only when those grounds are dispositive, indisputable, and appear clearly in the record." (quotation marks omitted)); *see also Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616, 624 (8th Cir. 2021) (treating fail-safe class definition as independent basis to deny class certification); *Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) (identifying fail-safe class definition as independent reason for denying class certification); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (noting issue of fail-safe class definitions but concluding that this problem "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis"); *In re White*, 64 F.4th 302, 313 (D.C. Cir. 2023) (holding that the district court "abused its discretion by denying the amended class certification motion based on a stand-alone and extra-textual rule against 'fail-safe' classes, rather than applying the factors prescribed by Federal Rule of Civil Procedure 23(a)"), *petition for cert. filed* (Aug. 17, 2023) (No. 23-166); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 n.1 (5th Cir. 1999) (rejecting a rule against fail-safe class definitions).

F.4th 1161, 1173 (10th Cir. 2023). If the district court applied the proper standard, "we

may reverse that decision only for abuse of discretion." *Id.* (quotation marks omitted).

"The district court abuses its discretion when it misapplies the Rule 23 factors—either

through a clearly erroneous finding of fact or an erroneous conclusion of law—in

deciding whether class certification is appropriate." *CGC Holding Co., LLC v. Broad &

Cassel*, 773 F.3d 1076, 1085–86 (10th Cir. 2014). "In the end, as long as the district court

applies the proper Rule 23 standard, we will defer to its class certification ruling provided

that decision falls within the bounds of rationally available choices given the facts and

law involved in the matter at hand." *Soseeah v. Sentry Ins.*, 808 F.3d 800, 808 (10th Cir.

2015) (quotation marks omitted).

### B.      Rule 23(a) Commonality

To show that "there are questions of law or fact common to the class," Fed. R.

Civ. P. 23(a)(2), plaintiffs must show their claims rely on a "common contention . . . of

such a nature that it is capable of classwide resolution—which means that determination

of its truth or falsity will resolve an issue that is central to the validity of each one of the

claims in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. It is not enough for

Plaintiffs to demonstrate common questions apply to the class, rather they must show

"the capacity of a class-wide proceeding to generate common *answers* apt to drive the

resolution of the litigation." *Id.* (quoting Richard A. Nagareda, *Class Certification in the

Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). Still, commonality "do[es]

not require that every member of the class share a fact situation *identical* to that of the

named plaintiff." *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d

1205, 1216 (10th Cir. 2014). "A finding of commonality requires only a single question of law or fact common to the entire class." *Menocal*, 882 F.3d at 914 (quotation marks omitted).

Plaintiffs proposed four common questions of law and fact in their motion for class certification:

> (1) whether Defendants obtained the labor of class members; (2) whether Defendants threatened class members with physical restraint, serious harm, or abuse of the legal process; (3) whether Defendants "knowingly" obtained class members' labor "by . . . means of" these threats; and (4) whether Defendants knowingly recruited, harbored, transported, provided, or obtained by any means, any person for labor or services.

App. at 139–40. Rather than evaluate Plaintiffs' proposed common questions, the district court concluded commonality was lacking because "[d]etermining each potential class member's right to an award for unlawful 'agricultural labor' or 'manual labor' will depend on . . . the parent/guardian's knowledge and scope of consent"[7] and "determining an appropriate award of . . . damages will have to be done on an individual basis." App. at 1147–48.

The district court's analysis misapplied Rule 23(a)'s commonality inquiry by scrutinizing the proposed class for noncommon issues, rather than common ones. The district court assessed whether *any* individualized inquiries would be necessary to resolve

---

[7] Plaintiffs contend the district court erroneously concluded the scope of parental consent is a necessary individualized inquiry to resolve the merits of putative class members' claims. Because we conclude the district court applied the incorrect legal standard to its commonality analysis, we do not address the propriety of the court's legal conclusion regarding parental consent.

the putative class's claims rather than whether Plaintiffs had demonstrated the class

shared at least *one common question* of law or fact, the resolution of which would drive

the litigation. *See Wal-Mart Stores, Inc.*, 564 U.S. at 359 ("We quite agree that for

purposes of Rule 23(a)(2) '[e]ven a single [common] question will do.'" (quoting *id.* at

376 n.9 (Ginsburg, J., concurring in part and dissenting in part))); *Menocal*, 882 F.3d at

914 ("A finding of commonality requires only a single question of law or fact common to

the entire class."). Thus, the district court applied the incorrect legal standard in

determining whether Plaintiffs' proposed class satisfied Rule 23(a)'s commonality

requirement.

### C.    *Rule 23(a) Typicality*

Rule 23(a) also requires that "the claims or defenses of the representative parties

are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Like

commonality, typicality "do[es] not require that every member of the class share a fact

situation identical to that of the named plaintiff." *Colo. Cross Disability Coal.*, 765 F.3d

at 1216. "Typicality requires only that the claims of the class representative and class

members are based on the same legal or remedial theory." *Menocal*, 882 F.3d at 924

(internal quotation marks omitted); *see also Adamson v. Bowen*, 855 F.2d 668, 676 (10th

Cir. 1988) ("[D]iffering fact situations of class members do not defeat typicality under

Rule 23(a)(3) so long as the claims of the class representative and class members are

based on the same legal or remedial theory.").

The district court did not refer to this standard in its typicality analysis. Instead,

the court concluded Plaintiffs had not demonstrated their claims were typical of the

claims of the class "[b]ecause each former resident's experience at [Trinity] was different, including their length of stay, type of activities engaged in, and any damages suffered." App. at 1148. Although it pointed to potentially relevant factual differences, the district court provided no analysis of whether the legal or remedial theories supporting Plaintiffs' claims differ from the theories supporting putative class members' claims.

Defendants ask us to treat the district court's discussion of different factual allegations as demonstrating that Plaintiffs and putative class members rely on distinct legal theories. But we are unable to make that inference from the sparse discussion in the district court's order. It is not clear why the district court concluded the noted factual differences defeated typicality because there is no discussion of how those differences would impact the legal or remedial theories supporting class members' claims. Where the district court did not discuss Plaintiffs' legal theories or compare them with the putative class members' legal theories, it failed to apply the correct legal standard in determining whether Plaintiffs' claims were typical of putative class members' claims.

### D.   *Rule 23(b)(3) Predominance*

Lastly, Rule 23(b)(3) allows a class action to be certified if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members[.]" "Rule 23(b)(3)'s predominance requirement is related to, albeit 'more demanding than,' Rule 23(a)(2)'s commonality requirement." *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)). While Rule 23(a)(2)

requires only that the class share at least one common question of law or fact, Rule

23(b)(3) "calls upon courts to give careful scrutiny to the relation between common and

individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453

(2016). To assess predominance, the district court must determine "'whether the

common, aggregation-enabling, issues in the case are more prevalent or important than

the non-common, aggregation-defeating, individual issues.'" *Id.* (quoting 2 W.

Rubenstein, *Newberg on Class Actions* § 4:49 at 195–96 (5th ed. 2012)). Common,

aggregation-enabling issues are those that are "susceptible to generalized, class-wide

proof" or for which "the same evidence will suffice for each member to make a prima

facie showing"; individual, aggregation-defeating issues are those for which "members

of [the] proposed class will need to present evidence that varies from member to

member." *Id.* (quoting 2 W. Rubenstein, *Newberg on Class Actions* § 4:50 at 196–97 (5th

ed. 2012)).

Notably, "[i]t is not necessary for a plaintiff to show that all of the elements of

the claim entail questions of fact and law that are common to the class or that the

answers to those common questions are dispositive." *Brayman v. KeyPoint Gov't

Sols., Inc.*, 83 F.4th 823, 838 (10th Cir. 2023) (internal quotation marks omitted).

"[S]o long as at least one common issue predominates, a plaintiff can satisfy Rule

23(b)(3)—even if there remain individual issues, such as damages, that must be tried

separately." *Naylor Farms*, 923 F.3d at 789; *Tyson Foods, Inc.*, 577 U.S. at 453

("When 'one or more of the central issues in the action are common to the class and can

be said to predominate, the action may be considered proper under Rule 23(b)(3) even

18

though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" (quoting 7AA C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1778 at 123–24 (3d ed. 2005))).

To determine which issues in the case are common and which are individual, the court must first "consider the class's underlying cause[s] of action and determine which elements are amenable to common proof." *Menocal*, 882 F.3d at 915; *see also Black,* 69 F.4th at 1175 ("Sensibly, the predominance inquiry begins with the elements of the underlying cause of action." (internal quotation marks omitted)). The court should "*characterize* the issues in the case as common or not, and then *weigh* which issues predominate." *CGC Holding Co., LLC*, 773 F.3d at 1087. This often requires the court to consider the merits of putative class members' claims, but "[m]erits questions may be considered . . . only to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* (quoting *Amgen Inc.*, 568 U.S. at 466).

Plaintiffs sought a class action to pursue three causes of action, alleging Defendants (1) knowingly provided or obtained illegal forced labor, in violation of 18 U.S.C. § 1589(a); (2) benefitted from illegal forced labor, in violation of 18 U.S.C. § 1589(b); and (3) knowingly trafficked a person for forced labor, in violation of 18 U.S.C. § 1590(a). To show liability for their claim under § 1589(a), the class would need to prove (1) that Defendants knowingly (2) coerced class members by means of the use, threat of, or a scheme intended to threaten, serious harm or physical restraint (3) to

perform labor. *See* 18 U.S.C. § 1589(a)(1)–(4); *Menocal*, 882 F.3d at 918. For their

§ 1589(b) claim, the proposed class would further need to show that Trinity "knowingly

benefit[ted], financially or by receiving anything of value, from participation in a venture

which has engaged" in the acts prohibited by § 1589(a). 18 U.S.C. § 1589(b). Finally, for

their claim under § 1590(a), the class would need to show Defendants "knowingly

recruit[ed], harbor[ed], transport[ed], provide[d], or obtain[ed] by any means, any person

for labor or services in violation of this chapter." 18 U.S.C. § 1590(a).

The district court did not discuss the elements of Plaintiffs' claims in its

predominance analysis, instead stating generally that individual questions would

predominate over common questions because "each potential class member's evidence

would be unique and particular to their time and experience at [Trinity.]" App. at 1151.

The district court supported its predominance analysis by referring to its commonality

analysis and reemphasizing the need for individualized inquiries into damages. The

district court, however, failed to (1) identify which elements of Plaintiffs' claims would

be subject to class-wide proof; (2) identify which elements of Plaintiffs' claims would be

subject to individualized proof (other than damages); or (3) determine which of these

issues would predominate. *See Tyson Foods, Inc.*, 577 U.S. at 453 (noting that Rule

23(b)(3) "calls upon courts to give careful scrutiny to the relation between common and

individual questions in a case"). For example, the district court did not discuss how key

elements of Plaintiffs' claims, such as knowledge, causation, and whether the putative

class members engaged in labor, would be proved at all. Thus, the district court did not

adequately support its determination that Plaintiffs had not satisfied Rule 23(b)(3)'s

predominance requirement by failing to meaningfully apply the predominance standard to the facts of the case. *See Vallario v. Vandehey*, 554 F.3d 1259, 1265 (10th Cir. 2009) (determining district court abused its discretion when it failed to "conduct a 'rigorous analysis' of Rule 23's requirements").

The district court did conclude that determining damages would necessitate individualized inquiries. But that determination cannot alone sustain the district court's conclusion that Plaintiffs' proposed class fails Rule 23(b)(3)'s predominance requirement. *See Menocal*, 882 F.3d at 922 ("The fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification." (quotation marks and brackets omitted)); *Brayman*, 83 F.4th at 839–40 ("The black letter rule is that individual damage calculations generally do not defeat a finding that common issues predominate, and courts in every circuit have uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage determinations." (brackets omitted) (quoting 2 W. Rubenstein, *Newberg on Class Actions* § 4:54 at 274–75 (5th ed. 2012))). Indeed, we have upheld partial certification "to determine defendant's liability, while leaving the class members to pursue their individual damages claims[.]" *Black*, 69 F.4th at 1189 (quotation marks omitted). Unless "noncommon issues are inextricably entangled with common issues such that proceeding as a limited issue class is not superior to alternative methods of adjudication" certification of an issue class limited to ascertaining liability may be appropriate. *Id.* (internal quotation marks omitted); *see Comcast Corp.*, 569 U.S. at 34 ("Questions of individual damage calculations will[, in this case,] inevitably overwhelm

questions common to the class."). Accordingly, the court's brief reference to the need for individualized damages inquiries is insufficient to sustain its conclusion that the proposed class fails Rule 23(b)(3)'s predominance requirement.

### III.   CONCLUSION

Because the district court applied the incorrect legal standards to its analysis of Rule 23's commonality, typicality, and predominance requirements, we VACATE the district court's order denying class certification and REMAND for further proceedings consistent with this opinion.

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

October 31, 2023

Bryce W. Ashby
Craig A Edgington
Melissa Stewart
Brice Moffatt Timmons
Donati Law
1545 Union Avenue
Memphis, TN 38104

Nathan A. Nicholas
Michael B. Rosenthal
Hathaway & Kunz
2515 Warren Avenue, Suite 500
P.O. Box 1208
Cheyenne, WY 82003

Frank L. Watson III
Watson Burns
1922 Exeter Road
Germantown, TN 38138

RE:     **22-8080, Sherman, et al v. Trinity Teen Solutions, et al**
        Dist/Ag docket: 2:20-CV-00215-SWS

Dear Counsel:

Enclosed is a copy of the opinion of the court issued today in this matter. The court has
entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. 40(a)(1), any petition for rehearing must be filed within 14
days after entry of judgment. Please note, however, that if the appeal is a civil case in
which the United States or its officer or agency is a party, any petition for rehearing must
be filed within 45 days after entry of judgment. Parties should consult both the Federal
Rules and local rules of this court with regard to applicable standards and requirements.
In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length,
and no answer is permitted unless the court enters an order requiring a response. *See* Fed.
R. App. P. Rules 35 and 40, and 10th Cir. R. 35 and 40 for further information governing
petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

cc:     Lillian Alves
        Erin H. Flynn
        Katherine Elmlinger Lamm
        Thomas B. Quinn
        Lindsey M. Romano

CMW/jjh