Thomas Quinn (WY: #5-2630)
Lillian L. Alves (*Pro Hac Vice*)
Lindsey M. Romano (*Pro Hac Vice*)
GORDON REES SCULLY MANSUKHANI, LLP
555 Seventeenth Street, Suite 3400
Denver, CO  80202
Telephone: (303) 534-5160
tquinn@grsm.com
lalves@grsm.com
lromano@grsm.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **CARLIE SHERMAN**, **ANNA GOZUN**, and **AMANDA NASH**; on behalf of themselves and all similarly situated persons, <br><br> Plaintiffs, <br><br> vs. <br><br> **TRINITY TEEN SOLUTIONS, INC.,** a Wyoming corporation; **ANGELA C. WOODWARD; JERRY D. WOODWARD; KARA WOODWARD; KYLE WOODWARD; and DALLY-UP, LLC,** <br><br> Defendants. | Civil Doc. No. 20-CV-215-SWS <br><br> **BRIEF IN SUPPORT OF TTS DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** |

Defendants Trinity Teen Solutions, Inc. (TTS), Angela Woodward, Jerry Woodward, Kara Woodward, Kyle Woodward, and Dally Up, LLC ("TTS Defendants") hereby move pursuant to FED.R.CIV.P. 12(c) for judgment on the pleadings to dismiss all claims against Defendants Kyle and Kara Woodward for failure to state a claim for which relief may be granted.

1

**I.     Introduction**

Named Plaintiffs Carlie Sherman, Anna Gozun, and Amanda Nash were variously present during two time periods at TTS: (1) February 2012 to July 2013 and (2) July 2014 to November 2015. [Doc. 157, pp. 6-7]. They have never alleged what misconduct by Kyle or Kara Woodward occurred during these time periods and instead rely on impermissible group pleading. This is because that cannot make such a claim.

When the Court ruled on the various defendants' FED.R.CIV.P. 12(b)(6) motions, the Court accepted that Kyle and Kara Woodward both *currently* work at TTS "in an ownership and/or managerial capacity." [Doc. 157, p. 6]. However, Plaintiffs can no longer avail themselves of a theory of a continuing forced labor violation because TTS closed. The deadline to amend the complaint has passed and discovery has closed. [Doc. 179, pp. 5, 8]. Plaintiffs never did depose Kara Woodward. Pursuant to Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Trial is set for June 5, 2023. [Doc. 179, p. 14]. This motion is sufficiently early that it will not delay trial.

**II.    Background**

The Plaintiffs and Kyle and Kara Woodward are all near enough in age that they all could have attended schools together if they had grown up in the same community. Apart from the FAC alone, Defendants ask that the Court consider the following judicially-noticeable facts from the Court's own files in this litigation: (1) The Plaintiffs' respective dates of birth; (2) The approximate ages of Kyle and Kara Woodward, and; (3) Kyle and Kara Woodward's date of marriage.

To this end, Defendants submit Plaintiffs' dates of birth in confidential Attachment A. Ms. Sherman was a resident at TTS from May 2012 to July 2013 and from July 2014 to October 2015.

[Doc. 106, ¶ 113]. Ms. Gozun was a resident at TTS from February 2012 to June 2012 with a program discharge date of August 2012. [Doc. 106, ¶ 118, Doc. 225-15]. Ms. Nash was a resident at TTS from May 7, 2015 to November 2015. [Doc. 106, ¶ 123].

Kyle and Kara Woodard married on August 4, 2018. [Doc. 178, ¶ 8]. Kyle Woodward was born in 1992. [Doc. 216-3, Kyle Woodward Tr. 16:6-7]. As of January 1, 2022, they were both in their late 20s. *Id*. Assuming a January 1, 1992 date of birth for Kyle and Kara Woodward, Ms. Gozun is almost 3.5 years younger than Kara and Kyle Woodward. Ms. Sherman is almost 7 years younger than Kyle and Kara Woodward. Ms. Nash is almost 8 years younger than Kyle and Kara Woodward. Kara and Kyle Woodward would have ranged in age from 20 to 23-years old during the times when the Ms. Sherman, Ms. Gozun, and Ms. Nash were variously present at TTS.

The reality that the young age of Kyle and Kara Woodward diminishes the role they could have played in an ownership or managerial capacity when Plaintiffs were present at TTS is visible in the FAC. Plaintiffs initially allege that "Defendant Trinity Owners" are Angie and Jerry Woodward only. [Doc. 106, ¶4]. While they direct allegations to TTS as an entity throughout the FAC, where they make allegations about individuals these are confined to Angie Woodward and, to a lesser extent, Jerry Woodward. *Id*. at ¶¶ 32 n. 7, 37, 52-54, 71, 76, 117(j).

Throughout the FAC, Plaintiffs root their theory in how TTS came to be, its program operation, and its ownership and control in Angie and Jerry Woodward. This theory reaches back to the 1970's through the 1990's to allege the foundation of a group home for boys by Kyle Woodward's grandparents as playing an instrumental role in the creation and operation of TTS. *Id*. at ¶¶ 3-4, 50. These dates either pre-date the births of Kyle and Kara Woodward or would have been at a time when they were small children. While Plaintiffs attempted to bolster their claims by

3

alleging that numerous unrelated parties were part of a vast and far-ranging forced labor conspiracy, the Court dismissed and/or severed numerous parties and claims. [Doc. 157-163, 178]. The core of what remains of claims against Kyle and Kara Woodward is practically nonexistent now that this camouflage is gone.

The first mention of Kyle and Kara Woodward in the FAC occurs in Section III titled "Parties and Personal Jurisdiction." There, Plaintiffs allege that Kara Woodward "*is* an owner, manager, and/or member of TTS and Dally-Up" as well as the Staff Supervisor. [Doc. 106 ¶ 40] (emphasis supplied). They allege that Kyle Woodward "*is* an owner, manager, and/or member of TTS and Dally-Up" as well as "the Assistant Director and Marketing Director of TTS." [Doc. 106 ¶ 41] (emphasis supplied). Plaintiffs do not allege *when* such ownership, management, and/or membership began.

Plaintiffs also allege that Kara and Kyle Woodward are "defendant Trinity Owners' children"[1] and that they "became active employees of TTS and at all times benefitted from the forced labor and human trafficking executed by Defendant Owners and TTS." [Doc. 106, ¶ 111.] Again, Plaintiffs do not specify *when* Kyle and Kara Woodard "became active employees." Nor do they supply any

**III.   Argument: Plaintiffs Fail to Allege the Role Kyle or Kara Woodward Played in Alleged Forced Labor Committed Against Them**

A "motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir.2000). *Accord Gollaher v. Wentland*, 2022 WL 839958 at *2 (10th Cir., Mar. 22,

---

[1] There is no dispute between the parties that Kara Woodward is the daughter-in-law of Angela and Jerry Woodward.

2022). *See also Sanchez v. U.S. Dept. of Energy*, 870 F.3d 1185, 1199 (10th Cir. 2017) (noting application of Rule 12(b)(6) standards to Rule 12(c) claims). To apply this standard, the Court accepts as true all well-pleaded factual allegations in the complaint, "resolve[s] all reasonable inferences in the plaintiff's favor, and ask[s] whether it is plausible that the plaintiff is entitled to relief." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (citation and internal quotation marks omitted). A partial motion for judgment on the pleadings may be granted pursuant to Rule 12(c) in the same way that partial summary judgment may be granted pursuant to Rule 56. *See VNA Plus, Inc. v. Apria Healthcare Grp., Inc.,* 29 F.Supp.2d 1253, 1258 (D.Kan.1998)

In this case, as in *Flat Footed LLC v. Begley*, 2020 WL 10357004 (D. Wyo. Oct. 27, 2020), Defendants "use[] Rule 12(c) to bring the defense of failure to state a claim under Rule 12(b)(6), as permitted in Rule 12(h)(2). *Begley*, 2020 WL 10357004 at *2. The District of Wyoming has noted that Rule 12(c) merely serves "as an auxiliary or supplementary procedural device to determine the sufficiency of the case before proceeding any further and investing additional resources in it." *Id*. (citing Wright & Miller et al., 5C *Federal Practice and Procedure (Civil)* § 1367 (3d ed.). In this case, the claims against Kara and Kyle Woodward do not merit the investment of further resources.

Dismissal pursuant to Rule 12(c) or Rule 12(b)(6) is appropriate if the complaint fails to state a plausible claim for relief. The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214–15 (10th Cir.2011). "[W]here the well-pleaded facts do not permit

the court to infer more than the mere possibility of misconduct," the complaint has made an allegation "but it has not shown that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679.

Plaintiffs' theory of liability against Kyle and Kara Woodward rests on the mere possibility of misconduct. For example, Ms. Gozun cannot allege that she and Kara Woodward were ever on the property at the same time or that Kara Woodard had any role whatsoever with TTS at any time during Ms. Gozun's TTS residency. Any alleged participation in forced labor by Ms. Woodward against Ms. Gozun would therefore be implausible. Additionally, the Court previously concluded that Plaintiffs proceed on a theory that Kara and Kyle Woodward have "ownership and/or managerial capacity." The mere possibility that Kara or Kyle Woodward may have been in the physical vicinity of the TTS property between the ages of 20 to 23 is not ownership or managerial capacity. What Plaintiffs actually employ is impermissible group leading by sweeping Kara and Kyle Woodward into allegations directed to Kyle Woodward' parents or even his grandparents. Group pleading violates FED.R.CIV.P. 8 when a plaintiff fails to distinguish among multiple defendants, including on claims that could not apply to certain defendants. *Snyder v. ACORD Corp.*, 2016 WL 192270, at *3 (D. Colo. Jan. 15, 2016), *aff'd*, 684 F. App'x 710 (10th Cir. 2017) (finding that repeatedly referencing 113 defendants as a group when only a small minority engaged in certain conduct violated Rule 8). Here, with such a small group of individual defendants involved, it is reasonable to expect Plaintiffs to describe their allegations against Kyle and Kara Woodward beyond ownership and/or managerial capacity as of an unknown date.

To the extent Plaintiffs would base their theory of liability on employment alone, this also fails. As noted above, they have not alleged a date or timeframe when TTS employment began for Kara or Kyle Woodward. Even if they had, they do not allege acts of forced labor perpetrated by

6

Kara or Kyle Woodward pursuant to 18 U.S.C. § 1589(a). Accordingly, a forced labor theory based on employment would have to be based on receipt of a knowing benefit pursuant to 18 U.S.C. § 1589(b) or 1595(a), both of which state "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture." Plaintiffs' theory as to this element is that Defendants allegedly "profited or knowingly benefited, financially or through *receipt of free labor*, from participation in a venture which all Defendants knew or should have known was unlawful." [Doc. 106 ¶ 19] (emphasis supplied). Plaintiffs are not alleging that TTS employees benefitted from receipt of their forced free labor. They are alleging that TTS owners benefitted from receipt of their forced free labor. As such, a theory that Kara and Kyle Woodward benefit from Plaintiffs' forced labor because they were employees would have to accompany sufficient allegations that they were also in an ownership or managerial role during the time that Plaintiffs were present at TTS. The FAC does not contain such allegations.

    The Court may take judicial notice of the information Defendants submit that is outside of the allegations in the FAC: the dates of birth and/or ages generally of Ms. Gozun, Ms. Nash, Ms. Sherman, Kyle Woodard, and Kara Woodward as well as the date of marriage and approximate age of Kyle and Kara Woodward. These facts are appropriate for judicial notice. "[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1264 n. 1 (10th Cir. 2006) (citing *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n. 1 (10th Cir. 2004)). The Court can "take judicial notice of its own files and records, as well as facts which are a matter of public record." In this motion, Defendants cites to the FAC and to limited undisputed documents in the court's own files in this litigation, none of which is subject to an authenticity challenge.

Consideration of this information falls well within the Court's broad discretion. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017)(noting that in the context of ruling on either a Rule 12(b)(6) or Rule 12(c) motion, "the district court has broad discretion in determining whether to accept materials beyond the pleadings.")

The point of presenting these judicially-noticeable facts is to highlight why Plaintiffs' theories of liability are insufficiently stated as to Kyle and Kara Woodward. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's amended complaint alone is legally sufficient to state a claim for which relief may be granted." *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir.2010). *See also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). Defendants do not ask the court to weigh any potential evidence. If Kyle and Kara Woodward came to have an ownership or managerial role at a Wyoming-state licensed residential treatment center then it is not reasonable to infer that this occurred between, at the oldest, the ages of 20 and 23 based solely on the existence of family relationships, if that. (*See* Doc. 106, ¶ 4)(alleging that TTS is "registered with DFS as a residential treatment center.")  "Residential care is a type of inpatient care." *Harlick v. Blue Shield of California*, 686 F.3d 699, 709 (9th Cir. 2012). "Residential programs are generally considered an option of last resort." *Banwart v. Cedar Falls Community School District*, 489 F. Supp. 3d 846, 861 (N.D. Iowa 2020). It is not reasonable to surmise that individuals who reached adulthood two to five years prior owned or managed such a program without more detail in support of the assertions. Nevertheless, Plaintiffs allege nothing to in support of the alleged roles Kyle and Kara Woodward played in their forced labor claims beyond current employment, ownership, management, membership, and, most of all, family relationship. Plaintiffs cannot ask that the court

8

infer the possibility of misconduct based on the alleged actions and/or omissions of Kyle Woodward's parents, or even more tenuously, his grandparents who are no longer parties to this litigation. As this Court has noted in this litigation, "it would be an unreasonable inference to charge [a family member] with the knowledge required by § 1589(a) solely due to his [or her] familiar relationships with others accused of wrongdoing." [Doc. 159, p. 16]. This is doubly true where the claims against Kara Woodward are concerned. She was not in a legal family relationship with the Woodwards until August 4, 2018, years after the last discharge date of *any* of the three Plaintiffs. For all of these reasons, Plaintiffs fail to state a claim against Kyle and Kara Woodward.

**IV. Conclusion**

Plaintiffs have not alleged information sufficient to claim that Kyle or Kara Woodward were in an ownership or managerial capacity when any of them were TTS residents. Because of how close Plaintiffs are to Kyle and Kara Woodward in age, it is not reasonable to infer that either Kyle or Kara Woodward acted in such a capacity when any of the named plaintiffs were present. Family relationships do not suffice to draw such a conclusion. All that remains of Plaintiffs claims now is a sheer possibility that Kyle and Kara Woodard have acted unlawfully. For these reasons, Plaintiffs fail to state a claim for which relief may be granted and Defendants request that the Court dismiss all claims against Kyle and Kara Woodward pursuant to FED.R.CIV.P. 12(c).

Respectfully submitted this 30th day of September, 2024.

/s/ *Thomas B. Quinn*
/s/ *Lillian Alves*
/s/ *Lindsey Romano*
Thomas Quinn (WY: #5-2630)
Lillian L. Alves (Pro Hac Vice)
Lindsey M. Romano (Pro Hac Vice)
GORDON REES SCULLY MANSUKHANI, LLP

555 Seventeenth Street, Suite 3400
Denver, CO 80202
Telephone: (303) 534-5160
tquinn@grsm.com
lalves@grsm.com
lromano@grsm.com

***Attorneys for Defendants Trinity Teen Solutions, Angela Woodward, Jerry Woodward, Kyle Woodward, Kara Woodward, and Dally-Up, LLC***

10

**CERTIFICATE OF SERVICE**

I certify that on this 30th day of September 2024, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such to all attorneys of record.

*/s/ Karla Freeman*
For Gordon Rees Scully Mansukhani, LLP