Thomas Quinn (WY: #5-2630)
Lillian L. Alves (*Pro Hac Vice*)
Lindsey M. Romano (*Pro Hac Vice*)
GORDON REES SCULLY MANSUKHANI, LLP
555 Seventeenth Street, Suite 3400
Denver, CO 80202
Telephone: (303) 534-5160
tquinn@grsm.com
lalves@grsm.com
lromano@grsm.com

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **CARLIE SHERMAN** and **AMANDA NASH** on behalf of themselves and all similarly situated persons,<br><br>    Plaintiffs,<br><br>vs.<br><br>**TRINITY TEEN SOLUTIONS, INC.,** a Wyoming corporation; **ANGELA C. WOODWARD**; **JERRY D. WOODWARD**; **KARA WOODWARD**; **KYLE WOODWARD**; and **DALLY-UP, LLC,** a Wyoming limited liability corporation,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Doc. No. 20-CV-215-SWS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

---

**DEFENDANTS TRINITY TEEN SOLUTIONS, INC., ANGELA C. WOODWARD, JERRY D. WOODWARD, KARA WOODWARD, KYLE WOODWARD, AND DALLY UP, LLC'S BRIEFING ON OPT-OUT REQUEST**

---

Defendants Trinity Teen Solutions, Inc., Angela Woodward, Jerry Woodward, Kyle Woodward, Kara Woodward, and Dally-Up, LLC ("TTS Defendants"), through undersigned

counsel, hereby submit their opposition to former named Plaintiff Anna Gozun's request to opt out of this class action.

## I.     Background

On June 20, 2025, the Court advised the parties that Plaintiff Anna Gozun contacted the Court and expressed "her desire to 'opt out' of the class." Doc. 346 at 1. She reported "she has communicated, or has attempted to communicate, with Class Counsel regarding that request." *Id*. Based on "the history of this case and Ms. Gozun's unique circumstances," the Court directed the parties to submit their positions "on the issue of whether Ms. Gozun should or should not be allowed to opt out of this class action, despite the passing of the opt-out deadline." *Id*. at 1, 2. A June 12, 2025 e-mail from Ms. Gozun to the Court states "I'm completely at a loss regarding how to opt out of this settlement and class in the Trinity case. I recently contacted Nathan Nicholas, one of the attorneys involved, and was told I would need to either obtain new legal representation or pursue the matter directly through the court. I had assumed I was still represented, but it seems that following my removal as a lead plaintiff, that is no longer the case. Since I wasn't given the option to opt out of the class when I was originally serving in that role, I truly don't know what steps to take now." Doc. 346-1.

This Court granted class certification on April 22, 2024, following remand by the Tenth Circuit. Doc. 286. Ms. Gozun was still a named Plaintiff at the time. Class Counsel Brice Timmons withdrew for undisclosed reasons on May 16, 2024. This was over a year ago. Doc. 289. On June 13, 2024, the Court approved the form of the notice to the Class. Doc. 302. The notice contains "Notice of a Certified Class Action" in a bolded caption. Doc. 302-1 at 1. It sets forth a detailed description of the claims and the procedural status of the case at the time. *Id*. at 2. It explains how to opt out by the deadline of August 19, 2024. *Id*. at 4. It explains the right to be represented by

the class member's own attorney. *Id*. at 5. The Class Administrator completed a declaration on July 10, 2024 advising that he completed service of the notices via U.S. Mail and established a website containing court notices: https://trinityranchclassaction.com/. Doc. 303-1 at 1-3. That website is still active today. The link was included in the notices that class members received. *Id*. at 7. On August 28, 2024, the Class Administrator completed a declaration stating notice was completed and two former TTS residents opted out. Doc. 304-1. Ms. Gozun appears on the list of class members who did **not** opt out. Doc. 304-2 at 2. There is no information from the Class Administrator to suggest any notice concerns by class members.

On October 4, 2024, Class Counsel filed an *ex parte* pleading which initiated a series of *ex parte* pleadings and hearings. Doc. 312, 316, 318, 319, 320. Based on briefing later unsealed for attorneys' eyes only, defense counsel was informed that former Class Counsel Brice Timmons had an inappropriate relationship with Ms. Gozun. Doc. 312 at 1. On November 27, 2024, the Court terminated Ms. Gozun as a named Plaintiff, but she remained a member of the class. Doc. 322. Undersigned counsel assumes the Court's reference to "unique circumstances" refers to the inappropriate relationship and the Court's termination of Ms. Gozun as a named Plaintiff.

Class Counsel's response to the Court's request for briefing sets forth that on February 28, 2025, March 1, 2025, March 18, 2025, and June 10, 2025, Ms. Gozun or counsel discussed her interest in opting out with Class Counsel after the opt out deadline passed. Ms. Gozun has discussed her dissatisfaction with the settlement at length in social media and to reporters. *See e.g.* Ex. 1, Sample social media posts and media articles. Ms. Gozun remained satisfied with the status of the case until after the settlement when she began commenting negatively about the non-disparagement clause and the absence of an admission of wrongdoing. *See id*. at 2, 4-5, 8-9, 10, 12).

II.     **Discussion**

The Court should deny Ms. Gozun's request to opt out. She makes an ordinary late opt out request based on her dislike of standard settlement terms. As set forth above, Ms. Gozun is not saying that she did not receive notice of her right to opt out of the class. Nor could she, given how extensively she has commented publicly regarding the litigation. Rather, she is saying that she did not receive that notice while she was still a class representative. Her representation to the Court that she believes Class Counsel told her that they no longer represent her even though she is still a member of the class does not align with her social media remarks. *See e.g.* Ex. 1, p. 2.

"On a late motion to opt out, a district court must determine (1) whether the movant's neglect was excusable, and (2) whether either party would be substantially prejudiced by the court's action." *Burns v. Copley Pharmaceuticals, Inc.* 132 F.3d 42 at *3 (10th Cir. 1997) (in an unpublished decision, citing the list of discretionary factors that may inform a court's decision regarding an untimely opt out that was set forth in *Silber v. Mabon,* 18 F.3d 1449, 1455 (9th Cir.1994) including "the degree of compliance with the best practicable notice procedures; when notice was actually received and if not timely received, why not; what caused the delay, and whose responsibility was it; how quickly the belated opt out request was made once notice was received; how many class members want to opt out; and whether allowing a belated opt out would affect either the settlement or finality of the judgment.")

Here, the record shows Ms. Gozun received notice of her right to opt out no later than July 10, 2024. She made no request to opt out even after the court removed her as class representative on November 27, 2024. Instead, she waited for settlement. While she did not share her reasons for wanting to opt out with the Court, she shared her reasons with the wider world. Her reasons are: (1) the non-disparagement clause; and (2) the lack of admission of wrongdoing. These are

objections to the settlement, and she is still within the timeframe to object. The concerns do not relate to her past or current legal representation or supply the requisite evidence of excusable neglect. Ms. Gozun has the option to pursue her concerns about lawyer misconduct or alleged communication failures separate from the Court's task of evaluating fairness, reasonableness, and adequacy of the class action settlement.

The non-disparagement clause defines "disparagement" as "remarks, comments, or statements that tend to impugn the character, physical or mental condition, honesty, integrity, morality, business acumen, or abilities of the individual or entity being disparaged." Doc. 341-2 at §3.6. The Southern District of New York approved the language in a settlement of claims against a school for discrimination and retaliation under federal and state law. *Emile v. Ethical Culture Fieldston School*, 2024 WL 1216473 at *2 (S.D.N.Y. Mar. 21, 2024). Ms. Gozun's concern about use of the clause to "silence and retaliate against survivors" does not acknowledge the Section 3.6 provision that class members can make "true statements about their experiences." Moreover, Defendants can only seek injunctive relief for a violation of Section 3.6. Doc. 341-2 at §3.1.1. The language balances the interests of both sides. ]

Ms. Gozun's desire for the settlement agreement to include an admission of wrongdoing is similarly a settlement objection she can take up with the Court, but not a reason to opt out. Such clauses have long been standard in settlement agreements for good reasons. They promote efficiency, foster defendant willingness to settle, and conserve judicial resources. *See, e.g.*, Frank H. Easterbrook, *Justice and Contract in Consent Judgments*, 1987 U. Chi. Legal F. 19, 25; Thomas M. Mengler, *Consent Decree Paradigms: Models Without Meaning*, 29 B.C. L. Rev. 291, 327-32 (1988) (noting that settlement conserves judicial and litigant time and resources, and that it allows for compromise, often without liability).

To the extent Ms. Gozun, or others, would declare some other reason to opt out of the class, it bears repeating that the focus of the inquiry under Fed.R.Civ.P. 23(e)(2) is whether the proposed settlement is fair, reasonable, and adequate. The parties made a record that the proposed settlement meets these criteria. This includes a declaration from the mediator setting forth that the parties conducted the mediation at arm's length and vigorously advocated for their respective positions. Doc. 341-2. As a supplement to that record, the TTS Defendants additionally submit herein as Exhibit 2 a supplemental declaration by psychiatrist Dr. Karen Fukutaki. It sets forth an individualized review of the records of named Plaintiffs Nash and Sherman and explains, based additionally on published research, why conclusions as to harm claimed by any resident cannot be imputed to other residents. Thereby requiring an individualized assessment of each class member's damages claims. The expenditure of resources attached to such a task would be staggering.

The late opt out request would prejudice the class. Since all the filings are under seal, the class cannot access the information about Ms. Gozun's request. But there is no basis to keep the information under seal because the basis of her opt out request is not attorney misconduct. Given Ms. Gozun's penchant for commentary, the rest of the class is bound to find out regardless of what the Court does. Any class member who now objects to the any other standard settlement clause would be similarly situated to Ms. Gozun and would also have to be permitted to opt out. *See In re Gypsum Antitrust Cases,* 565 F.2d 1123,1128 (District Courts reviewing late class member claims must treat similarly-situated claimants the same).

Although there is no indication now that other former TTS residents have concerns like those of Ms. Gozun, it does not strain the imagination to conclude that other class members will take issue with provisions of the settlement agreement and ask to opt out. *See Grace v. City of Detroit,* 145 F.R.D. 423, 418 (E.D. Mich. 1992) (accepting tardy claim forms would cause

defendant to face "neverending expansion of its liability, as more class members with equally worthy explanations appeared ..."). The more individuals who are permitted to opt out of the class late, the more the TTS defendants would be forced to defend settled claims, potentially even in other jurisdictions. The financial planning and claims procedures provided in the Stipulation then could be undercut and the security of the existence of a fund to compensate class members for their injuries would be jeopardized. Accordingly, both the TTS Defendants and the class generally would be prejudiced by granting Ms. Gozun's request.

The TTS Defendants would additionally be prejudiced if the present motion was granted because the financial certainty that they sought to achieve by entering into the settlement would be undermined. *See In re Gypsum Antitrust Cases,* 565 F.2d at 1128 ("The trial judge ruled that denying [the movant's] claim was a 'regrettable conclusion,' but there has to be a cutoff period ..."); *Ryan v. Dow Chemical Co.,* 781 F. Supp. 902, 920 (E.D.N.Y. 1991) (in support of inclusion of future claimants in class, court noted that class action settlements will not occur if parties cannot set definitive limits on defendants' liability), *recons. granted in part and denied in part,* 1991 WL 243311 (E.D.N.Y. Nov. 12, 1991), *aff'd, In re Agent Orange prod. Liab. Litig.,* 996 F.2d 1425 (2d Cir. 1993), *cert. denied, Ivy v. Diamond Shamrock Chemical Co.,* 114 S. Ct. 1125 (1994). The total sum of the TTS Defendants' costs increases with each class member who opts out of the class. TTS was a small, private, single-site program in a rural area. It was not public health system or a behavioral healthcare provider network. If new opt out periods are permitted, not only would the TTS Defendants have to provide compensation to class members under the terms of the Stipulation, they also would be compelled to expend resources defending Ms. Gozun's claims. Moreover, the TTS Defendants again would be faced with the uncertainty of a large jury verdict. The TTS Defendants entered into a stipulation of settlement in reliance that it would apply class-

wide aside from two individuals known to have opted out. The TTS Defendants entered into this settlement to achieve finality regarding their liability to class members. Denying finality discourages class action settlements in the future. *See McCubbrey v. Boise Cascade Home & Land Corp.,* 71 F.R.D. 62, 69-70 (N.D. Cal. 1976) (citing *In re Four Seasons Sec. Litig.,* 502 F.2d 834, 843–844 (10th Cir.1974)) ("liberal relief from failure to follow requisite exclusion procedures will erode finality of complex adjudications, discourage class action settlements, permit return of the former option of one-way intervention, and place a burden on judicial resources.") For these reasons, if the number of people permitted to opt out expands, then the TTS Defendants must re-evaluate the stipulation of settlement. For these reasons, the Court should deny Ms. Gozun's late request to opt out.

Ms. Gozun's request stands poised to make a material change in future liability for the TTS Defendants. Undersigned counsel requests that the Court lift the attorneys' eyes-only restriction on the limited information received by defense counsel. Undersigned counsel cannot adhere to the obligations set forth by Wyoming Rule of Professional Conduct Rule 1.4 regarding communication with the restriction continuing in place. In particular, undersigned counsel is hindered in the obligation to "reasonably consult with the client about the means by which the client's objectives are to be accomplished" and "keep the client reasonably informed about the status of the matter." The TTS Defendants and their insurance carrier, the source of funding for the settlement, have repeatedly requested information regarding the basis for the *ex parte* filings and are entitled to receive the information defense counsel can access needed to inform their decisions and exposure.

### III.    Conclusion

The Court should deny Ms. Gozun's request to opt out because her circumstances do not relate to the reason for the request. She has ample opportunity to pursue an objection to the

settlement if she chooses. Undersigned counsel additionally requests that the Court lift the attorneys-eyes only restriction on information received by defense counsel. Without unfettered access to this information, the clients and carrier are not able to understand the legal and financial risk posed by this latest development.

Respectfully submitted this 9th day of July, 2025.

**GORDON REES SCULLY MANSUKHANI LLP**

/s/ *Thomas B. Quinn*
Thomas Quinn (WY: #5-2630)
Lillian L. Alves (Pro Hac Vice)
Lindsey M. Romano (Pro Hac Vice)
GORDON REES SCULLY MANSUKHANI, LLP
555 Seventeenth Street, Suite 3400
Denver, CO 80202
Telephone: (303) 534-5160
tquinn@grsm.com
lalves@grsm.com
lromano@grsm.com

*Attorneys for Defendants Trinity Teen Solutions, Angela Woodward, Jerry Woodward, Kyle Woodward, Kara Woodward, and Dally-Up, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 9th day of July, a true and correct image of the foregoing was e-filed via CM/ECF and served to all attorneys of record:

Michael Rosenthal
Kelsey Prestesater
Hathaway & Kunz, LLP
P.O. Box 1208
Cheyenne, WY 82003-1208
(307) 634-7723
mike@hkwyolaw.com
kprestesater@hkwyolaw.com

Frank L. Watson, III, *(Pro Hac Vice)*
Craig Edgington, *(Pro Hac Vice)*
William E. Routt
William F. Burns
Watson Burns, PLLC
253 Adams Avenue
Memphis, TN 38103
(901) 529-7996
fwatson@watsonburns.com
wroutt@watsonburns.com
cedgington@watsonburns.com
bburns@watsonburns.com
jwilson@watsonburns.com
***Attorneys for Plaintiffs***

Nathan Nicholas
Koch Law P.C.
nnicholas@kochlawpc.com

*/s/ Thomas B. Quinn*
For GORDON REES SCULLY
MANSUKHANI, LLP

**EXHIBIT 1**

12/2/24, 4:05 PM
I will forever be grateful for the good that has come from pursuing th... | lawyers | TikTok



Search

Log in

⋮

🏠 For You

🧭 Explore   New

👥 Following

📺 LIVE

👤 Profile

Log in to follow creators, like videos, and view comments.

Log in


Create TikTok effects, get a reward

Company

Program

Terms & Policies

© 2024 TikTok



❤️ 43
💬 7
🔖 1
↪️ 46

‹  • •  ›

• • •

**You may like**


Kanye had to lock in 😂 #kanyewest...
kanyequotez
❤️ 490.6K · 9-9


It Followed Her Bac From Her Dream....
right.3446000
❤️ 106.1K · 10-29


#funny #funnyvideos #fyp...
zaibao1640
❤️ 33.8K · 10-22


This was lowk scar ngl🙁.
bracefaceee.jordan
❤️ 601.4K · 10-6


Leave noww.. Full vid on youtube!! link in...
it.merr
❤️ 572.7K · 9-10


Mind Reading Like You've Never Seen
therealjbecker
❤️ 570.3K · 9-3


Guys pray for me #doordash #hungr...
the_foodhub1
❤️ 111.7K · 10-5


#CapCut #xcyzba #fyp #relatable...
mcdonaldsmuncher1
❤️ 1.2M · 11-20

https://www.tiktok.com/@exposingtts/photo/7442547352159685934?lang=en

1/3

12/2/24, 4:05 PM    I will forever be grateful for the good that has come from pursuing th... | lawyers | TikTok







worlds best dad 🔵
@ مشعل تمر | Mishaal...
lovealwayspiper
♡ 247K · 9-20

😊 #fyp シ #viral
#owu @Chase Ada...
_twj4
♡ 508.6K · 10-11

### For You

### Explore  New

### Following

### LIVE

### Profile

Log in to follow creators, like videos, and view comments.

Create TikTok effects, get a reward

Company

Program

Terms & Policies

© 2024 TikTok




What the Heck!!

What the heck!! It took me forever to...
detectormoe
♡ 43.2K · 9-11

Tough crowd @Dre
hadster01
♡ 104.2K · 10-15

## Read below ♡

I will forever be grateful for the good that has come from pursuing this class-action against our abusers. I have dedicated myself fully over the past four years, but now it's time for me to focus on my own well-being. While the case will continue without me as a lead plaintiff/class representative, I want to clarify that this decision is not due to any shortcomings on my part, but rather the unfortunate circumstances that have arisen from those I placed my trust in for this case. I believe the judge is doing his best to rectify the situation and protect the Class as a whole, including myself. I support him in this, as my damages have now become complicated and differ from those of the Class due to the misconduct of another. At this time, I will not be speaking further regarding these circumstances.

I sincerely hope that justice is served for all Trinity survivors through this suit, in whatever form that may take.

I sincerely appreciate all the love and support we have received through the years, and the community as a whole. Keep fighting, Survivors. Never, ever stay silent about abuse. ♡

less

♫ i am so proud of you. - ro mitchell




Gentle parenting Versus how we were parented

#gentleparenting #disciplinevsmotiv...
texas_tejano
♡ 158.2K · 10-20

MAN HASN'T MOVED HIS NECK IN 15 YEAR

man hasn't moved his neck in 15 years
quiro.amazing
♡ 323.6K · 9-18

### 7 comments

 Log in to comment

 Beetle | Talking Abt the TTI
AMAZING!! I'm so proud of you Anna. You did amazing. Now it's time to let yourself rest 🖤
3d ago    ♡ 1    Reply

 Anna Gozun · Creator
Proud of you!! Thank you🩷🩷
3d ago    ♡ 0    Reply

Hide ⌃

 vibeewmee4
so out of your control and we will get through this! trust things will be okay within time & having faith in yourself as well, you are an amazing person through & through you're going to be okay
3d ago    ♡ 1    Reply

 Louise Presto
You are amazing and I'm 100% behind this decision and I hope you continue fighting as you are stronger than the darkness of others! 💪🥹
3d ago    ♡ 1    Reply

 @lyssa_2024
praying that you're okay and healing in whatever way you can 🤍
3d ago    ♡ 1    Reply

 Anna Gozun · Creator
Thank you🩷🩷

Def have a concussion...
giannamjoyce ✓
♡ 4M · 1w ago

#piqom #goofynfl
piqom
♡ 4.3M · 9-7

12/2/24, 4:05 PM                    I will forever be grateful for the good that has come from pursuing th... | lawyers | TikTok

 TikTok

⋮

- 🏠 For You
- ⦿ Explore  New
- 👥 Following
- 📹 LIVE
- 👤 Profile

Log in to follow creators, like videos, and view comments.

 Create TikTok effects, get a reward

Company

Program

Terms & Policies

© 2024 TikTok

 **vibeewmee4**
I'm so proud of you, you've come a long way

3d ago    ♡ 1    Reply


‹ Prev article                    Next article ›

# Million-dollar settlement for survivors of camp for "troubled" teens

Published on
June 12, 2025

 NBC NEWS

Category:
Child labor violations, Law & Policy



Make your voice heard

Comment ↓    ○ 0

Share the article

A camp for troubled teens in Wyoming accused of using forced child labor settled a four year long class action lawsuit for 2.3 million. NBC reports the suit was brought against the camp by the now adult survivors who claim that as teens they were forced to do extreme manual labor that should have been done by adults and were subjected to humiliating punishments if they refused.

## Forced labor "part of the program"

Hauling heavy metal irrigation pipes, carrying 50lb. bales of hay, building barbed wire fences, castrating animals and dragging the carcasses of dead ones into a pile. Sadly, those are some of the tasks girls at Trinity Teen Solutions were forced to do. In addition, they were driven around the county to clean churches and recreation centers. Work that is considered hazardous child labor as it often led to injuries that were neglected or left untreated.

In the lawsuit, the survivors described injuries to their hands, legs, and feet, including cuts, frostbite, and in one case, torn ligaments requiring surgery, with little to no attention to treatment. However, there was a rigorous code of silence about what was going on enforced by camp staff.

One of the survivors, Aubrie Bak-Jensen, who was injured when working and her horse threw her off onto a barbed wire fence said:



"They had them clean my wounds, wrap me and brought me back to the ranch, and then put me right back to work. And I was told I was absolutely not allowed to speak a word of what had happened to me, even though it was very obvious that I was severely injured."

Margaret Wurth, who researches child labor for Human Rights Watch said:



"You think about kids, their bodies are still developing, their brains are still developing. If they're doing these repetitive motions day-in and day-out … something like that can have lifelong repercussions and injuries."

In a classic earmark of forced labor, isolation kept it all hidden. All the teens' communications were closely monitored with no way to contact law enforcement. For example phone calls with parents were monitored and letters home were censored. So much so that some girls said they even had letters ripped up when they contained negative things. And with the camp being 30 miles from the closest gas station, there was nowhere to run.

## A nightmare of hard labor and humiliating punishments

The settlement is open to those at the camp who performed "agricultural labor" from 2010 until it closed. And while some of the survivors see the settlement as a win, others have a different view. The settlement is not an admission of guilt. Correspondingly those who join and receive a check will have to sign a non-disparagement agreement. Echoing their time at the camp, survivors who accept the settlement will not be able to say negative things about Trinity Teen Solutions or its owners online. Thus survivor Anna Gozun says she won't take part in the settlement saying it "does not reflect true accountability or justice,"

Further, Gozun said:



"It's disheartening beyond words. Many of us came forward at great personal cost, reliving trauma in hopes of stopping the cycle of abuse. This settlement feels more like a forced ending than a fair resolution."

Document title: Million-dollar settlement for survivors of camp for troubled teens - FreedomUnited.org
Capture URL: https://www.freedomunited.org/news/settlement-for-camp-survivors/
Capture timestamp (UTC): Mon, 30 Jun 2025 19:09:12 GMT

Further, Gozun said:



> "It's disheartening beyond words. Many of us came forward at great personal cost, reliving trauma in hopes of stopping the cycle of abuse. This settlement feels more like a forced ending than a fair resolution."

When Trinity Teen Solutions finally did close in 2022, its license was still intact. Tellingly, a separate lawsuit against Triangle Cross Ranch, owned by the same family, settled out of court last year. Both settlements happens in the context of increasing scrutiny from youth rights advocates and lawmakers of the array of troubled youth programs.

## Forced into modern slavery for being "troubled"

All things considered the recent magnifying glass being applied to boarding schools, ranches, treatment centers and boot camps for troubled youth is long overdue.

A survivor of the companion camp Triangle Cross Ranch, Andrew Scavuzzo said:



> "It was child labor, basically, you were just a slave for the owners because we were 'troubled,'"

Sadly, it isn't just programs for troubled teens where you can find exploitative, dangerous forced child labor in the US.

Right now, across the nation hard won child labor protections are being rolled back. Consequently, that means teens everywhere are being increasingly exposed to dangerous jobs in slaughterhouses, construction sites and factories. They are being allowed to work outrageously long hours, negatively impacting their schoolwork. The increase in child labor violations and injuries speak for themselves.

As this case and the increase in violations indicate, now is not the time to lower the bar. Join Freedom United in saying NO to child labor law rollbacks. Stand up for children in the US forced to do work and keep hours only adults should do. Sign our petition and help us stop companies from profiting from the labor and at the expense of children.

✉ Subscribe ▾

Freedom United is interested in hearing from our community and welcomes relevant, informed comments, advice, and insights that advance the conversation around our campaigns and advocacy. We value inclusivity and respect within our community. To be approved, your comments should be civil.

A few things we do not tolerate: comments that promote discrimination, prejudice, racism, or xenophobia, as well as personal attacks or profanity. We screen submissions in order to create a space where the entire Freedom United community feels safe to express and exchange thoughtful opinions.



Be the First to Comment!

0 COMMENTS

## This week



### Cambodian government deliberately ignoring modern slavery scam compounds

*Trigger warning: This article contains mention of physical torture and death Desperate job seekers applying for what they think are genuine jobs are instead trafficked into prison-like compounds buried in the Cambodian jungle. Operating on a vast scale, survivors report being trapped and forced to conduct scams or face torture. All while the



Document title: Million-dollar settlement for survivors of camp for troubled teens - FreedomUnited.org
Capture URL: https://www.freedomunited.org/news/settlement-for-camp-survivors/
Capture timestamp (UTC): Mon, 30 Jun 2025 19:09:12 GMT






U.S. NEWS

# Lawsuit accusing ranch of forcing teens to do hard labor settles for $2.3 million

Trinity Teen Solutions, a facility for troubled teens in Wyoming, closed in 2022 amid allegations of abusive treatment.



Plaintiffs in the lawsuit accused Trinity Teen Solutions of forcing them to perform manual labor, including laying irrigation pipes.
Courtesy Maggie Higgins

 SAVE    Create your free profile or log in to save this article

Sponsored Stories    by Taboola

June 12, 2025, 9:03 PM UTC

By Tyler Kingkade

Lawsuit accusing ranch of forcing teens to do hard labor settles for $2.3 million

SHARE & SAVE —

SAVE    Create your free profile or log in to save this article

June 12, 2025, 9:03 PM UTC

By Tyler Kingkade

A federal judge last week approved a $2.3 million settlement in a class action lawsuit against a small program for troubled teens in Wyoming, ending four years of litigation over allegations of forced labor.

Trinity Teen Solutions promised to help girls with mental health and behavioral problems, but a group of women who'd been placed there as teens by their parents accused the now-defunct ranch of forcing them to perform manual labor. Tasks included repairing barbed wire fences, castrating animals and laying irrigation pipes, the suit alleges. Injuries were disregarded, it states, and the girls were subjected to humiliating punishments if they did not do the work as ordered.

Attorneys for Trinity Teen Solutions declined to comment. The settlement stipulates that Trinity Teen Solutions and its owners are not admitting wrongdoing. In previous court filings, the ranch said it did not violate the law and that "chores and physical exercise were part of its program."

An NBC News investigation in 2022 revealed that the former clients had tried to report their concerns about Trinity Teen Solutions to state officials and law enforcement, and described them on social media and business review websites like Yelp. State officials allowed Trinity Teen Solutions to keep its license, and its owners were never charged with a crime. A Wyoming Department of Family Services senior administrator told NBC News at the time that the state was hesitant to shut down youth facilities unless children were in danger.



Participants lift lumber at Trinity Teen Solutions in 2011.
Courtesy Kelsie VanMeveren

Trinity Teen Solutions also sued three women who'd criticized the

Sponsored Stories                    by Taboola



SMART LIFESTYLE TRENDS          Learn More

Virginia: Huge Home Insurance Reduction For Those Over 49 Yrs Old



INTUIT CREDIT KARMA             Learn More

Upgrade Your Wallet with a New Cash Back Card.





NBC NEWS

Lawsuit accusing ranch of forcing teens to do hard labor settles for $2.3 million

SHARE & SAVE —

Participants lift lumber at Trinity Teen Solutions in 2011.
*Courtesy Kelsie VanMeveren*



Trinity Teen Solutions also sued three women who'd criticized the ranch online in 2016 for defamation, in a case that settled without details being made public.

The new settlement, which was submitted in court last month, will be open to anyone who'd been placed at the ranch from November 2010 until it closed in 2022, and performed "agricultural labor" – more than 250 people in all. Each person's cut of the settlement will be based on how long they were at the ranch, which was typically one or two years.

## Recommended



**U.S. NEWS**
2 Idaho firefighters killed after gunman started blaze to lure them into an ambush, authorities say



**MIDDLE EAST CONFLICT**
State Department bans visas for English punk duo Bob Vylan after Glastonbury performance

Those who join the class and receive a settlement check will have to adhere to a nondisparagement agreement, meaning they cannot bash Trinity Teen Solutions or its owners online, but the court filings state they are not prevented "from making true statements about their experiences."

Amanda Nash, one of the lead plaintiffs, who was sent to Trinity Teen Solutions 10 years ago, said she felt relieved by the settlement. "I was just very happy to be able to give the 15-year-old me a voice, and be able to try my best and represent dozens of other girls – whether they wanted to be involved or not – to try and speak up for them as well," she said.

But Anna Gozun, who was sent to the ranch in 2012, said she won't take part in the settlement because of the nondisparagement agreement and the fact that Trinity Teen Solutions' owners didn't have to admit wrongdoing. The settlement "does not reflect true accountability or justice," she said.

"It's disheartening beyond words," Gozun continued. "Many of us came forward at great personal cost, reliving trauma in hopes of stopping a cycle of abuse. This settlement feels more like a forced ending than a fair resolution."



Document title: Wyoming troubled teen ranch settles suit for $2.3 million after forced labor accusations
Capture URL: https://www.nbcnews.com/news/us-news/wyoming-troubled-teen-program-settles-lawsuit-trinity-teen-solutions-rcna212633
Capture timestamp (UTC): Mon, 30 Jun 2025 19:11:34 GMT



**NBC NEWS**

Lawsuit accusing ranch of forcing teens to do hard labor settles for $2.3 million

SHARE & SAVE —



—— Anna Gozun, who was sent to the ranch in 2012, called the settlement "disheartening beyond words," in part because Trinity Teen Solutions did not admit wrongdoing.   Will Crooks for NBC News

Following the 2022 NBC News investigation into Trinity Teen Solutions and a nearby ranch for boys run by the same family, Wyoming's child welfare officials announced they would proactively post evaluation records online. Trinity Teen Solutions closed with its license still intact the following month. A separate lawsuit against the boys ranch settled out of court last year on undisclosed terms.

The litigation against Trinity Teen Solutions played out at a time when the troubled teen industry – a constellation of boarding schools, ranches, treatment centers and boot camps that parents send children to help improve their behavior – faced increased scrutiny from youth rights advocates and lawmakers.

Former attendees of these programs on social media and in news accounts have described abusive treatment they said they faced at the facilities, which are privately run and are not federally regulated unless they take money from the U.S. government. Last year, after a high-profile lobbying effort by celebrity entrepreneur Paris Hilton, Congress passed a bipartisan measure requiring a multiagency study of the troubled teen industry. 🌈





Tyler Kingkade

X  ✉

Tyler Kingkade is a national reporter for NBC News, based in Los Angeles.




To be clear, I will not be accepting the settlement personally.
I initiated this lawsuit in 2020 to protect fellow survivors from the threat of legal action simply for speaking the truth about their lived experiences.

I cannot, in good conscience, support a settlement that includes the same non-disparagement clause previously used to silence and retaliate against survivors.

I had no say in the settlement negotiations after experiencing misconduct from one of our own attorneys (he was subsequently removed by the judge), however, will be thankful for the good that has come from this 4+ year battle and the incredible survivors I've met throughout the journey.



45

0

4

Share

00:03 / 00:16



**annagozun**
Anna · 6-12



♫ original sound - Escape The Daily

 **annagozun**
Anna · 6-16



## Trinity Teen Solutions— Class Action Settlement Terms/Preliminary Approval

Trinity Survivors,

First and foremost, I want to make it clear that I am not an attorney and cannot provide legal advice or interpret legal terminology. This is for both your protection and mine. Please know that I care deeply for each of you.

If you have questions or concerns, I strongly encourage you to seek independent legal counsel to better understand your individual rights and options.

I'm sharing these public documents solely to ensure that you have access to the information necessary to make an informed decision for yourself.

Below are the most recent filings related to the preliminary approval of the class action settlement.

—Per these documents, the FINAL settlement hearing is set for:

September 11, 2025.

— They will send notices to whichever address they have on file for you. I do not have any further information regarding this.

(Note: To my knowledge and understanding, the entirety of the settlement and defense litigation costs are being paid by Markel Insurance Company. Not the Woodwards.)

less

♫ origineel geluid - nina.editss

**3 comments**

## 3 comments

 Log in to comment

 **Reilly <3**
Don't silence the survivors
6-16    ♡ 2    **Reply** 

 **Anna · Creator**
I 10000% agree with you.
6-16    ♡ 0    **Reply**

Hide ⌃

 **Uncle_Ric**
 ❤️❤️❤️
6-16    ♡ 0    **Reply**