Michael Rosenthal, WSB #5-2099
Hathaway & Kunz, LLP
P.O. Box 1208
Cheyenne, WY 82003-1208
(307) 634-7723
Fax: (307) 634-0985
mike@hkwyolaw.com

Nathan Nicholas, WSB #7-5078
Koch Law, PC
121 W. Carlson St. #3
Cheyenne, Wyoming 82009
(307) 631-6383
nnicholas@kochlawpc.com

Frank L. Watson, III (TN Bar #015073)
Craig Edgington (TN Bar #038205)
William E. Routt, III (TN Bar #028577)
William F. Burns (TN Bar#017908)
*Admitted Pro Hac Vice*
Watson Burns, PLLC
5865 Ridgeway Center Pkwy., Ste. 300
Memphis, TN 38120
(901) 529-7996
Fax: (901) 529-7998
fwatson@watsonburns.com
cedgington@watsonburns.com
wroutt@watsonburns.com
bburns@watsonburns.com
*ATTORNEYS FOR PLAINTIFFS*

---

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

---

**CARLIE SHERMAN, and AMANDA NASH;**
on Behalf of themselves and all similarly
situated persons,                                                              **CASE NO. 20-cv-215-S**

       **PLAINTIFFS,**

**v.**

**TRINITY TEEN SOLUTIONS, INC.,**
a Wyoming corporation; **ANGELA C.
WOODWARD, JERRY D. WOODWARD;
KARA WOODWARD; KYLE WOODWARD,**
And **DALLY-UP, LLC,** a Wyoming LLC,

       **DEFENDANTS.**

1

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL
## OF THE CLASS ACTION SETTLEMENT

**COMES NOW** Plaintiffs pursuant to Rule 23 and this Court's Order Granting Preliminary Approval of Settlement Agreement (ECF 344), and respectfully move this Court for final approval of the class action settlement. In support of their motion, Plaintiffs state as follows:

### I.    INTRODUCTION

This settlement follows three mediations and over four years of litigation and negotiations between the Parties. The settlement provides substantial relief to the Class Members in a non-reversionary gross settlement of $2,300,000. Given the factual realities of the case, Class Counsel firmly believe the settlement is fair, reasonable, and adequate, and is in the best interests of the Class. (Declaration of Frank L. Watson, III ("Watson Decl."), at ¶ 20, a copy of which is attached hereto as **EXHIBIT A**); (Declaration of Craig A. Edgington in Support of Fees and Expenses ("Edington Decl."), at ¶ 14, a copy of which is attached hereto as **EXHIBIT B**); (Declaration of Michael Rosenthal in Support of Fees and Expenses ("Rosenthal Decl."), at ¶ 14, a copy of which is attached hereto as **EXHIBIT C**); (Declaration of Nathan Nicholas in Support of Fees and Expenses) ("Nicholas Decl."), at ¶ 13, a copy of which is attached hereto as **EXHIBIT D**).

On June 5, 2025, the Court preliminarily approved the Parties' proposed settlement, approved the form and content of the proposed notice, and ordered that the notice be sent to the Class. (ECF 344). Pursuant to this Court's preliminary approval order, the Claims Administrator sent Court-approved notice to the Class within fourteen (14) days.[1] For any mailed notices returned

---

[1] On June 5, 2025, the Court entered its Preliminary Approval of Class Settlement Agreement. (ECF No. 344). In doing so, the Court appointed CMM Settlement Solutions to act as Settlement Administrator and to perform the associated responsibilities set forth in the

as undeliverable, the Claims Administrator performed address searches to locate a new address and re-mailed the notice materials when new addresses were located. Additionally, the Claims Administrator directly emailed all class members whose e-mail was in the possession of Class Counsel. As of the filing of this Motion, 110 of the 262 Class Members have submitted claims to the Claims Administrator. The Claims Administrator reports receiving timely claims via mail on a daily basis as of the filing of this Motion.

Also, the Claims Administrator timely updated the website https://trinityranchclassaction.com/ with the Class Notice, Claim Form, Settlement Agreement, and Preliminary Approval Order.

As of the filing of this Motion, no Class Members have objected to the settlement in the proper manner as ordered by this Court. (ECF 322, pp. 3-4).

Finally, Tyler Kingkade of the National Broadcasting Company ("NBC") published a national story about the settlement which contained links to the Court's pleadings regarding the settlement,[2] and the settlement has been shared on TikTok.

Plaintiffs, therefore, respectfully request that this Court enter a final order: (1) granting final approval of the Settlement Agreement; (2) approving class counsel's request for attorneys' fees and litigation expenses of $920,000; (3) approving incentive awards of $15,000 each to Carlie Sherman, Amanda Nash, and Anna Gozun; and (4) entering judgment in this matter.

---

Settlement Agreement. (ECF No. 244 at p. 2 of 7). Because CMM Settlement Solutions is still performing its responsibilities as ordered by the Court, including receiving and processing timely postmarked class claims, Plaintiff will file the Declaration of CMM Settlement Solutions' principal, F. Scott Conaway, no later than five (5) days before the Final Approval Hearing, which is to be held on September 11, 2025. In doing so, CMM Settlement Solutions will confirm compliance with its obligations, including its obligations related to Court-approved Notice, and will state the number of claims received.

[2] Wyoming troubled teen ranch settles suit for $2.3 million after forced labor accusations

Defendants do not oppose this Motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Parties have vigorously litigated this case for over four years. A detailed history of this case's background and procedural history is found in the Parties' Memorandum in Support of Joint Motion for Preliminary Approval of Class Settlement (ECF 342). Pursuant to Rule 10(c), Plaintiff hereto adopts the background and procedural history section of the Parties' previously filed memorandum. (ECF 342, pp. 4-8). Additionally, Plaintiff adopts by reference, the Declaration of Mediator Hon. (Ret) Irma Gonzalez (ECF 341-2) for the proposition that this "Settlement represents a recovery and outcome that is reasonable and fair for the Settlement Class and all Parties involved." (*Id.* at pp. 2-3. ¶ 10).

## III. RELIEF TO THE SETTLMENT CLASS

### A. Monetary Relief and Calculating Payments

The Settlement amount consists of a gross settlement amount of $2,300,000. (ECF 341-1, p. 5). As a non-reversionary payment, none of the gross settlement amount will revert to the Defendants. The gross settlement amount will be distributed as follows:

- **$1,185,000** for distribution to class members[3];
- **$920,000** for attorneys' fees and expenses[4];

---

[3] Here forth referenced as the "Net Settlement Amount."

[4] The executed Stipulation of Class Action Settlement indicates that Plaintiffs' counsel shall seek an award of attorneys' fees and expenses not to exceed 40% of the Gross Settlement Amount. (ECF 341-1, p. 10). Plaintiff's counsel have expended $54,545.55 in litigation expenses in this matter. (Watson Decl. ¶ 17).

- **$45,000** for incentive payments to Ms. Gozun, Ms. Sherman, and Ms. Nash, $15,000 each[5]; and

- **$150,000** for payment to the Claims Administrator[6].

The Settlement provides a substantial and immediate recovery to the Class Members. (Watson Decl. ¶ 20)**.**

As set out in the Motion for Preliminary Approval, the Claims administrator will calculate distribution of settlement funds on a pro rata basis to each Class Member from the Net Settlement Amount.

### B.  Procedure for Distributing Settlement Funds

If the Court grants final approval, Defendants' insurance carrier shall deposit $2,300,000 into an escrow account directed by Class Counsel, less any previously transferred claims administration costs. (ECF 341-1. p. 8). Class Counsel will issue a check in the amount of **$1,230,00.00** to the Claims Administrator for distribution to the class, including the incentive payments to Ms. Gozun, Ms. Sherman, and Ms. Nash. The Settlement Administrator will issue checks to the addresses of each applicable Class Member, taking reasonable steps to acquire any additional information necessary to comply with applicable Internal Revenue Service regulations. If any Class Member has not cashed her check within 90 days of it being sent, the Claims Administrator will send follow up correspondence by mail to the applicable Class Member and inquire of their receipt of the settlement check. If any settlement check has not been cashed after 180 days of being sent, the Claim Administrator will distribute the unclaimed funds to Class Members who made valid claims on a *pro rata* basis.

---

[5] *Id.*

[6] *Id.*

## IV. FINAL APPROVAL OF THE SETTLMENT IS APPROPRIATE

### A. The Settlement is fair, reasonable, and adequate.

The law favors settlement, especially in class actions where substantial judicial resources, not to mention those of the parties, can be conserved by avoiding further litigation. *See Smith v. MCI Telecomms. Corp.*, No. 87-2110-EEO, 1993 U.S. Dist. LEXIS 6114, at *11 (D. Kan. Apr. 28, 1993); *see also Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014) (citing *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010)); *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 WL 4816510, at *10 (W.D. Okla. Oct. 27, 2008) (citing *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997)). "[A]pproval of a class action settlement is committed to the sound discretion of the court," *Wilkerson*, 171 F.R.D. at 283, and "[i]n exercising its discretion, the trial court must approve a settlement if it is fair, reasonable and adequate," *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984)).

For purposes of Rule 23(e)(2), courts must determine whether the settlement is "fair, reasonable, and adequate . . ." Fed. R. Civ. P. 23(e)(2); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *Jones*, 741 F.2d at 324. To aid courts in making this determination, the amended Rule 23(e)(2) provides the following factors for a court to use to determine whether a settlement is "fair, reasonable, and adequate:"

    A. the class representatives and class counsel have adequately represented the class;

    B. the proposal was negotiated at arm's length;

    C. the relief provided for the class is adequate taking into account:

        i. the costs, risks, and delay of trial and appeal;

        ii. the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      iii.   the terms of any proposed award of attorney's fees, including timing of payment; and

      iv.   any agreement required to be identified under Rule 23(e)(2); and

   D.  the proposal treats class members equitably and relative to each other.

Fed. R. Civ. P. 23; *Montgomery v. Continental Intermodal Group-Truckling, LLC*, 2021 WL 1339305, at *3-4 (D.N.M. April 9, 2019). Courts in the Tenth Circuit also consider:

   (1)  whether the proposed settlement was fairly and honestly negotiated;

   (2)  whether serious questions of law and fact exist, placing the ultimate outcome of litigation in doubt;

   (3)  whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

   (4)  the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Willbanks*, 314 F.3d at 1189 (citations omitted); *Jones*, 741 F.2d at 324.

      The amended Rule 23(e) factors "are not intended to displace the considerations that the Circuits apply to assess settlements," but rather "to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *O'Dowd v. Anthem*, 2019 WL 4279123, at *12 (D. Colo. Sept. 9, 2019) (citing Fed. R. Civ. P. 23(e)(2) (Advisory Committee Notes)); *see also Peace Officers' Annuity and Benefit Fund of Ga. v. DaVita Inc.*, 2021 WL 1387110, at *4 (D. Colo. April 13, 2021). As such, "a court considers the Rule 23(e)(2) factors as the main tool in evaluating the propriety of the settlement but still addresses the Tenth Circuit's factors." *DaVita*, 2021 WL 1387110, at *4. Except where Tenth Circuit factors overlap with those of Rule 23(e)(2), Plaintiff addresses each separately below.

1. **Rule 23(e)(2)(A): The class representatives and class counsel have adequately represented the class.**

This factor "focuses 'on the actual performance of counsel acting on behalf of the class.'" *Montgomery*, 2021 WL 1339305, at *4 (quoting Fed. R. Civ. P. 23. Advisory Committee Notes). Class Counsel are experienced in the litigation, certification, and settlement of class actions similar to this case. (*See* Watson Decl.¶¶ 2-7; Edgington Decl. ¶¶ 2-7 Rosenthal Decl. ¶¶ 2-6; Nicholas Decl. ¶¶ 2-5**).** Here, Class Counsel have vigorously prosecuted this case since its inception and have been contested by Defendants at all stages. Plaintiffs have overcome multiple dispositive motions. Further, Plaintiffs aggressively sought discovery, including judicial conferences on discovery disputes. The Parties conducted over a dozen depositions and engaged in substantial motion practice and hearings. Documents in discovery exceed 300,000 pages. Class Counsel devoted hundreds of hours to reviewing documents obtained in discovery and researching and evaluating Plaintiffs' claims to "'ferret out facts helpful to the prosecution of this suit,'" *Montgomery*, 2021 WL 1339305, at *4 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 164, 176 (S.D.N.Y. 2000)) and had "an adequate appreciation of the merits of the case before negotiating," *Id.* (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531 (3d Cir. 2004)).

Additionally, on October 5, 2022, the Court denied Plaintiffs' Motion in Support of Class Certification. (Doc. 247). The Court found Plaintiffs met Fed. R. Civ. P. 23 requirements of numerosity and adequacy. It found that Plaintiffs failed to meet their burden as to commonality, typicality, and predominance/superiority. Plaintiffs filed an interlocutory appeal with the Tenth Circuit Court of Appeals. Following briefing and oral argument, the Tenth Circuit vacated the District Court's decision on October 31, 2023, and remanded for further proceedings. (Appellate

Case: 22-8080, Doc. 010110943915). The ultimate outcome of this vigorous litigation was class certification.

### 2. Rule 23(e)(2)(B): The Parties negotiated the Proposed Settlement at arm's length.

This factor "focuses on whether the settlement negotiations "'were conducted in a manner that would protect and further the class interests.'" *Montgomery*, 2021 WL 1339305, at *5 (quoting Fed. R. Civ. P. 23 Advisory Committee Notes). Similarly, "[w]hen examining whether a statement was fairly and honestly negotiated, district courts within the Tenth Circuit often examine whether the parties, 'have vigorously advocated their respective positions throughout the pendency of the case.'" *In re Thornburg Mortg., Inc.*, 912 F. Supp. 2d 1178, 1241 (D.N.M. 2012) (quoting *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 D. Colo. 1997)). Courts are also "required 'to ensure that the agreement is not illegal, a product of collusion, or against the public interests.'" *Childs v. Unified Life Ins. Co.*, 2011 WL 6016486, at *12 (N.D. Okla. Dec. 2, 2011) (quoting *United States v. State of Colorado*, 937 F.2d 505, 509 (10th Cir. 1991)). As discussed above, Class Counsel's advocacy for the class has been vigorous and thorough. The Settlement followed over four (4) years of contested litigation, and it is the result of good faith, arm's-length negotiations between experienced attorneys who are familiar with class action litigation in general and with the legal and factual issues of this case in particular. (*See* Watson Decl.¶ 11). Settlement negotiations took place during multiple mediation sessions (ECF 342, p. 6) under the guidance of the following mediators: (1) Hon. William Downes (Ret.); (2) Kevin Kinnear of the Circuit Mediation Office for the Tenth Circuit Court of Appeals; and (3) Hon. Irma E. Gonzalez (Ret), each of whom was both familiar with this case and an experienced mediator. *See Montgomery*, 2021 WL 1339305, at *5 (quoting 2 McLaughlin on Class Actions § 6:7 (8th ed. 2011) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion."); *see also Tripp v. Rabin*, 2016 WL 3615572, at *3 (D. Kan. July 6, 2016)

("The contested nature of this suit, the engagement of a neutral mediator, and the extensive negotiation process constitute evidence the parties negotiated the settlement agreement fairly and honestly."); *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) ("Because the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate, and reasonable.").

3. **Rule 23(e)(2)(C)(i): The relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal.**

This factor "recognizes that while 'the relief that the settlement is expected to provide to class members is a central concern,' such relief must be viewed in relation to 'the cost and risk involved in pursuing a litigated outcome.'" *Montgomery*, 2021 WL 1339305, at *5 (quoting Fed. R. Civ. P. 23 Advisory Committee Notes).

Class Counsel aver that Plaintiffs' case is strong from a factual standpoint: Defendants utilized Class Members to conduct the physical labor on their working ranch. However, numerous unresolved issues that create substantial uncertainty in the outcome of the litigation remain. Defendants' challenges to the opinions of Plaintiffs' expert and proposal to substitute the expert remain unresolved. Dispositive motions, motions in limine, and independent medical examinations also potentially lie ahead. The Parties remained at odds regarding whether the Court's order granting class certification also permitted individualized evidentiary considerations, *e.g.* damages, let alone the logistics of how this would be accomplished. (*See* ECF 342, p. 6).

Should the Class prevail against dispositive motions, trial nonetheless has risk. Defendants dispute the merits of each of Plaintiffs' claims and have asserted numerous affirmative defenses. Some of the discovery produced puts the ultimate outcome of this litigation in doubt.

Additionally, during the pendency of this litigation, Defendants' insurance provider, Markel Insurance Company, filed a Declaratory Judgment Action against Defendants, in the

lawsuit captioned *Markel Ins. Co. v. Trinity Teen Solutions, et. al.*, Civil Action No. 24-cv-00181, in the United States District Court for the District of Wyoming. Through this litigation, Markel Insurance Company sought a ruling from this very Court that it had no duty to defend or indemnify Defendants under its insurance policies because the actions of Defendants were intentional and not covered by the underlying insurance policies.

Furthermore, due to the negative publicity this suit brought to the facility, it ceased accepting new clients during the fall of 2022 and ceased operating completely.[7] This, of course, completely shut off the revenue stream for each of the Defendants making recovery for the Class that much more challenging.

Ultimately, the Settlement will avoid significant delay and risk. Should the Settlement ultimately not be approved, the discovery period may be extended. Additionally, Defendants have not yet filed motions for summary judgment, and the non-prevailing party at either summary judgment or trial is likely to appeal any unfavorable decision. *See Montgomery*, 2021 WL 1339305, at *6 (observing that delay resulting from the need for additional discovery, pending motions for summary judgment, and likely appeals of unfavorable decisions supported settlement approval).

4. **Rule 23(e)(2)(C)(ii): The relief provided to the class is adequate, taking into account the effectiveness of any proposed method of distributing relief to the class including the method of processing class-members claims if required.**

On this point, the Rule asks courts to "scrutinize the method of claims processing to ensure that it facilities filing legitimate claims" and states they "'should be alert to whether the claims process is unduly demanding.'" *Montgomery*, 2021 WL 1339305, at *6-7 (quoting Fed. R. Civ. P. 23 (Advisory Committee Notes)). This factor is satisfied because the Court-approved notice was

---

[7] [Wyoming ranch for troubled teens closes after abuse allegations](#)

11

the best notice practicable under the circumstances and provided adequate notice to the class. Payment processing will not be burdensome to Class Members: The Claim Administrator will issue checks with little, if any, effort required on their part, as each of the Class Members will have provided their updated contact information on their claim form.

5. **Rule 23(e)(2)(C)(iii): The relief provided for the class is adequate, taking into account the terms of any proposed award of attorney's fees, including timing of payment.**

"This factor recognizes that '[e]xamination of the attorney-fee provision may also be valuable in assessing fairness of the proposed settlement.'" *Id.* (quoting Fed. R. Civ. P. 23 (Advisory Committee Notes)).

Under the equitable "common fund" doctrine, attorneys who create a common fund or benefit for a group of persons may be awarded their fees and costs out of the fund, and their fees are traditionally calculated as a percentage of the total fund. *See Farley v. Family Dollar Stores, Inc.*, 2014 WL 5488897, at *3 (D. Colo. Oct. 30, 2014 ("The Tenth Circuit has recognized that attorney's fees may be appropriately be awarded from [a common] fund.") (citing *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994)).

Here, Class Counsel seek an award of attorneys' fees equaling forty-percent of the gross settlement amount, which amounts to $920,000. This amount is within the range of reasonable and customary class action settlements in the Tenth Circuit and in general. *See e.g.*, *Cimarron Pipeline Constr. Inc. V. Nat'l Counsel on Comp. Ins.*, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); *Enegren v. KC Lodge Ventures, LLC*, No. 17-2285-DDC-GEB, 2019 U.S. Dist. LEXIS 177192, at *30 (D. Kan. Oct. 11, 2019) (Award of 41.5 percent of a settlement fund in fees and costs was within the customary fee range in FLSA class action); *Payson v. Capital One Home Loans, LLC*, No. 07-CV-2282-DWB, 2009 U.S. Dist. LEXIS 25418, at *7

(D. Kan. Mar. 26, 2009) (approving attorneys' fees of 42.42 percent of the total settlement); *Craven v. McCaffree-Short Title Co. Inc.*, No. 2:21-CV-02003-TC-GEB, 2021 U.S. Dist. LEXIS 226994, 2021 WL 5505705, at *3 (approving attorneys' fees of 44 percent of the total settlement); *Mpia v. Healthmate Int'l, LLC*, No. 19-CV-02276-JAR, 2021 U.S. Dist. LEXIS 125584, 2021 WL 2805374, at *3 (D. Kan. July 6, 2021) (approving attorneys' fees of 58.8 percent of the total settlement).

Courts in the Tenth Circuit evaluate the reasonableness of attorneys' fees awards using twelve factors:

> (1) The time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee; (6) any prearranged fee-this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Aragon v. Clear Water Prod., LLC*, 2018 WL 6620724, at *4 (D. Colo. Dec. 18, 2018) (citing *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

These factors favor the requested fee award. Class Counsel have extensive experience in class actions and have dedicated substantial time to this case—over 2,000 hours in investigation and research, motions practice, discovery, mediation, settlement and administration. At Class Counsel's standard hourly rates, their aggregate hours amount to a total lodestar in excess of the award sought. (Watson Decl.¶ 15).

Class Counsel's time was necessary and well-spent. Defendants have opposed Plaintiffs at all phases of this litigation, including multiple motions to dismiss and initially a successful denial of class certification. Plaintiffs' aggressive and thorough discovery likewise demanded substantial time. Class Counsel faced further difficulty in resolving the case. Mainly, three mediations were required to reach a settlement. Finally, each of the Class Representatives agreed that Class Counsel would seek this percentage from the Court and signed the Stipulation of Class Settlement showing as much. (ECF 341-1, pp. 10, 17).

6. **Rule 23(e)(2)(C)(iv): The relief provided for the class is adequate, taking into account any agreement required to be identified under Rule 23(e)(2).**

Pursuant to Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23. Here, the Settlement Agreement and prior memoranda of understanding are already on file with this Court, and there are no other agreements between the parties. (*See* ECF Nos. 342, 341-1).

7. **Rule 23(e)(2)(D): The proposal treats class members equitably relative to each other.**

This factor "seeks to prevent the 'inequitable treatment of some class members vis-à-vis others.'" *Montgomery*, 2021 WL 1339305, at *21 (quoting Fed. R. Civ. P. 23 (Advisory Committee Notes)). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Id.* Here, all class member assert claims arising from their uncompensated labor while participating as mental health patients receiving treatment at the facility. Accordingly, settlement payments to each class member will be calculated on a *pro rata* basis, depending on the total number of days spent at the ranch.

Pursuant to the Settlement Agreement, Plaintiffs' also seek awards of incentive payments of $15,000 to Ms. Gozun, Ms. Sherman, and Ms. Nash to recognize their willingness to step forward and litigate this case. "Incentive awards are fairly typical in class action cases." *Fager v. CenturyLink Comms., LLC*, 2015 WL 13298517, at *8 (D.N.M. June 25, 2015) (internal citations omitted). Compensable services typically involve being deposed, answering written discovery, updating class members, being available for mediations. *See Chieftain Royalty Co. v. Enervest Energy Inst'l Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017). "Courts have [also] recognized that an award may be appropriate to provide an incentive to act as a named Plaintiff." *Id.* at 467 (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722-23 (7th Cir. 2001)).

Here, Ms. Gozun, Ms. Sherman, and Ms. Nash initiated, participated in, and assisted Class Counsel with their initial case investigation and filing of the Complaint. All three were available for the first two mediations, had lengthy and intrusive depositions conducted, and each responded to multiple rounds of written discovery requests.

### 8. The experience and views of counsel support that the settlement is fair and reasonable.

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Montgomery*, 2021 WL 1339305, at *10 (quoting *Lucas*, 234 F.R.D. at 695); *Acevedo v. Sw. Airlines Co.*, Civil Action No. 1:16-cv-00024-MV-LF, 2019 U.S. Dist. LEXIS 213691, at *10 (D.N.M. Dec. 10, 2019) (same); *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 U.S. Dist. LEXIS 86741, at *37 (W.D. Okla. Oct. 27, 2008) (same). Class counsel are experienced in such class action litigation and are familiar with the claims, remedies, and defenses at issue in this case, including the limits of Defendants' ability to satisfy a judgment. counsel fully support the resulting settlement as fair and reasonable. *Id*.

**9. The sole objection lodged by a class member to the Settlement is meritless.**

On April 16, 2025, prior to the submission of the Joint Motion for Preliminary Approval of Class Settlement (ECF 341), the Court received a request to deny motion for settlement approval from class member Mollie Lynch-Jelinek (ECF 336). However, Plaintiffs aver that Ms. Lynch-Jelinek failed to follow this Court's instructions on properly objecting and therefore her objection is untimely and has no effect. (ECF No. 344, pp. 4-5, ¶¶ 9-10).

Even so, Ms. Lynch-Jelinek's objection is focused on the fact that the proposed Settlement does not provide the Class with any injunctive relief against the Defendants – such as changing their policies and practices so that they are not subjected in the future to the wrongful conduct alleged by the Class. (*Id*. at p. 3). In doing so, Ms. Lynch-Jelinek has failed to identify a legitimate objection to the Settlement.

First, Defendants' camp has been closed for several years since this matter was filed. As a result, there is no injunctive relief that can be effectively provided against a non-operating facility. Second, even if the camp were still in operation (or were to go back into operation), injunctive relief is inappropriate unless the Class can establish a substantial likelihood of being injured in the future. *See*, *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991) and *McAlpine v. Thompson*, 187 F.3d 1213, 1216 (10th Cir. 1999). Given that the Class – including Ms. Lynch-Jelinek – objected to the acts and practices of Defendants' and their camp, the Class and Ms. Lynch-Jelinek have no intent on re-attending any camp with which the Defendants are or might in the future become associated. *Moore Broadway Kids v. Okla. Comm'n for Human Servs*., CIV-08-426-R, 2009 U.S. Dist. LEXIS 142380 (W.D. Okla. Mar 31, 2009) (denying plaintiffs' request for injunctive relief, finding that plaintiffs "have not established a good chance of being injured by Defendants in the future, and thus Plaintiffs lack standing for purposes of injunctive relief.") Thus, the Class logically has no likelihood of being injured in the future.

In sum, injunctive relief was neither needed in this matter given the camp's closure nor legally available to the Class.

**10. The risks of ongoing litigation weigh in favor of approval of the Settlement.**

The risks of ongoing litigation further support approval of the Settlement. For example, Markel Insurance Company filed a lawsuit against the Defendants here alleging that Defendants' actions were not covered under the relevant insurance policies. Markel sought, among other things, declaratory relief that it owed no duty to defend or indemnify Defendants under the relevant policies and that coverage was barred. *See Markel Insurance Co. v. Trinity Teen Solutions, Inc., et al.*, Case No. 1:24-cv-00181-SWS, United States District Court for the District of Wyoming. Should the Court Settlement not be finalized, the Class is at substantial risk of receiving no recovery whatsoever in the event Markel prevails in its action against Defendants as no insurance funds would be available for the Class. Likewise, Defendant Trinity Teen Solutions, Inc. filed suit against Blue Cross and Blue Shield of Wyoming ("BCBS") seeking compensation for alleged treatment provided to Class Members for behavior and mental health issues. *See Trinity Teen Solutions, et al. v. Blue Cross and Blue Shield of Wyoming*, Case No. 30350, in the District Court for the Fifth Judicial District of the State of Wyoming. Should BCBS prevail, it is anticipated that Defendants will have little, if any, assets available to compensate the Class. (*See* Watson Decl. ¶ 21).

V.     **CONCLUSION**

Accordingly, Plaintiffs respectfully request that this Court enter an order: (1) granting final approval to the settlement; (2) approving incentive awards for Ms. Gozun, Ms. Sherman, and Ms. Nash to recognize their willingness to step forward to litigate this matter; (3) approving attorneys' fees and litigation expenses of $920,000; and (4) entering final judgment in this matter.

Respectfully submitted,


By: */s/ Frank L. Watson*
Frank L. Watson, III (TN Bar #015073)
William E. Routt, III (TN Bar #28577)
William F. Burns (TN Bar #017908)
Craig Edgington (TN Bar #038205)
Watson Burns, PLLC
5685 Ridgeway Center Pkwy., Ste. 300
Memphis, TN 38120
Phone: (901) 529-7996
Fax: (901) 877-4629
fwatson@watsonburns.com
cedgington@watsonburns.com
wroutt@watsonburns.com
bburns@watsonburns.com

Michael Rosenthal, WSB #5-2099
Hathaway & Kunz, LLP
P.O. Box 1208
Cheyenne, WY 82003-1208
(307) 634-7723
Fax: (307) 634-0985
mike@hkwyolaw.com

Nathan Nicholas, WSB #7-5078
Koch Law, PC
121 W. Carlson St. #3
Cheyenne, Wyoming 82009
(307) 631-6383
nnicholas@kochlawpc.com

*ATTORNEYS FOR CLASS MEMBERS*

**CERTIFICATE OF SERVICE**

      This is to certify that on the 12th day of August 2025, a true and correct copy of the foregoing was served upon counsel as follows:

| | |
|---|---|
| Thomas Quinn<br>Lillian L. Alves<br>GORDON REES SCULLY MANSUKHANI, LLP<br>555 Seventeenth Street, Suite 3400<br>Denver, CO  80202 | [ x ]  CM/ECF<br>[   ]  U.S. Mail<br>[   ]  Fax:  (303) 534-5161<br>[   ]  E-mail:  tquinn@grsm.com<br>             lalves@grsm.com |
| Lindsey M. Romano<br>Gordon Rees Scully Mansukhani, LLP<br>275 Battery Street, Suite 200<br>San Francisco, CA  94111<br>Phone:  415-986-5900<br>lromano@grsm.com | [ x ]  CM/ECF<br>[   ]  U.S. Mail<br>[   ]  Fax:<br>[   ]  E-mail:  lromano@grsm.com |

                                              */s/Frank L. Watson*